IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GUANTANAMO BAY | ) | Misc. No. 08-MC-442 (TFH) |
| DETAINEE LITIGATION | ) | |
| | ) | Civil Action No. 08-CV-1360 (RWR) |
| | ) | |

**RESPONDENTS' OPPOSITION TO MOTION FOR PRESERVATION ORDER,
ORDER REQUIRING GOVERNMENT AGENCIES TO IDENTIFY EXISTING
AND DESTROYED DOCUMENTS, AND OTHER RELIEFS**

Respondents oppose the motion of petitioner Zayn Al Abidin Muhammad Husayn (a.k.a.

Abu Zubaydah), which seeks an order requiring certain government entities[1] (1) to preserve all

evidence, documents, and information that may be relevant to petitioner's arrest, detention,

interrogation, and torture, and (2) to catalogue and provide a certified list of all relevant records

currently or previously in the possession of the Government, and if the record has been

destroyed, the approximate date of the destruction.[2]

As discussed below, petitioner's motion should be denied because to the extent petitioner

seeks the preservation of information related to the alleged torture, mistreatment, and/or abuse of

---

[1] Petitioner's motion requests that the following government entities be bound by the preservation order:  the Central Intelligence Agency ("CIA"), the Federal Bureau of Investigation ("FBI"), the National Security Council ("NSC"), the National Security Agency ("NSA"), the Departments of Defense and State, the White House, and the Office of the Vice President.  *See* Pet. Mot. at 2.

[2] Petitioner also seeks an order requiring that any pleading or other court filings in which a factual assertion is made be signed by an attorney associated with the appropriate government entity to assure accountability.  *See* Pet. Mo. at 16-17.  There is no reasonable basis for this request or any indication that such a procedure would be necessary to insure the accuracy of the government's representations to the Court.

petitioner, respondents are already under a duty to preserve such records pursuant to preservation orders issued by this Court.  And, to the extent petitioner seeks preservation of all information currently in the Government's possession that is relevant to petitioner's pending habeas case, the Government is fully aware of its obligations to preserve such information.  There is no significant risk that evidence relevant to the litigation of petitioner's core habeas rights will be destroyed.  Although petitioner points to the CIA's 2005 destruction of videotaped interrogation as indication of the Government's propensity to destroy relevant evidence, the CIA has taken appropriate measures to prevent any further destruction of any information, evidence or documents relating to any past, present or future Guantanamo detainees and detainees in CIA custody.  A preservation order therefore is unnecessary.

Granting petitioner's requested preservation order, on the other hand, would unduly burden the Government.  The order would require respondents to take action now with respect to a wide range of information that may or may not be relevant to petitioner's core habeas rights.  It would also require the Government to catalogue and provide a certified list of the information currently and previously in the Government's possession.  As the Government is marshaling its resources now to ensure the speedy resolution of the more 200 habeas cases pending before this Court, imposition of such additional burden outside of a streamlined procedural framework for litigating such cases, which is still to be worked out Judge James F. Hogan – and beyond what otherwise would be imposed by the Federal Rules of Civil Procedures – is entirely unwarranted. Accordingly, petitioner's motion should be denied.

## ARGUMENT

## PETITIONER'S REQUESTED PRESERVATION ORDER IS UNNECESSARY AND UNDULY BURDENSOME

### I.      Petitioner's Requested Order Is Unnecessary

Relying on *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004), which articulated a two-prong test to determine whether a preservation order should issue, petitioner argues that absent a preservation order, there is a significant risk that evidence relevant to his habeas case will be lost or destroyed.  He also argues that the requested order will not unduly burden the Government because it imposes no greater obligation than what the Federal Rules of Civil Procedure would otherwise impose, and because the "Government asserts that it already intends to comply with the requirements that would be made explicit in a preservation order."  Pet. Mot. at 11.  Petitioner is wrong on both counts.

As an initial matter, although other judges in this Court have rejected the proposition that a preservation order must meet the test of a preliminary injunction ("PI"), respondents respectfully submit that the PI standard, rather than the *Pueblo of Laguna* test, should be used for evaluating petitioner's motion.[3]  Because of its breadth and the burden it would impose on numerous government entities, petitioner's requested order is unlike an order simply requiring a party to identify witnesses or to produce documents in discovery – a comparison relied upon in *Pueblo of Laguna.*  Indeed, the *Pueblo of Laguna* test – which asks simply whether the requested preservation order is necessary and not unduly burdensome – has been criticized as lacking

_____

[3]  *See Madden v. Wyeth*, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42-43 (E.D. La. 1966).

"adequate precision" and "sufficient depth of analysis." *See Capricorn Power Co. v. Siemens Westinghouse Power*, 220 F.R.D. 429, 434 n.2 (W.D. Pa. 2004).

But even using the *Pueblo of Laguna* test, a preservation order is not warranted here. First, petitioner has not shown that a preservation order is necessary. As other judges of this Court have previously held when deciding similar motions for a preservation order, *see, e.g., El-Banna v. Bush*, Civ. No. 04-1144 (RWR) (D.D.C. July 17, 2005) (Order); *Abdullah v. Bush*, Civ. No. 05-0023 (RWR) (D.D.C. July 18, 2005) (Order); *Al-Shabany v. Bush*, No. 05-2029 (JDB) (D.D.C. Nov. 17, 2005), it is unnecessary to require respondents to preserve records relating to alleged torture or mistreatment of petitioner because respondents are already under a duty to preserve such records. Preservation orders issued by this Court already require respondents to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at [the] Guantanamo Bay detention facility." *Al-Marri v. Bush,* Civ. No. 04-2035 (GK) (D.D.C. Mar. 7, 2005) (Order); *see also Al-Adahi v. Bush,* Civ. No. 05-0280 (GK) (D.D.C. April 28, 2005) (Order); *Abdah v. Bush,* Civ. No. 04-1254 (HHK) (D.D.C. June 10, 2005) (Order).

Similarly, no preservation order is necessary to require the Government to maintain and preserve records relevant to petitioner's habeas litigation. Without conceding whether a preservation order can appropriately extend to all of the government entities identified by petitioner, the Government is well aware of it obligations not to destroy evidence that may be relevant in petitioner's habeas case. The relevant government entities are additionally entitled to the presumption "that they will act properly and according to law." *FTC v. Schreiber*, 381 U.S. 279, 296 (1965). The Government also has other independent reasons for ensuring the

preservation of the documents in question, including those relating to pending or potential

government investigations, the government's intelligence-gathering mission, and the potential

prosecution of petitioner by military commission.

Petitioner argues that the CIA's destruction in 2005 of interrogation videotapes is

evidence of present propensity by the Government to destroy relevant evidence. Petitioner also

cites press articles in support of the Government alleged "widespread" destruction of "critical

evidence" relating to detainees. *See* Pet. Mot. at 14. Petitioner further speculates that every

interrogation at Guantanamo since 2002 was routinely taped, and that there is reason to believe

that videotapes and related documents of petitioner's interrogation at Guantanamo may be in

danger of destruction. *See id.* at 13. These assertions and speculations are insufficient to

demonstrate that there is a significant risk of future destruction of relevant records by either the

CIA or other government entities.

To be sure, the CIA acknowledged in December 2007 that it destroyed videotapes of

petitioner's interrogation while he was in CIA custody in 2002. *See Director's Statement on the*

*Taping of Early Detainee Interrogation, available at* https://www.cia.gov/news-information

/press-releases-statements/press-release-archive-2007/taping-of-early-detainee-interrogations.ht

ml. As respondents have shown in a prior report submitted to this Court, along with supporting

declarations, in the wake of the revelation of the CIA's destruction of interrogation tapes, *see*

*Abdullah v. Bush*, Civ. No. 05-0023 (RWR) (dkt. no. 84, filed Feb. 8, 2008) (attached as Exhibit

A), both the Department of Defense ("DoD") and the CIA have taken new and additional steps to

ensure that materials relating to all Guantanamo Bay detainees are being preserved.

For example, on December 20, 2007, the Director of CIA, General Michael V. Hayden,

ordered all CIA personnel to "preserve and maintain all documents, information, and evidence relating to" any detainee held at Guantanamo Bay and any detainee held by the CIA.  *See* Decl. of General Michael V. Hayden, ¶ 4.  General Hayden also specified that his order is "a continuing obligation that applies to future as well as past and present detainees."  *Id.*  Similarly, DoD's Office of General Counsel issued a formal directive on December 19, 2007 to various DoD components regarding their preservation obligations.  *See* Decl. of Karen Hecker, ¶ 2.  The declaration of DoD's Associate Deputy General Counsel detailed efforts taken to ensure relevant DoD components' compliance with those obligations.[4]  *See generally* Hecker Decl., ¶¶ 2-4.

In other words, the Government is undertaking significant efforts to preserve information relating to Guantanamo detainees.  Indeed, as respondents' prior submissions have also indicated, *see Abdullah v. Bush*, Civ. No. 05-23 (dkt. no. 79, filed Dec. 26, 2007 and dkt. no. 84, filed Feb. 8, 2008), the CIA's destruction of interrogation recordings has generated various inquiries by the Executive Branch and Congress, including a criminal investigation by the Department of Justice.  These inquiries and criminal investigation will further deter any future destruction of evidence relevant to any detainee's habeas case.  Against this background and given the sensitivity regarding the Government's preservation obligations in civil litigation, there is no basis for concluding that the Government will not abide by those obligations.  Because petitioner cannot prove that a preservation order is necessary, his motion should be denied on that ground alone.

---

[4]  Respondents' submissions in the *Abdullah* case also included declaration of the then Commander of Joint Task Force Guantanamo ("JTF-GTMO"), Rear Admiral Mark H. Buzby, explaining steps taken to preserve information on recording systems of JTF-GTMO as well as corrective steps taken to preserve certain automatic overwriting that had previously occurred. *See* Ex. A.

## II.    Petitioner's Requested Order Is Unduly Burdensome

Petitioner also has not satisfied the second prong of the *Pueblo of Laguna* test requiring

that a party seeking the preservation order demonstrate that such an order is not unduly

burdensome.  *See Pueblo of Laguna*, 60 Fed. Cl. at 138.  Petitioner seeks the preservation of all

evidence, documents, and information that may be relevant to his "arrest, detention, interrogation

and torture," including certain specified categories of documents set out in exhibit A to

petitioner's motion.  *See* Pet. Mot. at 3 & Exhibit A.  In other words, petitioner is asking

respondents to take action with respect to a wide range of information without regard to its

relevance to petitioner's core constitutional habeas right regarding the legality of his detention –

which is the only subject matter over which this Court has jurisdiction in this case.[5]

Moreover, petitioner seeks to require government entities not only to preserve

information, but also to catalogue and produce a certified list of all materials whether currently

or previously in the possession of government entities, and if destroyed, the dates of any

destruction.  Such an undertaking would be far more burdensome than the steps taken to preserve

---

[5] *Boumediene v. Bush* made explicit that its decision "[did] not hold" that the habeas proceedings for enemy combatant determinations must duplicate typical statutory proceedings under § 2241 in all respects.  *See* 128 S. Ct. 2229, 2267, 2274 (2008); *Abdullah,* Civ. No. 05-0023 (dkt. no. 115, filed July 25, 2008, at 5-6).  To the contrary, it is only the core, constitutionally-required elements of habeas that remain after Congress's repeal of *statutory* habeas for Guantanamo detainees.  *See id.* at 2278 (Souter, J., concurring) ("Subsequent legislation eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all.").  Moreover, *Boumediene* did not disturb the Military Commission Act's provision, 28 U.S.C. § 2241(e)(2), withholding jurisdiction over challenges to "any aspect" of the detention, transfer, treatment, trial, or conditions of confinement of an alien detained as an enemy combatant.  *See In re Guantanamo Bay Habeas Litigation*, Civ. Nos. 05-1509, 05-1602, 05-1704, 08-1310 (RMU), 2008 WL 3155155 (interpreting *Boumediene* to invalidate only 28 U.S.C. § 2241(e)(1)).

relevant information.[6]  Furthermore, as respondents have previously pointed out to the Court,

inquiries of the type required by petitioner's requested relief raise the prospect of burdening or

interfering with the still ongoing criminal investigation into evidence destruction.  *See Abdullah*,

Civ. No. 05-0023 (dkt no. 85, filed Feb. 8, 2008).

Additionally, petitioner makes this request even while Judge Thomas J. Hogan – who

was appointed by a resolution of an executive session of this Court to coordinate and manage

proceedings in Guantanamo cases "so that these cases can be addressed as expeditiously as

possible as required by the Supreme Court in *Boumediene v. Bush . . . ,*" *see* July 1, 2008

Resolution of the Executive Session (D.D.C.) – is working on determining the appropriate

procedural framework for proceedings in this and many other Guantanamo detainee habeas cases

that have been transferred to him for coordination.

To grant petitioner's requested relief now would unduly burden respondents because it is

unclear at this juncture whether any discovery is even appropriate under the procedural

framework to be fashioned by Judge Hogan, and how any such discovery, if any, is to be

conducted.  Granting the requested order now outside of any streamlined procedural framework

– and ahead of the orderly processing of the some 200 pending Guantanamo detainee habeas

cases in this Court – would only divert limited and valuable government resources from the

Government's current overriding goal to speedily resolve the pending detainee habeas cases.

That in turn would unduly burden the Government in its ability to meet the expedited schedules

set by Judge Hogan as well as two other Judges of this Court for the production of factual returns

---

[6]  A far less significant undertaking with respect to another petitioner required a
significant commitment of resources.  *See Abdullah*, Civ. No. 05-0023 (dkt. no. 96, filed Apr. 16,
2008).

and the litigation of these cases.

## CONCLUSION

For the foregoing reasons, this Court should deny petitioner's Motion for Preservation

Order, Order Requiring Government Agencies to Identify Existing and Destroyed Documents

and Other Relief.

Dated:  September 4, 2008                    Respectfully submitted,

                                            GREGORY G. KATSAS
                                            Assistant Attorney General

                                            JOHN C. O'QUINN
                                            Deputy Assistant Attorney General

                                            _ /s/ *Jean Lin*_____
                                            JOSEPH H. HUNT
                                            VINCENT M. GARVEY
                                            JUDRY L. SUBAR
                                            TERRY M. HENRY
                                            ANDREW I. WARDEN
                                            JEAN LIN
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue N.W.
                                            Washington, DC  20530
                                            Tel:  (202) 514-3716
                                            Fax:  (202) 616-8470

                                            Attorneys for Respondent

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HANI SALEH RASHID ABDULLAH, *et al.,* | ) ) ) ) |  |
| Petitioners, | ) ) |  |
| v. | ) ) | Civil Action No. 05-00023 (RWR) |
| GEORGE W. BUSH, *et al.,* | ) ) |  |
| Respondents. | ) ) |  |

**RESPONDENTS' REPORT FILED IN CONNECTION
WITH ORDER OF JANUARY 24, 2008**

Respondents respectfully submit this Report focusing on the recent steps they have taken to ensure the preservation of material relating to all detainees detained by the Joint Task Force – Guantanamo("JTF– GTMO") at Guantanamo Bay, Cuba.

In the wake of the recent revelation of the destruction of certain tapes by the Central Intelligence Agency ("CIA"), both the Department of Defense ("DOD") and the CIA have taken new and additional steps to ensure that material relating to all Guantanamo Bay detainees is being preserved.  The Court is respectfully directed to the attached declarations of General Michael Hayden, Director of the Central Intelligence Agency ("CIA"), Rear Admiral Mark Buzby, Commander of JTF– GTMO, and Karen Hecker, a DOD attorney responsible for overseeing litigation in which DOD is involved.  Those declarations describe such steps, as well as additional information regarding a preservation issue.

In particular, General Hayden's declaration describes the directive he issued on December 20, 2007, to all CIA personnel, which requires them to preserve and maintain all documents, information, and evidence relating to any detainee ever held at Guantanamo Bay and

any detainee held by the CIA, including any detainees who may be held in the future.  As the directive makes clear, it "is a continuing obligation that applies to future as well as past and present detainees."  Hayden Declaration, ¶ 4.[1]

    Ms. Hecker's declaration describes a directive that the DOD Office of General Counsel disseminated within the Department of Defense on December 19, 2007, and that obligates "all relevant DoD components reasonably likely to have information regarding current or former Guantanamo Bay detainees"  "to preserve and maintain all documents and recorded information of any kind (for example, electronic records, written records, telephone records, correspondence, computer records, e-mail, storage devices, handwritten or typed notes) that is or comes within their possession or control."  *Id*., ¶¶ 2, 3.  Under standard DOD practice, each component receiving the directive was to ensure that all relevant personnel were made aware of it.  *Id*., ¶ 3. In addition to the formal communication of the directive of December 19, 2007, Ms. Hecker personally communicated to a large number of DOD contacts with whom she regularly works on Guantanamo Bay matters that the formal directive would be arriving through regular channels and that they should disseminate it as appropriate.  *Id*., ¶ 4.

    Real Admiral Buzby's declaration, in addition to describing his efforts to assure continued preservation of material in accordance with DOD's December 19, 2007, directive, describes aspects of security monitoring systems that were used at several of the detention camps

---

[1]  Even though the CIA is not a named respondent in this matter, and would not be a proper respondent in any event, *see Rumsfeld v. Padilla*, 542 U.S. 426, 436 n.9, 447 n.16 (2004) (discussing identity of proper respondent in habeas cases under rule limiting proper respondent to custodian and citing cases involving extraterritorial detention, where although rule is somewhat more relaxed proper respondent is head of military department holding detainee), the CIA's efforts to preserve material are described here because it was the CIA's actions on which the Court focused in issuing its January 24, 2008, order.

2

operated by JTF – GTMO.  As described in Real Admiral Buzby's declaration, those systems

recorded information on a routine basis of largely mundane day-to-day activities.  Some of that

information was overwritten automatically by virtue of the routine operation of the equipment.

In light of the possibility that some of that information might have related to petitioners in this

and other cases, respondents are providing the description in Real Admiral Buzby's declaration

of those systems and the recent steps taken concerning them.  In particular, Real Admiral Buzby

describes the steps taken to preserve all available information on the recording systems he

discusses.

Certain material in the Buzby declaration, specifically paragraph 9, has been and is

hereby designated as protected information and redacted from the attached declaration for public

filing in accordance with the Protective Order permitting such designation that has been entered

in this case.  An unredacted version of the declaration will be provided to the Court and to

counsel in accordance with the Protective Order.

Contemporaneously with this Report, respondents are filing a motion for reconsideration

or, in the alternative, for a stay of this Court's order of January 24, 2007, insofar as it requires a

report on any other matters not set forth in this Report and its accompanying declarations.  That

motion explains why any further report threatens to undermine and compromise the criminal

investigation being conducted by specially-appointed Acting United States Attorney John

Durham of the Department of Justice.[2]

---

[2]  Respondents intend to provide the information contained in this Report in the various other
habeas cases brought in this Court on behalf of Guantanamo Bay detainees as soon as a filing in
that large number of cases can reasonably be effected.  (The protected information in the Buzby
declaration will not, of course, be provided in those cases in which orders governing the filing of
protected information are not in effect.)

Dated: February 8, 2008           Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   _/s/  Andrew I. Warden_
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW WARDEN
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107

Attorneys for Respondents

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAJID KHAN and RUBIA KHAN,    )
   as next friend,          )
                             )
       Petitioners,         )
                             )
      v.                 )   No. 07-1324
                             )
ROBERT M. GATES,         )
   Secretary of Defense,    )
                             )
       Respondent.         )
_____)

## DECLARATION OF GENERAL MICHAEL V. HAYDEN, USAF, DIRECTOR, CENTRAL INTELLIGENCE AGENCY

I, MICHAEL V. HAYDEN, hereby declare and state:

1.  I am the Director of the Central Intelligence Agency (CIA) and have served in this capacity since 30 May 2006.  In my capacity as Director, I lead the CIA and manage the Intelligence Community's human intelligence and open source collection programs on behalf of the Director of National Intelligence (DNI).  I have held a number of positions in the Intelligence Community, including Principal Deputy Director of National Intelligence, from April 2005 to May 2006; Director, National Security Agency/Chief, Central Security Service (NSA/CSS), Fort George G. Meade, Maryland, from March 1999 to April 2005; Commander of the Air Intelligence Agency and Director of the Joint Command and Control Warfare Center, both headquartered at

Kelly Air Force Base, Texas, from January 1996 to September 1997; and Director, Intelligence Directorate, U.S. European Command, Stuttgart, Germany, from May 1993 to October 1995.

2.  I am a four-star general in the United States Air Force and have held senior staff positions at the Pentagon, the National Security Council, and the U.S. Embassy in Sofia, Bulgaria, as well as serving as Deputy Chief of Staff for United Nations Command and U.S. Forces Korea.  I entered active duty in 1969 as a distinguished graduate of the Reserve Officer Training Corps program.

3.  I make the following statements based upon my personal knowledge and information provided to me in my official capacity.

4.  In light of recent events surrounding the destruction of recordings of the interrogations of detainees formerly in the custody of the CIA, I have issued an order to all CIA personnel to preserve and maintain all documents, information, and evidence relating to:

A.  any detainee held at the United States Naval Base Guantanamo Bay, Cuba; and

B.  any detainee held by the CIA.

This order is a continuing obligation that applies to future as well as past and present detainees.

*   *   *   *

2

I hereby declare under penalty of perjury that the
foregoing is true and correct.

Executed this 20th day of December, 2007.

General Michael V. Hayden, USAF
Director
Central Intelligence Agency

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                          |     |                                  |
|------------------------------------------|-----|----------------------------------|
| HAN SALEH RASHID ABDULLAH, *et al.*,     | )   |                                  |
|                                          | )   |                                  |
| Petitioners,                             | )   |                                  |
|                                          | )   |                                  |
| v.                                       | )   | Civil Action No. 05-00023 (RWR)  |
|                                          | )   |                                  |
| GEORGE W. BUSH, *et al.*,                | )   |                                  |
|                                          | )   |                                  |
| Respondents.                             | )   |                                  |

Pursuant to 28 U.S.C. §1746, I, Karen L. Hecker, declare as follows:

1. I am an Associate Deputy General Counsel in the Office of General Counsel of the United States Department of Defense (DoD). In that capacity, I am responsible for, among other things, overseeing litigation involving the DoD. The statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties. This declaration is provided in order to describe DoD's current efforts to preserve information about Guantanamo Bay detainees.

2. In light of the recently publicized destruction of certain video tapes once held by the Central Intelligence Agency, the DoD Office of General Counsel issued a formal directive on December 19, 2007, to various DoD components regarding their preservation obligations. The memorandum directed that these components preserve and maintain all information related to all detainees ever held by DoD at Guantanamo Bay. Specifically, the components were directed to preserve and maintain all documents and recorded information of any kind (for example, electronic records, written records, telephone records, correspondence, computer records, e-mail, storage devices, handwritten or typed notes) that is or comes within their possession or control. This memorandum remains in effect and must continue to be followed.

3. The December 19, 2007 directive was sent to all relevant DoD components reasonably likely to have information regarding current or former Guantanamo Bay detainees. The list of components consisted of the offices of the Secretary of Defense, Deputy Secretary of Defense, Secretaries of the Military Departments, the Chairman of the Joint Chiefs of Staff, Undersecretaries of the Military Departments, Director – Operational Test and Evaluation, DoD Inspector General, Assistants to the Secretary of Defense, Director – Administration and Management, Director – Program Analysis and Evaluation, Director – Net Assessment, Director – Force Transformation, Directors of the Defense Agencies, and Directors of the DoD Field Activities. The directive was communicated through formal DoD communications channels and, pursuant to standard DoD practice, these components would be expected to distribute the directive to all relevant personnel within that component and any sub-components therein.

4. In addition to formal distribution of the December 19, 2007 directive, I personally communicated the directive to a large number of contacts that I work with on Guantanamo Bay detainee issues. Those contacts included attorneys and other personnel at the DoD Office of Detainee Affairs, the Staff Judge Advocate Office at Guantanamo Bay and United States Southern Command (SOUTHCOM), Central Command (CENTCOM), Joint Staff, the Office of the Administrative Review of the Detention of Enemy Combatants (OARDEC), the Offices of the General Counsel for the Army, Navy, and Air Force, as well as the Judge Advocate Generals for the Army, Navy, and Air Force and other attorneys within DoD Office of General Counsel. I requested that the contacts communicate the directive to all appropriate people within their offices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: **8 Feb 08**                                    **Karen L. Hecker**
                                                        KAREN L. HECKER

- 2 -

APPROVED FOR PUBLIC FILING

PROTECTED INFORMATION REDACTED

## DECLARATION OF REAR ADMIRAL MARK H. BUZBY

I, Mark H. Buzby, am a Rear Admiral in the United States Navy with 28 years of active duty service. I currently serve as the Commander of Joint Task Force – Guantanamo (JTF-GTMO), at Guantanamo Bay, Cuba (Guantanamo). I have held this position since May 22, 2007. As such, I am directly responsible for the successful execution of the JTF-GTMO mission to conduct detention and interrogation operations and exploit intelligence in support of the Global War on Terror, coordinate and implement detainee screening operations, and support law enforcement and war crimes investigations. In my capacity as Commander, I oversee all personnel assigned to, and all operations of, JTF-GTMO. The information provided herein is true and correct to the best of my knowledge, information, and belief.

1. On 19 December 2007, the Office of DoD General Counsel reiterated DoD guidance to preserve all information relating to detainees. After receipt of that reiterated guidance, I directed that this command confirm 100% compliance. As a result of actions undertaken in connection with my direction, I have learned the information contained herein with regard to digital recording systems that exist at the detention facilities operated by JTF-GTMO.

2. The detainees at JTF-GTMO are housed in various detention camps. Activities taking place in Camps 4, 6, Echo, and Iguana have been recorded 24 hours per day, seven days per week (hereafter referred to as "full-time") by means of digital video recording (DVR) systems that are part of the video monitoring systems that guards use to ensure good order and discipline within the camps. In January 2008, it was brought to my attention that such DVR systems may have been automatically overwriting video data

1

contained on recording devices, at predetermined intervals. That is, only a specified

number of days' worth of recorded data could be retained on the recording devices at a

time. The specified interval varies from system to system, as discussed below. Thus, a

DVR device on any given day would retain only data from the specified interval. On

each day, therefore, images from dates older than the applicable interval were

automatically overwritten. After an initial review determined that old data was being

overwritten automatically, on January 16, 2008, I ordered that all recording on such

systems be suspended to ensure that no data currently stored thereon was lost. The

interval at which recorded data was overwritten was determined by the technological

storage capacity of each recording device and was not deliberately or purposely set by

JTF-GTMO. JTF-GTMO has not yet identified technology currently available for use at

JTF-GTMO that would allow for the preservation of all data recorded on a full-time

basis.

3. In the camp known as Camp 4, a DVR system was utilized to record the day-

to-day activities of detainees and staff within the camp. The system was part of the

video-only monitoring system that was used by the guard staff to oversee activities in the

camp for the purpose of ensuring good order and discipline within the camp. On or about

May 18, 2006, the DVR system then in use was disabled to assist with the investigation

of a disturbance in Camp 4. This particular DVR system was not then again placed into

service in the camp. JTF-GTMO has possession of the original DVR system, consisting

of four separate recording devices, which was installed in Camp 4. We suspect that the

recording devices contain recorded data but we are unable technologically to confirm

whether data remains on the recording devices. JTF-GTMO will continue to preserve the

recording devices and any data thereon. Following the events of May 18, 2006, a more

limited DVR system was installed in Camp 4 to monitor and record data pertaining to

Yankee Block in Camp 4, the only block housing detainees following the disturbance of

May 18, 2006. JTF-GTMO is in possession of the DVR system, consisting of one

recording device, used for this purpose, but we are unable technologically to confirm

whether data remains on the recording device. JTF-GTMO will continue to preserve the

recording device and any data thereon.

4. On or about February 1, 2007, JTF-GTMO installed a new DVR system in

Camp 4. This system, like the previous system, recorded video images observed by

video-only cameras that were displayed on video monitoring screens in a central control

booth. Like the original systems, the images that were recorded with this system

consisted of video images of each housing bay and common areas of the camp. The

DVR system operated on a full-time basis. Much of the information recorded showed

routine or mundane day-to-day activities, such as guards patrolling camp areas, as well as

detainees eating, praying, or recreating. As with the original systems, the video

monitoring was done for security purposes and guard staff monitored the screens upon

which the video images were shown. Recorded data was not routinely examined. As

noted above, the technical capacities of the DVR system's recording devices were such

that at certain intervals there was automatic overwriting of previously recorded data.

Camp 4 used four such recording devices. Now that those systems have been suspended

per my January 16, 2008 order, the information preserved on the four devices consists of

data from the periods December 29, 2007 through January 16, 2008; January 5, 2008

through January 16, 2008; December 29, 2007 through January 16, 2008; and December

3

30, 2007 through January 16, 2008. As noted above, the system was disabled on January 16, 2008, to preserve data that was stored thereon.

5. In the camp known as Camp 6, a video-only DVR system (such as that used in Camp 4) was in use from on or about December 7, 2006, the date of the Camp's opening, until January 16, 2008. The system was part of the video-only monitoring system that was used by the guard staff to oversee activities in the camp for the purpose of ensuring good order and discipline within the camp. The Camp 6 DVR system covered common areas within the camp, but not cells. Camp 6 used four recording devices in its DVR system that automatically overwrote data in the same way, and under the same conditions that data was overwritten in Camp 4. Now that those systems have been suspended per my January 16, 2008 order, the information preserved on the four devices consists of data from the periods December 1, 2007 through January 16, 2008; December 3, 2008 through January 16, 2008; December 4, 2007 through January 16, 2008; and December 21, 2007 through January 16, 2008. As noted above, the system was disabled on January 16, 2008, to preserve data that was stored thereon.

6. In the camp known as Camp Echo, a DVR system (such as was used in Camps 4 and 6) was utilized to record the day-to-day activities of detainees in the cells within the camp. The system was part of the video-only monitoring system that was used by the guard staff to oversee activities in the camp for the purpose of ensuring good order and discipline within the camp. A DVR system that was installed on an unknown date prior to April 12, 2006, operated until on or about October 1, 2006. That system consisted of two DVRs. JTF-GTMO is in possession of the DVR system used until October 1, 2006. JTF-GTMO is unable technologically to confirm whether data is stored on the devices

4

that were part of that old system. The old system was replaced by a new DVR system similar to the systems used in Camp 4 and Camp 6. The new DVR system monitored and recorded, full-time, the inside of detainees' cells and the back gate, but not common areas. As noted above, this new DVR system was disabled on January 16, 2008, to preserve data that was stored thereon. The information preserved on the new DVR system consists of data from the periods December 20, 2007, through January 16, 2008; and November 24, 2007, through January 16, 2008.

7. In the camp known as Camp Iguana, a DVR system (such as was used in Camps 4, 6, and Echo) was utilized to record the day-to-day activities of detainees within the camp. The system was part of the video-only monitoring system that was used by the guard staff to oversee activities in the camp for the purpose of ensuring good order and discipline within the camp. This system was replaced on or about October 12, 2007 by a new DVR system. JTF-GTMO is in possession of the old recording device that was replaced, but is unable technologically to confirm whether data is stored thereon. From October 12, 2007, until January 16, 2008, the new DVR system operated in the camp on a full-time basis when detainees were present in the camp. JTF-GTMO has not housed detainees permanently in this camp since the detainees classified as being "No Longer Enemy Combatants" were transferred from Guantanamo in November 2006. Since these detainees were transferred, Camp Iguana has been used primarily to facilitate habeas counsel visits with their detainee clients. As permitted by the Protective Orders applicable in these cases, JTF-GTMO conducted video monitoring of such meetings to ensure the safety and security of counsel and detainees. Video images of such meetings, therefore, would have been automatically recorded in the same manner as other video

images observed by the system.  This system also has a standard overwrite function at a specified interval, but any recordings from December 26, 2007 through January 16, 2008, the date it was disabled, have been preserved.  Recorded data of counsel-detainee meetings was not examined.  As noted above, the system was disabled on January 16, 2008, to preserve data that was stored thereon.

8.  Following my order on January 16, 2008 suspending operation of the automatic DVR systems, and at the present time, JTF-GTMO has installed an "on-demand" recording capability in Camps 4, 6, Echo, and Iguana, that is separate from the recording devices that were used prior to January 16, 2008.  During this period of suspension, the guard staff has been directed to video record, on an "on-demand" basis, all significant events in Camp 4, 6, Echo, and Iguana, including: forced cell extractions; medical emergencies; incidents of suspected/alleged guard misconduct; incidents of possible self harm or injuries to detainees; significant damage to government property; mass disturbances by detainees; and any other similar events.  The on-demand recording now used contains data that continues to be preserved and the guard staff has been directed to preserve any such recordings.  Although the on-demand recording system is connected to the video monitoring system in each camp, it is not connected to the DVR system recording devices that contain previously preserved data, and can in no way jeopardize the data that is currently preserved on those devices.

9.

6



10. This declaration is not intended to provide a complete catalogue of all video and/or audio recordings made of detainees held at JTF-GTMO, although I am informed, and believe, that it is a complete discussion of those JTF-GTMO video and/or audio monitoring systems that included a standard recording feature as to which recorded data was automatically overwritten at specified intervals.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 8 FEB 08

MARK H. BUZBY
Rear Admiral, United States Navy
Commander, Joint Task Force –
Guantanamo

7