**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ZAYN HUSAYN,                              ) | |
|                                                     ) | |
|           Petitioner,                      ) | |
|                                                     ) | |
|           v.                                     ) | Civil Action No. 08-1360 (RWR) |
|                                                     ) | |
| ROBERT GATES,                          ) | |
|                                                     ) | |
|           Respondent.                    ) | |
| _____) | |

## MEMORANDUM OPINION AND ORDER

Guantánamo Bay detainee Zayn Husayn, also known as Abu
Zubaydah, has petitioned for habeas corpus relief.  He moves for
reconsideration of the September 22, 2008 Memorandum Opinion
("September Opinion") that denied his motion for disclosure of
his medical records and related relief, arguing that the Opinion
erroneously treated his motion as one seeking relief from his
conditions of confinement which the court lacks jurisdiction to
grant.  Because petitioner's motion for disclosure in part
legitimately sought important information in furtherance of
Zubaydah's right to pursue habeas relief, his motion to
reconsider will be granted in part and denied in part.

### BACKGROUND

Zubaydah has been a detainee at the United States Naval Base
in Guantánamo Bay, Cuba ("Guantánamo") since September of 2006.
He complains that he has suffered from over 120 seizures since
then, and that they are currently frequent and severe.  According

-2-

to him, they consist of excruciating pain in his head near the
site of an old mortar injury that left him unable to think
clearly or speak for an extended period.  The seizures, he
reports, occasionally make him dizzy, induce vomiting, or cause
him to faint, after which he is unable to move, speak, or respond
to instructions.  He says that medications prescribed for him by
Guantánamo physicians have rendered him incoherent, interfered
with his ability to write and speak, and made him acutely
psychotic.  When guards revived him, he claims, he lashed out at
them believing they were communists coming to attack him.  He
complained of suffering at his Combatant Status Review Tribunal
hearing ("CSRT") the ill-effects of the seizures which had
occurred as recently as the day before.

Zubaydah's counsel asked the respondent to disclose un-
redacted copies of Zubaydah's medical records since his arrival
at Guantánamo in September 2006, as well as un-redacted copies of
all guard and staff reports, logs, and notes regarding Zubaydah's
seizures and seizure-related episodes at Guantánamo.  Counsel
also sought permission to meet with Zubaydah's treating
physicians to discuss Zubaydah's condition, and for permission to
provide Zubaydah's medical records to an independent physician of
counsel's choosing.  The government refused.  (Pet'r's Emergency
Mot. for Immediate Disclosure of Pet'r's Medical Records
("Pet'r's Emergency Mot.") at 1-7.)  Zubaydah then moved for an

-3-

order compelling the disclosures and permissions.  He based his
request on the court's power to "assure the integrity of the
hearing" and his counsel's need to assess "whether and to what
extent Petitioner's medical condition threatens to undermine his
right to habeas," as well as the court's "inherent power and duty
to take those steps that are necessary and proper to ensure the
welfare of the parties."  (Pet'r's Emergency Mot. at 7-9.)  The
respondent opposed the motion on jurisdictional grounds, arguing
that granting Zubaydah's request would "intrude into" and
"challenge . . . petitioner's conditions of confinement," which
was specifically precluded from judicial review by Section 7 of
the Military Commissions Act of 2006 ("MCA"), codified at
28 U.S.C. § 2241(e)(2).[1]  (Resp't's Opp'n to Pet'r's Emergency
Mot. at 1.)[2]

---

[1] The MCA provides in part:
[N]o court, justice, or judge shall have jurisdiction
to hear or consider any other action against the United
States or its agents relating to any aspect of the
detention, transfer, treatment, trial, or conditions of
confinement of an alien who is or was detained by the
United States and has been determined by the United
States to have been properly detained as an enemy
combatant or is awaiting such determination.
28 U.S.C. § 2241(e)(2).

[2] Respondent alternatively argued that the motion should be
denied for Zubaydah's failure to meet the burden of showing a
need for injunctive relief.  Zubaydah's motion was not styled as
a motion for a preliminary injunction, and it did not seek relief
on the merits or the foreclosure of some element of relief for
the respondent.  (Pet'r's Reply to Resp't's Opp'n to Pet'r's
Emergency Mot. for Immediate Disclosure of Pet'r's Medical
Records at 1-2.)  Had Zubaydah been seeking an order, say,

-4-

The September Opinion denied Zubaydah's motion.  It
concluded that Section 7 of the MCA deprived courts of
jurisdiction to grant requests, such as Zubaydah's, for access to
medical records, "as granting the relief would involve this Court
in Petitioner's medical treatment at Guantánamo Bay and the
decisions of officials at Guantánamo Bay relating to that medical
treatment."  Husayn v. Gates (In re Guantánamo Bay Detainee
Litigation), No. 08-cv-1360 (TFH), 2008 WL 4294305, at *2 (D.D.C.
September 22, 2008).  Zubaydah seeks reconsideration of the
September Opinion, arguing that it erred in viewing the motion
solely as a forbidden challenge to Zubaydah's detention,
treatment, or conditions of confinement at Guantánamo Bay.

## DISCUSSION

Under Rule 54(b) of the Federal Rules of Civil Procedure,
"any order or other decision, however designated, that
adjudicates fewer than all the claims or the rights and
liabilities of fewer than all the parties does not end the action
as to any of the claims or parties and may be revised at any time

---

altering the medical treatment he is receiving, or directing
particular medical specialists to be flown in to attend to him,
or transferring him to another medical facility, or halting his
transfer from Guantánamo, respondent's argument might have been
relevant.  Zubaydah, however, sought no such things, and
respondent recited standards applicable to remedies his motion
did not seek.  "An order by a federal court that relates only to
the conduct or progress of litigation before that court
ordinarily is not considered an injunction."  Gulfstream
Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279 (1988).

-5-

before the entry of a judgment adjudicating all the claims and
all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).
Under Rule 54(b), a trial court may grant reconsideration "as
justice requires." Campbell v. U.S. Dep't of Justice, 231 F.
Supp. 2d 1, 7 (D.D.C. 2002). However, in order to promote
finality, predictability and economy of judicial resources, "as a
rule [a] court should be loathe to [revisit its own prior
decisions] in the absence of extraordinary circumstances such as
where the initial decision was clearly erroneous and would work a
manifest injustice." Lederman v. United States, 539 F. Supp.
2d 1, 2 (D.D.C. 2008) (quoting Christianson v. Colt Indus.
Operating Corp., 486 U.S. 800, 817 (1988)). Reconsideration may
be warranted where there was a patent misunderstanding of the
parties, where a decision was made that exceeded the issues
presented, where a court failed to consider controlling law, or
where a significant change in the law occurred after the decision
was rendered. Singh v. George Washington Univ., 383 F. Supp. 2d
99, 101 (D.D.C. 2005). The moving party has the burden of
showing that reconsideration is warranted, and that some harm or
injustice would result if reconsideration were to be denied. In
Def. of Animals v. Nat'l Institute of Health, 543 F. Supp. 2d 70,
76 (D.D.C. 2008).

Detainees at Guantánamo Bay may seek the writ of habeas
corpus, Boumediene v. Bush, 128 S. Ct. 2229, 2240 (2008), and

-6-

have the right to be represented by counsel.  Hamdi v. Rumsfeld,
542 U.S. 507, 539 (2005).  "There is no higher duty of a court,
under our constitutional system, than a careful processing and
adjudication of petitions for writs of habeas corpus."  Omar v.
Harvey, 514 F. Supp. 2d 74, 78 (D.D.C. 2007) (quoting Harris v.
Nelson, 394 U.S. 286, 292 (1969)).  The Supreme Court has stated
that "where specific allegations before the court show reason to
believe that the petitioner may, if the facts are fully
developed, be able to demonstrate that he is . . . entitled to
relief, it is the duty of the court to provide the necessary
facilities and procedures for an adequate inquiry."  Harris,
394 U.S. at 292.  "[I]n order to properly represent [habeas]
Petitioners, their counsel must have access to them, must be able
to communicate with them, and must be made aware if their clients
are in such fragile physical condition that their future ability
to communicate is in imminent danger."  Al-Joudi v. Bush,
406 F. Supp. 2d 13, 21-22 (D.D.C. 2005).  "Unless Petitioners'
counsel can have access to their clients, and know their true
medical conditions, . . . it is obvious that their ability to
present their claims to the Court will be irreparably
compromised."  Id. at 22.  Zubaydah's counsel asserted that
access to Zubaydah's medical information is necessary to make
strategic determinations that are essential to legal
representation, such as whether petitioner has the mental

-7-

capacity necessary to assist in preparing and presenting his defense.  (See Pet'r's Mot. for Recons. at 6.)  Zubaydah's counsel sought access to Zubaydah's medical records "in order to assess whether and to what extent Petitioner's medical condition" affects his right to habeas, and to determine whether to challenge the legitimacy of Husayn's CSRT hearing in March 2007. (See Pet'r's Emergency Mot. at 7-9; Pet'r's Mot. for Recons. at 2-4.)

If Zubaydah's right to present his case with the assistance of counsel is to have any meaning, his counsel must be able to make the very assessments he seeks to make.  Requesting copies of Zubaydah's medical records and staff records regarding Zubaydah's seizure-related episodes and being able to secure independent expert assessments of the data in the records is a legitimate and important effort to provide effective representation and present the court with appropriate information affecting the lawfulness of his detention.[3]  It is not an action "to involve this Court in

_____

[3] Respondent's conjecture that petitioner's real purpose is to second-guess his medical care and impermissibly challenge his conditions of confinement (Resp't's Opp'n to Pet'r's Mot. for Recons. at 4) cannot foreclose these legitimate efforts. Notably, respondent has presented no facts to rebut most of Zubaydah's specific allegations regarding his compromised physical and mental condition.  Indeed, a Guantánamo physician reportedly corroborated that Zubaydah has suffered psychological episodes and events.  (Resp't's Opp'n to Pet'r's Emergency Mot. for Immediate Disclosure of Pet'r's Medical Records Ex. 1, Decl. of Andrew I. Warden at ¶¶ 4-6.)  That is all the more reason that Zubaydah's counsel and an independent expert should have as full access to records of Zubaydah's Guantánamo medical history as due

-8-

Petitioner's medical treatment at Guantánamo Bay and the decisions of officials at Guantánamo Bay relating to that medical treatment[,]" September Opinion at 3, which would be barred by the MCA.

Respondent cites Al-Ghizzawi v. Bush, No. 05-cv-2378 (JDB), 2008 WL 948337, at *1-7 (D.D.C. April 8, 2008), and Al Odah v. United States, 406 F. Supp. 2d 37, 44 (D.D.C. 2005), to support the claim that a petitioner's motion for access to medical records inherently relates to the detention, treatment, or conditions of confinement of a detainee.  However, in both of those cases the petitioners sought medical records to challenge and intervene in the conditions of their confinement.  The petitioner in Al Odah complained of improper medical care that caused him to suffer what he called potentially lethal symptoms, and thus sought an injunction requiring production of medical records incident to requested judicial oversight of his medical treatment.  Al Odah, 406 F. Supp. 2d at 39.  The petitioner in Al-Ghizzawi initially sought a transfer to a Swiss clinic and an order requiring the government to perform specific medical tests. He then sought not merely his medical records, but an order "requiring the government to provide him with emergency medical treatment," which would have injected the court in overseeing the decision-making of Guantánamo officials regarding that

_____

regard for national security interests will allow.

-9-

petitioner's medical treatment.  <u>Al-Ghizzawi</u>, 2008 WL at \*4-5.
Zubaydah's motion sought no such relief.[4]

Thus, Zubaydah's request is for the most part appropriate
and not prohibited by the MCA, and the respondent will be ordered
to provide access to the records Zubaydah seeks.

<u>CONCLUSION AND ORDER</u>

Because the petitioner shows that justice requires
reconsidering the September Opinion, it is hereby

ORDERED that Zubaydah's motion for reconsideration of the
September Opinion be, and hereby is, GRANTED in part and DENIED
in part.  The request for permission to meet with Zubaydah's
treating physicians is denied.  The request that the respondent
provide Zubaydah's counsel with copies of petitioner's medical

---

[4] Respondent's only response to the real relief Zubaydah
seeks is to say that addressing the request for records would
place an enormous burden on the Guantánamo medical staff.
(Resp't's Opp'n to Pet'r's Emergency Mot. for Immediate
Disclosure of Pet'r's Medical Records at 22; Resp't's Opp'n to
Pet'r's Mot. for Recons. at 7.)  This conclusory assertion is
wholly unsubstantiated and must yield in the face of an
unrebutted and partially corroborated showing of a potential
mental and physical incapacity that could affect Zubaydah's
ability to help prepare and present his case, and thus affect the
integrity of the habeas proceeding.  Respondent also suggests
that rather than seek the records he has requested now,
Zubaydah's counsel would be better served by waiting until after
the government files a factual return and responding to any
evidence of Zubaydah's inability to assist in his defense by
seeking a next friend to act on Zubaydah's behalf.  (Resp't's
Opp'n to Pet'r's Mot. for Recons. at 7.)  That is a judgment
entrusted to Zubaydah's counsel, not to the respondent.  The one
aspect of relief sought that is of an order beyond merely
producing records -- requiring Zubaydah's treating physicians to
speak with his counsel -- will be denied.

-10-

records since his arrival at Guantánamo in September 2006, all copies of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes at Guantánamo will be granted in part.  The respondent shall file by December 23, 2008, a memorandum and proposed order addressing whether he will propose to make any redactions from the records to be produced and on what basis; how soon production can be achieved and what the basis for the projection is; and any other proposed procedures to be followed under the Protective Order and incorporated into a subsequent order consistent with this opinion.  Zubaydah shall have until January 9, 2009 to respond. The request for permission for Zubaydah's counsel to show Zubaydah's medical records to and consult with an independent physician will be granted.

SIGNED this 28th day of November, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge