UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN,<br><br>Petitioner<br><br>vs.<br><br>ROBERT GATES,<br><br>Respondent | Civil Action No. 08-cv-1360 (RWR) |

### RESPONDENT'S OPPOSITION TO PETITIONER'S EMERGENCY MOTION TO PRODUCE CIA MEDICAL RECORDS AND ALLOW IN-PERSON MEDICAL EVALUATION

#### PRELIMINARY STATEMENT

Petitioner's counsel have unnecessarily filed an "emergency motion" seeking immediate production of Government records and other relief that they claim is related to petitioner's ability to communicate with his counsel and prosecute his case. Petitioner's motion is not founded in any "emergency," real or alleged. The only possible purpose of this designation is to circumvent the discovery framework agreed upon by the parties and adopted by this Court in a Scheduling Order just three weeks ago, on May 22, 2009. There is simply no reason to expedite consideration of this motion. The purported rationale for petitioner's motion—that the production of medical records and the conduct of an independent medical examination by petitioner's consulting expert are immediately needed to facilitate communication between petitioner and his counsel—rings hollow. Indeed, petitioner's counsel recently completed a four-day counsel visit with their client and have no visits scheduled with petitioner in the immediate future. The Court should deny petitioner's emergency motion because it presents no true

emergency.

Moreover, the evidence supporting the motion fails to comport with the purported reason for the motion. The affidavit of petitioner's expert, Dr. Allen S. Keller, makes clear that his principal aim is to obtain evidence of torture, applying a standard protocol designed to assist the collection of evidence of torture for use in legal proceedings. Dr. Keller does not state that he has any intent, qualifications, or ability to assist petitioner's counsel in determining whether petitioner's account of his history prior to his capture is accurate or consists of false or fabricated memories. Dr. Keller does not claim to have expertise in psychiatry, nor does he state that he intends to attempt a psychiatric evaluation of petitioner. And notably, at no point does Dr. Keller suggest that it is certain or even likely that the requested records and access will enable him to provide petitioner's counsel with the means to divine the truth from petitioner's accounts of his history.

Petitioner's motion should therefore be denied. This Court has previously held in this case that it lacks jurisdiction over claims related to petitioner's treatment and conditions of confinement, including requests for access to medical treatment by providers of petitioner's own choosing. Details of the petitioner's treatment and conditions of confinement while in U.S. custody are not relevant to the question at the center of this habeas corpus proceeding—which is whether petitioner's detention is proper under the September 2001 Authorization for Use of Military Force—because the Government's factual return justifying its detention of the petitioner does not rely on any statements the petitioner has made while in U.S. custody.

Finally, if the Court were inclined to grant this motion, respondents ask for additional time to respond. Petitioner's request is extraordinarily burdensome and far out of proportion to the speculative benefits hinted at in petitioner's motion. However, because of the truncated time

to respond, respondent has been unable to properly detail this burden. Accordingly, as petitioner has improperly designated this motion as an emergency motion, and as he will suffer no prejudice to his representation, the Government requests a reasonable time to properly respond to this motion if the Court is not inclined to deny it.

## BACKGROUND

This is not the first time petitioner's counsel have brought a discovery motion on an emergency basis. On August 19, 2008, Petitioner filed an Emergency Motion for Immediate Disclosure of Petitioner's Medical Records and for Related Relief (dkt. nos. 16, 26), seeking an order compelling the Government (1) to produce copies of petitioner's medical records and other records regarding seizures and related episodes since petitioner's arrival at Guantanamo in September 2006, (2) to permit petitioner's counsel to interview petitioner's treating physicians, and (3) to permit petitioner's counsel to share medical information with an outside physician. On September 22, 2008, the Court denied that motion, holding that under § 7(a)(2) of the Military Commissions Act of 2006, 28 U.S.C. § 2241(e)(2), the Court lacks jurisdiction to consider petitioner's claims pertaining to his treatment or conditions of confinement. In re Guantanamo Bay Detainee Litig., 577 F. Supp. 2d 314, 316 (D.D.C. 2008) (Hogan, J.).

Petitioner then moved for reconsideration. On November 28, 2008, the Court granted the motion in part and denied the motion in part. Husayn v. Gates, 558 F. Supp. 2d 7, 12 (D.D.C. 2008) (Roberts, J.). The Court reaffirmed its earlier holding that requests for relief related to petitioner's treatment or conditions of confinement, including any action "to involve this Court in Petitioner's medical treatment at Guantánamo Bay and the decisions of officials at Guantánamo Bay relating to that medical treatment," lay outside the limits of this Court's jurisdiction. Id. at 11; cf. id. at 9 n.2 (contrasting petitioner's motion with a hypothetical motion

seeking to compel access to the petitioner by specific medical specialists). Accordingly, the Court denied petitioner's request to compel interviews with petitioner's treating physicians. Id. at 12. However, the Court held that the Court's constitutional habeas corpus jurisdiction does entail limited authority to grant relief necessary to effectuate a petitioner's right to habeas corpus review. See id. at 10–11. The Court found that permitting limited access to petitioner's medical records by petitioner's counsel and an independent consultant was appropriate to assist petitioner's counsel in understanding petitioner's medical condition to the extent that his condition affected his ability to participate in the prosecution of his habeas petition. See id. at 11. Accordingly, the Court ordered respondent to provide petitioner's counsel with copies of petitioner's medical records since his arrival at Guantanamo in September 2006 and copies of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes at Guantanamo. Id. at 12.

Respondent complied with the Court's order. As explained in the Government's Response to the Court's March 4, 2009, Order (dkt. no. 114), respondent served all of the material required to be produced under the Court's order on petitioner's counsel on January 12, 2009, except for one fragment of material that respondent initially redacted but later served on petitioner's counsel on March 4, 2009.

Two months later, on May 18, 2009, the parties filed a Joint Status Report and Proposed Scheduling Order (dkt. no. 161) setting forth an agreed framework for further proceedings in this action. The Court adopted the parties' proposal as its Scheduling Order on May 22, 2009 (dkt. no. 167). The most prominent feature of the Scheduling Order is a provision specifying that "[a]ny and all remaining disclosure or discovery disputes" will be resolved not through wasteful piecemeal litigation, but instead according to a consolidated briefing schedule starting on

September 11, 2009. The Scheduling Order provides allowance for previously unexpected discovery needs by specifying that either party may file a motion for modification of or departure from the agreed consolidated framework. Scheduling Order at 2.

In violation of the Scheduling Order, petitioner filed the present motion on June 9, 2009, seeking to compel production of additional medical records. Petitioner's request not only seeks medical records and similar documents but more broadly seeks any Government-created documents that pertain to petitioner's medical, psychological, or psychiatric condition while he was in the custody of the CIA. The request further seeks an order compelling the Government to permit an in-person examination of petitioner by petitioner's consulting expert, Dr. Allen Keller. On the same day the motion was filed, the Court issued a minute order directing respondent to file its response to petitioner's motion by 4 p.m. on June 12, 2009.

## ARGUMENT

**I.    There Is No Basis for Petitioner's Filing of an Emergency Motion**

Less than four weeks ago, the parties agreed on a joint proposal for a scheduling order to permit fair, orderly, and expeditious resolution of this case. See Joint Status Report and Proposed Scheduling Order (dkt. no. 161) (May 18, 2008). The Court adopted the parties' proposal without modification as a Scheduling Order (dkt. no. 167) on May 22, 2009. The Scheduling Order set deadlines for the filing of the unclassified version of the Government's factual return and for various disclosures required by the Case Management Order (dkt. nos. 48, 62), with the Government's final disclosures due July 17. The Scheduling Order also established a framework for the orderly resolution of disclosure and discovery disputes, specifying that "[a]ny and all" such disputes "shall be resolved through consolidated proceedings" beginning on September 11, 2009. On that date, petitioner is to file a consolidated motion comprising any challenges to the

5

adequacy of respondent's disclosures under the Case Management Order and any requests by the petitioner for limited discovery as contemplated by section I.E.2 of the Case Management Order.[1] If the Government discloses additional information based on a ruling on petitioner's consolidated motion, the Scheduling Order authorizes a second motion for limited discovery based on the newly disclosed information. The Scheduling Order accounts for previously unforeseeable discovery needs—and, conversely, prevents either party from unilaterally subverting the Scheduling Order—by explicitly providing for modification of or departure from the agreed discovery framework on a properly supported motion. The Scheduling Order stays the deadlines for petitioner's filing of his traverse (which is ordinarily required shortly after the completion of the Government's disclosures, see Case Management Order § I.G) and briefs for judgment on the record pending the final resolution of disclosure and discovery disputes.

On May 28, 2009, counsel for petitioner informed counsel for respondent that they were considering filing a motion seeking medical records from the time petitioner was in CIA custody. Counsel for respondent noted that the Scheduling Order, which had been entered just six days earlier, required that all discovery requests proceed through the framework established by the order. Counsel for petitioner did not again raise the possibility of a motion seeking medical records until the morning of June 9, 2009, when counsel for petitioner informed counsel for

---

[1]The Case Management Order permits limited discovery if a petitioner can make the necessary showing. The Case Management Order recognizes that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see Case Management Order § I.E.2 (citing id.). The Case Management Order requires that discovery requests "(1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful; and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government." Case Management Order § I.E.2 (citations omitted).

respondent by email that they intended to file the present motion the same day and sought respondent's position on the motion. Counsel for petitioner did not indicate at any time that they intended to designate the present motion as an emergency motion. Counsel for respondent advised counsel for petitioner that respondent opposed litigation of petitioner's motion outside the framework established by the Scheduling Order and also opposed the requested relief. Petitioner then filed the present motion.

Petitioner provides no justification for filing an emergency motion. Petitioner claims that various recent events made its emergency motion necessary, but all of these events occurred weeks or months ago, and all occurred before the parties negotiated and jointly proposed the framework reflected in the Court's Scheduling Order: With one small exception, the medical and other records reviewed by the petitioner's consulting expert had all been served on his attorneys by January 12, 2009. The declassified Office of Legal Counsel memoranda disclosing interrogation techniques were released on April 16, 2009. See Counsel Aff. ¶ 3 (citing release of OLC memoranda as the reason for an emergency motion); Statement of President Barack Obama on Release of OLC Memos (Apr. 16, 2009), http://www.whitehouse.gov/the_press_office/Statement-of-President-Barack-Obama-on-Release-of-OLC-Memos/. The counsel visit described in petitioner's counsel's affidavit occurred May 5, 2009, and May 6, 2009. See Pet'r's Mem. of Law at 2 n.1 (citing conversations with petitioner as the reason for an emergency motion); Counsel Aff. ¶ 1. Nor is there any impending future event that required the filing of an emergency motion instead of a regular motion briefed according to the ordinary rules of motion practice in this district, see D.D.C. L. Civ. R. 7(b), (d). Petitioner's counsel have not scheduled or even requested the scheduling of any future visits with their client. See infra at 12 n.2 (describing procedures for scheduling counsel visits). Thus, the circumstances do not present any

case for justifying departure from the Scheduling Order at all, let alone relief on an emergency basis. For this reason alone, petitioner's motion should be denied.

II.     **Petitioner's Motion Requests Relief to Obtain Evidence to Support Claims Related to Petitioner's Past Treatment and Conditions of Confinement, Not Relief Falling Within this Court's Habeas Corpus Jurisdiction.**

   A.    **The Affidavit of Petitioner's Retained Expert Indicates That the Purpose of His Intended Review of Records and Examination of Petitioner Is to Identify Evidence Supporting Claims of Torture.**

While the Court granted petitioner's earlier motion for reconsideration based on a finding that the relief requested by the motion was sufficiently related to petitioner's ability to prosecute his habeas claim, petitioner's present motion does not relate to his ability to prosecute his habeas claim and instead seeks relief to obtain evidence related to petitioner's treatment and conditions of confinement, which this Court has already held falls outside this Court's habeas corpus jurisdiction.

Petitioner's counsel state in an affidavit that the ultimate goal underlying their request for relief is to assist petitioner's counsel in discerning which of petitioner's memories, as recounted to petitioner's counsel, are true and accurate and which, if any, are false or invented memories. See Pet'r's Emergency Mot. Ex. B (Aff. of Counsel) ¶¶ 4–8. But this stated purpose is at odds with the affidavit submitted by petitioner's retained consulting expert, Dr. Allen S. Keller, which indicates that Dr. Keller's expertise, the examination he intends to conduct, and the methodology he intends to employ are related to petitioner's desire to bring legal claims based on allegations of torture. See Pet'r's Emergency Mot. Ex. A (Aff. of Allen S. Keller, M.D.). Dr. Keller's affidavit at no point suggests that the requested documents and examination are likely to assist either Dr. Keller or petitioner's counsel in evaluating or reconstructing petitioner's memories of events preceding petitioner's capture.

Dr. Keller describes himself as a physician trained in internal medicine. He is not a psychiatrist. In his affidavit, he states that he is experienced in treating torture victims, but he does not claim any specialized training or credentials in psychiatry, neurology, or related fields. See Keller Aff. ¶¶ 3–8. Dr. Keller's affidavit suggests that the purpose of his intended analysis of records and in-person examination is not to assist counsel in reconstructing petitioner's memory but to determine whether petitioner's account regarding his treatment while in U.S. custody or his attorneys' surmises about petitioner's treatment can be substantiated. See, e.g., Keller Aff. ¶ 28 (referring to "assessing . . . allegations" of "torture and mistreatment while in U.S. custody"). Dr. Keller does not propose to perform a psychiatric evaluation of petitioner, nor does he claim that he is qualified to perform such an evaluation. See Keller Aff. ¶ 30 (contemplating the possibility of a psychiatric evaluation that would be "separate" from the evaluation Dr. Keller proposes to perform). Dr. Keller's affidavit repeatedly maintains that even after reviewing the large volume of medical records already disclosed to petitioner's counsel, Dr. Keller still has not been able to draw any conclusions that will be of any assistance to petitioner's attorneys in gleaning the truth from petitioner's statements. See, e.g., Keller Aff. ¶¶ 14–15. But the more telling feature of the affidavit is what it does not say—the affidavit never makes any suggestion that it is likely that access to the additional requested records and in-person examination will produce any insights that will lead to any improvement in petitioner's counsel's ability to work with their client, or even that there is a significant possibility that Dr. Keller's review will lead to such an improvement. Indeed, the closest the affidavit comes is to suggest that the requested relief could "potentially" produce information bearing on petitioner's present medical condition, e.g., Keller Aff. ¶ 37, with no explanation of how this might potentially or actually help petitioner advance his habeas corpus case.

9

The methodology Dr. Keller proposes to apply in his examination sheds further light on the nature of petitioner's motion. Dr. Keller's affidavit states that his opinion about the need for a wider range of records and an in-person medical evaluation is supported by a set of widely accepted guidelines known as the "Istanbul Protocol," U.N. Office of the U.N. High Commissioner for Human Rights, Manual on the Effective Investigation and Documentation of Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Istanbul Protocol), U.N. Doc. H/R/P/PT/8/Rev.1 (Aug. 9, 1999), available at http://www.ohchr.org/Documents/ Publications/training8Rev1en.pdf; see Keller Aff. ¶¶ 9–10, see also Pet'r's Mem. of Law at 12–13. The principal purpose of the Istanbul Protocol is to provide guidelines for documenting torture and obtaining evidence for advancing torture claims in legal proceedings. This purpose is spelled out explicitly on the first page of the Introduction to the Istanbul Protocol:

> This manual was developed to enable States to address one of the most fundamental concerns in protecting individuals from torture—effective documentation. Such documentation brings evidence of torture and ill-treatment to light so that perpetrators may be held accountable for their actions and the interests of justice may be served.

Istanbul Protocol at 1.  Dr. Keller's affidavit similarly describes the purpose of the Istanbul Protocol as related to the goal of advancing and substantiating torture-related claims. See, e.g., Keller Aff. ¶ 9 (describing the Istanbul Protocol as "first set of international guidelines for documentation of torture and its consequences" (emphasis added), including "assessment of persons who allege torture and ill treatment, for investigating cases of alleged torture, and for reporting such findings to the judiciary and any other investigative body"). While the Istanbul Protocol states that its guidelines may be adaptable to other contexts, see id., the Istanbul Protocol guidelines do not purport to offer any value in assisting efforts to evaluate a patient's recall of subjects unrelated to trauma that he has suffered. So even assuming that the kind of

examinations recommended by the Istanbul Protocol could be helpful in assessing petitioner's claims insofar as they relate to allegations of torture or other trauma, there is no reason to believe they could provide any assistance to petitioner's counsel in interviewing petitioner regarding the Government's asserted basis for the detention of petitioner—that is, his participation in terrorist activities prior to his capture. See Case Management Order § I.E.2 (providing that any request for limited discovery in this case must "explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful" and "explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention"). Any discovery into claims or allegations of torture is irrelevant in this case, because the Government's factual return in support of detention does not rely on any statements the petitioner made while in U.S. custody. See Factual Return (Apr. 3, 2009) at 7 n.2.

### B. The Broad Relief Petitioner Requests Is Not Tailored to Any Interest in Removing Obstacles to Petitioner's Prosecution of His Habeas Corpus Case.

The nature of petitioner's motion is also revealed by the sheer breadth of petitioner's request for documents. Petitioner's motion does not confine itself to medical records, or even to documents analogous to medical records. Rather, petitioner's motion seeks production of any and all Government documents regarding petitioner's "medical, psychological, or psychiatric condition," Pet'r's Emergency Mot. at 1, in whatever form, regardless of whether they were created by medical professionals or were created in the course of medical treatment. This request for additional material is not closely tailored to petitioner's counsel's stated purpose of evaluating and reconstructing petitioner's memories of relevant events, especially given that respondent has already produced hundreds of pages of more recent medical records and other records pursuant to the Court's November 28, 2008, order. See Case Management Order § I.E.2 (requiring that requests for limited discovery "be narrowly tailored, not open-ended"); cf. Al-

11

Joudi v. Bush, 406 F. Supp. 2d 13, 22–23 (D.D.C. 2005) (taking into consideration that the relief to be granted was "narrowly drawn" and would cause only "minimal clerical burdens to the Government"); see also infra section IV (discussing the disproportionate burden that the requested relief would impose on the Government).

> **C. Petitioner's Emergency Motion Was Not Filed to Facilitate Communications Between Petitioner and His Counsel in Any Impending Visit to Guantanamo.**

Finally, the timing of petitioner's motion is further indication that the requested relief is an attempt to obtain discovery and is unrelated to the concerns described in petitioner's counsel's affidavit. On Sunday, June 8, two of petitioner's attorneys began a regularly scheduled and authorized visit with their client at Guantanamo. Shortly after 9 a.m. on Monday, June 9, a third attorney who did not go to Guantanamo advised respondent's counsel of the present motion. Petitioner's attorneys spent four days at Guantanamo and concluded their visit on Wednesday, June 11. As of the date of this filing, counsel for petitioner do not have any further visits scheduled with their client, nor have they even requested the scheduling of any future visit.[2] Petitioner's emergency request for relief thus is not connected to any impending meeting between petitioner and his counsel.

**III.    To the Extent that Petitioner's Motion Seeks to Interfere with Petitioner's Medical Treatment, Petitioner's Motion Falls Outside the Court's Jurisdiction and Fails to Make a Sufficient Showing for Issuance of Injunctive Relief.**

---

[2]The TS/SCI Protective Order in effect in this case requires petitioner's counsel to schedule counsel visits to detainees by submitting requests through the Department of Justice. See Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information ("TS/SCI Protective Order") § II.E.12.a (dkt. nos. 77, 78). Once a visit has been scheduled, counsel must then provide the Department of Defense with their flight information and security clearance information, ordinarily at least 20 days in advance of the visit. TS/SCI Protective Order § II.E.12.d.

To the extent that petitioner's motion seeks to compel an in-person medical visit by Dr. Keller for the purpose of treating petitioner, rather than for the purpose of gathering evidence to support allegations of torture, such relief is unnecessary, because Guantanamo detainees already receive appropriate medical care. Such relief furthermore would be inappropriate, because the Court lacks jurisdiction to issue injunctive relief interfering with petitioner's medical treatment, and, in any event, petitioner's motion fails to make a showing sufficient to support such injunctive relief. Petitioner already receives appropriate medical care at Guantanamo Bay; indeed, petitioner's present motion makes no direct allegations of inadequate medical care,[3] and petitioner's attorneys also have not recently communicated any concerns to respondent about the adequacy of petitioner's medical care.

Nor is there any basis for a claim of inadequate medical care. The Government provides unconditional, appropriate, comprehensive medical care to all detainees at Guantanamo, regardless of their disciplinary status or cooperation. Information about the care provided to detainees at Guantanamo has previously been provided in sworn declarations in other habeas corpus cases. See, e.g., Resp't's Opp'n to Pet'r's Emergency Mot. for Independent Psychiatric and Medical Evaluation and Production of Medical Records, Al-Oshan v. Obama, No. 05-cv-520 (RMU), Ex. 1 (Decl. of Capt. Bruce C. Meneley, M.D.) ¶¶ 1–7 (dkt. no. 255) (declaration describing medical treatment provided to detainees at Guantanamo Bay).

Moreover, the standards of medical care provided to petitioner at Guantanamo Bay are

---

[3]Petitioner's counsel have reviewed hundreds of pages of medical and other records with the assistance of their chosen physician, and have visited their client at Guantanamo twice in the past two months, and the only hint in Petitioner's Emergency Motion of any complaint regarding the quality of petitioner's current medical care is a remark questioning why the medical records produced by respondent do not contain mention of prior mistreatment of petitioner while in U.S. custody. See Pet'r's Mem. of Law at 11 n.13; Keller Aff. ¶ 36.

beyond the jurisdiction of the Court. In its September 22, 2008, order in this case, this Court held that based on the Military Commissions Act of 2006, it lacks jurisdiction to consider requests for relief that "would involve this Court in Petitioner's medical treatment at Guantanamo Bay and the decisions of officials at Guantanamo Bay relating to that medical treatment." In re Guantanamo Bay Detainee Litig., 577 F. Supp. 2d 314, 316 (D.D.C. 2008) (Hogan, J.). The Court reaffirmed that holding in its November 28, 2008, order on petitioner's motion for reconsideration. Husayn v. Gates, 558 F. Supp. 2d 7, 11 (D.D.C. 2008) (Roberts, J.) ("[A]n action 'to involve this Court in Petitioner's medical treatment at Guantánamo Bay and the decisions of officials at Guantánamo Bay relating to that medical treatment[]' . . . would be barred by the MCA." (quoting id.)); see also Kiyemba v. Obama, 516 F.3d 509, 512–13 (D.C. Cir. 2009) (explaining that although courts may hear requests by Guantanamo detainees for relief falling within the scope of habeas corpus, including relief barring transfer to other places of incarceration, the MCA withdraws courts' jurisdiction to consider "other actions" not falling within the scope of habeas corpus).[4]

    Even if this Court were to overlook its lack of jurisdiction, petitioner's motion fails to establish any of the four factors required to justify issuance of preliminary injunctive relief. See Husayn v. Gates, 588 F. Supp. 2d 7, 9 n.2 (D.D.C. 2008) (Roberts, J.) (suggesting that a motion by petitioner seeking "an order . . . altering the medical treatment he is receiving, or directing

---

[4]Even leaving aside the effect of the MCA, courts have long held that injunctive relief relating to conditions of confinement generally falls outside the scope of habeas corpus jurisdiction. See, e.g., Blair-Bey v. Quick, 151 F.3d 1036, 1041–42 (D.C. Cir. 1998) (stating that habeas corpus might be available to challenge prison conditions in some circumstances, but "pure prison-conditions cases" are "easy to identify" as cases that do not sound in habeas corpus); Miller v. Overholser, 206 F.2d 415, 419 (D.C. Cir. 1953) (explaining that habeas corpus is an appropriate vehicle for challenging the validity of confinement but not for challenging "discipline or treatment in a place of legal confinement").

particular medical specialists to be flown in to attend to him" would be considered a motion for injunctive relief). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 128 S. Ct. 2207, 2219 (2008) (citation omitted) (internal quotation marks omitted). For a party to prevail on a motion for preliminary relief, he must demonstrate: (1) a substantial likelihood of success on the merits; (2) that he would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). As discussed above, this Court lacks jurisdiction to consider claims relating to petitioner's treatment or conditions of confinement, so petitioner has no likelihood of success on the merits of any such claim. See Munaf, 128 S. Ct. at 2219 (explaining that doubts about jurisdiction make success unlikely due to potential impediments to even reaching the merits). Petitioner has not demonstrated any imminent irreparable injury, as petitioner has not even alleged, let alone made any showing, that his present medical care is deficient. As for the third and fourth factors, a grant of an injunction would work serious harm to the Government and the public interest by interfering in the administration of a military detention facility without cause. Consequently, petitioner fails to make an adequate showing justifying issuance of preliminary injunctive relief that would interfere with his medical treatment.

**IV.    The Documents Requested in Petitioner's Motion Would Be Extremely Burdensome to Produce.**

The Government hereby incorporates by reference the Classified Supplement to Respondent's Opposition to Petitioner's Emergency Motion to Produce CIA Medical Records and Allow In-Person Medical Evaluation (June 12, 2009), which explains that the documents requested by petitioner's motion would be extremely burdensome to produce. See Case

15

Management Order § I.E.2 (providing that any request for limited discovery in this case must "explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention <u>without unfairly disrupting or unduly burdening the government</u>" (emphasis added) and citing the plurality's direction in <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507 (2004), that "enemy combatant proceedings may be tailored to alleviate their uncommon potential to burden the Executive at a time of ongoing military conflict," <u>id.</u> at 533 (plurality opinion)). If the Court is not inclined to deny petitioner's motion, the Government requests a reasonable opportunity to present evidence demonstrating the the extremely burdensome nature of petitioner's request.

## **CONCLUSION**

Petitioner has failed to justify the designation of this motion as an emergency motion. The Scheduling Order entered by this Court just three weeks ago provided petitioner with an adequate vehicle to seek the discovery that he now seeks. Petitioner's failure to adhere to the terms of the order that he earlier negotiated and agreed on provides sufficient reason by itself to deny this motion. Moreover, for the reasons stated above, petitioner's motion does not seek evidence to assist petitioner's communications with his counsel, but rather seeks evidence to substantiate claims of torture. Torture claims are irrelevant in this case, because the United States has not relied on any statements petitioner made while in U.S. custody to support the lawfulness of petitioner's detention under the Authorization for Use of Military Force. Accordingly, petitioner's motion should be denied.

Date: June 12, 2009                                         Respectfully submitted,

                                                                   TONY WEST
                                                                   Assistant Attorney General

                                                                   JOSEPH H. HUNT
                                                                   Director

TERRY M. HENRY
Assistant Branch Director

/s/ JAMES C. LUH
ANDREW I. WARDEN
PAUL E. AHERN
RONALD J. WILTSIE (D.C. Bar No. 431562)
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Respondent