SECRET/NOFORN

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ZAYN HUSAYN, | ) |
| Petitioner, | ) |
|  | ) |
| v. | )     Civil Action No. 08-1360 (RWR) |
|  | ) |
| ROBERT GATES, | ) |
| Respondent. | ) |

# ISN 682 Transcript of Office of Military Commission Hearing
# (April 27, 2006)

# RECORD OF TRIAL

## COVER SHEET

### IN THE
### MILITARY COMMISSION
### CASE OF

# UNITED STATES
# V.

## GHASSAN ABDULLAH AL SHARBI

### ALSO KNOWN AS:

## ABDULLAH AL MUSLIM
## ABU MUSLIM

## NO. 050005

## VOLUME _III__ OF _IV__ TOTAL VOLUMES

1ST VOLUME OF TRANSCRIPT: R. 1-58
APRIL 27, 2006 SESSION
(REDACTED VERSION)

### _United States v. Ghassan Abdullah al Sharbi,_ No. 050005

### INDEX OF VOLUMES

A more detailed index for each volume is included at the front of the particular volume concerned. An electronic copy of the redacted version of this record of trial is available at http://www.defenselink.mil/news/commissions.html.

Some volumes have not been numbered on the covers. The numerical order for the volumes of the record of trial, as listed below, as well as the total number of volumes will change as litigation progresses and additional documents are added.

After trial is completed, the Presiding Officer will authenticate the final session transcript and exhibits, and the Appointing Authority will certify the records as administratively complete. The volumes of the record of trial will receive their final numbering just prior to the Appointing Authority's administrative certification.

Transcript and Review Exhibits are part of the record of trial, and are considered during appellate review. Volumes I-VI, however, are allied papers and as such are _not_ part of the record of trial. Allied papers provide references, and show the administrative and historical processing of a case. Allied papers are not usually considered during appellate review. _See generally United States v. Gonzalez,_ 60 M.J. 572, 574-575 (Army Ct. Crim. App. 2004) and _United States v. Castleman,_ 10 M.J. 750, 751 (AFCMR 1981) and cases cited therein discussing when allied papers may be considered during the military justice appellate process, which is governed by 10 U.S.C. § 866). For more information about allied papers in the military justice process, see Clerk of Military Commission administrative materials in Volume III.

| VOLUME NUMBER | SUBSTANCE OF CONTENTS |
| --- | --- |

ALLIED PAPERS Not part of "record of trial"

I[1]   Military Commission Primary References (Congressional Authorizations for Use of Force; Detainee Treatment Act; UCMJ articles; President's Military Order; Military Commission Orders; DoD Directive; Military Commission Instructions; Appointing Authority Regulations; Presiding Officer Memoranda—includes DoD rescinded publications)

II[1]   Supreme Court Decisions: _Rasul v. Bush,_ 542 U.S. 466 (2004); _Johnson v. Eisentrager,_ 339 U.S. 763 (1950); _In re Yamashita,_ 327 U.S. 1 (1946); _Ex Parte Quirin,_ 317 U.S. 1 (1942); _Ex Parte Milligan,_ 71 U.S. 2 (1866)

---

[1] Interim volume numbers. Final numbers to be added when trial is completed.

## _United States v. Ghassan Abdullah al Sharbi_, No. 050005

### INDEX OF VOLUMES

| VOLUME NUMBER | SUBSTANCE OF CONTENTS |
|---|---|
| III[2] | DoD Decisions on Commissions including Appointing Authority orders and decisions, Chief Clerk of Commissions documents |
| IV[2] | Federal Litigation in _Hamdan v. Rumsfeld_, at U.S. Supreme Court and D.C. Circuit |
| V[2] | Federal Litigation at U.S. District Courts Not Filed by Counsel in _United States v. Sharbi_ |
| VI[2] | Selected filings and U.S. District Court decisions in _United States v. Sharbi_ |

### Record of Trial

| | |
|---|---|
| VII[2] | Transcript (R. 1-58) (April 27, 2006 session) |
| VIII[2] | Review Exhibits 1-32 (April 27, 2006 session) |

---

[2] Interim volume numbers. Final numbers to be added when trial is completed.

# Index of Transcript

## United States v. Ghassan Abdullah al Sharbi

SESSIONS:

27 April 2006

| DESCRIPTION | PAGE # |
|---|---|
| List of persons present at hearing | 1 |
| Presiding Officer explains that the Accused has a right to be present at all open sessions, but can be excluded if he is disruptive | 1 |
| Appointing Orders and amended Appointing orders (REs 5 and 30) presented to the Commission | 2 |
| Approval of Charges and Charges (REs 2, 3 and 4) in English and Arabic presented to the Commission | 3 |
| Detailed personnel were present and sworn | 3-4 |
| The Accused speaks and understands English and does not require a Translator. He has spoken English more than 15 years. The Presiding Officer states a translator is not required. | 4-5 |
| The Prosecutor describes the qualifications of the Prosecution team, and the Chief Prosecutor's detailing letter is presented to the Commission (RE 6) | 5-6 |
| President's Reason To Believe (RTB) determination is presented to the Commission (RE 1) | 6 |
| The Detailed Defense Counsel describes his qualifications and the Chief Defense Counsel's detailing letter is presented to the Commission | 6-7 |
| The Presiding Officer explains to the Accused that he has the option of wearing non-confinement type clothing at his hearing. The Accused states he prefers to wear the orange clothing that he has been wearing the last four years. | 7-8 |
| The Presiding Officer explained the Accused's rights to counsel | 9-10 |

## Index of Transcript (Continued)

### United States v. Ghassan Abdullah al Sharbi

The Accused responds that he understands his rights, has no
questions, but does not want any counsel and wants to represent
himself.                                                                    10-11

The Accused has a bachelor's degree from Embry Riddle Aeronautical
University. He has not studied law, and has not represented
himself in a criminal proceeding. He has read the President's
Military Order. But he has not read Military Commission Order
No. 1, Military Commission Instructions, Appointing Authority
Regulations, or Presiding Officer Memoranda. The Accused
said that although the Presiding Officer believed these documents
controlled the proceedings, the Accused said, "what I say controls
it." (R. 14).                                                               11-14

The Accused said that he was "proud of what I did." (R. 15) The
Accused wanted to say what he did (R. 16). The Accused urged his
Detailed Military Counsel to refuse to participate in the
Proceedings (R. 18-19). The Accused said, "I came here to tell
you that I did what I did and I'm willing to pay the price no
matter how much you sentence me even if I spend hundreds of
years in jail. In fact, it's going to be an honor..." (R. 20).             15-22

The Presiding Officer described ways that Detailed Defense Counsel
could assist the Accused, and the risks of not using counsel
(R. 19-26). The Accused maintained that he did not desire
counsel, and wanted to represent himself (R. 27).                          15-27

After a recess and talking to his Defense Counsel, the Accused stated
that he did not want counsel, and wanted to represent himself.             28-30

The Accused stated he was unfamiliar with Commission rules. The
Accused stated, "I just am going to say what I did and you guys
make your decision." (R. 32).                                              29-32

The Presiding Officer found that the Accused was a fluent English
speaker who understands "fairly complex speech." The Accused
has a Bachelor's Degree from Embry Riddle University. The
Accused was however unfamiliar with Commission rules and
procedures, and was not qualified to represent himself. The
Presiding Officer said he may supplement these findings before

## Index of Transcript (Continued)

### United States v. Ghassan Abdullah al Sharbi

the final transcript of the proceedings is completed.   32-33

The Presiding Officer directed Lieutenant Kuebler to represent
the Accused (R. 34).

The Presiding Officer's biography was presented to the Commission
and the Presiding Officer's written offer to provide additional
biographical information (REs 13 and 22).   34

The Prosecution had no voir dire questions for the Presiding Officer   35

Detailed Defense Counsel presented a memorandum from an attorney in
California, Mr. Steele, where Lieutenant (LT) Kuebler is licensed,
indicating it was unethical for LT Kuebler to represent the Accused
against the wishes of the Accused (R. 36). LT Kuebler said he sent a
request to the Navy Judge Advocate General two days ago seeking
guidance on the ethics of representing an Accused against their
wishes.   36-39

Detailed Defense Counsel argued that the Accused should be able
to represent himself, and asked for time to brief the issue.   39-42

Detailed Defense Counsel described his difficulty meeting with the
Accused, and his attempts to overcome the Accused's objections
to representation by counsel.   44-47

The Presiding Officer discussed scheduling (R. 53). The Presiding
Officer stated that the motion about representation, voir dire,
reading of charges and pleas would be discussed at the May
session.   53-54

The Presiding Officer discussed protective orders (REs 14 - 16).   54-55

Current Presiding Officer Memoranda are listed at (RE 31).   55

The current Filings Inventory is (RE 32).   56

The hearing recessed on April 27, 2006.   57

Authentication page for hearing pages 1-58.   58

1   *The Commissions Hearing was called to order at 0901, 27*

2   *April 2006.*

3

4   *[Throughout this transcript, Captain Daniel O'Toole, U.S.*

5   *Navy, will be referred to as the Presiding Officer or PO.*

6   *Captain* ▮▮▮▮▮▮▮▮ *U.S. Air Force, will be referred to*

7   *as the Prosecutor or PROS. Lieutenant* ▮▮▮▮▮▮▮▮

8   *Jr., U.S. Navy Reserve, will be referred to as Assistant*

9   *Prosecutor or APROS. Lieutenant William Kuebler, U.S.*

10  *Navy, will be referred to as Defense Counsel or DC.]*

11

12  **PRESIDING OFFICER:**   The Military Commission is called to

13           order.

14

15           Mr. al Sharbi, you have the right to be present

16           at all open sessions of this Commission.  If you

17           are disruptive, you will give up the right to be

18           present.  There are certain choices you have a

19           right to make and if you are disruptive and I

20           have you removed from this hearing room, you will

21           not be present to make those decisions.  If you

22           are removed, you will not be present to

1

1   participate in your own defense during the open sessions.

2           Do you understand this?

3

4   **ACC:**    I understand what you are saying.

5

6   **Presiding Officer:**  Thank you.  Would the prosecutor state

7           the jurisdictional basis for this Military

8           Commission?

9

10  **APROS:**   Yes, sir.  This Military Commission is appointed

11          by Appointing Order Number 05-0006, dated 12

12          December 2005, as amended by Appointing Order

13          Number 06-0004, dated 1 February 2006 and

14          Appointing Order Number 06-0010, dated 27 March

15          2006, copies of which have been furnished to the

16          presiding officer and to the defense.

17

18          Appointing Order 05-0008 has been marked as

19          Review Exhibit 5, and Appointing Orders 06-0006

20          and 06-0010 have been marked as part of Review

21          Exhibit 30 and attached to the record.

22

2

1    The Charges have been marked as Review Exhibit 2

2    and have been properly approved by the Appointing

3    Authority and referred to this Commission for

4    trial.

5

6    The approval of the charges and their referral to

7    this Commission have been marked as Review

8    Exhibits 3 and 4, respectively.  The prosecution

9    caused a copy of the charge in English and

10   Arabic, the accused's native language to be

11   served on the accused on 30 November '05.

12

13   The prosecution is ready to proceed in the

14   Commission trial of the United States versus

15   Ghassan al Sharbi.

16

17   The accused, the Presiding Officer, and all

18   detailed counsel are present.

19

20   A court reporter has been detailed reporter for

21   this Commission and has been previously sworn.

22

3

1          Security personnel have been detailed for this

2          Commission and have been previously sworn.

3

4   **Presiding Officer:** Thank you.  I have been designated as

5          the Presiding Officer of this Military Commission

6          by the Appointing Authority and I have previously

7          been sworn.

8

9          Before continuing with other preliminary matters,

10         I would like to inquire into the accused's need

11         for a interpreter/translator.  Mr. al Sharbi, are

12         you able to speak and understand English?

13

14  **ACC:**      Yes.

15

16  **Presiding Officer:**  Do you need the services of a

17         translator in order to----

18

19  **ACC:**      No.

20

21  **Presiding Officer:**  ----understand or follow these

22         proceedings?

23

4

1   ACC:        No.

2

3   Presiding Officer:   How long have you spoken English?

4

5   ACC:        Over 15 years.

6

7   Presiding Officer:   Very well, then I find there is no need

8                for a defense translator.  If at some time during

9                the proceedings, you find that you are having

10                difficulty following the proceedings, you are

11                invited to bring that to my attention and we will

12                provide a translator for you.  Do you understand?

13

14   ACC:        Absolutely.

15

16   Presiding Officer:   Thank you.  Would the prosecutor please

17                state by whom you have been detailed and your

18                qualifications?

19

20   APROS:      Sir, all members of the prosecution have been

21                detailed to this Military Commission by the Chief

22                Prosecutor.  All members of the prosecution are

23                qualified under Military Commission Order Number

5

1    1, paragraph 4 Bravo and we have been previously sworn.   No

2         member of the prosecution has acted in any

3         manner, which might tend to disqualify us in this

4         proceeding.   The detailing document has been

5         marked as Review Exhibit 6.

6

7         The prosecution also has sitting at the

8         prosecution table an assistant who will assist

9         the prosecution but will not be representing the

10        government.

11

12        At this point, sir, I would like to mention that

13        the Presidential Determination that that accused

14        may be subject to trial by Military Commission

15        has been marked as Review Exhibit 1 and has been

16        previously shown to the defense.

17

18   **Presiding Officer:**   Thank you.   Would the detailed defense

19        counsel please state by whom you have been

20        detailed and your legal qualifications.

21

22   **DC:**   Sir, I have been detailed to this Military

23        Commission by the Chief Defense Counsel.   I am

6

1    qualified under Military Commission Order Number 1,

2              paragraph 4.C.  I have previously been sworn.  I

3              have not acted in any manner, which might tend to

4              disqualify me in this proceeding.  My detailing

5              document has been previously marked as a Review

6              Exhibit.

7

8    **Presiding Officer:**  Thank you.  Before proceeding, Mr. al

9              Sharbi, I note that you are wearing the camp

10             clothing.  Pursuant to the rules of these

11             Commissions, which are referred to as, "Presiding

12             Officer Memoranda," it is required that you be

13             provided clothing of a suitable nature for these

14             proceedings so that once the Commission Panel

15             Members arrive, you are not in any way prejudiced

16             by your appearance.  Has attire been provided to

17             you, other than what you are wearing?

18

19   **ACC:**    Uh-huh, absolutely, more than once.

20

21   **Presiding Officer:**  Is it your free choice this morning not

22             to wear that other attire?

23

7

1   **ACC:**      Absolutely.

2

3   **Presiding Officer:**  So you wish to appear this morning as

4              you are?

5

6   **ACC:**      I have worn that suit for more than 4 years, in

7              fact, I miss my orange suit, and I just want to

8              wear the same suit that I have been wearing for

9              more than 4 years.

10

11  **Presiding Officer:**  Very well, but I want you to know that

12             you have a right to have that clothing, should

13             you choose to wear it, and you certainly are not

14             prejudiced in my view by your appearance this

15             morning, however, I will advise you that you may

16             wish to consider your appearance and discuss that

17             with your counsel prior to the beginning of the

18             trial on the merits before panel members.  Do you

19             understand?

20

21  **ACC:**      I understand, but I am not considering it, to be

22             honest with you.

23


8

1   **Presiding Officer:**  Very well, that is up to you.  Mr. al

2          Sharbi, pursuant to Military Commission Order

3          Number 1, Lieutenant Kuebler, who is a military

4          lawyer, has been assigned to represent you as

5          your detailed defense counsel.  Detailed defense

6          counsel are provided to you at no cost.  You may

7          request a different military lawyer to represent

8          you, if you like.  If the military lawyer is

9          reasonably available, then that lawyer would be

10         appointed to represent you, also free of charge.

11

12         In addition, you may be represented by qualified

13         civilian counsel, however, civilian counsel would

14         have to be qualified, he would represent you at

15         no cost to the United States.  A civilian lawyer

16         whom you wish to represent you must be a U.S.

17         citizen, must be admitted to the practice of law

18         in a state, district, territory, or possession of

19         the United States or a federal court; may not

20         have been sanctioned or disciplined for any

21         relevant misconduct; must be eligible for a

22         security clearance with a level of secret; must

23         agree in writing to comply with the orders,

9

1    rules, and regulations of these Military Commissions.

2

3           If a civilian lawyer represents you, your

4           detailed defense counsel will also continue to

5           represent you, and your detailed defense counsel

6           will be present during the presentation of all of

7           the evidence.

8

9           Do you understand all of your rights to counsel?

10

11   **ACC:**      I understand.

12

13   **Presiding Officer:**  Do you have any questions about your

14           rights to counsel?

15

16   **ACC:**      Nope.

17

18   **Presiding Officer:**  Do you wish to be represented by

19           Lieutenant Kuebler?

20

21   **ACC:**      No.

22

1  **Presiding Officer:**  Do you want to be represented by

2  another military counsel?

3

4  **ACC:**  No.

5

6  **Presiding Officer:**  Do you want to be represented by a

7  civilian counsel?

8

9  **ACC:**  No.

10

11  **Presiding Officer:**  By whom do you desire to be

12  represented?

13

14  **ACC:**  I would like to represent myself.

15

16  **Presiding Officer:**  Tell me what level of education you

17  have achieved?

18

19  **ACC:**  I have a bachelor's degree.

20

21  **Presiding Officer:**  And from what institution?

22

23  **ACC:**  Embry Riddle Aeronautical University.

11

1

2    **Presiding Officer:**   Have you ever studied law?

3

4    **ACC:**        No.

5

6    **Presiding Officer:**   Have you ever represented yourself or

7                anyone else in any one else in any criminal

8                proceeding?

9

10   **ACC:**        No.

11

12   **Presiding Officer:**   Are you familiar with the President's

13               Military Order of 13 November 2003?

14

15   **ACC:**        What are you referring to exactly?

16

17   **Presiding Officer:**   I am referring to the President's

18               Military Order that is dated 13 November 2003,

19               which establishes these Military Commissions.

20

21   **APROS:**      Sir, I believe that is dated 2001.

22

23   **Presiding Officer:**   I am sorry, 2001.

**12**

1

2  **ACC:**      Yeah, I have heard about that.

3

4  **Presiding Officer:**  Have you read it?

5

6  **ACC:**      I read it.

7

8  **Presiding Officer:**  Are you familiar with the Military

9              Commission Order Number 1?

10

11  **ACC:**      Which is?

12

13  **Presiding Officer:**  Well it is Military Commission Order

14              Number 1.

15

16  **ACC:**      I don't know what you are referring to.

17

18  **Presiding Officer:**  Are you familiar with the Military

19              Commission Instructions?

20

21  **ACC:**      No.

22

13

1 · **Presiding Officer:**  Are you familiar with the Appointing

2        Authority Regulations?

3

4 **ACC:**     No.

5

6 **Presiding Officer:**  Are you familiar with the Presiding

7        Officer's Memoranda?

8

9 **ACC:**     No.

10

11 **Presiding Officer:**  Do you realize that all of these

12       documents, the President's Military Order,

13       Military Commission Order Number 1, the Military

14       Commission Instructions, the Appointing Authority

15       Regulations, and the Presiding Officer Memorandum

16       will control the progress and the procedures in

17       this case?

18

19 **ACC:**     Well that's in your perspective.  I believe that

20       what I say controls it, and I'm going to make

21       this easy and short for you guys.  I'm not going-

22       -I'm saying it.  I fought against the United

23       States, I took arms.  I'm going to make it short

14

1    so you don't have to worry about other things, and whether

2              it's Mr. Kuebler or someone else, I mean, I told

3              him that last time we met.  To me it's the same

4              circus, different clown.

5

6    Presiding Officer:  Do you understand that as these

7              proceedings go forward that the evidence that's

8              going to be introduced against you and evidence

9              that you might wish to present would be regulated

10             by the rules that I've just referred to?

11

12   ACC:      Again, that's in your perspective.

13

14   Presiding Officer:  Are you willing to abide by these

15             rules?

16

17   ACC:      I'm not going to be violent or cause troubles or

18             cause commotions.  That's what I'm telling you.

19             I'm not going to interrupt you.  As I said, I'm

20             going to make it short and easy for you guys.

21             I'm going to say what I did without--without

22             denying anything.  I'm proud of what I did and

23             there isn't any reason of fighting what I did.

15

1

2   **Presiding Officer:**  Well, I appreciate your courtesy and

3   your cooperation to the extent that you're

4   cooperating, but I want to be sure that you

5   understand what all your rights are so that you

6   may take full advantage of the rights in

7   defending yourself and one of those that you've

8   requested is to represent yourself.  In order to

9   represent yourself, I need to be sure that you

10   will abide by the rules that govern the conduct

11   of these proceedings.  And that includes more

12   than simply being pleasant and being present.

13   They would include the methods by which evidence

14   is introduced.

15

16   **ACC:**  And, again, that's your job.  To be honest with

17   you, I have nothing to add more than I'm going to

18   say what I did.

19

20   **Presiding Officer:**  Do you understand that you would be

21   better off with a trained lawyer who would be

22   familiar with the law and the rules that are

23   applicable to these Military Commission?

16

1

2   **ACC:**      Not--not with the fact I see him wearing that

3              military suit.  I cannot trust him to be honest

4              with you.  I told him that, and he pointed at the

5              rank and said, "I'm wearing that suit.  I have to

6              follow orders."  Himself he told me last time and

7              the only reason I met him because General Hood

8              asked me to meet him--that gentlemen.  He says

9              people think that we are coercing you mentally

10             and physically, so just meet him once and tell

11             him that I don't want you at the minimum.  So I

12             met him, I told him, "I don't want to deal with

13             you whether it's you or someone else."  So and

14             he--basically he said that the whole process is

15             illegitimate and he says he doesn't believe in it

16             and so on.  I told him if you believe that it's

17             illegitimate I would have respect if you say okay

18             I'm not participating in the whole process.  It

19             doesn't make sense when you say it's illegitimate

20             and I'm going to participate in that process.

21

22             So I'm not saying this I want to borrow his

23             voice.  I want to say it's illegitimate.  No, to

17

1   me whether it's illegitimate or legitimate is not of

2           importance to me.  There are so many illegitimate

3           things that your government have conducting and

4           that's the last of the chain.  The last of the

5           chain you're bombing Iraq, you're bombing

6           Afghanistan is illegitimate.  Your being in our

7           Muslim land is illegitimate.  So it's not a

8           matter of legitimacy or illegitimacy to me.

9

10  **Presiding Officer:**  Well, do you understand that part of

11          the procedures of these Military Commissions

12          would allow your attorney to argue the

13          jurisdiction and the lawful basis of these

14          Commissions?

15

16  **ACC:**  As I said, I would have maximum respect for him

17          if he stay out of the whole process.  And just as

18          a person to a person.  I mean he told me that, "I

19          don't believe in the whole process.  It's

20          illegitimate and it's, again, I call it" he says,

21          "it's a black eye."  And he kept saying these

22          things and I told him if you--if you have the

23          courage then just say I'm not going to

**18**

1    participate in the whole process.  I don't--but then I told

2         him don't you want to be the fourth king.  I was

3         referring to the movie The Three Kings when they

4         refused the military order they said no, we'

5         don't believe in that.  So I told him, "If you

6         believe that's wrong, so just say no to the

7         military order.  No matter what--how much it

8         costs you."  I mean for the person that they

9         believe in I just spent now 4 years and God only

10        knows how long I'm going to spend in jail.

11

12   **Presiding Officer:**  Well, do you realize that representing

13        yourself, as you've requested, is more than

14        simply telling your story?  It involves the need

15        to present matters according to the rules of

16        procedure before the Military Commission.  Do you

17        understand that?

18

19   **ACC:**  I understand what you're saying, but as I told---

20        --

21

22   **Presiding Officer:**  Thank you.  Do you understand that a

23        lawyer who has been trained and has experience in

19

1    trial procedures would be needed in order to present

2         whatever you choose to present in the most

3         effective way?

4

5    ACC:  Let me clarify one point, I do not--to be honest

6         with you, I did not come here to defend myself.

7         I say no, that's not the case.  That's not the

8         case.  That's why that's one of the factors that

9         make me I don't need that man over here.  I came

10        here to tell you that I did what I did and I'm

11        willing to pay the price no matter how much you

12        sentence me even if I spend hundreds of years in

13        jail.  In fact, it's going to be an honor--a

14        medal of honor to me.  That's--that's the whole

15        issue.  That's one of the factors that make me

16        refuse you.

17

18   Presiding Officer:  Even in cases in which an accused or

19        defendant wishes to plead guilty, it is

20        beneficial to have someone trained to understand

21        the procedures and how best to present and

22        represent the client's interests.  Do you

23        understand that?

20

1

2   **ACC:**     I understand, but I don't like the term "guilty."

3                Guilt, guilt, no.   I'm not--I don't like that

4                term.

5

6   **Presiding Officer:**  Well----

7

8   **ACC:**     I don't like the word confession, he admitted to

9                it.   No.   I proudly did what I did, so----

10

11  **Presiding Officer:**  Well, even if I accept your phraseology

12               and you wish to make any statement at all

13               regarding the charges that are preferred and

14               referred against you, it is beneficial to have an

15               attorney help you do that in the most effective

16               way within in the rules of procedure of these

17               Commissions.   Do you understand that?

18

19  **ACC:**     Again, that's in your perspective.

20

21  **Presiding Officer:**  Yes, but I want to be sure that you

22               understand that that is a right that you have.

23

21

1  ACC:      No.  I don't think that it's beneficial.  No, not

2            at all.  I don't think that it's beneficial.

3

4  Presiding Officer:  But do you understand that that is your

5            right?

6

7  ACC:      As I told you, yes, I know that.

8

9  Presiding Officer:  And you understand that without the

10            assistance of trained counsel whether that's this

11            military counsel, another military counsel, or a

12            qualified civilian counsel that without that

13            counsel and representation, you might do

14            something, even inadvertently that would be

15            adverse to your interests?

16

17  ACC:      No, problem.  As I just told you, I'm going to be

18            honest as much as I can.

19

20  Presiding Officer:  But do you understand the risk that

21            that entails?

22

22

1  ACC:      Okay, I'll go with your terms, "risk".   I

2            understand the "risk".

3

4  Presiding Officer:  Very well.  Do you understand that if

5            you were to be permitted to represent yourself

6            that you would not be allowed to complain to a

7            higher authority on appeal that you were not well

8            represented?

9

10  ACC:      I understand that.

11

12  Presiding Officer:  And you realize that your case might be

13            represented less effectively before this panel of

14            members because you would be both an advocate for

15            yourself as well as potentially a witness and the

16            accused all at the same time?

17

18  ACC:      So you asking me do you understand that?

19

20  Presiding Officer:  Yes.

21

22  ACC:      My answer is going to be yes just to--to make it

23            short.

23

1

2  **Presiding Officer:**   And you understand that you might not

3              be permitted access to certain classified

4              information and that without access to that

5              information you would be at a disadvantage?

6

7  **ACC:**    I understand that.

8

9  **Presiding Officer:**   Do you understand that your detailed

10             defense counsel will have access to all of the

11             information and that he will be present even

12             during closed-sessions, if any are required,

13             during times when you might be excluded?

14

15 **ACC:**    You're talking about the counsel?

16

17 **Presiding Officer:**   I'm talking about your detailed defense

18             counsel, yes.

19

20 **ACC:**    As I told you that I don't recognize him as a

21             counsel, but you guys if you're going to force

22             him on me like I don't--I'm used to word "you

23             have to" in that place.

24

1

2   **Presiding Officer:**  Well, I didn't----

3

4   **ACC:**      You have no choice it's a compulsory procedure.

5

6   **Presiding Officer:**  Excuse me.  My question was, do you

7            understand that he will have access to all the

8            information and will be present for open and for

9            closed-sessions whereas you will not be permitted

10           to be present during closed-session, if we have

11           any.  Do you understand that?

12

13  **ACC:**      Well, I'll make the whole world to have an access

14           to classified information that I have.  Nothing

15           hidden.  Let me make it short, I understand.

16

17  **Presiding Officer:**  Thank you.  Do you realize that you may

18           be exposed to a severe penalty in this case?

19

20  **ACC:**      I understand.

21

22  **Presiding Officer:**  Including prolonged confinement?

23

25

```
 1   ACC:        I understand.

 2

 3   Presiding Officer:  Well, let me advise you that it is my

 4               view that it is unwise for you to proceed without

 5               qualified counsel to represent you, whether that

 6               be detailed defense counsel or a civilian counsel

 7               working together with your detailed counsel, and

 8               I strongly urge you to reconsider and accept

 9               representation by counsel that have been offered,

10               or counsel of your selection that can work

11               together with your detailed counsel, or any

12               civilian counsel who's qualified that you--that

13               you choose.  Do you understand what I've said to

14               you?

15

16   ACC:        I understand and I advise you not to waste time

17               with me in that point.  I took my decision and

18               I'm not going to change it to be honest with you.

19

20   Presiding Officer:  Well, considering all that we've

21               discussed this morning, do you want to be

22               represented by Lieutenant Kuebler?

23
```

26

1   ACC:        No.

2

3   **Presiding Officer:**  Do you want to be represented by

4                another military counsel?

5

6   ACC:        No.

7

8   **Presiding Officer:**  Do you want to be represented by a

9                qualified civilian?

10

11  ACC:        No.

12

13  **Presiding Officer:**  By whom do you want to be represented?

14

15  ACC:        As I said, by myself.

16

17  **Presiding Officer:**  I'm going to take a brief recess during

18                which time I would like detailed counsel to meet

19                once again with your client so that I can be

20                absolutely sure he understands and has full

21                benefit of his rights to counsel before

22                proceeding any further.  So we'll take about a

23                15-minute recess.  The Commission is in recess.

.27

1

2   *The Commission Hearing recessed at 0927, 27 April 2006.*

3

4   *The Commission Hearing was called to order at 0944, 27*

5   *April 2006.*

6

7   **Presiding Officer:**   The Commission will come to order.

8

9   **APROS:**   All parties present when the Commission recessed

10                are again present.

11

12  **Presiding Officer:**   Mr. al Sharbi, during the recess, did

13                you have the opportunity to speak with your

14                detailed defense counsel?

15

16  **ACC:**   Well he came and talked to me.

17

18  **Presiding Officer:**   So you did have the opportunity to talk

19                to him?

20

21  **ACC:**   He came and he talked to me; yes.

22

28

```
 1   Presiding Officer:  Do you have any questions about your

 2              rights to counsel?

 3

 4   ACC:      No.

 5

 6   Presiding Officer:  Lieutenant, are you satisfied that Mr.

 7              al Sharbi is fully informed of what his rights

 8              with respect to representation?

 9

10   DC:       I am, sir.

11

12   Presiding Officer:  Thank you.  Mr. al Sharbi, do you want

13              to be represented by Lieutenant Kuebler?

14

15   ACC:      No.

16

17   Presiding Officer:  Do you want to be represented by any

18              other military counsel?

19

20   ACC:      No.

21

22   Presiding Officer:  Do you want to be represented by a

23              qualified civilian counsel?
```

29

1

2   ACC:      No.

3

4   Presiding Officer:  By whom do you want to be represented?

5

6   ACC:      I would like to be presented by myself.

7

8   Presiding Officer:  Now based on our discussions before,

9           you understand that certain rules apply to

10          putting information before the Military

11          Commission.  Do you understand that?

12

13  ACC:      Yes.

14

15  Presiding Officer:  And are you familiar with what those

16          rules are?  I believe you indicated earlier that

17          you are not, but I will give you another

18          opportunity.  Do I understand you correctly, that

19          you are not familiar with those rules?

20

21  ACC:      As I said, no.

22


30

1  **Presiding Officer:** Are you willing to abide by those

2           rules?

3

4  **ACC:**   To be honest with you, I don't know what you

5           exactly are referring to, but I have to repeat

6           what I said.  I am going to be compliant.  I am

7           not going to cause commotion.  I am not going to

8           be disruptive.  If that is what you are referring

9           to.

10

11  **Presiding Officer:** Well that is part of it, and again, I

12          appreciate your courtesy.  What I am trying to

13          find out is; there are specific rules that govern

14          how these proceedings are conducted before a

15          Military Commission, and you have indicated that

16          you are not familiar----

17

18  **ACC:**   No.

19

20  **Presiding Officer:** -----with those rules and I accept

21          that.  But my follow-up question is, were you to

22          become familiar with those, with or without the

23          help of your detailed defense counsel, are you

1   willing to use those rules in order to present your case

2                before this Commission?

3

4   **ACC:**       I haven't read them.  I don't know what you are

5                talking about to be honest with you.  All of what

6                I have in my mind, I just am going to say what I

7                did and you guys make your decision.

8

9   **Presiding Officer:**  Well I make the following findings and

10                I will supplement these as needed in the final

11                transcript or before the final transcript of this

12                session is completed; I find that you are a

13                fluent English speaker based on your 15 years of

14                speaking English and on the basis of our

15                discussion this morning, I find that you are

16                fluent and freely understand even fairly complex

17                speech.

18

19                I also find that you are well educated holding a

20                bachelor's degree from Embry Riddle University.

21

22                However, I also find that you are not familiar

23                with the Commission Law and rules governing the

32

1    conduct of these proceedings, and while you have indicated

2         that you are willing to be cooperative and

3         polite, as indeed you have been, that your answer

4         with respect to following the rules of procedure

5         is somewhat ambiguous given that you are not

6         familiar with the rules of procedure applicable

7         to these procedures including the introduction of

8         evidence.

9

10        I also find that you are not qualified to have

11        access to classified information and that you

12        would not be permitted to be present during

13        closed sessions of these proceedings.

14

15        Therefore, I find that if you do have a right to

16        represent yourself, that you are not qualified to

17        do so.

18

19        I also find that MCO 1 explicitly requires that

20        you be represented at all times by detailed

21        defense counsel.

22

33

1          So with that, Lieutenant, you are directed to

2          fulfill your responsibility as detailed defense

3          counsel in this matter.

4

5          I previously provided counsel for both sides a

6          summarized biography which appears at RE 13 and I

7          also provided RE 22, which includes my further

8          offer to provide additional background

9          information in response to--I am sorry,

10         additional background information.

11

12         Have counsel received both REs 13 and 22?

13

14  APROS:  The prosecution has, sir.

15

16  DC:    I have, sir.

17

18  **Presiding Officer:**  Thank you.  I note, however, I have not

19         received any written voir dire questions from

20         either side.  Is that correct?

21

22  **APROS:**  That is correct.  The prosecution has no written

23         questions, sir.

)

1

2   **Presiding Officer:**   Lieutenant?

3

4   **DC:**       I have no written questions, sir.

5

6   **Presiding Officer:**   Do counsel for the prosecution desire

7           to conduct voir dire of the Presiding Officer?

8

9   **APROS:**    The prosecution does not, sir.

10

11  **Presiding Officer:**   Does defense desire to voir dire the

12          Presiding Officer?

13

14  **DC:**       Sir, before we proceed to voir dire, as I

15          indicted during our 8-5 session this morning, in

16          light of Mr. al Sharbi's responses to your

17          inquiry, I believe a number of legal and ethical

18          issues arise with respect to my status and

19          participation in these proceedings.

20

21  **Presiding Officer:**   Very well.  I'll hear from you.

22


35

1   DC:      Yes, sir.  As I indicated during the 8-5, I have

2            an ethical opinion from California, which is my

3            licensing authority, which effectively says that

4            in light of Mr. al Sharbi's rejection of my

5            services that I cannot ethically represent him in

6            these proceedings.  I would like the opportunity

7            to provide the Presiding Officer with a copy of

8            that document.

9

10           I also have a copy of a request that I submitted

11           to the Navy Office of the Judge Advocate General

12           2 days ago.  After I was first able to meet with

13           Mr. al Sharbi.

14

15  **Presiding Officer:**  When did you first meet with Mr. al

16           Sharbi?

17

18  DC:      Sunday, the 23rd of April, sir.

19

20  **Presiding Officer:**  That's the first time you met him?

21

22  DC:      Yes, sir.

23

1   **Presiding Officer:**  Okay.  You were saying.

2

3   DC:         Yes, sir.  I would like to be able to provide you

4               with a copy of the request that I submitted the

5               request to Navy OTJAG 2 days ago.  I received a

6               response from ███████████ who is the Assistant

7               Judge Advocate General for military justice this

8               morning, which I forwarded to the Presiding

9               Officer and to the prosecution, which indicates

10              that I should have guidance from Navy OTJAG

11              within a week to 10 days concerning my status and

12              participation under the Navy Jag rules.

13

14              I also have conferred with the California Ethics

15              Hotline.  I did that because the process for

16              obtaining a formal ethics opinion in California

17              is lengthy and it's ultimately discretionary;

18              however, I can provide the Presiding Officer with

19              a memorandum for record concerning those

20              consultations.

21

37

1    Presiding Officer:  Well, do you also have copies of your

2                       requests to the California authorities that you

3                       provided?

4

5    DC:    I'm sorry, sir.

6

7    Presiding Officer:  Do you also have the requests that you

8                       provided to California to receive those opinions?

9

10   DC:    I have copies of the opinion letter that I

11          received from Mr. John Steele who's a----

12

13   Presiding Officer:  No.  I mean your request.

14

15   DC:    To whom, sir?

16

17   Presiding Officer:  To Mr. John Steele, the basis for his

18                       opinion back to you.  Do you have that as well?

19

20   DC:    It's stated--it's stated in his opinion, sir.

21

22   Presiding Officer:  Well, what was the basis of that?  Was

23                       that a letter or phone call or what did he go on?

38

1

2    DC:        Telephonic discussions as well as documents that

3               I provided him.

4

5    Presiding Officer:   Do you have the documents you provided

6               him?

7

8    DC:        I'm sure I do, sir.

9

10   Presiding Officer:   Okay.  What else do you have?

11

12   DC:        Those would be the three documents related to the

13              ethics issue, sir.  In addition, Mr. al Sharbi's

14              response to the inquiry raises fundamental

15              questions concerning both his right to represent

16              himself in these proceedings, his capacity to

17              waive my participation as his detailed defense

18              counsel, and I would respectfully submit, sir,

19              that your colloquy with him concerning his, shall

20              I say, competency to represent himself misstates

21              a fundamental legal proposition as stated in

22              Godinez v. Moran, which is that his competency to

23              represent himself is not a factor in determining

39

1   whether or not he has the right to represent himself and to

2                waive counsel and so to the extent that you

3                relied on his answers to his questions, I believe

4                that you misapplied the standard and I would like

5                the opportunity to brief you and to argue and to

6.              litigate that issue before we proceed to the

7.              substance of the case.

8

9                In addition, Mr. al Sharbi in no way indicated

10             that he was unwilling to follow the rules of the

11             tribunal. What he indicated was that he was not

12             familiar with those rules, and I think in

13             fairness even if the standard that you applied is

14             the appropriate one he should be given the

15.            opportunity to review those rules before he is

16             asked to state whether or not he's willing to

17             follow them. So, sir, I mean I can provide these

18             matters separately. I can provide you with

19             copies of the ethics opinions for you to review

20             and we can come back on the record. I've also

21             taken the liberty, since I anticipated this issue

22             arising, of preparing a motion addressing the

23             legal issues of self-representation, waiver of

**40**

1   the right to counsel, status of detailed counsel absent

2             acceptance by the accused, and the issue of

3           whether or not the tribunal actually has the

4           authority to make me his lawyer when he's

5           rejecting me.  I would like the opportunity to

6           brief the Presiding Officer on those issues.  I

7           can have that motion turned into you today as

8           soon as I fine-tune it with the facts from the

9           hearing this morning, and I can litigate that at

10          your earliest convenience as soon as the

11          government can respond.

12

13  **Presiding Officer:**  Well, first let me have whatever it is

14          that you'd like me to consider and we don't need

15          to do that here because obviously I'm going to

16          have to take a minute to review the material that

17          you're going to submit.

18

19          Have you submitted them to the prosecution?

20

21  **DC:**      I have not, sir.

22

1   Presiding Officer:   Okay well let's be in recess until

2           11:00.   I'd like you to provide all the

3           information that we've discussed including

4           whatever you've provided to the authorities upon

5           which they're basing their advice back to you.

6

7   DC:       Yes, sir.

8

9   Presiding Officer:   And I will consider that and then come

10          back on the record at 11:00 and we can further

11          discuss this to decide the way ahead.

12

13   DC:      Thank you, sir.

14

15   Presiding Officer:   Prosecution have anything further?

16

17   PROS:     No, sir.

18

19   Presiding Officer:   Lieutenant, anything further?

20

21   DC:       No, sir.

22

42

1    **Presiding Officer:**  Very well, the Commission is in recess

2              until 11:00.

3

4    *The Commission Hearing recessed at 0957, 27 April 2006.*

5

6    *The Commission Hearing was called to order at 1103, 27*

7    *April 2006.*

8

9    **Presiding Officer:**   This Commission is called to order.

10

11   **APROS:**    All parties present when the Commission recessed

12              are again present.

13

14   **Presiding Officer:**   Lieutenant Kuebler, I have reviewed the

15              materials which you have provided and which

16              briefly described prior to the recess.  Before

17              proceeding I have a couple of questions that I

18              would like to clarify.

19

20              You indicate in your request for an ethics

21              advisory opinion to the Assistant Judge Advocate

22              General of the Navy for Military Justice that you

23              were detailed on the 14th of November 2005 and I

43

1   think that is otherwise a matter of record. That you

2            thereafter attempted to meet with your client,

3            Mr. al Sharbi, however, he declined repeated

4            invitations to meet with you and indicated that

5            he did not desire your services.

6

7            Let me ask you when you first got that

8            information?

9

10 **DC:**     I first attempted to meet with him on or about

11           the 15th of November, sir.

12

13 **Presiding Officer:**   And is that when he told you that he

14           did not want you to represent him?

15

16 **DC:**     No, I never actually spoke with Mr. al Sharbi

17           until the 23rd of April.

18

19 **Presiding Officer:**   Well how did he indicate to you that he

20           did not desire your services when he declined

21           repeated invitations?

22

1  DC:        He indicated that to General Hood, sir, and

2             General Hood indicated that to the Chief Defense

3             Counsel, Colonel Sullivan, in a telephone call

4             that occurred at, I believe in February of this

5             year, sir.

6

7  Presiding Officer:   And that was communicated to you in

8             February?

9

10 DC:        Yes, sir.

11

12 Presiding Officer:   Thank you.  So as of February you were

13            advised of your client's position, which he has

14            again articulated today, if I understand you

15            correctly?  That is, he declined your services?

16

17 DC:        Yes, sir.  I was aware of that position at that

18            time.

19

20 Presiding Officer:   Why did you not request your ethics

21            advisory opinion in February to address that

22            issue which apparently was fully raised at that

23            time?

**45**

1

2 **DC:**        Well, sir, at that time my focus, as you know,

3         was to overcome Mr. al Sharbi's objection to

4         meeting with me.  We attended an 8-5 I believe at

5         the end of February in which you directed that

6         representatives of the JTF and the prosecution be

7         present.  The purpose of that meeting was to

8         discuss a way in which I could arrange a

9         telephone call or----

10

11 **Presiding Officer:**    Yes, I have to say that you took good

12         measures, requested additional time for travel

13         and arranged phone calls in an effort to foster

14         your attorney-client relationship, and I commend

15         that.  I think that was entirely appropriate

16         under the circumstances.

17

18         My question, however, is why, when this issue was

19         fully raised in February did you not request an

20         ethics advisory opinion while you simultaneously

21         tried to overcome the disability?

22

46

1  DC:      Well, sir, the short answer to that question is

2           that I did not believe the issue fully ripe until

3           I had the opportunity to meet with Mr. al Sharbi

4           and to actually hear myself that that was his

5           position.

6

7  Presiding Officer:    Well there is no difference, is there,

8           between the information you received in February

9           and the information you received on the 26th of

10          April?  That is, you told me in February, he said

11          he did not want you to represent him and yet you

12          had been detailed and the conflict is joined at

13          that point.

14

15 DC:      Yes, sir.  I think the ethical analysis though

16          involves other factors, such as, whether or not

17          he wished to represent himself, what my

18          obligations were if he asserted that right when

19          the Tribunal didn't provide for it, what my

20          obligations----

21

22 Presiding Officer:    How were you pursuing your

23          responsibilities as detailed counsel in the

47

1    interim to do such things as to prepare, to review

2         discovery, and otherwise prepare yourself if you

3         were in an ethical dilemma as of February?

4

5 DC:      Well sir, I felt that the ethical dilemma was not

6         fully presented, absent direction from the

7         Tribunal, to represent Mr. al Sharbi.  My legal

8         position has been, all along, that the act of--

9         the mere act of detailing does not create an

10        attorney-client relationship.

11

12 **Presiding Officer:**    Well that may or may not be true.  My

13        questions is though, and I am puzzled, why,

14        having been duly detailed and told that he does

15        not want your services, you did not immediately

16        follow what is in your detailing letter, and

17        perhaps that part, you probably did, inform your

18        supervisor, which I assume you did in February?

19

20 DC:      I absolutely did, sir.  I've had repeated

21        conversations with Colonel Sullivan about these

22        subjects.

23

**48**

1   **Presiding Officer:**   And at that point, seek his advice and

2                            move forward to resolve what was then an ethical

3                            issue for you.

4

5   **DC:**   Again, sir----

6

7   **Presiding Officer:**   Because you have posed nothing, other

8                            than that, in your request for advisory opinion.

9

10  **DC:**   Again, sir, I mean I--I am a Navy Judge Advocate.

11            I am subject to the Rules of Professional Conduct

12            promulgated by the Judge Advocate General.   I'm

13            also a California attorney.   I began conferring

14            with counsel in California as early as February

15            on this issue.   As you'll note from the date of

16            Mr. Steele's opinion, however, I'm consistent

17            with the position I told you 2 minutes ago, I did

18            not believe that it was actually appropriate to

19            get an opinion based on the set of facts until I

20            was able to meet with Mr. al Sharbi, and of

21            course my efforts since being detailed to this

22            case have been to achieve that goal, which

23            ultimately I was able to achieve through the

**49**

1    assistance of the Presiding Officer and the Joint Task

2                    Force.  We traveled to Saudi Arabia.  We arranged

3                    contact and I did meet with Mr. al Sharbi----

4

5    **Presiding Officer:**  And I understand----

6

7    DC:        ----and ascertained his intent.

8

9    **Presiding Officer:**   ----and I complement you for that

10                   because I think all of that was very important to

11                   do and that's why I delayed proceedings in order

12                   to give you the opportunity to do that, and I

13                   think that was entirely appropriate.

14

15                   What I'm having difficulty with, however, is why

16                   the legal and ethical implications of your

17                   dilemma were not raised when you were aware of

18                   them in February, having been detailed in

19                   November that you waited until literally this

20                   week to request advice.  And I'm puzzled about

21                   that.  Apparently there's no resolution other

22                   than you simply didn't do it because you were

23                   waiting to do other things.


50

1

2  DC:         Plus, sir, I did not feel that the ethical issue

3             was ripe at that time.  Again, assuming that my

4             legal position is correct on detailing not being

5             equivalent with representation provided the

6             tribunal is not directing me or requiring me to

7             undertake acts on Mr. al Sharbi's behalf, there

8             was no ethical dilemma at that time.  Now that

9             I've had a chance to talk with him, he's had a

10            chance to give you his desires and intentions on

11            the record, now there is an ethical dilemma----

12

13  Presiding Officer:  Well, I disagree with you.

14

15  DC:         ----in terms of my ability to proceed.

16

17  Presiding Officer:  You had an ethical dilemma as soon as

18            your client said he didn't want you and you'd

19            been detailed.  That's substantially the same

20            problem that you conveyed to both the Navy Judge

21            Advocate General's Office and to California, so

22            I'm concerned about that.

23

51

```
 1              Nevertheless, I am absolutely convinced that the

 2              fullness and the fairness of these proceedings

 3              depend upon the accused having all the

 4              information that is available so that he can

 5              understand his rights and make meaningful

 6              informed choices about what he wants to do.

 7              Included in that is his right to counsel and how

 8              he chooses to be represented and participate in

 9              his own defense.

10

11              I think there are some important issues raised

12              even if they are raised late that demand, in

13              fairness, that we give them careful

14              consideration.  So it is my intent to have you

15              brief this and to submit whatever filing and will

16              you append all this as attachments to your brief?

17

18  DC:         Yes, sir.  I will.

19

20  Presiding Officer:  And we need not enter them at this time

21              in the record.  They'll come in on your brief,

22              but you have you brief this and given that you've
```

52

1    indicated you've substantially completed your brief, I'd

2            ask you to file it by noon tomorrow.

3

4            I will allow the prosecution 7 days to respond,

5            and I'll give you an additional 3 days to reply

6            to their response.  And I will place this matter

7            on the docket during the May term, the 17th of

8            May so that we can dispose of this matter with

9            benefit of both sides.

10

11            You may be seated.

12

13    [The DC did as directed.]

14

15    **Presiding Officer:**  In addition, during May it will be my

16            intention to proceed with any other motions that

17            you wish to file and have disposed of, and I will

18            continue over the other matters that were

19            scheduled for today for disposition during the

20            May hearing, which will be to conduct voir dire,

21            the reading of the charges, and entry of pleas.

22

53

1      I'd also like to ensure that both sides, all counsel

2              present, have reviewed Military Commission Order

3              Number 1, governing protected information.

4

5    PROS:     Prosecution has, sir.

6

7   Presiding Officer:  Have you, Lieutenant.

8

9   DC:       I've reviewed those documents, yes, sir.

10

11  Presiding Officer:  Thank you.  Do all counsel understand

12              that you must, as soon as practicable, notify me

13              of any intent to offer evidence involving

14              protected information so that I can consider the

15              need to close any proceeding?

16

17  PROS:     Prosecution is aware, sir.

18

19  DC:       I understand, sir.

20

21  Presiding Officer:  Thank you.  I'd also like to check with

22              both counsel, the only protective orders of which

23              I am aware are Protective Orders 1, 2, and 3

54

1    which are marked as Review Exhibits 14, 15, and 16.  Have

2              all counsel reviewed these?

3

4  PROS:     Prosecution has, sir.

5

6  DC:       Yes, sir, I have.

7

8  Presiding Officer:  Thank you.  Are counsel aware of any

9              other protective orders?

10

11  PROS:     Prosecution is aware of no other protective

12              order.

13

14  DC:       I'm not aware of any other, sir.

15

16  Presiding Officer:  Thank you.  I'll also note that all

17              current Presiding Officer Memoranda, as listed on

18              Review Exhibit 31, as well as any subsequent

19              modifications are in effect as the rules of court

20              for this Commission.  The current filings

21              inventory is Review Exhibit 32.  Do all counsel

22              agree that that is an accurate reflection of the

55

1    filings, the motions, responses, and replies and any

2              request for relief filed to date?

3

4    **PROS:**    Prosecution agrees, sir.

5

6    **DC:**    To my knowledge, yes, sir.

7

8    **Presiding Officer:**  Just to be clear, Lieutenant, your

9              filing is due by noon tomorrow, which is 28

10             April.  Prosecution has until the close of

11             business on May the 5th to response, and

12             Lieutenant, you have until the 9th of May to

13             reply to their response, and we will take this

14             matter up on the record on 17 May.

15

16             Is there anything further from either side prior

17             to recess?

18

19   **PROS:**   Not from the prosecution, sir.

20

21   **DC:**    I have nothing, sir.

22

56

1    **Presiding Officer:**   Very well.   This Commission is in

2              recess.

3

4    *The Commission Hearing recessed at 1115, 27 April 2006.*

**AUTHENTICATION OF
FINAL SESSION TRANSCRIPT**

in the case of:

*United States v. Ghassan Abdullah al Sharbi*
a/k/a/ Abdullah al Muslim
a/k/a Abu Muslim

This is to certify that the pages **1** through **58**
(Authentication page) are an accurate and verbatim
transcript of the proceedings held in the above styled
case on **April 27, 2006**.

_____
Daniel E. O'Toole
Captain, JAGC, U.S. Navy
Presiding Officer

_____
10 May 2006
DATE

58