UNCLASSIFIED//FOR PUBLIC RELEASE

FILED WITH THE
COURT SECURITY OFFICER
CSO: CM
DATE: 7/15/09

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN # 10016), ) ) ) ) Petitioner ) ) v. ) ) ROBERT M. GATES, ) ) Respondent. ) | No. 08-CV-1360 |

**OPPOSITION TO RESPONDENT'S MOTION TO CONFIRM
DESIGNATION OF ABU ZUBAYDAH DIARY MATERIALS
AND ALL RELATED OR DERIVATIVE DOCUMENTS AS PROTECTED**

Having finally realized that volumes 1-6 of Petitioner's diary cannot properly be deemed classified, the Government now submits a perfunctory and clearly deficient request to declare that each and every page of the first six volumes of Petitioner's diary are "protected" instead. In doing so, openly flouting two orders from the District of Columbia Circuit and a recent order from Judge Hogan, the Government asks this Court for permission to do what the other courts have ordered it may not do. It also perpetuates a long pattern of abuse by improperly withholding information from disclosure, which is the subject of many pending motions before this Court.[1] The Government's request to designate over 1,500 pages of information as

---

[1] Specifically, petitioner calls the Court's attention to Petitioner's Motion for Preservation Order, Order Requiring Government Agencies to Identify Destroyed Documents and Other Relief, filed 12/16/08; Motion for Order Requiring the Government to return the Original Unredacted Copies of Petitioner's Diary and Other Writings, and to Allow Petitioner to Share his Writings with Counsel, filed 4/1/09; and Motion for Relief from Improper Classification, filed 5/11/09, all of which have been fully briefed and are awaiting decision.

UNCLASSIFIED//FOR PUBLIC RELEASE

protected, based exclusively on a cursory assertion that some information contained therein is pertinent to their counterterrorism investigations, falls breathtakingly short of the legal threshold required to justify declaring unclassified information as protected. The Government is well aware of the standard and its motion should be summarily denied.

## ARGUMENT

In its motion, the Government seeks, yet again, to broadly designate unclassified information as protected, without providing a sufficient basis to warrant the withholding of that information from the public.[2] Previous, unsubstantiated requests by the Government for blanket designations have been consistently denied.[3] Given the Government's arrant recalcitrance, its motion should be denied *with* prejudice. Both the law in this area and the procedure to be

---

[2] *See, e.g.*, Memorandum Opinion, *In re: Guantanamo Bay Detainee Litigation*, 08-cv-442 (TFH), June 1, 2009, at 5 ("The D.C. Circuit has twice considered and denied government attempts to broadly designate as protected unclassified information on detainees at Guantanamo Bay.").

[3] As concerns the detainees at Guantanamo Bay, Cuba, the Government initially proposed that it be permitted to unilaterally determine whether unclassified information is protected. The D.C. Circuit rejected this argument, stating: "It is the court, not the Government, that has discretion to seal a judicial record." *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007). Thereafter, the Government filed a motion requesting the designation of two categories of information as protected: (1) the names of U.S. government personnel and (2) any "Law Enforcement Sensitive" information. According to the Government, disclosure of this information would be harmful to ongoing counterterrorism efforts. The Circuit rejected this argument, stating that without an "explanation tailored to the specific information at issue," the court has "no way to determine whether [the information] warrants protection – other than to accept the government's own designation, which would usurp the Circuit's discretion to seal a judicial record." *Parhat v. Gates*, 532 F.3d 834, 853 (D.C. Cir. 2008). Thereafter, the Government moved, once again, for a blanket designation of the factual returns as protected on the basis of their containing information that, if released, could threaten security. Once again, this Court found that the Government's request failed because it was "devoid of specificity," the same as its prior attempts. *See* Memorandum Opinion, *In re: Guantanamo Bay Detainee Litigation*, 08-cv-442 (TFH), June 1, 2009 (providing a review of the recent litigation on this issue and drawing on the precedent to find that "spare, generic assertions" by the Government that security is threatened do not suffice to warrant the sealing of information).

applied are clear, but the Government ignores the law and continues to defy the Court. The Government clearly is abusing this process, as a matter of strategy, to delay the unsealing of information that has no basis for being kept from the public.[4] We respectfully request that this Court finally address these pending motions and rule that such behavior will not be tolerated.

A. The Government's Attempt to Designate Petitioner's Diaries as Categorically "Protected" Defies Well-Established Law and Procedure Governing the Habeas Cases.

Less than two months ago, this Judge Hogan reiterated that "[b]efore the Court can grant a motion to protect unclassified information, the government must identify *by line* the information it seeks to protect." Memorandum Opinion, *In re: Guantanamo Bay Detainee Litigation*, 08-cv-442 (TFH), June 1, 2009, at 10. As further explained by the Court, this means that, if the Government wants information to be designated as protected, it should file that information under seal "highlighting with a colored marker the exact words or lines the government seeks to be deemed protected, as well as [accompany that highlighted document with] a memorandum explaining why each word or line should be protected." *Id.* at 10. Instead of following that standard, however, the Government, completely disregards it and moves this Court for the blanket designation of hundreds of pages of information, relying "solely on spare, generic assertions of the need to protect" two categories of information: the identities of U.S. government personnel and information that is allegedly law enforcement sensitive.[5]

---

[4] Indeed, the Government even has the audacity to file this Motion under seal and to style its notice of filing in such a manner that the public cannot even see the nature of its request.

[5] *See Parhat v. Gates*, 532 F.3d 834, 853 (D.C. Cir. 2008) (rejecting the Government's request to designate the names of U.S. government personnel and "Law Enforcement Sensitive" information as "protected" because the Government failed to identify the particular names and other information that it sought to have protected or to provide a precise explanation of why those names or that information required sealing in the particular context); *see also*

3

While Petitioner has no objection to sealing the names of the persons who participated in the translation of Petitioner's diary (which are the only United States government personnel whose names appear in these 1,500 pages), Petitioner makes this concession in regard only to these particular names (*i.e.*, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ in this particular context (as found on the cover pages to the English translations of Petitioner's diary, volumes 1-6). Petitioner does not acquiesce to the wholesale sealing of Petitioner's diary and its translation because the name of an FBI agent or other U.S. government personnel is listed on a page therein. Contrary to the Government's insinuation, the fact that a named or otherwise identified person is "United States government personnel" is not reason, in and of itself, to designate that person's name as protected.[6] Most importantly, even if there were some particular names on a couple of lines on the cover pages of the diary translations that could have legitimately been deemed "protected" had the Government properly sought to do so, there can be no justification for sealing the hundreds of pages that follow, much less the original Arabic versions.

In addition, the Government's request to seal Petitioner's diary is wholly unsupported by the Government's determination that these writings are relevant to their counterterrorism

---

Memorandum Opinion, *In re: Guantanamo Bay Detainee Litigation*, 08-cv-442 (TFH), June 1, 2009 (rejecting the Government's request to designate the unclassified factual returns as protected in their entirety on the basis of such "spare generic assertions," and noting that such a request was based on "even greater generality" than the request the court had denied in *Parhat*, in that it sought to seal all information in the returns and did not even limit itself to the two categories).

[6] *Id.*

4

investigations. The Government contends that Petitioner's diary itself and "information contained within" the diary is "pertinent to continuing law enforcement and counterterrorism activities, including ongoing investigations of petitioner and activities involving other individuals or subjects mentioned in the diaries." Respondent's Motion at 3. Exactly what information within the diary is allegedly pertinent and, moreover, why this information needs to be protected in light of the alleged ongoing investigations is unexplained.

The very title of the Government's motion is sufficient to put the Court on notice that the Government is overreaching. Aside from the actual diary entries (English and Arabic), what are the "related or derivative documents" to which the Government refers? Does this include Petitioner's unclassified CSRT transcript, which references the diaries and has been in the public domain for years? Does it include Petitioner's references to his diaries in court filings that have been cleared?[7] According to the express terms of the Protective Order, "counsel is not precluded from making private or public statements about information already in the public domain." P.O. section D.32.[8] At a minimum, it must be acknowledged that the Government cannot properly seek to have information designated as protected that has already been disclosed to the public.

---

[7] *See, e.g.,* Petitioner's Motion for Order Requiring the Government to return the Original Unredacted Copies of petitioner's Diary and Other Writings, and to Allow Petitioner to Share his Writings with Counsel, filed 4/1/09; Petitioner's Motion for Relief from Improper Classification, filed 5/11/09.

[8] Of course, the Government has openly flouted this provision with impunity for years now. Petitioner was forced to file a motion to unseal his Petition for *Habeas Corpus* that was filed before counsel was permitted to meet with Petitioner and before counsel had SCI clearance. Accordingly all the information necessarily came from the public domain. *See e.g.,* Motion to require Government to Unseal the Amended Petition for Relief Under the Detainee Treatment Act of 2005, and, in the Alternative, for Writ of Habeas Corpus and Other Relief (D.C. Cir. 2008). Moreover, Petitioner still awaits clearance of his Amended Petition for Writ of Habeas Corpus, approximately one year after its submission for review.

*See* Memorandum Opinion, *In re: Guantanamo Bay Detainee Litigation*, 08-cv-442 (TFH), June 1, 2009, at 7-8. Yet this is precisely what the Government seeks to do by sealing volumes 1-6 of Petitioner's diary in their entirety. Significantly, the Government fails to acknowledge that it has already released information about Petitioner's diary to the public in the form of the unclassified CSRT transcript. *See, e.g.*, CSRT Tran. At 5 -7, 11-12, 14-16, 23 (attached as Exhibit 1).

Finally, the Government's request also places counsel in the untenable position of not knowing precisely how to prevent violations of the Protective Order. At a minimum, Petitioner's counsel should not be required to guess what documents are subject to protection. The more effective and proper solution is simply to deny the Government's motion.

> B. The Government's Attempt to Designate the Diaries is Impermissibly Motivated by a Concern About Preventing Embarrassment and Otherwise Prejudices Petitioner's Ability to Meaningfully Pursue His Habeas Case

The Government's attempt to designate the diaries as "protected," like its abuse of the classification system described in Petitioner's earlier motions, is designed simply to keep embarrassing information from the press and public. Volumes 1-6 of the diary were written over a period of time that spans close to a decade of Petitioner's life and include, among other things, descriptions of his childhood, philosophical musings, and hopes for marrying and becoming a father. These writings portray the picture of a man who is vastly different from the Government's discredited portrayal, and they describe in detail some of the charitable work he did for his community like helping the poor and building schools for young women in Afghanistan. They also make clear that Petitioner was not a member of al Qaeda. They describe Petitioner's efforts to help save the lives of Afghan civilians during saturation bombing raids that killed thousands of innocent civilians; they reveal corruption in the Pakistani government; and

they make clear that Petitioner's interest in jihad was to end the suffering of Muslims in Chechnya and Bosnia and not to bring offensive attacks against the United States of America. While the Government may wish to hide such exculpatory evidence, it must not be permitted to do so where, as here, it is unable to provide an "explanation tailored to the specific information at issue."[9]

The effect of declaring the diaries protected allows the Government to control the flow of information regarding Petitioner; moreover, it does so, at a time when Petitioner's counsel need to be able to counter the myths perpetrated about Petitioner to effectuate a diplomatic resolution of his case. More importantly, declaring Petitioner's diary protected also severely hinders his counsels' ability to prepare Petitioner's defense and vindicate his constitutional entitlement to habeas corpus at numerous levels. The Government will certainly argue that if counsel wants to discuss the diary with potential witnesses, the individuals can sign a Memorandum if Understanding ("MOU") to be bound by the Protective Order. Such an imposition simply is not practicable in the context of this case where counsel's investigations are taking place all over the world, including underdeveloped areas. Moreover, it is likely to have a chilling effect on witnesses, particularly among foreign citizens. Counsel are right now seeking the cooperation of witnesses in foreign countries who can corroborate the substance of Petitioner's defense, much of which is articulated in his diary. Yet the Government's attempt to designate the diary as protected, if granted, would preclude counsel from conducting such crucial investigations.

Although it is true, as the Government points out, that Petitioner's counsel are permitted to review volumes 1-6 of Petitioner's diary with him, Petitioner's counsel are apparently not

---

[9] *Id.*

permitted to inform Petitioner which passages the Government relies upon in the factual return.[10] Indeed, the Government has redacted every reference to the unclassified volumes of Petitioner's diary from the unclassified factual return. What possible explanation can the Government offer to justify that the diaries are unclassified but the quotations from the diaries upon which the Government relies in the factual return are classified? There is none. By doing so, the Government simply demonstrates its disregard for the fact that the authority to designate unclassified information as protected properly belongs to the court.

The Government relies heavily on Petitioner's diary throughout the factual return. By removing every reference to the diary, the Government leaves very few of the relevant allegations against Petitioner to be seen by the eyes of the public. Moreover, what is left is an incredibly misleading picture: for example, for several pages of the factual return, virtually the only words that are left unredacted are the names: Abu Hafs al-Masri, Abu Mas'ab al-Zarqawi, and Khalid Sheik Mohammad, known al Qaeda operatives: what the public does not see is that the only reason these people are mentioned in Petitioner's factual return is that they are alleged to have been in the same city as Petitioner: the Government does not even allege that Petitioner had direct, or even indirect, contact with them. *See* Factual Return at ¶ 53.

Although the Government has clearly abandoned its prior statements that Petitioner was the "number two man" or "chief of operations" in al Qaeda insofar as Petitioner's case is

---

[10] On July 1, 2009, Petitioner's counsel requested clarification from the Government as to whether Petitioner's counsel may discuss the specific diary entries that form the basis of the allegations against Petitioner in the Government's factual return. On July 6, the Government responded that Petitioner's counsel could discuss these passage as long as the discussion is limited to identifying and discussing the diary passages themselves and does not involve discussing the contents the classified factual return (*i.e.*, the Government's citation to those passages).

concerned, the Government continues to rely on these mischaracterizations in other detainee cases. *See, e.g.*, Factual Return, *In re: Guantanamo Bay Detainee Litigation*, No. 1:05-cv-1506 (RMC) (referring to Petitioner as "a leading military chief of al-Qaida" [sic]). By redacting every statement made in reliance on Petitioner's diary, the Government prohibits Petitioner's counsel from informing the public and the courts publicly about how the case and accusations made by the Government against Petitioner have changed. In *Boumediene v Bush*, 1:04-cv-01166 (RJL), Petitioner's counsel submitted a Declaration to the Court detailing the Government's misrepresentations about Petitioner in connection with a *habeas* hearing. Rather than allow the evidence come before the Court, the Government classified the Declaration as Top Secret –SCI and argued that the trial judge had insufficient security clearance to view the document.[11]

It is understandable that the Government would want to avoid the public criticism that may follow from an honest discussion of who Petitioner was and how the Government mistreated him, but this is not a legitimate basis for sealing information in Petitioner's case. For purposes of this motion, once the pre-textual bases for the Government's professed authority to classify and protect information are properly dismissed, all that remains is the Government's simple desire to keep information about Petitioner and the case against him secret, primarily to cover up evidence contradicting its own public misstatements about Petitioner as well as potential evidence of further as-yet-undisclosed government wrongdoing.

Unless the Government can identify a legitimate basis for its request, its interest in secrecy cannot compete with the requirements of openness and transparency that are elementary

---

[11] This is but another example of the Government's abuse of the classification system.

UNCLASSIFIED//FOR PUBLIC RELEASE

to a democracy. *See, e.g.*, Barack Obama, Memorandum for the Heads of Executive Departments and Agencies Re Freedom of Information Act ("A democracy requires accountability, and accountability requires transparency. . . . The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve");[12] *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ("Democracies die behind closed doors").

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court deny the Government's request to deem Petitioner's diary protected in its entirety. Petitioner also respectfully requests that this Court rule on Petitioner's other motions before Court, which have been fully briefed and which, likewise, concern the Government's improper withholding of information from the public, including, for example, Petitioner's *Motion for Relief from Improper Classification*.

Dated: July 14, 2009
Washington, D.C.

Respectfully submitted,

Joseph Margulies
Roderick MacArthur Justice Center
Northwestern University School of Law

---

[12] http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/

10

357 East Chicago Avenue
Chicago, IL 60611
(312) 503-0890

George Brent Mickum IV [Bar No. 396142]
Amanda L. Edwards
Hollingsworth LLP
1350 I Street NW
Washington, District of Columbia 20005
(202) 898-5800

Baher Azmy
Seton Hall Law School
Center for Social Justice
One Newark Center
Newark, NJ 07102
(973) 642-8700

Mark Denbeaux
Denbeaux & Denbeaux
366 Kinderkamach Rd.
Westwood, NJ 07675
(201) 664-8855

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the Court Security Officer for clearance and filing this 14th day of July 2009. My understanding is that the Court Security Officer will serve the government. Once Petitioner's counsel has been notified that the document has been cleared and filed, copies will be served on the following via first class mail:

James Luh
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530

Amanda L. Edwards