IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED WITH THE
COURT SECURITY OFFICER
CSO: _____
DATE: 12/15/09

———————————— x
:
ZAYN AL ABIDIN MUHAMMAD HUSAYN, :
:
Petitioner, :
:
v. : No: 08-cv-1360
:
ROBERT M. GATES, :
:
Respondent. :
:
———————————— x

**REPLY IN SUPPORT OF PETITIONER'S MOTION FOR
SANCTIONS AS A RESULT OF THE GOVERNMENT'S
DELIBERATE SPOLIATION OF MATERIAL EVIDENCE**

In its opposition, Respondent accepts, as he must, that agents of the United States Government destroyed ninety tapes of Petitioner's interrogations. Respondent also accepts, as he must, that the destruction of these tapes contravened repeated warnings and orders by the Executive, Legislative, and Judicial Branches that the tapes be preserved. Respondent likewise accepts, as he must, that these tapes were destroyed not by some rogue, foreign officer, acting unbeknownst to the United States, but at the official direction of the CIA Director of Clandestine Operations, Jose Rodriguez. In the same way, Respondent does not dispute that the destruction was done with a culpable state of mind. The Court may therefore treat these issues as conceded. *See, e.g., M.R.S. Enterprises v. Sheet Metal Workers' International Association, Local 40*, 429 F. Supp. 2d 72, 78 (D.D.C. 2006) (Under Local Rule 7(b), "if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court

may treat those arguments as conceded."); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) (same); *Day v. D.C. Dep't of Consumer and Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.")[1]

Respondent also does not dispute Petitioner's sworn allegation that the tapes included *both* his repeated protestations of innocence, and the eventual admissions by his interrogators that his protestations were correct. And finally, Respondent does not dispute that it currently has documents which memorialize the content of the destroyed tapes. Indeed, as discussed below, he concedes these documents have already been assembled in the course of other litigation. These issues too may be set aside as conceded. *Day, supra*. The undisputed record therefore admits of only one conclusion: the United States has deliberately destroyed material evidence, and this Court should impose the sanctions requested by Petitioner.

Yet Respondent argues otherwise, insisting that its misconduct go unpunished. To advance this argument, Respondent claims the tapes are irrelevant. Although Petitioner challenges the lawfulness of his detention, videotaped admissions by his interrogators that he is in fact innocent are not material—or so Respondent would have the Court believe. Similarly, although Petitioner insists he has done no wrong, tapes that

---

[1] At one point in its opposition, Respondent hints vaguely "that the destruction of the tapes should [not] be attributed to the United States," but to "individuals acting independently." Opposition at 62. Respondent does not elaborate on this odd remark, and the implication is unclear. The United States does not contend, for instance, that someone other than Rodriguez ordered the tapes destroyed, or that Rodriguez was anything other than the CIA Director of Clandestine Operations at the time he gave the order, or that Rodriguez did not act for the ostensible benefit of his employer, the United States. It is axiomatic, of course, that "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) of Agency, When Master is Liable for Torts of His Servants § 219 (1957); *see also Haddon v. United States*, 68 F. 3d 1420, 1423 (D.D.C. 1995) (D.C. Circuit looks to Restatement (Second) of Agency (1957) to determine master's liability for servant's actions). Respondent may be suggesting that Rodriguez or others broke the law when they destroyed the tapes. This may well be the case, and is the subject of a pending criminal investigation. That, however, does not relieve the Government of responsibility, and Respondent does not suggest otherwise.

2

show him screaming his innocence throughout his torture—that show his denial of both the specific and general allegations that Respondent has leveled against him—are simply extraneous.

This argument should find no favor with the Court. In his Motion, Petitioner described at length the harm caused by the unlawful destruction of the tapes. *See* Corrected Memorandum of Law in Support of Petitioner's Motion for Sanctions for the Spoliation of Evidence at 11-14. Of course, a tape that contained an admission by his interrogators that Petitioner was innocent is obviously exculpatory, and Respondent wisely does not argue otherwise. But in addition, Petitioner cited and discussed the several cases that collectively stand for the proposition that tapes of a defendant's in-custody statements are material and must be disclosed when the *circumstances surrounding the creation of those statements confirm their truthful or exculpatory character*. *Id.* at 13-14. In a silence that speaks volumes, Respondent ignores this authority altogether. In short, Respondent's off-hand suggestion that the tapes were somehow irrelevant to this litigation cannot be taken seriously.

Recognizing the flaws in its argument, Respondent advances an alternative: the remedy sought by Petitioner is disproportionate to the wrong. Opposition at 71. Instead of recreating the tapes, Respondent proposes that the Court draw an adverse inference "regarding the contents of the destroyed recordings." *Id.* But Respondent's proposal proves the weakness of its primary position: the inference proposed by Respondent is a meaningful sanction for spoliation *only to the extent the proposition being inferred is relevant to the litigation*. By suggesting this inference, therefore, Respondent

3

inadvertently but correctly acknowledges that both Petitioner's protestations of innocence and the interrogators' admissions are material to the litigation.

In fact, it is Respondent's proposal, and not Petitioner's request for sanctions, that is not proportional to the wrong. The destroyed tapes contained "Petitioner's emphatic denial of participation" in any wrongdoing, as well as the equally significant admission by his interrogators that the denials were true. *Williamson v. Reynolds*, 904 F. Supp. 1529 (E.D. OK 1995), *aff'd on other grounds sub nom. Williams v. Ward*, 110 F. 3d 1508 (10th Cir. 1997). By destroying the tapes, Respondent has deliberately deprived Petitioner of a "powerful tool of *visual* evidence." *Id.* at 1564 (emphasis in original). The loss of this "powerful tool" cannot be remedied by a plain inference that the tapes were precisely as Petitioner alleges. As Judge Kessler recently explained in issuing a civil contempt order against the Government for its failure to abide by a Court order requiring a contemporaneous video-recording of a habeas petitioner's live testimony, "A picture is truly worth 1,000 words and the full import of Petitioner's testimony cannot be gained from the cold, dry transcript alone." *Al-Adahi v. Obama*, Mem. Order at 7, No. 05-0280 [Dkt #509] (Dec. 10, 2009). Only a contemporaneous account that captures what was said by Petitioner and his interrogators, and describes the circumstances under which the statements were made, is sufficient to approximate the wrong that was done. *See, e.g., Kronisch v. United States*, 150 F. 3d 112, 126 (2d Cir. 1988) (in context of spoliation by CIA, sanction should "restor[e] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."); *Vodusek v. Bayliner Marine Corp.*, 71 F. 3d 148, 156 (4th Cir. 1995) (spoliation sanction should "level[] the evidentiary playing field").

Finally, Respondent urges this Court to stay its hand so as not to interfere with the pending investigation being handled by Assistant U.S. Attorney John Durham, who is investigating whether crimes were committed in connection with the destruction of the videotapes. Petitioner has no desire to impede this investigation, but a careful reading of Durham's declaration reveals that Respondent seeks substantially greater restrictions than Durham believes are necessary for his investigation. Durham asks the Court to stay its decision, to refrain from ordering the release of documents, and to refrain from conducting any evidentiary proceedings. Durham Decl. at ¶ 8. Notably, however, he does not object to an order that requires Respondent to *assemble* documents that would be responsive to Petitioner's Motion.

On the contrary, Durham cites approvingly to the course taken by Judge Hellerstein in the FOIA litigation pending before him. *Id.* at 9-12. Judge Hellerstein "made clear that he would not require the CIA *to produce* documents relating to the destruction of the tapes, to the extent that the production would interfere with the criminal investigation." *Id.* at 12 (emphasis added). But in his colloquy with Judge Hellerstein, Durham explicitly agreed that he had no objection to an order that obligated the CIA to *gather and index* the relevant documents; his sole concern was with their release, as the following exchange makes plain:

> Judge Hellerstein: So, I can understand that you would not want me to take any testimony or conduct any proceedings. I agree. But as to documentary identification, I don't think the case has been made that requires me to stay my hand.
>
> Mr. Durham: Yes, your Honor. *As to the Agency actually going and trying to identify the documents, that part of things can proceed along. We have no objection to that.*

Tr. at 20 (emphasis added) *see also id.* at 19 ("Our real concern is not that the Agency be required to assemble those documents. The issue for us would be the production of those documents."). A similar exchange takes place later:

> Judge Hellerstein: So since there would be not actual production, that is giving over of documents that were alive in terms of his work, and since we were not asking for [Redacted—Reason: B], *the logging or the creation of a Vaughn Index for documents that were responsive to the order would not interfere with his work*. To the extent that descriptions did, they could be redacted for the time that there was this sensitivity. Mr. Durham expressed his acceptance of that set of rules. Right, Mr. Durham?
>
> Mr. Durham: Right. Yes, your Honor.

*Id.* at 26 (emphasis added).[2]

In compliance with Judge Hellerstein's order, the Agency has now gathered and indexed the documents "relating to the content of the tapes as well as documents relating to the destruction of the tapes." Durham Decl. at ¶ 9. Indeed, as Petitioner made clear in his opening Memorandum in Support of the Motion for Sanctions, the United States has publicly described these documents in modified Vaughn Indexes filed in the FOIA litigation before Judge Hellerstein. *See* Declaration of John Sifton at ¶¶ 12-20 (describing documents cataloged by the CIA in the modified Vaughn Index ordered by Judge Hellerstein). It follows, therefore, that there is no burden on the United States should it be ordered to gather the same documents for this litigation. Indeed, Respondent does not suggest otherwise. Accordingly, since gathering the documents would not interfere with Durham's investigation, and does not burden the United States, the Court should order the CIA to collect the documents and provide them to the Court *in camera*, in anticipation of a ruling on Petitioner's motion.

---

[2] Notably, Durham suggests that assembling the documents may be a sensible precaution "[t]o the extent that there are documents out there that the Court would be concerned about disappearing *or being otherwise spoliated.*" Tr. at 14.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for sanctions for the spoliation of evidence should be granted.

Dated: December 13, 2009        Respectfully submitted,

                                               Joseph Margulies
                                               Roderick MacArthur Justice Center
                                               Northwestern University School of Law
                                               375 East Chicago Avenue
                                               Chicago, IL 60611
                                               (312) 503-0890

                                               George Brent Mickum IV [Bar No. 396142]
                                               Spriggs & Hollingsworth
                                               1350 I Street NW
                                               Washington, District of Columbia 20005
                                               Telephone: (202) 898-5800
                                               Facsimile: (202) 682-1639

                                               Baher Azmy
                                               Seton Hall Law School
                                               Center for Social Justice
                                               One Newark Center
                                               Newark, NJ 07102
                                               (973) 642-8700

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the Court Security Officer for clearance and filing this 13th day of December 2009. My understanding is that the Court Security Officer will serve the government. Once Petitioner's counsel has been notified that the document has been cleared and filed, copies will be served on the following via first class mail:

James Luh
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530

_____
George Brent Mickum IV