IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN # 10016), *Petitioner.* v. ROBERT M. GATES, *Respondent.* | No. 08-CV-1360 |

## DECLARATION OF RAYMOND BONNER

I, RAYMOND BONNER, declare as follows:

1. I am a professional journalist. I submit this declaration in support of my motion to intervene and to unseal court records in this habeas proceeding. I make this motion in connection with reporting I am currently doing for *ProPublica*, an independent, non-profit online newsroom based in New York.

2. I have been a journalist for more than 35 years. Over the course of my career, I have worked as an investigative reporter and foreign correspondent for the *New York Times*, as a staff writer at *The New Yorker*, and as a contributor to *The New York Review of Books*, among other positions. I have reported on genocide in Rwanda, the conflict in the former Yugoslavia, civil war in El Salvador, and I have reported from Peru, Sudan, Indonesia, Kuwait, Kurdistan, and other parts of the world. I am also the author of four non-fiction books that have grown out of my reporting, including most recently *Anatomy of Injustice: A Murder Case Gone Wrong*, which was published in 2012.

3. In 1996, I was awarded the Louis M. Lyons Award for Conscience and Integrity in Journalism by the Nieman Foundation Fellows at Harvard University. Three years later, in 1999, I received a Pulitzer Prize for my work as part of a *New York Times* team covering sales of American technology to China. I was also a Pulitzer nominee in 2001 for my reporting on the death penalty in America. My first book, *Weakness and Deceit: U.S. Policy and El Salvador*, received the Robert F. Kennedy Book Award in 1985.

**My Interest in This Proceeding**

4. Since 2007, I have focused a great deal of my reporting on issues relating to international security, the U.S. War on Terror, the treatment of terrorist suspects, and U.S. detention practices at Guantanamo Bay, Cuba. Reports I have published on these topics include:

- "The CIA's Secret Torture," (*The New York Review of Books*, January 11, 2007);
- "Forever Guantanamo," (*The New York Review of Books*, April 17, 2008);
- "Former Inmate Says Photos Show Abuse at Guantanamo," (*The New York Times*, July 7, 2009);
- "In Detaining Terror Suspects, U.S. Sloppiness Reigns Supreme," (*The Atlantic*, April 28, 2011);
- "Was Declaring War on Terror a Mistake?" (*The Atlantic*, September 7, 2011); and
- "An Ex-Detainee of the U.S. Describes a 6-Year Ordeal," (*The New York Times*, January 5, 2009, with Jane Perlez and Salmon Masood).

Other articles I have written on these issues appeared in *Politico, The New York Times, The Economist, The National Interest,* and *The Guardian.*

5. I have also written about the important role played by journalists in informing the public about national security practices and policies, and the deterrent effect of public disclosure on governmental abuse. My writing on these topics includes, for example:

- "The Media and 9/11: How We Did" (*The Atlantic*, September 9, 2011);
- "After 9/11, We Were All Judith Miller" (*Politico*, April 21, 2015);

- "The New Press Watchdogs: Judges?" (*The Atlantic*, July 29, 2011); and,
- "How Twitter Thwarts Censorship of the Press" (*The Atlantic*, May 23, 2011).

A few of my articles have also covered media freedom in the context of national security surveillance.

**The Public Interest in This Proceeding**

6. The public has a substantial strong interest in information relating to the Guantanamo Bay detentions of suspected terrorists, allegations of the abuse of power and violation of rights in executing the War on Terror.

7. Nearly a year ago, on May 12, 2015, I wrote a story for *ProPublica* about the detention of terrorist suspect Abu Zubaydah at Guantanamo Bay and the status of his habeas petition, brought under the name of Zayn al Abdin Muhammad Husayn. Entitled, "'Incommunicado' Forever: Gitmo Detainee's Case Stalled For 2,477 Days And Counting," this article reported on the virtual standstill in Zubaydah's legal proceedings for—at that point—more than six years. (A true and correct copy of this article is attached as Exhibit A.) The article noted that Judge Roberts had failed to rule on many motions in the case, including several preliminary motions filed at the very outset of the proceeding. I could find no explanation in the court's public docket for these highly unusual delays.

8. In response to this article, I received considerable feedback from readers voicing various concerns and requesting further reporting about the cause of Zubaydah's protracted proceedings. I believe that the public's interest in this case derives in part from the fact that Zubaydah is one of the most well-known Guantanamo Bay detainees, and from public descriptions of the torture to which Zubaydah was subjected after being taken into CIA custody. His harsh treatment has been widely reported by several international tribunals and human rights organizations and in the publicly-released *Study of the Central Intelligence Agency's Detention*

3

*and Interrogation Program*, produced by the Senate Select Committee on Intelligence (the "2014 Senate Report").

**Denial of Public Access to the Records of This Proceeding**

9.  Virtually none of the pleadings or motion papers filed in this proceeding are available for public inspection. Several docket entries indicate that the records are "SEALED," including six records that I seek to unseal through this motion. The six sealed records that are the subject of my motion for access are specifically identified in Exhibit B annexed hereto. I could locate no findings of fact justifying the basis for denying public access to these six sealed records.

10. The Government's Public Factual Return (Dkt. No. 204) setting forth its justification for continued confinement of Zubaydah is not sealed and is publicly available, but only in a highly redacted form that renders large sections impossible to discern. I could locate nothing in the docket indicating that these redactions have been reviewed by the Court, and no findings of fact justifying the basis for the redactions to this key pleading by the Government. Through this motion, I also seek to unseal all material that has been redacted from the publicly available Factual Return.

11. Finally, 57 records listed in the docket as having been filed are not publicly available, even though there is no indication that they have been sealed by any court order. These include two court opinions that are described only as "classified," six records whose docket entries indicate only that the items were submitted *ex parte* and *in camera*, and many other items whose docket entry provides only a "Notice of Filing." Through this motion I seek to unseal 28 of these unavailable records that are identified in Exhibit C annexed hereto.

12. While I understand that a Protective Order in this case requires a Notice to be noted on the docket whenever a document is filed, once filed that document is supposed to undergo classification review and a public version (redacted to remove classified material) is supposed to be made available in a timely manner. This review and public disclosure has not been completed for many records in this case, including records filed as long ago as 2008.

13. Through this motion, I respectfully request the Court to unseal all sealed records identified in Exhibits B and C, and also to release an unredacted version of the Public Factual Return (Dkt No. 204).

Executed at New York, New York, this 7th day of April 2016

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Raymond Bonner