**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN # 10016),** | ) ) ) | |
| *Petitioner.* | ) ) | |
| v. | ) ) | **No. 08-CV-1360** |
| **ASHTON CARTER,** | ) ) ) | |
| *Respondent.* | ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO UNSEAL BY RAYMOND BONNER**

David A. Schulz
Hannah Bloch-Wehba
Steven Lance (law student intern)
Andrew Udelsman (law student intern)
Media Freedom & Information Access Clinic
Abrams Institute for Freedom of Expression
Yale Law School
P.O. Box 208215
New Haven, CT 06520
Phone: 212-850-6103
Fax: 212-850-6299

Chad Bowman
Levine Sullivan Koch & Schulz, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Phone:  202-508-1100
Fax:  202-861-8988

*Counsel for Movant Raymond Bonner*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    JUDICIAL RECORDS ARE SUBJECT TO THE FIRST AMENDMENT RIGHT
OF ACCESS, EVEN WHEN THEY CONTAIN CLASSIFIED INFORMATION .......... 2

    A.    Classified Information Is Not Exempt From the Constitutional Access Right ....... 2

        1.    The government misapplies the "history and logic" test to the
content of a record rather than the type of proceeding involved. ............... 2

        2.    The unilateral Executive authority to seal court records claimed by
the government would violate the constitutional separation of powers ...... 5

    B.    The Constitutional Standard Must Be Satisfied To Seal A Court Record
That Contains Classified Information .................................................... 6

        1.    The Executive's classification standards do not automatically satisfy
the controlling First Amendment standard. ................................................. 7

        2.    The Executive is entitled to deference regarding national security,
but to seal a court record it must logically and plausibly demonstrate
a substantial probability of harm to national security................................ 8

II.    THE GOVERNMENT HAS FAILED TO CARRY ITS CONSTITUTIONAL
BURDENS TO OVERCOME THE FIRST AMENDMENT ACCESS RIGHT .............. 9

    A.    The Government Fails to Logically and Plausibly  Demonstrate a Substantial
Likelihood of Harm to National Security ............................................... 9

        1.    The government unjustifiably continues to censor well-known
information from the Court's records. ...................................................... 10

        2.    The government's identification of broad categories of sensitive
information fails to justify its redactions. ................................................. 14

        3.    The government's categories are improperly vague and speculative. ....... 15

    B.    The Government Has Failed Even to Show That the Contested Information
Is Properly Classified ........................................................................ 21

        1.    Much of the redacted information withheld could not properly
be classified under Executive Order 13526. ............................................ 21

2.      Changes in classification status mean that information redacted
        earlier may no longer be properly classified............................................ 22

3.      The CIA's documented misuse of its classification
        authority regarding Abu Zubaydah underscores the
        need for judicial review of these records. .................................................. 23

C.      The Government Has Failed to Justify Redacting Non-Classified Information... 24

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*ACLU v. C.I.A,*
    710 F.3d 422 (D.C. Cir. 2013) ....................................................................... 9

*Afshar v. Dep't of State,*
    702 F.2d 1125 (D.C. Cir. 1983) ................................................................ 10, 11

*Allen v. C.I.A,*
    636 F.2d 1287 (D.C. Cir. 1980) ..................................................................... 8

*Bismullah v. Gates,*
    501 F.3d 178 (D.C. Cir. 2007) .................................................................... 5, 7

*Campbell v. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ........................................................................ 8

*CBS, Inc. v. United States Dist. Ct. for Cent. Dist. of Cal.,*
    765 F.2d 823 (9th Cir. 1985) ...................................................................... 12

*Cooper v. Aaron,*
    358 U.S. 1 (1958) ......................................................................................... 5

*Dhiab v. Obama,*
    70 F. Supp. 3d 486 (D.D.C. 2014) ........................................................ 4, 5, 8, 9

*Globe Newspaper Co. v. Super. Ct.,*
    457 U.S. 596 (1982) ................................................................................ 3, 16

*Husayn (Abu Zubaydah) v. Poland,*
    Appl. No. 7511/13 (Eur. Ct. H.R. July 24, 2014) ........................................ 12

*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records,*
    585 F. Supp. 2d 83 (D.D.C. 2008) ................................................................. 6

*In re Application of The Herald Co.,*
    734 F.2d 93 (2d Cir. 1984) .......................................................................... 12

*In re Grand Jury Subpoena, Judith Miller,*
    493 F.3d 152 (D.C. Cir. 2007) .................................................................... 12

*In re Guantanamo Bay Detainee Litigation,*
    624 F. Supp. 2d 27 (D.D.C. 2009) ............................................................. 2, 5

*In re Washington Post Co.,*
    807 F.2d 383 (4th Cir. 1986) ............................................................... passim

*Marbury v. Madison,*
    1 Cranch 137 (1803) ..................................................................................... 5

*McGehee v. Casey,*
    718 F.2d 1137 (D.C. Cir. 1983) ................................................................. 7, 8

*Morley v. C.I.A.,*
    508 F.3d 1108 (D.C. Cir. 2007) .................................................................... 7

*N.Y. Times v. Dep't of Justice,*
    756 F.3d 100 (2d Cir. 2014)...................................................................... 9

*Nixon v. Warner Commc'ns, Inc.,*
    435 U.S. 589 (1978)............................................................................... 6

*Parhat v. Gates,*
    532 F.3d 834 (D.C. Cir. 2008)................................................................ 15

*Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cty.,*
    478 U.S. 1 (1986)........................................................................... passim

*United States v. Aref,*
    533 F.3d 72 (2d Cir. 2008)..................................................................... 4

*United States v. El-Sayegh,*
    131 F.3d 158 (D.C. Cir. 1997)............................................................ 3, 5

*United States v. Pelton,*
    696 F. Supp. 156 D. Md. 1986).............................................................. 4

*United States v. Reynolds,*
    345 U.S. 1 (1953)................................................................................. 6

*United States v. Robel,*
    389 U.S. 258 (1967).............................................................................. 8

*United States v. Rosen,*
    487 F. Supp. 2d 703 (E.D. Va. 2007) ................................................... 4, 5

*Wash. Post v. Robinson,*
    935 F.2d 282 (D.C. Cir. 1991)............................................................ 6, 7

**Statutes**

42 U.S.C.A. § 2000dd-2 (West 2016)................................................................ 18

Classified Information Procedures Act, 18 U.S.C. App. 3 (2000)............................ 4

National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, Title X, Sec. 1045
    (2015)............................................................................................. 19

**Other Authorities**

48 Hours, *The Spymasters - CIA in the Crosshairs*, CBS News (May 21, 2016)
    http://www.cbsnews.com/news/48-hours-presents-
    the-spymasters-cia-in-the-crosshairs/ ..................................................... 19

C.I.A., *Office of the Inspector Gen., Counterterrorism Detention and Interrogation Activities
    (September 2001 – October 2003)* (May 7, 2004)........................................ 11

Carol J. Williams, *Poland feels sting of betrayal over CIA 'black site'*, L.A. Times (May 10,
    2015), http://www.latimes.com/world/europe/la-fg-poland-cia-blacksite-20150510-
    story.html ......................................................................................... 12

Dan Eggen & Walter Pincus, *FBI, CIA Debate Significance of Terror Suspect:*
    *Agencies Also Disagree On Interrogation Methods*, Wash. Post (Dec. 18, 2007),
    http://www.washingtonpost.com/wpdyn/content/article/2007/12/17/
    AR2007121702151_pf.html ................................................................................ 12, 14

Dep't of Justice, Office of Prof'l Responsibility, *Report: Investigation into the Office of Legal*
    *Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's*
    *Use of "Enhanced Interrogation Techniques"on Suspected Terrorists* (July 29, 2009).. 12

Dep't of Justice, *Office of the Inspector Gen., A Review of the FBI's Involvement*
    *and Observations of Detainee Interrogations in Guantanamo Bay,*
    *Afghanistan, and Iraq* (2008)....................................................................................... 11

Int'l Comm. of the Red Cross, *ICRC Report on the Treatment of Fourteen "High Value*
    *Detainees" in CIA Custody* (Feb. 2007)........................................................................ 12

James Risen & Matt Apuzzo, *C.I.A., on Path to Torture, Chose Haste Over Analysis*, N.Y. Times
    (Dec. 15, 2014), http://www.nytimes.com/2014/12/16/us/politics/cia-on-path-to-torture-
    chose-haste-over-analysis-.html..................................................................................... 20

Joby Warrick, Peter Finn & Julie Tate, *Red Cross Described 'Torture' at CIA Jails*,
    Wash. Post (Mar. 16, 2009), http://www.washingtonpost.com/wp-
    dyn/content/article/2009/03/15/AR2009031502724.html ................................................ 13

John O. Brennan, *Memorandum for the Honorable Dianne Feinstein: CIA Comments on the*
    *Senate Select Committee on Intelligence Report on the Rendition, Detention, and*
    *Interrogation Program* (June 27, 2013)............................................................................ 19

Jonathan Adams, *Red Cross report says detainees at CIA 'black sites' were tortured*,
    Christian Science Monitor (Mar. 16, 2009), http://www.csmonitor.com/
    World/terrorism-security/2009/0316/p99s01-duts.html .................................................... 13

Katherine Eban, *Rorschach and Awe, Vanity Fair* (July 2007),
    http://www.vanityfair.com/news/2007/07/torture200707................................................. 20

Mark Danner, *The Red Cross Torture Report: What It Means*, N.Y. Rev. of Books
    (Apr. 30, 2009), http://www.nybooks.com/articles/2009/04/30/
    the-red-cross-torture-report-what-it-means/ ................................................................... 13

Mark Tran, *CIA medics joined in Guantánamo torture sessions, says Red Cross*,
    Guardian (Apr. 7, 2009), https://www.theguardian.com/world/2009/apr/07/
    cia-medics-guantanamo-torture-red-cross ...................................................................... 13

Michael Isikoff, *Ali Soufan Breaks his Silence*, Newsweek (Apr. 24, 2009),
    http://www.newsweek.com/ali-soufan-breaks-his-silence-77243 ................................... 12

Office of Medical Services, CIA, *Summary and Reflections of Chief of Medical Services on OMS*
    *Participation in the RDI Program* (partially declassified and released on June 13, 2016),
    https://www.cia.gov/library/readingroom/document/6541727................................................. 18

Paul Reynolds, *Report claims CIA used 'torture'*, BBC News (Mar. 16, 2009),
    http://news.bbc.co.uk/2/hi/americas/7945783.stm......................................................... 13

*Red Cross report called U.S. practices 'torture'*, L.A. Times (Mar. 16, 2009),
http://articles.latimes.com/2009/mar/16/nation/na-torture16 ................................................. 13

*Red Cross report describes "torture" at CIA jails*, Reuters (Mar. 16, 2009),
http://www.reuters.com/article/us-usa-torture-redcross-idustre52f0oy20090316 ................... 13

*Red Cross: Torture Committed At CIA Sites*, CBS News (Mar. 16, 2009),
http://www.cbsnews.com/news/red-cross-torture-committed-at-cia-sites/.............................. 13

S. Rep. 113-288, S. Select Comm. on Intelligence, *Committee Study
of the Central Intelligence Agency's Detention and Interrogation Program*,
(declassified and released Dec. 3, 2014).......................................................................... passim

Scott Shane & Mark Mazzetti, *In Adopting Harsh Tactics, No Look at Past Use*, N.Y. Times
(Apr. 21, 2009), http://www.nytimes.com/2009/04/22/us/politics/22detain.html ................... 18

Scott Shane, *Report Outlines Medical Workers' Role in Torture*, N.Y. Times (Apr. 9, 2009),
http://www.nytimes.com/2009/04/07/world/07detain.html ...................................................... 13

*Secret Report on CIA Jails*, C-SPAN (Mar. 17, 2009),
https://www.c-span.org/video/?284672-7/secret-report-cia-jails ............................................ 13

Statement of Interest of the United States, *Salim v. Mitchell*, ___ F. Supp. 3d. ___
(E.D. Wash. Apr. 22, 2016) No. 2:15-cv-00286-JLQ, ECF No. 33 ....................................... 22

U.N. Comm. Against Torture, 53d Sess., 3d-5th Periodic Rep., United States,
*Opening Statement, Tom Malinowski, Assistant Secretary, Democracy Human Rights and
Labor, U.S. Dep't of State*, CAT/C/USA/3-5 (Nov. 12-13, 2014), http://bit.ly/2eGM78x ...... 19

*Un rapport de la Croix-Rouge évoque des "tortures" dans les prisons secrètes de la CIA*,
Le Monde (Mar. 16, 2009), http://bit.ly/2fxruei ...................................................................... 13

*What Went Wrong: Torture and the Office of Legal Counsel in the Bush Administration:
Hearing Before the Subcomm. on Admin. Oversight and the Courts
of the S. Comm. on the Judiciary*, 111th Cong. (2009)
(statement of Ali Soufan, Chief Executive Officer, Soufan Group LLC) .............................. 18

**Executive Orders**

Exec. Order No. 13,491, 74 Fed. Reg. 4893 (Jan. 22, 2009)....................................................... 20

Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009)............................................... 8, 23, 26

## PRELIMINARY STATEMENT

The government's opposition confirms the lack of any proper legal basis for continuing its fifteen-year sustained effort to hide from the public all information about its treatment of petitioner Abu Zubaydah.  Seven months ago, journalist Raymond Bonner made this motion seeking, *inter alia,* to unseal 36 court records.[1]  Pursuant to this court's April 22, 2016 order, the government has, with considerable delay, reviewed and filed new public versions of 33 of those documents.[2]  Of the 36 records Bonner moved to unseal, 14 are no longer at issue because the government has released them in full.[3]  The remaining 22 records, however, contain significant redactions that remain entirely unjustified.[4]

As demonstrated in Bonner's initial memorandum, the First Amendment right of access attaches to these 22 records, and the government's opposition establishes no proper basis for withholding any information from them.  The government argues that classified information in these records must necessarily be sealed, either because it is categorically exempt from the constitutional access right or because classification automatically justifies limiting that right. The government is wrong on both counts.  Its indefensible claim of mandatory sealing for court records containing any information classified by the Executive fundamentally violates both the settled constitutional access right standards and basic separation of powers principles.

---

[1] Bonner's motion included one additional record that the government had later released without referring to the original docket number.  *See* ECF No. 28 (public version of sealed ECF No. 10).

[2] ECF Nos. 50-2 and 215 have not been re-filed; ECF No. 369 has not been re-reviewed pursuant to
[2] ECF Nos. 50-2 and 215 have not been re-filed; ECF No. 369 has not been re-reviewed pursuant to current classification standards.  *See* Resp't's Notice Regarding Re-Review of Documents Encompassed by April 22, 2016 and June 10, 2016, Orders, ECF No. 434.

[3] *See* ECF Nos. 323, 324, 325, 326, 327, 328, 329, 337, 339, 348, 349, 358, 360 & 367.

[4] The records still in dispute are ECF Nos. 50-2, 215, 333, 340, 341, 350, 351, 352, 353, 354, 356, 357, 359, 361, 362, 363, 364, 365, 366, 368, 369 & 372.

1

While the Executive Branch deserves substantial deference to its concerns regarding national security, the government seriously overreaches in demanding unquestioning judicial acquiescence to its decisions about the need to seal court records.  Rather, the government was required to provide this Court with a "rational and plausible" explanation as to how public access to the specific information in these judicial records would create a "substantial probability of harm" to national security.  It made no such showing and the motion to unseal should be granted.

## ARGUMENT

I. **JUDICIAL RECORDS ARE SUBJECT TO THE FIRST AMENDMENT RIGHT OF ACCESS, EVEN WHEN THEY CONTAIN CLASSIFIED INFORMATION**

The government cannot dispute that the public has a constitutional right of access to the judicial records in this habeas proceeding—that is the law of this case.  *See In re Guantanamo Bay Detainee Litigation*, 624 F. Supp. 2d 27, 36-37 (D.D.C. 2009) ("*Detainee Litig. I*").  The government's contention that classified information in those records must nonetheless be automatically sealed, either because information so-designated by the Executive is exempt from the constitutional right or because classification necessarily overcomes it, is entirely misdirected.

A. **Classified Information Is Not Exempt From the Constitutional Access Right**

1. **The government misapplies the "history and logic" test to the content of a record rather than the type of proceeding involved.**

In arguing that the constitutional access right never applies to classified information, the government fundamentally misconstrues the controlling "history and logic" test that defines where the access right exists.  *See* Bonner Mem. in Supp. of Mot. to Intervene and Unseal 9-10, ECF No. 319 ("Bonner Mem.").  Because the right of access applies to these proceedings, it necessarily extends to all records filed in this case that are essential for the public to understand the nature of the proceedings and what transpires in them.  *Id.* at 10.  The government errs in applying the "history and logic" test to the content of specific records and concluding that no

2

right exists for classified information because there is "no historical tradition of access to classified information."  *See* Resp't Mem. in Opp'n to Mot. to Unseal 22. ECF No. 411 ("Opp."). As the government acknowledges, the existence of the access right does not require a historic tradition of access to *the substance of the information* involved in a proceeding, but rather turns upon whether "the *place and process* . . . have [] been open to the press and general public." *Id.* (emphasis added) (quoting *Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cty.*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*")).

Indeed, the government's content-based approach was expressly rejected by the Supreme Court in *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982) ("*Globe Newspaper*").  In that case, Massachusetts argued that the access right did not apply to the testimony of a minor victim of a sex crime because such testimony had not historically been open. *Id.* at 605 n.13.  The Court flatly rejected that content-based approach as confusing the question of whether the right of access *exists* with whether the right "can be restricted" for a compelling reason. *Id.*  So also here, the government misapplies the history and logic test to the content of a proceeding (classified information) rather than to the type of proceeding (civil litigation).

*United States v. El-Sayegh* is not to the contrary.  131 F.3d 158 (D.C. Cir. 1997); *see* Opp. 23.  In that case, the D.C. Circuit simply held that an unconsummated plea agreement—an agreement revoked before the court acted upon it—did not constitute a judicial record.  *El-Sayegh* did not hold that a judicial record may be exempt from the access right depending upon its content—just the opposite.  *See El-Sayegh*, 131 F.3d at 163 (holding that the existence of a public right of access to a document filed with the court turns upon "the role it plays in the adjudicatory process").  The records at issue here, pleadings and motions in a habeas proceeding, are indisputably judicial records to which the right of access applies.  *See* Bonner Mem. 10.

The government's argument that classified information is exempt from the right of access is contradicted by every court that has squarely addressed the issue.  As the Fourth Circuit explained, "[a] blind acceptance by the courts of the government's insistence on the need of secrecy . . . would impermissibly compromise the independence of the judiciary and open the door to possible abuse."  *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986); *see also United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) (reviewing classified documents in camera to assess whether sealing was necessary); *Dhiab v. Obama*, 70 F. Supp. 3d 486, 496 (D.D.C. 2014) (holding that classification "is not sufficient to defeat the public's right"), *appeal docketed*, Nos. 16-5011, 16-5012 (D.C. Cir. argued Sept. 8, 2016); *United States v. Rosen*, 487 F. Supp. 2d 703, 716-17 (E.D. Va. 2007) ("government's *ipse dixit* that information is damaging to national security is not sufficient to close the courtroom doors"); *United States v. Pelton*, 696 F. Supp. 156, 159 (D. Md. 1986) ("a mere assertion of 'national security'" is not "sufficient to overcome . . . important first amendment values").  The government ignores this consistent line of precedent flatly rejecting its claim that classification automatically requires the sealing of a court record.

As previously demonstrated, the provisions for handling classified information at a criminal trial within the Classified Information Procedures Act, 18 U.S.C. App. 3 (2000) ("CIPA"), confirm that Congress also understands that the presence of classified information is not automatically sufficient to justify closing a court proceeding or sealing a judicial record.  *See* Bonner Mem. 15-16.  The government mistakenly points to CIPA's "layers of protection" for classified information as evidence that there is no historical tradition of access to classified information.  Opp. 25.  In fact, CIPA illustrates that criminal trials cannot automatically be closed whenever classified information is to be offered into evidence, so procedures were needed

to avoid the unnecessary disclosure of such information. *See In re Wash. Post*, 807 F.2d at 393

(no automatic sealing of classified affidavit); *Rosen*, 487 F. Supp. 2d at 720 (even under CIPA,

sealing "would have to satisfy the *Press-Enterprise II* test").

Nor is the government aided by pointing to *dicta* in *Detainee Litigation I*.  Opp. 16

(quoting *Detainee Litig. I*, 624 F. Supp. 2d at 35-37).  While Judge Hogan recognized that there

can be danger in permitting access to classified information in a court record, he also recognized

that classified information was not at issue during that stage of litigation.  *Detainee Litig. I*, 624

F. Supp. 2d at 37.  There is simply no legal precedent to support the government's claim that

classified information in a judicial record is exempt from the First Amendment access right.

### 2. The unilateral Executive authority to seal court records claimed by the government would violate the constitutional separation of powers.

The government's claim that "there is no legal basis" for a court to review executive

branch decisions about the classification of judicial records, Opp. 2, also violates basic principles

of separation of power.  As recognized in *Dhiab*, the government's argument, "if accepted,

would displace the Court's power to seal its own record." 70 F. Supp. 3d at 495.  But the Court

of Appeals repeatedly has made clear that "it is the court, not the Government, that has discretion

to seal a judicial record." *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007); *see also El-

Sayegh*, 131 F.3d at 160 (same).

The government's argument further elides the fact that its classification authority derives

from an executive order.  To accept the government's position would be to give the Executive

unilateral power to determine when the First Amendment access right applies.  The Supreme

Court has rejected that premise since *Marbury v. Madison*, 1 Cranch 137, 177 (1803) ("It is

emphatically the province and duty of the judicial department to say what the law is."); *see also

Cooper v. Aaron*, 358 U.S. 1, 18 (1958) ("[T]he federal judiciary is supreme in the exposition of

the law of the Constitution.").  The government equally ignores a long line of precedent

establishing that the judiciary controls its own records.  *See Nixon v. Warner Commc'ns, Inc.*,

435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files.");

*United States v. Reynolds*, 345 U.S. 1,  9-10 (1953) ("Judicial control over the evidence in a case

cannot be abdicated to the caprice of executive officers.").

### B.    The Constitutional Standard Must Be Satisfied To Seal A Court Record That Contains Classified Information

Because the constitutional access right applies to the records of this case, the government

bears the burden to justify any sealing or redaction of records.  Bonner Mem. 12; *see Robinson*,

935 F.2d at 288; *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*,

585 F. Supp. 2d 83, 87 (D.D.C. 2008).  Under the controlling *Press-Enterprise II* standard this

requires a demonstration that (1) disclosure would result in a *substantial probability* of prejudice

to a compelling interest, (2) there is no alternative to sealing, (3) sealing will be effective in

protecting against the threatened harm, and (4) the restriction is narrowly tailored.  Bonner Mem.

12-14; *see Press-Enterprise II*, 478 U.S. at 13-14.

These standards are not automatically satisfied just because information is "properly

classified," as the government contends.  Opp. 18.  Rather, to carry its burden, the government

must present clear and specific evidence sufficient for the court to make "individual findings"

establishing that the First Amendment access right is overcome, even when national security is

the asserted basis for sealing.  Bonner Mem. 14; *see also Robinson*, 935 F.2d at 289 (trial court

must articulate "specific findings on the record" demonstrating that sealing is both "narrowly

tailored and essential to preserve a compelling government interest").  The classification

standard in many instances is too lenient, and overclassification is too rampant, to conclude that

classified information always satisfies the First Amendment standard.  *See* Bonner Mem. 16-18.

**1.  The Executive's classification standards do not automatically satisfy the
controlling First Amendment standard.**

Information can be considered "properly classified" if disclosure "reasonably could be
expected" to cause any "damage to the national security."  Exec. Order No. 13,526 § 1.2(a)(3),
75 Fed. Reg. 707 (Dec. 29, 2009).  In contrast, the First Amendment requires a "*substantial
probability*" of harm to overcome the public access right.  *Press-Enterprise II*, 478 U.S. at 14;
*see also, e.g.*, *In re Wash. Post*, 807 F.2d at 392-93 (requiring "substantial probability" of harm
to national security to support sealing a classified affidavit); *Robinson*, 935 F.2d at 290-92
(requiring "substantial probability" of harm to seal a plea agreement).  Indeed, *Press-
Enterprise II* specifically rejected the "reasonable likelihood" standard as insufficiently
protective of the public's constitutional access right.  478 U.S. at 14.

The test governing a request to limit the constitutional access right is more stringent than
the standard for denying a FOIA request for access to classified information.  In a FOIA case, a
court needs "a plausible assertion that information is properly classified" to deny the statutory
right of access to Executive Branch records.  *Morley v. C.I.A.*, 508 F.3d 1108, 1124 (D.C. Cir.
2007).  Where the constitutional access right exists, there must be an independent judicial finding
of a substantial probability of harm to justify secrecy.[5]

Nor is the "properly classified" standard used in censorship review cases like *McGehee v.
Casey*, 718 F.2d 1137, 1139 (D.C. Cir. 1983), applicable here.  In such cases, the plaintiff has
contractually agreed not to disclose any properly classified information and thus has waived any
First Amendment right to publish such information by signing a non-disclosure agreement.  In

---

[5] The government miscites a comment from *Bismullah* that it "is not within the role of the courts to
second-guess executive judgments made in furtherance of that branch's *proper role*." Opp. 19 (emphasis
added).  In *Bismullah*, the government sought to avoid compelled disclosure in discovery of records *held
by* the Executive and was acting "in furtherance of" the role of that Branch. The records here, by contrast,
are held by the judiciary, and sealing them is not within the *Executive's* "proper role." *See Bismullah*, 501
F.3d at 188 ("It is the court, not the government, that has discretion to seal a judicial record . . . ").

*McGehee*, therefore, the question presented was whether the information at issue had been "properly classified," and the court's ruling "merely upholds the CIA secrecy agreement." *Id.* at 1147 n.22.  Unlike that situation, when the First Amendment right of access is at stake, "the fact that the Government has unilaterally deemed information classified is not sufficient to defeat the public's right." *Dhiab*, 70 F. Supp. 3d at 496.

      **2.    The Executive is entitled to deference regarding national security, but to seal a court record it must logically and plausibly demonstrate a substantial probability of harm to national security.**

Contrary to the government's mischaracterization, Bonner does not ask this Court to "disregard the determinations" of intelligence officers.  *See* Opp. 2.  Courts properly should accord substantial deference to those determinations.  *See* Bonner Mem. 15.  "However, deference is not equivalent to acquiescence." *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998).  National security declarations need not be credited if they "lack of detail and specificity," are made in "bad faith," or fail to "account for contrary record evidence." *Id.*  This approach recognizes the Executive's expertise while also ensuring that a "talismanic incantation" of national security does not become "an end in itself, justifying any exercise of [governmental] power designed to promote" national security at the expense of "the democratic ideals enshrined in its Constitution." *United States v. Robel*, 389 U.S. 258, 263-64 (1967); *see also Allen v. C.I.A*, 636 F.2d 1287, 1292 (D.C. Cir. 1980) (rejecting as "defective" an agency declaration that lacked specificity), *abrogated on other grounds* by *Founding Church of Scientology of Wash. D.C. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983).

To afford appropriate deference to the Executive in the realm of national security, courts apply a low evidentiary standard, and accept the Executive's assessment of a potential national security risk so long as it is both "rational and plausible." *McGehee*, 718 F.2d at 1149.  This approach is very deferential.  It does not require clear and convincing proof, or even a

demonstration that the risk of harm is more likely than not, but it does require an evidentiary

showing that is at least logical and plausible on its face.  To satisfy the *Press-Enterprise II*

standard here, the government was required to make a "rational and plausible" showing that

access creates a substantial probability of harm to national security.  *In re Wash. Post*, 807 F.2d

at 392; *Dhiab*, 70 F. Supp. 3d at 496.  It failed to do so, and the records at issue should therefore

be unsealed.

       Contrary to the government's contention, ordering the release of still-classified

information would not be "unprecedented."  Opp. 3.  Courts applying the "logical and plausible"

evidentiary standard have compelled the government to release information for failing the

"properly classified" test governing FOIA access claims and for failing the "substantial

probability of harm" test governing the First Amendment access right.  *See ACLU v. C.I.A*, 710

F.3d 422, 429 (D.C. Cir. 2013) (rejecting national security claim in FOIA case); *N.Y. Times v.

Dep't of Justice*, 756 F.3d 100, 120 (2d Cir. 2014) (same); *Dhiab*, 70 F. Supp. 3d at 499

(rejecting national security claim for sealing records in a Guantanamo habeas proceeding).

## II.    THE GOVERNMENT HAS FAILED TO CARRY ITS CONSTITUTIONAL BURDENS TO OVERCOME THE FIRST AMENDMENT ACCESS RIGHT

       The government's opposition fails to carry its burdens.  The government persists in

unjustifiably concealing entirely public information.  And its attempt to justify censoring the

record by offering up broad and vague categories of purportedly harmful information, supported

only by speculative and conclusory assertions, is entirely insufficient to deny the public's

constitutional right of access to the records of this habeas proceeding.

### A.    The Government Fails to Logically and Plausibly Demonstrate a Substantial Likelihood of Harm to National Security

       The government fundamentally fails to make a logical and plausible showing that release

of the 22 records remaining at issue would create a substantial probability of harm to national

security.  Merely asserting that national security is implicated without meaningful explanation or clarification—as the government repeatedly does—is woefully inadequate under the First Amendment.  "History teaches us," as the Fourth Circuit has noted, "how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions."  *In re Wash. Post*, 807 F.2d at 391.

### 1. The government unjustifiably continues to censor well-known information from the Court's records.

A fundamental error of law that permeates the government's position is its belief that entirely public information can properly be removed from the Court's records if that information remains classified by the Executive.  It cannot, except possibly in the narrow situation where the government demonstrates that disclosing such public-but-still-classified information in the context of a lawsuit would plausibly create a substantial probability of harm to national security.  On the public record here, the government makes no such showing.

The government invokes the "official acknowledgment" theory developed in FOIA litigation as justification for sealing entirely public information in this case.  Opp. 41.  Under that theory, publicly reported information can remain properly classified so long as the information has not been officially acknowledged.  *Id.*; *see, e.g., Afshar v. Dep't of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983).  The theory is unavailing here.  This is not a FOIA case and the issue is not whether information is properly classified; the issue is whether the government can plausibly demonstrate a substantial risk of harm from the disclosure of information that is already widely known.

The government cites no First Amendment access case applying the "official acknowledgment" rationale.  *See* Opp. 41 (citing two FOIA cases).  But to apply that theory here, where the *Press-Enterprise II* standard applies, the government would need to make a plausible

and logical showing that the *incremental* harm that might possibly result from a disclosure of already public information in this litigation constitutes a sufficiently compelling national security risk to justify limiting the public's right to know the evidence and arguments being made in this important lawsuit.  Attempting to make this necessary showing, the government urges that when information "is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security."  Opp. 41 (quoting *Afshar*, 702 F.2d at 1130).  This conclusory and speculative suggestion of possible harm is entirely insufficient.

The details of Zubaydah's capture, rendition, detention, transfers to multiple CIA black sites, torture and abusive interrogation have been made public by multiple authoritative governmental and non-governmental sources.  *See* Bonner Mem. 3-5, 21-22.  A great deal has been disclosed about Zubaydah's ordeal in U.S. custody, from his capture by U.S. and Pakistani forces in Faisalabad to his extraordinary rendition and torture at CIA black sites in Poland, Thailand, and elsewhere, along with the government's later conclusion that his harsh treatment was unnecessary and ineffective, as laid out in some detail in Bonner's initial motion papers.  *Id.*

Many of these disclosures are from official government sources, including reports by the Select Senate Committee on Intelligence,[6]  Department of Justice, Office of the Inspector General,[7] Central Intelligence Agency, Office of the Inspector General,[8] and Department of

---

[6] S. Rep. 113-288, S. Select Comm. on Intelligence, *Committee Study of the Central Intelligence Agency's Detention and Interrogation Program*, (declassified and released Dec. 3, 2014) [excerpted at ECF No. 317-7] (hereinafter "*SSCI Report*").

[7] Dep't of Justice, Office of the Inspector Gen., *A Review of the FBI's Involvement and Observations of Detainee Interrogations in Guantanamo Bay, Afghanistan, and Iraq* (2008) [excerpted at ECF No. 317-8].

[8] C.I.A., Office of the Inspector Gen., *Counterterrorism Detention and Interrogation Activities (September 2001 – October 2003)* (May 7, 2004), https://fas.org/irp/cia/product/ig-interrog.pdf.

Justice, Office of Professional Responsibility.[9]  Others are reported by reliable international

organizations like the International Committee of the Red Cross[10] and European Court of Human

Rights,[11] and additional facts have been reported by reputable news sources.[12]  It is neither

logical nor plausible that re-disclosing similar information in the records of this case could create

a substantial risk of harm to national security.  *See Robinson*, 935 F.2d at 291-92 (finding that

disclosure posed no additional threat in light of already public information); *In re Application of*

*the Herald Co.*, 734 F.2d 93, 101 (2d Cir. 1984) (denying closure where information sought "to

be kept confidential ha[d] already been given sufficient public exposure"); *CBS, Inc. v. United*

*States Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985) (noting that information

need not be withheld when it "might easily be surmised from what is already in the public

record").  With respect to the government's treatment of Abu Zubaydah, "one can safely assume

that the 'cat is out of the bag.'" *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154

(D.C. Cir. 2007).

    Public versions of docket records amply demonstrate that the government's redactions

seek to conceal well known information and, on the public record at least, the government has

---

[9] Dep't of Justice, Office of Prof'l Responsibility, *Report: Investigation into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of "Enhanced Interrogation Techniques" on Suspected Terrorists* (July 29, 2009), https://www.aclu.org/files/pdfs/natsec/opr20100219/20090729_OPR_Final_Report_with_20100719_decl assifications.pdf.

[10] Int'l Comm. of the Red Cross, *ICRC Report on the Treatment of Fourteen "High Value Detainees" in CIA Custody* (Feb. 2007) [available at ECF No. 317-10] [hereinafter "*ICRC Report*"].

[11] *Case of Husayn (Abu Zubaydah) v. Poland*, Appl. No. 7511/13 (Eur. Ct. H.R. July 24, 2014) [hereinafter "*Zubaydah v. Poland*"] [excerpted at ECF No. 317-9].

[12] *See, e.g.*, Michael Isikoff, *Ali Soufan Breaks his Silence*, Newsweek (Apr. 24, 2009), http://www.newsweek.com/ali-soufan-breaks-his-silence-77243; Carol J. Williams, *Poland feels sting of betrayal over CIA 'black site'*, L.A. Times (May 10, 2015), http://www.latimes.com/world/europe/la-fg-poland-cia-blacksite-20150510-story.html; Dan Eggen & Walter Pincus, *FBI, CIA Debate Significance of Terror Suspect: Agencies Also Disagree On Interrogation Methods*, Wash. Post (Dec. 18, 2007), http://www.washingtonpost.com/wp-dyn/content/article/2007/12/17/AR2007121702151_pf.html.

provided no evidence upon which the Court could make the required finding of sufficient

incremental harm from disclosure to justify these redactions.  Two representative examples

highlight the nature and extent of the problem:

- ECF No. 353, "Motion for Permission. to File Emergency Support to Petitioner's
  Motion For Preservation Order, Order Requiring Government Agencies to
  Identify Destroyed Documents, and Other Relief," includes, as an exhibit, a
  public report by the ICRC detailing the CIA's harsh treatment of Zubaydah, but
  all 41 pages of the *ICRC Report* are entirely redacted.  *See* ECF No. 353 at 15-55
  (ECF-stamped page numbers).  The report, however, was published in full seven
  years ago by *The New York Review of Books*,[13] has been reported on extensively
  by *The New York Times*, *Washington Post*, *Reuters*, *C-SPAN*, *CBS News*, *The
  Christian Science Monitor*, *Los Angeles Times*, *BBC News, The Guardian*, and *Le
  Monde*,[14] and remains readily accessible online.  Moreover, the same ICRC report
  is publicly posted in full in Docket No. 317-10.

- ECF No. 433, "Petitioner's Amended Petition for Writ of Habeas Corpus,"
  contains an affirmation from petitioner's counsel that all of the information in it
  was derived entirely "from sources in the public domain" or otherwise "cleared
  for public release."  ECF No. 433 at 2 ¶ 2.  Yet the public version of the petition
  has been liberally redacted by the government, including even the removal of
  citations to published news articles and other public sources.  *E.g., id.* at 5, 12, 19,
  20.  The redactions are inconsistent and indefensible.  For example, the words "in
  Thailand" are redacted in a sentence on page 30 despite the fact that the sentence

---

[13] Mark Danner, *The Red Cross Torture Report: What It Means*, N.Y. Rev. of Books (Apr. 30, 2009),
http://www.nybooks.com/articles/2009/04/30/the-red-cross-torture-report-what-it-means/.

[14] Scott Shane, *Report Outlines Medical Workers' Role in Torture*, N.Y. Times (Apr. 9, 2009),
http://www.nytimes.com/2009/04/07/world/07detain.html; Joby Warrick, Peter Finn & Julie Tate, *Red
Cross Described 'Torture' at CIA Jails,* Wash. Post (Mar. 16, 2009),
http://www.washingtonpost.com/wp-dyn/content/article/2009/03/15/AR2009031502724.html; *Red Cross
report describes "torture" at CIA jails*, Reuters (Mar. 16, 2009), http://www.reuters.com/article/us-usa-
torture-redcross-idustre52f0oy20090316; *Secret Report on CIA Jails*, C-SPAN (Mar. 17, 2009),
https://www.c-span.org/video/?284672-7/secret-report-cia-jails; *Red Cross: Torture Committed At CIA
Sites*, CBS News (Mar. 16, 2009), http://www.cbsnews.com/news/red-cross-torture-committed-at-cia-
sites/; Jonathan Adams, *Red Cross report says detainees at CIA 'black sites' were tortured*, Christian
Science Monitor (Mar. 16, 2009), http://www.csmonitor.com/World/terrorism-
security/2009/0316/p99s01-duts.html; *Red Cross report called U.S. practices 'torture'*, L.A. Times (Mar.
16, 2009), http://articles.latimes.com/2009/mar/16/nation/na-torture16; Paul Reynolds, *Report claims CIA
used 'torture'*, BBC News (Mar. 16, 2009), http://news.bbc.co.uk/2/hi/americas/7945783.stm; Mark Tran,
*CIA medics joined in Guantánamo torture sessions, says Red Cross*, Guardian (Apr. 7, 2009),
https://www.theguardian.com/world/2009/apr/07/cia-medics-guantanamo-torture-red-cross; *Un rapport
de la Croix-Rouge évoque des "tortures" dans les prisons secrètes de la CIA [A report of the Red Cross
evokes "tortures" in the secret prisons of the CIA]*, Le Monde (Mar. 16, 2009), http://bit.ly/2fxruei.

is a direct quotation from a 2007 *Washington Post* article.[15]  (The citation to the article, in footnote 102, is also blacked out.  *See* ECF No. 433 at 30 n.102.)

Cataloguing the full extent of the government's unjustified removal of public information from the Court's records would require a security clearance, but the redaction and removal of such entirely public information, along with the deletion of bibliographic detail, leaves no doubt that the government is censoring information far beyond anything that could plausibly create a risk of harm to national security.  The government's redaction of the entire *ICRC Report* further shows a fundamental failure to narrowly tailor the material that is being censored from the public—such "paint-roller" redactions as typified by Docket No. 353 are the antithesis of narrow tailoring.  The government has woefully failed to justify its censorship of the 22 records at issue in light of the publicly known facts.

### 2.  The government's identification of broad categories of sensitive information fails to justify its redactions.

The government fails to carry its burden in two additional ways.  First, the categorical approach it uses to justify the redactions is inappropriate and insufficient.  Some of its categories are illegitimate, and all are too broad and vague to justify individual redactions.  Moreover, the government fails anywhere to provide a specific explanation of which redactions are based on which category.  The government has simply not given this Court the means to make the independent judicial determination that must precede any abrogation of the public's First Amendment access right.

The government claims authority to withhold information falling into twelve broad categories—six advanced by the FBI and Department of Defense, and six by the CIA:

---

[15] Dan Eggen & Walter Pincus, *FBI, CIA Debate Significance of Terror Suspect: Agencies Also Disagree On Interrogation Methods*, Wash. Post (Dec. 18, 2007), http://www.washingtonpost.com/wp-dyn/content/article/2007/12/17/AR2007121702151_pf.html; *see* ECF No. 433 at 30 ¶ 73.

**DoD-FBI Categories**

1. Intelligence Reports, Including Sources and Methods
2. Intelligence Information
3. Intelligence Assessments and Conclusions
4. Interrogation Details, Plans, and Assessments of Effectiveness
5. Identities of Intelligence Personnel
6. Detention Facility Information

**CIA Categories**

1. Information Related to the RDI Program That Remains Properly Classified
2. The CIA's Foreign Liaison Relationships
3. Clandestinely Collected Foreign Intelligence Information
4. CIA Administrative Information
5. Names of Compartments and Details of What Those Compartments Contain
6. Protected Information

Opp. 7-13. These categories, however, are too broad to allow the Court to make the "specific, on the record findings" required to limit the First Amendment access right. *See Press-Enterprise II*, 478 U.S. at 13. In addition, the government fails to connect specific redactions to its categories as required by D.C. Circuit precedent. *See Parhat v. Gates*, 532 F.3d 834, 853 (D.C. Cir. 2008) (noting that "[w]ithout an explanation tailored to the specific information at issue, we are left with no way to determine whether it warrants protection").

Even if the government's categories were proper and specific redactions were linked to them, it does not follow that the redactions at issue would be justified. The categories, taken at face value, cast a very wide net that would sweep in much that is already public from the *SSCI Report*, ECF No. 317-7, the *ICRC Report*, ECF No. 317-10, and Abu Zubaydah's own declaration in this case, ECF No. 356 at 24-44 (ECF-stamped page numbers). For this reason, too, the mere identification of broad categories fails to meet the government's burden.

### 3.  The government's categories are improperly vague and speculative.

In addition to the fundamental overbreadth of the government's categories, several of them are vague, conclusory, speculative, and improper.

*DoD-FBI Categories 1-3.*  The government's articulation of DoD-FBI Category 1,
"Intelligence Reports, Including Sources and Methods," provides no evidence that withholding
information in this category is necessary to protect against harm to national security.  Opp. 7-8.
The defense of this category consists entirely of conclusory and speculative assertions of harm
that are constitutionally insufficient.  *See Press-Enterprise II*, 478 U.S. at 15; *Globe Newspaper*
457 U.S. at 609-10.  Similarly, the government's public justification of DoD-FBI Category 2,
"Intelligence Information," consists of the single statement that "[c]ontinued nondisclosure is
therefore necessary to protect the United States from hostile activities by these adversaries."
Opp. 9.  The public defense of DoD-FBI Category 3, "Intelligence Assessments and
Conclusions," is itself entirely censored, with the exception of two citations to the Department of
Defense declaration.  Opp. 9-10.  This Court should apply a critical eye and common sense to the
government's assertions about these categories, particularly to the extent that the government is
arguing that national security can be harmed by information on "a particular guesthouse or
training camp" which "may no longer exist and/or may have been publicly revealed" by non-
governmental sources.  ECF No. 411-1 ("DoD Declaration") at 8 ¶ 16.

*DoD-FBI Category 4.*  DoD-FBI Category 4, "Interrogation Details, Plans, and
Assessments of Effectiveness" should be rejected as a basis for any redaction.  This category
includes "[i]nformation about the use, effectiveness, or specific details about the implementation
of many interrogation techniques, including recommendations for future interrogation
techniques."  Opp. 10.  No harm can plausibly be expected to result from disclosures about the
effectiveness of a CIA torture program that has already been publicly described in detail and
judged ineffective, and is now prohibited both by executive order and statute.  The government
attempts to avoid the impact of these facts by suggesting that it seeks to withhold information

only concerning "specific applications" of the now public and prohibited techniques, because "the manner and strategy in which these techniques were employed, and the results thereby obtained, would, if revealed, diminish their future utility and value as means to gain intelligence vital to protecting national security."  Opp. 10.  A Department of Defense Declaration similarly argues that release of information on the effectiveness of the CIA's illegal methods "could cost the Government the ability to utilize these methods in the future."  ECF No. 411-1 at 9 ¶ 20. These rationales are entirely insufficient to justify censoring this broad category of information.

First, details about specific applications of the CIA's techniques and their effectiveness are already public—including in the public records of this case.  *See, e.g.*, Bonner Mem. 3-5, 21-22; Dec. of Zayn Al Abidin Muhammed Husayn, ECF No. 356 at 24-31 (ECF-stamped page numbers); *SSCI Report*, ECF No. 317-7 at 10-12, 21-22 (ECF-stamped page numbers).  As documented in the *SSCI Report*, the CIA applied abusive interrogation methods that were never reviewed or approved by the Office of Legal Counsel or the President and may well have been illegal at the time they were implemented.  *SSCI Report*, ECF No. 317-7 at 20 (ECF-stamped page number).  As the Senate Select Committee on Intelligence reported:

> The CIA also used abdominal slaps and cold water dousing on several detainees during that period. None of these techniques had been approved by the Department of Justice.  At least 17 detainees were subjected to CIA enhanced interrogation techniques without authorization from CIA Headquarters. Additionally, multiple detainees were subjected to techniques that were applied in ways that diverged from the specific authorization, or were subjected to enhanced interrogation techniques by interrogators who had not been authorized to use them.

*Id.*  The CIA's abuses of Zubaydah and other detainees are described in detail in the *SSCI Report*, the *ICRC Report*, and the judgment of the European Court of Human Rights.  *See generally* ECF Nos. 317-7, 317-8, 317-9, 317-10.  There is no proper legal basis to conceal in this litigation the details about these techniques.

17

Second, it is a matter of public knowledge that "[t]he CIA's use of its enhanced interrogation techniques was not an effective means of acquiring intelligence or gaining cooperation from detainees." *SSCI Report*, ECF No. 317-7 at 10 (ECF-stamped page number). One of Abu Zubaydah's interrogators, Ali Soufan, publicly testified before Congress that the CIA's introduction of new, harsher tactics caused Abu Zubaydah to "shut down and stop[] talking."[16]  The abusive interrogation techniques were "slow, ineffective, unreliable, and harmful to our efforts to defeat al Qaeda." *Id.* at 22.  A CIA official reiterated these same conclusions, finding "there was no evidence that the waterboard produced time-perishable information which would have been otherwise unobtainable."[17]  It is baseless for the government, on this public record, to suggest that it can broadly censor from judicial records information about the effectiveness of the CIA's investigation techniques.

Moreover, effectiveness of the harsh interrogation methods is beside the point.  These methods and their applications have been declared illegal by Executive order and their use in the future would unquestionably violate U.S. law.[18]  The use of waterboarding—which "had been prosecuted by the United States in war-crimes trials after World War II"[19]—is now also expressly prohibited by federal law.  In November, 2015, Congress restricted interrogation

---

[16] *What Went Wrong: Torture and the Office of Legal Counsel in the Bush Administration: Hearing Before the Subcomm. on Admin. Oversight and the Courts of the S. Comm. on the Judiciary*, 111th Cong. 24 (2009) (statement of Ali Soufan, Chief Executive Officer, Soufan Group LLC).

[17] Office of Medical Services, CIA, *Summary and Reflections of Chief of Medical Services on OMS Participation in the RDI Program* 41 (partially declassified and released on June 13, 2016), https://www.cia.gov/library/readingroom/document/6541727.

[18] 42 U.S.C.A. § 2000dd-2 (West 2016); Exec. Order No. 13,491, 74 Fed. Reg. 4893 (Jan. 22, 2009).

[19] Scott Shane & Mark Mazzetti, *In Adopting Harsh Tactics, No Look at Past Use*, N.Y. Times (Apr. 21, 2009), http://www.nytimes.com/2009/04/22/us/politics/22detain.html; *see also* ECF No. 350 at 30-37, ¶¶ 58-66 (documenting the longstanding condemnation of waterboarding as torture by the United States government and others).

tactics solely to those techniques approved in the Army Field Manual 2-22.3.[20]  Also, as reported

to the United Nations Committee Against Torture in 2014, "[t]he prohibition of torture and cruel

treatment is part of our Constitution, and it binds our federal government and all of our 50

states . . . in all places, at all times, with no exceptions."[21]

    The current director of the CIA has expressed his "resolute intention never to allow any

Agency officer to participate in any interrogation activity in which enhanced interrogation

techniques would be employed."[22]  Former CIA Director Michael Hayden has gone further,

stating: "If some future president is going to decide to waterboard, he better bring his own bucket

because he's going to have to do it himself.  The agency is not going to do this again."[23]  The

suggestion that details about the coercive interrogation techniques used against Abu Zubaydah

must be censored to protect their potential future effectiveness should be flatly rejected.

    *DoD-FBI Category 5*.  Bonner does not seek to reveal the names or identities of United

States intelligence personnel, and thus does not object to DoD-FBI Category 5, "Identities of

Intelligence Personnel."  However, certain redactions implicated by this category provide further

evidence that the government's redactions are inconsistent, illogical, and guided by no clear

principle.  For example, in ECF No. 333, released May 23, 2016, the government properly chose

---

[20] National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, Title X, Sec. 1045 (2015) (to be codified at 42 U.S.C. § 2000dd-2).

[21] U.N. Comm. Against Torture, 53d Sess., 3d-5th Periodic Rep., United States, *Opening Statement, Tom Malinowski, Assistant Secretary, Democracy Human Rights and Labor, U.S. Dep't of State*, CAT/C/USA/3-5 (Nov. 12-13, 2014), http://bit.ly/2eGM78x .

[22] John O. Brennan, *Memorandum for the Honorable Dianne Feinstein: CIA Comments on the Senate Select Committee on Intelligence Report on the Rendition, Detention, and Interrogation Program* 4 (June 27, 2013), https://www.cia.gov/library/reports/CIAs_June2013_Response_to_the_SSCI_Study_on_the_Former_Detention_and_Interrogation_Program.pdf.

[23] 48 Hours, *The Spymasters - CIA in the Crosshairs*, CBS News (May 21, 2016) http://www.cbsnews.com/news/48-hours-presents-the-spymasters-cia-in-the-crosshairs/.

not to redact the already public names of James Elmer Mitchell and Bruce Jessen,[24] the intelligence contractors who designed the CIA's torture program.  ECF No. 333 at 13-15 ¶¶ 33-36.  Yet in a similar discussion in ECF No. 350, released a month later, the government changed course and censored Mitchell and Jessen's names.  ECF No. 350 at 20-21 ¶¶ 43-44.  These inconsistencies demonstrate again the need for careful judicial review of the redactions requested by the government.

*DoD-FBI Category 6*.  The government confines its discussion of DoD-FBI Category 6, "Detention Facility Information," to information about the JTF-GTMO prison camp at Guantanamo Bay.  Opp. 11-12.  Bonner does not object to this category, to the extent that the government seeks to withhold non-public information about the JTF-GTMO camp, the disclosure of which could plausibly create security risks.  But if this category purports to justify withholding information about the now-defunct CIA prison at Guantanamo, *see* ECF No. 433 at 20-21 ¶ 51, or the CIA "black sites" in Poland, Thailand, and elsewhere at which Zubaydah was detained and interrogated, *Zubaydah v. Poland*, ECF No. 317-9 at 23-26 (ECF-stamped page numbers)*,* no proper basis exists to seal such information.  Information about these sites is already known from public, reliable sources and no credible security risk arises from discussion of sites no longer in use.[25]

*CIA Categories 1-5*.  The government's explanations of CIA Categories 1-5 are conclusory and not fully disclosed in its public filing.  Without access to the unredacted version

---

[24] The identities of these two psychologists have been widely reported since 2007.  *See, e.g.*, Katherine Eban, *Rorschach and Awe*, Vanity Fair (July 2007), http://www.vanityfair.com/news/2007/07/torture200707; James Risen & Matt Apuzzo, *C.I.A., on Path to Torture, Chose Haste Over Analysis*, N.Y. Times (Dec. 15, 2014), http://www.nytimes.com/2014/12/16/us/politics/cia-on-path-to-torture-chose-haste-over-analysis-.html.

[25] *See* Bonner Mem. 27.  *See, e.g., Zubaydah v. Poland*, ECF No. 317-9 at 23-26 (ECF-stamped page numbers).

of the government's brief—or the CIA's *ex parte* filing and classified declaration, *see* Opp. 1

n.1—Bonner and the public are ill-equipped to determine whether the CIA categories are proper

and sufficiently explained.  This Court should review the specific redactions predicated on these

five categories, applying the *Press-Enterprise II* standard and demanding explanations from the

government about its specific redactions.  To the extent that the government invokes CIA

Categories 1-5 as grounds for withholding information already made public, such redactions are,

again, improper.

   *CIA Category 6*.  CIA Category 6, "Protected Information," should be rejected as a basis

for censoring court records.  As explained in Section II.C, below, allowing the government to

withhold any "information which is the subject of a pending motion for protection," Opp. 13,

would contravene the constitutional standard.

### B. The Government Has Failed Even to Show That The Contested Information Is Properly Classified

   Not only is the government incorrect in arguing that proper classification is a sufficient

basis to justify its withholdings, it has failed to provide the Court with a sufficient factual basis to

find that the withheld information is indeed properly classified.

### 1. Much of the redacted information withheld could not properly be classified under Executive Order 13526.

   The docket reflects the redaction of public information that cannot possibly be

"classified," including information identified in Section II.A.1 above.  Redactions such as the

ICRC Report and the *Washington Post* article discussed above censor entirely public information

in an obvious effort to "conceal violations of law," to "prevent embarrassment to a government

agency," or to "prevent or delay the release of information that does not require protection in the

interest of the national security"—all impermissible grounds for classification.  *See* Exec. Order

No. 13,526 § 1.7, Fed. Reg. 707 (Dec. 29, 2009).

The docket also reveals a history of reckless overclassification, such as the government's initial claim that ECF No. 326, "Petitioner's Renewed Motion and Memorandum in Support of Request for Status Conference," contained classified information.  It stretches the imagination that a simple request for a status conference could ever have been classified under any meaningful standard.  ECF No. 329, "Classified Supplement to Respondent's Opposition to Petitioner's Emergency Motion to Produce CIA Medical Records and Allow In-Person Medical Evaluation," is another such example, originally filed as classified only to be posted to the public docket without any redactions.

> **2.  Changes in classification status mean that information redacted earlier may no longer be properly classified.**

Since 2008, when these proceedings began, a great deal of relevant information has been declassified.  Perhaps most significantly, a major declassification review preceding the public release of the executive summary of the *SSCI Report* led to the declassification of many details surrounding Abu Zubaydah's capture, rendition, detention, interrogation, and torture by United States personnel.  *See SSCI Report*, ECF No. 317-7 at 4-5 (ECF-stamped page numbers); *see also,* Statement of Interest of the United States 5, *Salim v. Mitchell*, No. 2:15-cv-00286-JLQ (E.D. Wash. Apr. 22, 2016), ECF No. 33 (public release of the SSCI Executive Summary "had the effect of disclosing a significant amount of information concerning the detention and interrogation program that the Executive Branch had declassified").  This is confirmed in the government's opposition.  Opp. 35 n.28 (acknowledging changes in classification status).

The government nonetheless suggests that this massive declassification has only a prospective effect on redactions in these judicial records: "contemporaneously reviewed public filings in this case" are being redacted in line with the new standards.  *Id.*  But a purely prospective approach would be improper, and in opposing this motion to unseal the government

must revisit its redactions in light of subsequent declassifications.  This includes specifically

ECF Nos. 50-2 ("Mueller Declaration") and 369 ("Factual Return") that are subject to this

motion and have not been re-reviewed.  ECF No. 434 at 1-2.

### 3. The CIA's documented misuse of its classification authority regarding Abu Zubaydah underscores the need for judicial review of these records.

The CIA's documented misuse of its classification authority in matters related to Abu

Zubaydah invites further skepticism toward the government's assertions of harm from disclosure

of redacted information.  *See* Bonner Mem. 23-26.  The government gravely mischaracterizes

Bonner's overclassification concerns as "individual instances of purported mis-classification

decades ago."  Opp. 41.  In addition to the previously submitted evidence of a sustained pattern

of systemic overclassification, *see* Bonner Mem. 16-18, the *SSCI Report* provides congressional

findings that the CIA misused its classification authority specifically in matters concerning Abu

Zubaydah.  *See* Bonner Mem. 23-26; *SSCI Report*, ECF No. 317-7 at 102-09 (ECF-stamped page

numbers).  That report details how the CIA strategically abused its classification authority "to

counter public criticism, shape public opinion, and avoid congressional action" regarding its RDI

program, of which Abu Zubaydah was the prime subject.  *SSCI Report*, ECF No. 317-7 at 16

(ECF-stamped page number).  The government's response to those findings is that its

classification decisions are proper because classifying information to "prevent embarrassment to

government agencies" would violate Executive Order 13,526.  Opp. 42 n.31.  That answer only

begs the question, and suggests that the CIA has violated the Executive Order with impunity.

In fact, as demonstrated above, the Court need look no further than this very docket for

clear instances of overclassification.  *See* Section II.A.1, *supra*.  The government's opposition to

this motion is illustrative in itself: in response to Bonner's motion, the FBI submitted a 25-page

declaration that is completely redacted except for the page numbers.  *See* ECF No. 411-2

("McJunkin Declaration") at 5-32.  The CIA submitted its declaration *ex parte*, apparently

because even the page numbers of that document are classified.  *See* Opp. 1 n.1; *id*. at 12

(redacting the page numbers of pin cites to the CIA declaration).  Such redactions of innocuous

information further illustrates that the government's categorical approach to classification is

deeply flawed and fails to meet even the Executive Order's standard.

> **C.** **The Government Has Failed to Justify**
> **Redacting Non-Classified Information**

The government also seeks to seal a variety of information that is not classified.  If the

government cannot make even the minimum showing required to classify information as

"confidential,"  Exec. Order No. 13,526 § 1.2, Fed. Reg. 707 (Dec. 29, 2009), this Court should

review with great skepticism its claimed need to withhold the information to protect national

security.  Bonner does not generally seek personal identifying information of private individuals

that might fall within this category, but any redactions must be justified by a legitimate and

compelling need for secrecy.

The government is wrong to assert that information subject to a pending motion for

protection should be exempted from review under the constitutional standard.  *See* Opp. 43; *see*

*also id.* at 13.  The First Amendment right of access applies to all judicial records in this

proceeding, both before and after—and regardless of whether—this Court rules on the

government's pending motion for protection.  The arguably "protected" information is subject to

the First Amendment right of access, and the Court must necessarily review the government's

redactions of such arguably protected information and apply the controlling *Press-Enterprise II*

standard to ensure that the First Amendment right is properly being enforced.

## CONCLUSION

For each and all the foregoing reasons, this Court should grant Mr. Bonner's motion to unseal in their entirety the 22 records remaining at issue.[26]

Dated:    November 7, 2016

Respectfully submitted,

MEDIA FREEDOM & INFORMATION
ACCESS CLINIC

By:___/s/ *David A. Schulz*_____
    David A. Schulz (Bar ID 459197)
    Hannah Bloch-Wehba (Bar ID 1031703)
    Steven Lance (law student intern)
    Andrew Udelsman (law student intern)
Abrams Institute for Freedom of Expression
Yale Law School
P.O. Box 208215
New Haven, CT 06520
t: (203) 432-9387
dschulz@lskslaw.com

Chad Bowman (Bar ID 484150)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1899 L Street, NW
Suite 200
Washington, DC 20036
t: (202) 508-1136
cbowman@lskslaw.com

*Counsel for Movant Raymond Bonner*

---

[26] This memorandum was prepared by the Media Freedom and Information Access Clinic, a program of the Abrams Institute for Freedom of Expression and the Information Society Project at Yale Law School. The brief does not purport to express the school's institutional views, if any.