IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN # 10016), | ) ) ) |
| *Petitioner,* | ) ) |
| v. | ) No. 08-CV-1360 (EGS) ) |
| MARK T. ESPER, | ) ) |
| *Respondent.* | ) ) ) |

# PETITIONER'S MOTION AND MEMORANDUM IN SUPPORT OF REQUEST FOR STATUS CONFERENCE

**(a) Preliminary Statement**

Petitioner Zayn al Abidin Muhammad Husayn ("Petitioner" and "Abu Zubaydah"), by and through undersigned counsel, respectfully submits his motion for a status conference in this matter. As the Court knows, Petitioner filed a Petition for a Writ of Mandamus in the District of Columbia Circuit Court of Appeals. After the matter was fully briefed, on July 16, 2019, a panel of the Circuit Court issued a Per Curiam order directing the parties to file within 30 days "motions to govern further proceedings in this case in light of this court's recent decision in *Qassim v. Trump,* No. 18-5148 (D.C. Cir. June 21, 2018), and the pending appeal in *Ali v. Trump,* No. 18-5297 (filed Oct. 12, 2018)." No. 19-5045, Doc. 1797541. The parties filed their respective motions to govern on August 15, 2019. On November 6, 2019 a different panel (save for one judge) of the Circuit Court denied the petition, without prejudice to refiling if circumstances change. *In re: Husayn,* No. 19-5045, Doc. 1814665. Petitioner requests this status conference in order to discuss the implications of the chain of events in the Circuit Court,

and the way forward with regard to the many motions that remain undecided despite having been fully briefed for several years.

As the Court no doubt knows, Petitioner has been held captive by the U.S. Government for well over 17 years. This began with his capture on March 28, 2002 by the CIA and Pakistani forces, then continued with his being thrust into the CIA's secret Rendition, Detention and Interrogation ("RDI") Program as a so-called High Value Detainee.[1] In the program, he was moved from country-to-country while being tortured brutally during a significant part of that time, including being waterboarded eighty-three times. This torture was based upon a false profile of Petitioner provided by the CIA to the Justice Department's Office of Legal Counsel.[2] Finally, in September 2006 President Bush publicly acknowledged the existence of the "enhanced interrogation" program.[3] Abu Zubaydah then was transferred to the Top Secret Camp 7 at Guantánamo Bay, where he has been held in isolation and virtually incommunicado with no end in sight.[4]

---

[1] *See generally* the Senate Select Committee on Intelligence Executive Summary ("SSCI ES") of its *Study of the [CIA's] Detention and Interrogation Program,*
https://www.intelligence.senate.gov/sites/default/files/publications/CRPT-113srpt288.pdf;
https://www.therenditionproject.org.uk/ and
https://www.nytimes.com/interactive/projects/guantanamo

[2] *See generally* SSCI ES, and its Finding and Conclusion #5, at 4. *See also,* n. 4 *infra.*

[3] https://georgewbush-whitehouse.archives.gov/news/releases/2006/09/20060906-3.html

[4] *Id.* Abu Zubaydah was neither involved in the 9/11 attacks, nor did he ever belong to al Qaeda, the perpetrator of the attacks. SSCI ES at 410-11. Despite his counsel's pleas to the Chief Prosecutor of the Military Commissions (*see* their May 10, 2012, Oct. 3, 2015, Jan. 6, 2016 and Feb. 5, 2016 letters), he has never charged Petitioner with any offense. Further, effective Jan. 24, 2018, Abu Zubaydah was delisted by the U.N. Security Council from its *Islamic State and al Qaeda Sanctions List,* based on the recommendation of the U.N. Ombudsperson, who also concluded that Abu Zubaydah was not a member of al Qaeda. (Case No. 78). C. Church, *What*

Over eleven years ago, on August 6, 2008, counsel for Abu Zubaydah filed his Petition for a Writ of Habeas Corpus in this Court,[5] on account of the Supreme Court's new mandate providing their client with prompt habeas review. *See Boumediene v. Bush,* 128 S.Ct. 2229, 2275 (2008). But habeas review in Petitioner's case has been the polar opposite of prompt.

On August 29, 2008, counsel filed an Amended Petition for a Writ of Habeas Corpus with the Court Security Officer ("CSO"). The case was assigned to Judge Richard W. Roberts. ECF No. 19. Fast-forwarding to February 24, 2015, Petitioner filed with the CSO a Notice of Filing Motion to Recuse Judge Roberts for Nonfeasance, including Protracted Failure to Rule on More than a Dozen Fully Briefed Motions filed by a Man Imprisoned without Charge for Nearly Thirteen Years. ECF No. 311. Even that motion was not ruled on for over a year, when it was mooted by the reassignment of the case more than three and one-half years ago on March 16, 2016 to this Court. *See* ECF No. 314.

A month later, on April 14, 2016, Petitioner filed a Motion for Status Conference, noting that the case had been pending since 2008, and that "[m]ore than five years [had] elapsed since the last substantive ruling in the case, though more than a dozen motions [were] fully briefed and awaiting decision." Petitioner's counsel believed that an "in-person status conference [would] assist the Court by identifying the many pending issues, reinvigorating a case that has become moribund, and enabling the Court to establish sensible priorities." The motion suggested a date when Petitioner's overseas counsel would be in the U.S., and domestic counsel who lived outside of Washington could arrange to travel to the city. "Counsel will be visiting Petitioner shortly

---

*Politics and the Media Still Get Wrong About Abu Zubaydah,*
https://www.lawfareblog.com/what-politics-and-media-still-get-wrong-about-abu-zubaydah

[5] *See Husayn v.Gates,* 1.08-cv-1360, ECF No. 1.

3

thereafter, and we are eager to advise him about the state of play in light of recent events." ECF No. 315. Respondent's Response, ECF No. 316, while not objecting to Petitioner's Motion asserted that about twenty "ancillary" motions were pending before the Court. The Government argued that five motions had become moot, and concurred that the remaining motions were fully briefed.

In an April 22, 2016 Minute Order, the Court directed Petitioner to reply to the Response, then added: "Given the current posture of this case, the parties are hereby notified that the Court is not inclined to schedule a Status Conference on April 27, 2016, but that a Status Conference will be scheduled in the near future." That has never happened.

Petitioner promptly replied, ECF No. 320, agreeing that the motion to recuse Judge Roberts had been mooted by his replacement, "though we believe the extended period of judicial inactivity is not without significance. The long passage of time, for instance, has made certain material investigations either impossible or substantially more difficult. His counsel then commented on pending motions, emphasizing with particularity how much damage had already been done by the delay.

On May 4, 2016, Petitioner filed his renewed Motion and Memorandum in Support of Request for Status Conference to "discuss numerous motions that have been fully briefed and pending before the Court for a lengthy period of time. This Court's failure to rule on the many fully-briefed motions before it, most of which have been ripe for decision for more than two years, has long compromised Petitioner's ability to investigate the facts of his case and to mount a proper defense."[6] ECF No. 326. In response, the Court entered a Minute Order on May 5,

---

[6] After describing the thirteen fully briefed yet undecided motions and underscoring the need for a Status Conference, Petitioner reiterated that his "ability to prepare his defense [has been]

4

2016 directing the parties to submit a joint proposed agenda for a Status Conference no later than ten days after Respondent completed certain classification reviews. The Court also ordered that the parties propose three dates and times for the conference, and state whether it would be necessary to discuss classified information. On June 10, 2016, the Court in an additional Minute Order, dealt with the Government's delay, and fixed a new deadline for completion of its classification reviews of September 16, 2016. The Court also directed the parties to file a joint report on the status of pending motions no later than September 30, 2016.

Responding to the Court's Minute Order, the parties filed a Joint Status Report on September 30, 2016. Petitioner repeated the description of his purpose in twice seeking a status conference: "to reinvigorate a case that has become moribund, assist the Court in identifying pending issues, and to enable the Court to establish sensible priorities going forward." In the report, the parties set forth details relating to motions that were fully briefed at the time. Twelve of these were Petitioner's and four were Respondent's. The filing dates of Petitioner's motions ranged from April 22, 2009 to June 10, 2016. Two other motions were not fully briefed at the time: one by non-party Raymond Bonner to Intervene and Unseal Court records, and another by Petitioner for Prompt Disclosure of Petitioner's Medical Records.[7] The report included six

---

severely undermined by the failure of the Court to rule on any of these motions, including, for example…for his counsel to be permitted to carry out necessary investigations in his defense, and for the preservation order…to be amended. *Id.* at 6. Petitioner also sought the conference "to discuss the Government's failure to fully comply with several of the Courts orders." *Id.* at 5-6.

[7] Both of these motions have long since been fully briefed, Bonner's motion on Nov. 7, 2016, ECF No.436, and Petitioner's (via the filing of his Sur-Surreply) on Nov. 21, 2016, ECF No. 446.

additional pages of commentary dealing with such matters as the Petitioner's proposed priority of pending motions. See ECF No. 417.

In an October 24, 2016 Minute Order, the Court "decline[d] to schedule a status hearing at [that] time in light of the information provided in [the Joint Status Report], and in particular the priority motion identified by [Petitioner]."[8] The parties were directed to submit an additional Joint Status Report no later than November 18, 2016, "setting forth the prioritization of the pending motions and the reason for the proposed prioritization."

In compliance with that order, the parties filed another Joint Status Report on November 18, 2016. ECF No. 445. Of the fully briefed motions, seven were Petitioner's,[9] three were Respondent's, and one was the non-party's motion to intervene. Of the motions for which further briefing was expected, seven were Petitioner's and two were Respondent's. The briefing on all nine of these motions was completed long ago.[10] Petitioner assigned the highest priority to a cluster of three motions regarding access to an un-redacted and complete copy of Petitioner's medical records, including the CIA's records, plus an in-person medical examination of Petitioner. These were placed first "because a clear and comprehensive understanding of Petitioner's mental and physical state is needed 'to ensure that Petitioner has meaningful access to counsel, that his counsel are able to adequately communicate with him in order to represent

---

[8] In fact, Petitioner had listed three motions as its priorities. See ECF No. 417, at 9-10.

[9] This does not mean that five of the twelve motions by Petitioner shown as fully briefed in the Sept. 30, 2016 Joint Status Report had been decided by the Court. Instead, the need for additional briefing became apparent for four motions previously shown as fully briefed, and one such motion is not listed in the Nov. 18, 2016 report because the parties resolved the dispute themselves, so Petitioner withdrew the motion. See ECF No. 420.

[10] See, e.g., ECF No. 526.

6

his claims to the Court, and to preserve this Court's jurisdiction over his habeas petition.'"
*Zuhair v. Bush,* 08-cv-0864 (Dec. 22, 2008) (citing *Husayn v. Gates*). *Id.* at 5. Petitioner also prioritized his Motion for Discovery (originally filed on September 14, 2009, and designated as fully briefed in the Joint Status Report). As Petitioner noted, "without discovery of information in the possession of the [U.S.], Petitioner cannot meaningfully challenge the lawfulness of his detention." *Id.* at 6.

Today, nearly four years after the presiding judge was reassigned to Petitioner's case, the Court has convened no status conference despite Petitioner's two requests. Still more damaging, only one of Petitioner's substantive motions has been decided, whether inherited by the Court or filed after its reassignment to this case.[11] No other substantive motion filed by Petitioner has been ruled on by this Court..

Finally, on October 5, 2018, Petitioner filed a Notice "to alert the Court and opposing Counsel that all pending motions are fully briefed and await action by the Court. Some have been fully briefed for several years." ECF No. 526. This nudge prompted no response.

**(b) Matters Petitioner Asks the Court to Address in a Status Conference**

    **1. Problems Arising from the Court's March 6, 2019 Minute Order**

---

[11] The one substantive motion that elicited a ruling from this Court was Petitioner's Motion to Compel the Respondent to Produce for the Court a Complete and Unredacted Copy of the Senate Select Committee on Intelligence Report on the CIA Detention and Interrogation Program. ECF No. 441. In his motion, Petitioner pointed out "the substantial risk that [the 6,963 pages complete and unredacted Senate Torture Report] may be destroyed, despite the existence of the Protective Order." *Id.* at 3. For the various other urgencies attending Petitioner's motion, *see generally* ECF No. 441; *see also* Petitioner's Emergency Request for a Timely Decision of his original motion. ECF No. 463. The Court granted this motion, directing, *inter alia,* Respondent to deliver a copy of the full Report to the CSO. *See* Jan. 19, 2017 Minute Order.

On March 6, 2029, this Court entered a Minute Order after Petitioner had filed his Petition for a Writ of Mandamus in the D.C. Circuit on February 26, 2019. Case No. 19-5045, Doc. No. 1774896. The Minute Order stated in part: "[P]etitioner on January 11, 2018 filed a motion for an order granting [a] writ of habeas corpus with 10 other petitioners. ("Joint Motion"). ECF No. 488. That motion is currently under advisement by Judge Hogan as to six of the petitioners. In view of the likelihood that a favorable ruling on [the Joint Motion] would moot Petitioner's pending motions, the Court informs the parties that it intends to give prompt attention to Petitioner's self-identified [in November 2016] priority motions," but only **if** that "**should…be necessary after it rules on [the Joint Motion]….**" (Bold supplied.)

This order, by stating nearly nine months ago that Judge Hogan had six of the motions "under advisement" ("advisement" is defined as "careful consideration: DELIBERATION"[12]), at the least implies that this Court intends to await Judge Hogan's decision. After all, "deliberation" means "the act of deliberating"[13] and this Court nowhere stated that it, too, had the motion "under advisement," though it already had been fully briefed at that time for an entire year--since March 9, 2018. *See* ECF No. 504. Why else would the Court mention Judge Hogan and his six cases held "under advisement," thereby suggesting that Judge Hogan's decisions were imminent?[14]

---

[12] Merriam-Webster's Collegiate Dictionary (11th Edit. 2003) at 19, defin. No. 1.

[13] *Id.* at 329, defin. No. 1 a.

[14] By way of contrast, District Judge Leon decided Petitioner Ali's legally identical Motion for Order Granting Writ of Habeas Corpus on August 10, 2018, well more than a year ago. *See Ali v. Trump,* 317 F.Supp.3d 480 (D.D.C. 2018), *appeal docketed* No. 18-5297 (D.C. Cir. Oct. 12, 2018).

Hence, instead of promising any action on Petitioner's substantive motions which were all fully briefed and the great majority of which were filed during the period from 2009 to 2012,[15] in effect this Court stayed them and the balance of the case for an indefinite period until it too decides Petitioner's Joint Motion.

**Petitioner respectfully requests that the parties be advised at the Status Conference of the date by which this Court intends to decide Petitioner's Joint Motion, thereby freeing Petitioner from the stay that adds still more delay to this case that had become "moribund" years ago.[16]**

Further, Petitioner urges that a fallacy lies buried in the Minute Order. However this Court decides Petitioner's pending Joint Motion, the urgent need for it to decide without further delay the many long-pending, substantive motions filed by Petitioner will live on. Should this Court, like Judge Leon,[17] deny Petitioner's Joint Motion, its obligation to decide all those substantive motions relating to Petitioner's original habeas claim naturally will continue. On the other hand, should this Court grant such motion, the same also is true. This is because the Joint Motion filed by Petitioner, ECF No. 488, and ten other petitioners, presents a far different basis for his habeas claim than that contained in Petitioner's habeas case begun in 2008. As the Joint Motion makes plain:

> **[T]his motion, brought by detainees collectively is different…** President Trump, in contrast to his predecessors, has declared and is carrying out his intention to keep all remaining detainees in Guantánamo **regardless of their individual circumstances…**

---

[15] *See* Nov. 18, 2016 Jt. Status Rpt., ECF No. 445 at 1-3.

[16] *See* Sept. 2016 Joint Status Report, ECF No. 417 at 1.

[17] *See* n. 14 *supra*.

9

> This defiant policy exceeds his authority under the 2001 Authorization for the Use of Military Force ("AUMF"), which permits detention only for the narrow purpose of preventing the return of detainees to the battlefield. Instead, the policy is a symbolic, undifferentiated assertion of this President's expectation of absolute executive authority and a rejection of the policy framework that has governed Guantánamo detentions for years….

ECF No. 488 at 1-2; bold supplied.[18]

Petitioner's original habeas claim has never been fleshed out fully in written form. That is because Judge Roberts, when he presided over the case, relieved Petitioner of his duty to file a Traverse in opposition to the Government's Factual Return in a series of Scheduling Orders. *See, e.g.,* Scheduling Order filed on May 27, 2009, ECF No. 167, declaring that the deadline for Petitioner's Traverse "shall be stayed pending resolution of" the various proceedings described in this order.[19] At the conclusion of this process, which has not occurred to date, "the parties shall confer regarding a schedule for the filing of [the] Traverse" and shall file a proposed schedule with the Court.[20] Neither of these events has occurred either, since this case unfortunately remains close to its infancy despite the passage of more than eleven years. *See* Addendum to U.S. Government's Response to Petition for Writ of Mandamus, D.C. Circuit Court No. 19-5045, Doc. 1788257, at 7.

---

[18] *See also* S. Roehm, "Two Updates in Mass Guantánamo Habeas Case" (Jan. 25, 2018) https://www.justsecurity.org/51425/updates-mass-guantanamo-habeas-case/, stating that these eleven men argue that their continuing detention under President Trump **"which is now seemingly without regard to their individual circumstances"** is unlawful. (Bold supplied.)

[19] These included all Disclosures required by the Case Management Order and "Resolution of Disclosure and Discovery Disputes." *Id.* at 1.

[20] *Id.* at 2.

10

Petitioner's Amended Petition for a Writ of Habeas Corpus, the public edition of which appears as ECF No. 333, quite apart from the richer and personalized factual account in the heavily redacted pleading, sets forth several claims which nowhere appear in the Petitioner's Joint Motion for a Writ of Habeas Corpus.[21] In sum, the two pleadings differ dramatically from each other and, most importantly assert very different legal bases for the relief they seek. Hence, should this Court grant the Joint Motion, contrary to its Minute Order of March 6, 2019, Petitioner respectfully urges that "a favorable ruling for Petitioner" would not "moot [his many] pending motions," which must be decided before Petitioner's habeas claims in his Amended Petition may be dealt with.

**Scheduling an early date for deciding the Joint Motion may or may not resolve any difference between Petitioner and the Court on this point, though—as said—there's a chance that it will. If the decision fails to resolve that difference, then Petitioner may be required by the Court to file a motion to settle the matter by a date fixed by the Court.**

### 2. State of Play in Petitioner's Case.

---

[21] *Compare* the Joint Motion, which claims violation of the due process clause of the Fifth Amendment to the U.S. Constitution, ECF No. 488, at 15, and that the movants' continuing detention violates the 2001 AUMF, *id.* at 29, *with* the Amended Petition, which includes claims based on violation of Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXV, XXVI and XXVIII of the American Declaration on the Rights and Duties of Man, ECF No. 333 at 37 and in different form at 38; the rights accorded to persons seized by the U.S. Military in times of armed conflict as established by, *inter alia,* the regulations of the U.S. Military, Articles 4 and 5 of Geneva Convention III, Geneva Convention IV, and customary international law, *id.* at 38; the War Powers Clause, *id.,* and the Administrative Procedures Act, *id.* at 39. Further, one of the two Fifth Amendment due process claims—unlawful conditions of confinement—differs facially from any claim set forth in the Joint Motion. Lastly, once Petitioner has obtained all the discovery sought with regard to his Amended Petition, even his claim asserting violation of Fifth Amendment due process probably will differ markedly from any due process claim in the Joint Motion, since the facts upon which it will rely will fall well outside those set forth in the motion.

Since the filing in this Court on November 16, 2016 of the second Joint Status Report, ECF No. 445, Petitioner has filed two additional substantive motions: (1) Petitioner's Joint Motion for Order Granting Writ of Habeas Corpus, ECF No. 488, and (2) Petitioner's Redacted Motion to Order Director of National Intelligence to Search for Tapes and Drawings by Petitioner, ECF No. 512.  Both of these motions have been fully briefed for well over a year.[22]

All told, twenty-two motions are fully briefed and ready for decision.  Petitioner filed sixteen such motions, Respondent filed five, and non-party Raymond Bonner filed one. In its March 6, 2019 Minute Order, the Court stated it would "give prompt attention to the Petitioner's self-identified priority motions…should that be necessary after it rules on" the Joint Motion. The motions prioritized by Petitioner in the November 18, 2016 Joint Status Report, ECF No. 445 are:

- First, "a cluster of motions regarding access to an unredacted and complete copy of Petitioner's medical records and an in-person examination.  We place this first because a clear and comprehensive understanding of Petitioner's mental and physical state is necessary 'to ensure that Petitioner has meaningful access to counsel, that his counsel are able to adequately communicate with him in order to represent his claims to this Court, and to preserve this Court's jurisdiction over Petitioner's habeas petition.'"[23] *Zuhair v,*

---

[22] For the Joint Motion, Petitioner's Reply Brief, ECF No. 504, was filed on March 9, 2018; for his Redacted Motion, Petitioner filed his Notice of Filing his Reply to Respondent's Opposition, ECF No. 519, on June 26, 2018.

[23] As the European Court of Human Rights (ECHR) found in its July 24, 2014 Judgment in favor of Petitioner in the *Case of Husayn (Abu Zubaydah) v. Poland,* https://hudoc.echr.coe.int/eng#{%22itemid%22:[%22001-146047%22]}:

*Bush,* 08-cv-0864 (EGS) (Dec. 22, 2008) (citing *Husayn v. Gates*). This includes the following motions:

---

        According to the applicant, as the result of torture and ill-treatment to which he was subjected under the [High Value Detainee] programme, he is suffering from serious mental and physical health problems.

        The applicant's U.S. counsel have been unable to provide many of the details of his physical and psychological treatment because all of the information from him is presumed classified. They have stated that publicly available records described how prior injuries have been exacerbated by his ill-treatment and by his extended isolation, resulting in permanent brain damage and physical impairment.

        The applicant is suffering from blinding headaches and has developed an excruciating sensitivity to sound. Between 2008 and 2011 alone he experienced more than 300 seizures. At some point during his captivity, he lost his left eye. His physical pain has been compounded by his awareness that his mind has been slipping away. He suffers from partial amnesia, and has difficulty remembering his family.

ECHR Judgment at 41, par. 121.

    Further, in Petitioner's Amended Petition for Writ of Habeas Corpus, he alleged that:

        In 1992, Petitioner sustained a serious head injury. He was fighting on the front lines against Afghan communists and was injured by an exploding mortar shell. For more than a year, he could not speak; to this day, he still suffers from severe memory loss. Although Petitioner received treatment for his injury, two pieces of shrapnel remain lodged in his head. As a result of this injury, Petitioner could not operate weaponry.

Amended Petition for Writ, D.D.C. Case 08-cv-1360, ECF 333 at 4, par. 5.

*See also, e.g.,* R. Suskind, "The One Percent Doctrine: Deep Inside America's Pursuit of Its Enemies Since 9/11," (Simon & Schuster 2006), at 95.

- a. Petitioner's Emergency Motion to Produce CIA Medical Records and Allow In-Person Medical Evaluation, ECF No. 181, filed on June 9, 2009;
- b. Petitioner's Motion for Prompt Disclosure of Petitioner's Medical Records, ECF No. 409, filed on September 19, 2016;
- c. Respondent's Notice Regarding Production of Medical Records and Other Documents and Motion for Clarification and Partial Reconsideration of Orders Requiring Production of Medical Records and Other Documents, ECF No. 283, filed on June 21, 2011.

- Second, the single substantive motion decided by this Court, Petitioner's Motion for the Court to Secure Access to the Complete and Un-Redacted Report of the Senate Select Committee on Intelligence on the CIA Detention and Interrogation Program. Because it has been decided, this motion has dropped off of Petitioner's list of priorities.
- Third, the next highest priority is Petitioner's Motion for Discovery, ECF No.212, filed on September 14, 2009. (This motion has been partly resolved by the Court's Memorandum Order, ECF No. 429, filed on October 1, 2009.) Without discovery of information in the possession of the U.S. Government, Petitioner cannot meaningfully challenge the lawfulness of his detention.

**Since only four motions remain from Petitioner's priorities, at the proposed Status Conference, his counsel desire to discuss further priorities for the twelve remaining, undecided motions dating back to 2009, and a schedule for deciding them.**

Petitioner makes this request for a Status Conference in the interests of judicial economy. Petitioner anticipates that this conference will require only a brief amount of time and will assist the Court in addressing pending motions that may be swiftly resolved. In addition, Petitioner's

ability to prepare his defense has already been severely undermined by the failure of this Court and its immediate predecessor to rule on any of these still undecided motions.

On November 20, 2019, pursuant to Local Rule 7(m), Petitioner's counsel contacted counsel for the Respondent, who replied by requesting that we inform the Court that the Government takes no position regarding the relief sought.

For the foregoing reasons, Petitioner respectfully requests that his motion for a Status Conference be GRANTED.

Dated: November 22, 2019

Respectfully submitted,

/s/ Charles R. Church

Mark Denbeaux
Charles R. Church
Denbeaux & Denbeaux
372 Kinderkamack Road
Westwood, NJ 07675
crchurch24@gmail.com
860-596-4166

George Brent Mickum IV
Erin Herro
5800 Wiltshire Drive
Bethesda, MD 20816

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Local Rule 5.4(d)(2) that the foregoing Motion has been served electronically on counsel of record for Respondent.

Date: November 22, 2019 /s/ Charles R. Church