IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN # 10016),**<br><br>*Petitioner,*<br><br>v.<br><br>**MARK T. ESPER,**<br><br>*Respondent.* | )<br>)<br>)<br>)<br>)<br>) No. 08-CV-1360 (EGS)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR STATUS CONFERENCE**

Petitioner Zayn al Abidin Muhammad Husayn ("Petitioner" and "Abu Zubaydah"), by and through undersigned counsel, respectfully submits this supplemental memorandum in support of his motion for a status conference.

The fourteen days allotted for Respondent to file its memorandum responding to Petitioner's motion expired on December 6, 2019 with nothing being filed. In the parties' LCvR 7(b) discussion, the Government took no position regarding the relief Petitioner seeks.[1] Pursuant to LCvR 7(b), "the Court may treat the motion as conceded." Further, the motion is ripe for decision.

Petitioner wishes to inform the Court that his plight has received significant and widespread attention recently. As but one example, *The New York Times* on December 5, 2019 published prominently an editorial titled "Don't Look Away: Abu Zubaydah's drawings of

---

[1] Pet'r's Motion for Status Conference, ECF No. 539, at 15.

torture at the hands of American agents are a sickening reminder of what this country is capable of." The editorial board went on to declare: "The sketches should be seen only by adults, but they must be seen. Drawn by a victim of torture, they show, in raw and agonizing detail, the methods that Americans—soldiers, psychologists, spies, men and women—have devised to break down prisoners through pain, panic, brainwashing and other barbaric and illegal tools.… [T]he images strip away the euphemisms, justifications, lies and legalisms."[2]

At the very least, the *Times* editorial and Petitioner's drawings remind us that the Government cannot be allowed to continue isolating Petitioner virtually incommunicado, without a prompt habeas hearing to which the U.S. Supreme Court has ruled him to be entitled. *See. Boumediene v. Bush,* 128 S.Ct. 2229, 2275 (2008). Indeed, Petitioner believes that his imprisonment has already gone on for so long that the Government must be deemed to have violated the Suspension Clause.[3]

Petitioner respectfully requests that a status conference be scheduled as soon as practicable.

Respectfully submitted,

/s/ Charles R. Church

Mark Denbeaux
Charles R. Church
Denbeaux & Denbeaux
372 Kinderkamack Road
Westwood, NJ 07675
crchurch24@gmail.com
860-596-4166

---

[2] https://www.nytimes.com/2019/12/05/opinion/cia-torture-drawings.html  *See also* Ex. A, which includes, as the original essay did, a powerful drawing by Petitioner.

[3] Art. I, Sec. 9, U.S. Constitution.

George Brent Mickum IV
Erin Herro
5800 Wiltshire Drive
Bethesda, MD 20816

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Local Rule 5.4(d)(2) that the foregoing Motion has been served electronically on counsel of record for Respondent.

Date: December 18, 2019                              /s/ Charles R. Church

# Exhibit A



# The New York Times

# Don't Look Away

Abu Zubaydah's drawings of torture at the hands of American agents are a sickening reminder of what this country is capable of.

**By The Editorial Board**
The editorial board is a group of opinion journalists whose views are informed by expertise, research, debate and certain longstanding values. It is separate from the newsroom.

Dec. 5, 2019

The sketches should be seen only by adults, but they must be seen. Drawn by a victim of torture, they show, in raw and agonizing detail, the methods that Americans — soldiers, psychologists, spies, women and men — have devised to break down prisoners through pain, panic, brainwashing and other barbaric and illegal tools.

There is nothing in the crude drawings by Abu Zubaydah, a prisoner captured in 2002 and still held by the United States in the Guantánamo Bay detention camp, that hasn't been described before in the various official and unofficial investigations into the moral travesty that was the C.I.A.'s program of "enhanced interrogation," one of the more devious euphemisms ever devised. We've read of the waterboarding and sleep deprivation and humiliation and all the other horrors, and of the lasting effect they had, often on innocent men.

But as with the infamous photographs of prisoner abuse at the Abu Ghraib prison in Iraq, the images strip away the euphemisms, justifications, lies and legalisms. They are published in a study titled "How America Tortures" by one of his lawyers and the lawyer's students. Mr. Zubaydah was the first of the captives after the attacks of Sept. 11, 2001, to be subjected to prolonged torture, and he holds the dubious distinction of having been waterboarded 83 times. Many of the C.I.A. tortures were devised for him and first tested on him by psychologists whose previous job had been to train American soldiers who might one day be tortured. He provided interrogators with considerable information — but that was to F.B.I. agents who questioned him before he was turned over to the C.I.A. for torture.

The drawings speak for themselves. They are in a Times article and the report by Mark P. Denbeaux, a professor at the Seton Hall University School of Law and a lawyer for several Guantánamo detainees, including Mr. Zubaydah. What is important not to forget is the deeply shameful and disturbing fact that the United States, admittedly at a moment of national confusion and panic following the 9/11 attacks, but unnecessarily, secretly and extensively, adopted barbaric practices banned by domestic and international law.

The current director of the C.I.A., Gina Haspel, was a leading participant in the program and helped the agency destroy more than 90 videotapes of a brutal interrogation. But she, at least, has vowed not to restart the torture program, even if ordered to by the president. Whether that amounts to a realigned moral compass is an open question, but it is important to know that the agency that developed and applied "enhanced interrogation" has renounced it.

No such enlightenment for President Trump. On the contrary, the commander in chief has ordered Guantánamo to be kept open and to "load it up with some bad dudes." He has insisted that "torture works" and that he'd bring back waterboarding "and I'd bring back a hell of a lot worse than waterboarding." These are outrageous sentiments calling for blatantly unlawful action by the intelligence and security services of the United States.

**The perfect gift for everyone on your list.**
**Gift subscriptions to The Times. Starting at $25.**

For Mr. Trump and those who think like him, torture is not only a technique for extracting information, which it doesn't do very well, but also a form of revenge. "If it doesn't work, they deserve it anyway," he has said, "for what they're doing to us."

This same thinking was evident in his recent pardons granted to military commanders convicted of war crimes. True warriors have a code of behavior that proclaims acts of savagery against unarmed civilians or prisoners to be dishonorable and immoral. Their code distinguishes between killing on the battlefield and murder, which the president and his cheerleaders seem not to understand. "We train our boys to be killing machines, then prosecute them when they kill!" he tweeted in October, displaying total and insulting ignorance of the honorable calling of a soldier.

The United States has by far the greatest security establishment on earth, with the greatest reach. When the United States commits or abets war crimes, it erodes the honor, effectiveness and value of that force. The pictures of how America tortures illustrate what happens next.

The Times is committed to publishing a diversity of letters to the editor. We'd like to hear what you think about this or any of our articles. Here are some tips. And here's our email: letters@nytimes.com.