**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ZAYN AL ABIDIN MUHAMMAD
HUSAYN (ISN #10016),

           Petitioner,

v.

Mark T. Esper

           Respondent.

---

No 08-cv-1360 (EGS)

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court are: (1) Respondent's Notice Regarding Production of Medical Records and other Documents and Motion for Clarification and Partial Reconsideration of Orders Requiring Production of Medical Records and Other Documents, ECF No. 389; (2) Petitioner's Emergency Motion to Produce CIA Medical Records and Allow In-Person Medical Evaluation, ECF No. 400; and (2) Petitioner's Motion for Prompt Disclosure of Petitioner's Medical Records, ECF No. 409.

**A. Respondent's Notice Regarding Production of Medical Records and Other Documents and Motion for Clarification and Partial Reconsideration of Orders Requiring Production of Medical Records and Other Documents**

Respondent seeks clarification and partial reconsideration of Orders in this case dated November 28, 2008 and March 5, 2009.[1] The November 28, 2008 Order requires the Respondent to

---

[1] The Court agrees with Respondent that the two orders cannot be reasonably read to require the Government to give a

provide Petitioner's "counsel with copies of petitioner's medical records since his arrival at Guantanamo in September 2006, all copies of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes" because access to those records "is a legitimate and important effort to provide effective representation and present the court with appropriate information affecting the lawfulness of his detention." Mem. Op. & Order, ECF No. 53 at 7, 9-10. The Court also required the Respondent to file a memorandum and proposed order addressing potential redactions to the records.

In its March 5, 2009 Order, the Court agreed that redacting identifying information about treatment providers was appropriate. However, the Court disagreed that it would be appropriate to redact "certain limited information based on a determination that Petitioner's counsel does not have the requisite need to know the information," Gov't's Mem., ECF No. 74-1 at 3; on the grounds that "petitioner's counsel has a security clearance and is presumed to have a need to know the information that he is requesting" in the medical records and "guard and staff reports, logs, and notes." Order, ECF No. 113

---

security clearance to Petitioner's medical expert. Such an issue would need to be briefed, and Petitioner has not provided no legal authority pursuant to which the Court would base such an order.

at 1-2.

In the motion pending before the Court, Respondent first requests that the Court clarify "that classified information contained in documents produced under the orders is not to be shared with an uncleared independent physician; that the government may produce a separate redacted, unclassified but protected version of the records for sharing with an independent physician; and that the redacted, unclassified records produced by the Government may be shared with an independent physician only after that physician has signed the Acknowledgment that is attached as Exhibit B of the TS/SCI Protective Order entered in this case." Gov't's Mot., ECF No. 389 at 2. Petitioner agrees that classified information can only be shared with someone who has an appropriate security clearance, and that "protected information can only be shared with someone who has signed the Acknowledgment." Pet'r's Opp'n, ECF No. 479 at 2. However, Petitioner objects to Respondent's request for clarification to the extent that Respondent understands the Court's Order to require the production of a redacted copy of the records because, according to Petitioner, "the Court has not ordered a *redacted* copy of the records for sharing with an independent physician of Petitioner's selection." *Id*. at 2. Petitioner is mistaken, however, as in the March 5, 2009 Order the Court agreed that it would be appropriate to redact certain

3

information, but not other information. And to the extent Petitioner seeks any change to the TS/SCI Protective Order governing the disclosure of unclassified but protected information in this case, the avenue for seeking such a change is in a separate motion, not an opposition brief. Accordingly, the Court will **GRANT** Respondent's motion to clarify.

Second, Respondent seeks reconsideration of the Court's denial of its request to redact "certain limited information based on a determination that Petitioner's counsel does not have the requisite need to know the information," Gov't's Mem., ECF No. 74-1 at 3; on the grounds that "petitioner's counsel has a security clearance and is presumed to have a need to know the information that he is requesting" in the medical records and "guard and staff reports, logs, and notes." Order, ECF No. 113 at 1-2.

Respondent requests that the Court authorize the redaction of two additional categories of information that it did not specifically describe in the prior proposed order: (1) "statements purporting to identify the geographical locations of former detention sites," and (2) "the name of a person who is described in the records as a private citizen who sent letters to petitioner during his detention." Gov't's Mem., ECF No. 389

at 3.

Although the Federal Rules of Criminal Procedure do not provide for motions for reconsideration, judges in this district have assumed, without deciding, that they may consider such motions. *United States v. Bagcho*, 227 F. Supp. 3d 28, 31 (D.D.C. 2017) (citing *United States* v. *Hong Vo*, 978 F. Supp. 2d 41, 47 (D.D.C. 2013); *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010); *United States v. Cooper*, 947 F. Supp. 2d 108, 109 (D.D.C. 2013)). The Court will do the same.

Various standards of review have been used when considering such motions in this context:

> In some cases, judges have adopted the "as justice requires" standard of Rule 54(b) of the Federal Rules of Civil Procedure, which permits reconsideration when a court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred." *Hong Vo*, 978 F.Supp.2d at 47-48 (quotation marks and citations omitted). In other cases, judges have adopted the standard from Rule 59(e) of the Federal Rules of Civil Procedure, under which a motion for reconsideration need not be granted unless there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cabrera*, 699 F.Supp.2d at 40-41 (quotation marks and citations omitted). Rule 59(e) motions must be filed within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Finally, some judges have denied motions for reconsideration after considering the issues de novo, without deciding on a

standard of review. *E.g.*, *Cooper*, 947 F.Supp.2d 108; *United States v. Thompson*, No. 07-153-08, 2007 WL 1954179 (D.D.C. July 5, 2007).

*Bagcho*, 227 F. Supp. 3d at 31.

Because this Court can consider and grant movant's "motion for reconsideration based on a *de novo* review, it is unnecessary to decide on the proper standard of review or the deadline for filing a motion for reconsideration." *Id*. A *de novo* review is appropriate here because, as the Respondent explained, the "motion was made necessary by, and pertained to, *newly discovered* documents that, while encompassed by the terms of the Court's November 2008 and March 2009 orders, were not specifically considered or addressed by the [Respondent's] December 23, 2008 memorandum regarding redactions or the Court's March 4, 2009 [Order]." Reply, ECF No. 485 at 9.

As to the first category—"statements purporting to identify the geographical locations of former detention sites"—Respondent argues that "access to that information would not improve Petitioner's communications with counsel and because such information implicates vital national security interests." *Id*. at 7-8. Respondent notes that the Court granted Petitioner's request for medical and related records "for the narrow purpose of enabling Petitioner's counsel to evaluate Petitioner's medical condition" and that "[s]tatements that purport to

identify the geographic locations of former detention sites are
not likely to advance this narrow interest" as it is "not likely
to help Petitioner's counsel assess Petitioner's medical
condition or facilitate communications between Petitioner and
his counsel." *Id.* at 8. Petitioner responds that "the location
where Petitioner received medical treatment is essential to
understanding his medical history. Knowing this information
allows Petitioner's counsel to contextualize Petitioner's
medical records by cross-referencing the treatment he received
to a growing cache of publicly-available information concerning
Petitioner's black site imprisonment, most of which is location-
specific. To put it simply, proper understanding and use of the
medical records is necessarily informed by where and when they
were created." Pet'r's Opp'n, ECF No. 479 at 4. Petitioner's
argument is beside the point, however, as the records at issue
in this motion are records created since Petitioner's arrival at
Guantanamo; not records created during his detention by the
Central Intelligence Agency ("CIA").

Respondent also argues that the redactions of "statements
purporting to identify the geographical locations of former
detention sites" are appropriate because "(e)xposure of such
information could damage foreign relations, lead to retribution
against foreign governments and officials who have cooperated
with U.S. intelligence activities, and affect foreign

governments' and officials' future cooperation with the United States." Gov't's Mem., ECF No. 389 at 8. Petitioner does not respond to Respondent's argument regarding the national security interests implicated by disclosure of the location of the sites. *See generally* Pet'r's Opp'n, ECF No. 479.

The Court is persuaded that the information pertaining to the location of former detention sites is not relevant to the reason Petitioner is being provided with copies of the records— to ensure "effective representation and present the court with appropriate information affecting the lawfulness of [Petitioner's] detention." Mem. Op. & Order, ECF No. 53 at 7. Additionally, the national security interests implicated by the disclosure of such information militate in favor of redacting the information. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (observing that official acknowledgment of a foreign government's cooperation with the CIA "may force a government to retaliate"). Accordingly, the Court will **GRANT** Respondent's request to redact this category of information.

As to the second category—"the name of a person who is described in the records as a private citizen who sent letters to petitioner during his detention," Gov't's Mem., ECF No. 389 at 3; Respondent argues that "the individual's name is not relevant to Petitioner's ability to communicate with his counsel, and personal privacy interests justify redaction of

8

this information, *id*. at 10. Petitioner's counsel initially informed Respondent that they did not object to the redaction of this information, *id*.; but in their opposition state that they do because "[t]o the extent this information was included in Petitioner's medical records, it ought to be assumed that medical professional(s) thought this information was relevant. Otherwise they would not have included the information." Pet'r's Opp'n, ECF No. 479 at 6. Respondent responds that the name of the individual does not appear in Petitioner's medical records, but rather in the "guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes at Guantanamo." Reply, ECF No. 485 at 9 (citing Mem. Op. & Order, ECF No. 53 at 10.) Petitioner's objection to the redaction of this information is not relevant to the records containing this information. Furthermore, the Court agrees with Respondent that the name of the individual is irrelevant to the reason Petitioner has access to this information and that personal privacy interests justify the redaction of the information. Accordingly, the Court will **GRANT** Respondent's request to redact these two limited categories of information.

**B. Petitioner's Emergency Motion to Produce CIA Medical Records and Allow In-Person Medical Evaluation**

Petitioner seeks: (1) copies of the "records created by medical and mental health professionals" during his over four

years in CIA custody because "one simply cannot understand
Petitioner's present profile without accounting for the
treatment he endured"; and (2) an in-person evaluation of
Petitioner because "it is impossible to glean from the
Guantanamo records any understanding of the impact of his CIA
detention on his current psychological and medical profile,"
Pet'r's Mem., ECF No. 400 at 3.

### 1. CIA Medical Records

Petitioner's counsel states in an affidavit attached to the
motion that the reason he seeks the records is so counsel can
determine the extent to which Petitioner's memory of his CIA
detention is accurate. Pet'r's Ex. B, ECF No. 400 at 38 ¶ 4.
Counsel is concerned that Petitioner has created a false memory
of what took place during his detention and that if he did so,
he may also have created false memories of other aspects of his
history. *Id*. at 39 ¶ 6. Counsel states that ascertaining the
extent to which Petitioner has created false memories is "an
essential part of his representation." *Id*. Counsel also states
that he needs to ascertain why Petitioner has created false
memories—whether "it is simply a product of [Petitioner's]
deteriorating mental health, or whether the psychologists who
engineered [Petitioner's] interrogations helped create these

false memories. *Id*. at 39 ¶ 7.

Petitioner's expert, Dr. Keller, is an expert in evaluating and treating torture victims. Pet'r's Mem. of Law ("Pet'r's Mem."), ECF No. 400 at 2. Petitioner argues that Dr. Keller has determined that he needs to review

> the records created by medical and mental health professionals while Petitioner was in CIA custody [because they] will contain information regarding clinically significant events that Petitioner suffered during interrogations (e.g. loss of consciousness, seizures, or near-drowning), and otherwise reveal the ways Petitioner responded to the substantial stresses to which he was subjected during his detention. Given the nature and duration of his treatment in CIA custody, such information is an essential part of any evaluation of Petitioner's current condition; in short, Dr. Keller has concluded that one simply cannot understand Petitioner's present profile without accounting for the treatment he endured.

*Id*. at 3.

Dr. Keller avers that "in order to offer an informed opinion regarding [Petitioner's] physical and mental health, including potentially harmful health consequences of alleged torture and mistreatment that [Petitioner] experienced, it is necessary to have access to and to review all relevant medical records and conduct and in-person clinical evaluation. This is consistent with international clinical standards and my professional obligations." Keller Aff., ECF No. 400 ¶ 38.

Respondent opposes the request, contending that it "does

not relate to [Petitioner's] ability to prosecute his habeas
claim and instead seeks relief to obtain evidence related to
[P]etitioner's treatment and conditions of confinement, which
this Court has already held falls outside this Court's habeas
corpus jurisdiction." Resp't's Opp'n ECF No. 181 at 8.
Respondent also argues that the reason for needing the records
articulated by Petitioner's counsel is inconsistent with Dr.
Keller's affidavit, which Respondent contends "makes clear that
his principal aim is to obtain evidence of torture." Resp't's
Opp'n ECF No. 181 at 2.

Petitioner responds that based on the Court's November 28,
2008 and March 5, 2009 Opinion and Orders, he is entitled to the
relief sought because "his *present* condition is in part a
product of his *past* history," Pet'r's Reply, ECF No. 428 at 2;
and because the medical records created at Guantanamo are devoid
of any reference to his treatment during his CIA detention or
its effect, *id*. Petitioner points out that Respondent does not
dispute Petitioner's account of his CIA detention, "challenge
the possible connection between Petitioner's past treatment and
his current condition," "deny Dr. Keller's assertions about the
professional obligations of a competent expert to review
contemporaneous records to ascertain such a connection," nor
"presented [a] competing expert opinion." *Id*. at 3. Petitioner
also disputes that the purpose for requesting the records is to

seek evidence of torture because "it is already a matter of public record" that Petitioner was tortured. *Id.* at 4. Petitioner points out that in view of the medical records that were created and maintained throughout his CIA detention, "the government can hardly now claim that such information is not relevant to understanding the medical and mental health consequences of such treatment." *Id.* at 5.

As stated in the Court's November 28, 2008 Order,

> The Supreme Court has stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*, 394 U.S. at 292. "[I]n order to properly represent [habeas] Petitioners, their counsel must have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger." *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 21-22 (D.D.C. 2005). "Unless Petitioners' counsel can have access to their clients, and know their true medical conditions, . . . it is obvious that their ability to present their claims to the Court will be irreparably compromised." *Id.* at 22. [Petitioner's] counsel asserted that access to [Petitioner's] medical information is necessary to make strategic determinations that are essential to legal representation, such as whether petitioner has the mental capacity necessary to assist in preparing and presenting his defense. (*See* Pet'r's Mot. for Recons. at 6.) [Petitioner's] counsel sought access to [Petitioner's] medical records "in order to assess whether and to what extent Petitioner's

13

> medical condition" affects his right to habeas, and to determine whether to challenge the legitimacy of [Petitioner's] CSRT hearing in March 2007. (*See* Pet'r's Emergency Mot. at 7-9; Pet'r's Mot. for Recons. at 2-4.)
>
> If [Petitioner's] right to present his case with the assistance of counsel is to have any meaning, his counsel must be able to make the very assessments he seeks to make. Requesting copies of [Petitioner's] medical records and staff records regarding [Petitioner's] seizure-related episodes and being able to secure independent expert assessments of the data in the records is a legitimate and important effort to provide effective representation and present the court with appropriate information affecting the lawfulness of his detention.

Mem. Op. & Order, ECF No. 53 at 8-9. Accordingly, the Court ordered Petitioner's counsel be provided "with copies of [Petitioner's] medical records since his arrival at Guantanamo in September 2006, all copies of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes." *Id*. at 9-10.

Respondent does not rebut Dr. Keller's proffered reasons for needing to review the records with its own expert opinion, but takes issue with the fact that Dr. Keller is not a psychiatrist and suggests that the purpose of Dr. Keller's analysis of the records and in-person examination "is not to assist counsel in reconstructing petitioner's memory but to determine whether petitioner's account regarding his treatment while in U.S. custody or his attorneys' surmises about

14

petitioner's treatment can be substantiated." Resp't's Opp'n,
ECF No. 181 at 9 (citing Keller Aff. ¶ 28 (referring to
"assessing . . . allegations" of "torture and mistreatment while
in U.S. custody"). Respondent also contends that Dr. Keller's
affidavit "never makes any suggestion that it is likely that
access to the additional requested records and in-person
examination will produce any insights that will lead to any
improvement in petitioner's counsel's ability to work with their
client, or even that there is a significant possibility that Dr.
Keller's review will lead to such an improvement. Indeed, the
closest the affidavit comes is to suggest that the requested
relief could "potentially" produce information bearing on
petitioner's present medical condition, e.g., Keller Aff. ¶ 37,
with no explanation of how this might potentially or actually
help petitioner advance his habeas corpus case." *Id*. at 9.

The Court finds Respondent's arguments unpersuasive. First,
the Court rejects Respondent's argument that the records
Petitioner seeks fall outside of this Court's habeas
jurisdiction because the Court has already ruled that access to
his medical records "is a legitimate and important effort to
provide effective representation and present the court with
appropriate information affecting the lawfulness of his
detention." Mem. Op. & Order, ECF No. 53 at 8-9. Respondent does
not dispute that the medical records created at Guantanamo,

however, are devoid of any reference to his treatment during his CIA detention or its effect.

Furthermore, Respondent has failed to provide an expert opinion to rebut Dr. Keller's reasons for needing the medical records. Accordingly, Doctor Keller's conclusion that—"in order to offer an informed opinion regarding [Petitioner's] physical and mental health, including potentially harmful health consequences of alleged torture and mistreatment that [Petitioner] experienced, it is necessary to have access to and to review all relevant medical records and conduct and in-person clinical evaluation. This is consistent with international clinical standards and my professional obligations"—is unrebutted. Keller Aff., ECF No. 400 ¶ 38. The fact that Dr. Keller is not a psychiatrist is beside the point as any psychiatric evaluation would be conducted by a psychiatrist rather than by Dr. Keller. And Respondent's complaints about other statements made, or not made, in the affidavit are also beside the point given that the Court has already determined that Petitioner's counsel's need to know his "true medical condition," *Al-Joudi*, 406 F. Supp. 2d at 22; is necessary to ensure "effective representation and present the court with appropriate information affecting the lawfulness of [Petitioner's] detention." Mem. Op. & Order, ECF No. 53 at 7; *see also Al-Kazimi v. Obama*, Civil Action No. 05-2386 (RBW), ECF

No. 1452 at 2 (noting the Court's oral ruling directing Respondent to produce Petitioner's medical records, to the extent they exist, for the period of detention prior to his detention by the Department of Defense).

Finally, Respondent argues that it would be extremely burdensome to provide the records Petitioner requests, Resp't's Suppl., ECF No. 390 at 2; and that that burden is unjustified because "petitioner does not explain how access to the requested records would or even could lead [to] any material improvement in petitioner's communications with his counsel," *id*. at 3. The Court, *supra*, has already rejected Respondent's latter argument. Following the classification review ordered by this Court, a public version of Petitioner's Memorandum of Law in Support of the Motion was filed on the docket. *See* Mem. of Law, ECF No. 400. That filing does not, however, include Petitioner's original motion nor any proposed order that may have been filed with it. *See id*. Respondent states, and Petitioner does not dispute, that "Petitioner's original motion additionally sought other Government-created documents pertaining to Petitioner's medical condition while he was in CIA custody." Proposed Order, ECF No. 484-1 at 3. However, in Petitioner's Proposed Order he seeks only "medical and mental health records." Proposed Order, ECF No. 482 at 1. Specifically, Petitioner seeks, within 30 days of the Court's Order,

> the complete and unexpurgated medical and
> mental health records, including all
> radiographic films, relating to Petitioner's
> condition and care during the period he was
> held captive by the CIA, from his capture in
> or around March 2002 until his custody was
> transferred by the CIA to the Department of
> Defense ("DOD") in or around September 2006.

*Id.*

Respondent also opposes this more narrow request, however,

stating that "Petitioner's request would impose significant

burdens on the Government because the documents containing the

information sought by Petitioner's motion contain extremely

sensitive information that cannot be shared with Petitioner's

counsel, or with Petitioner's expert, such as information about

the location of detention facilities and the cooperation of

foreign governments, and creating appropriately redacted

versions of the documents or substitutes for the documents would

be extremely burdensome." Proposed Order, ECF No. 484-1 at 1-2

(citing ECF Nos. 186, 390). The Court notes that these include

the same categories of redactions that the Court, *supra*, has

agreed may be made to the records produced pursuant to the

Court's November 28, 2008 and March 5, 2009 orders.

Pursuant to the Case Management Order entered in this case,

access to the records Petitioner seeks must, among other things,

"be narrowly tailored, not open-ended" and must not "unduly

burden the government." Case Management Order, ECF No. 48 at 3 §

E.2(1), (4). Here, the medical and mental health records sought
are narrowly tailored to ensure that Petitioner is "provide[d]
effective representation and present the court with appropriate
information affecting the lawfulness of his detention," Mem. Op.
& Order, ECF No. 53 at 8-9; because for his independent medical
expert "to offer an informed opinion regarding [Petitioner's]
physical and mental health, including potentially harmful health
consequences of alleged torture and mistreatment that
[Petitioner] experienced, it is necessary to have access to and
to review all relevant medical records," Keller Aff., ECF No.
400 ¶ 38. And the request for medical records is not open-ended:
it is limited to "medical and mental health records, including
all radiographic films, relating to Petitioner's condition and
care during the period he was held captive by the CIA, from his
capture in or around March 2002 until his custody was
transferred by the CIA to the Department of Defense ("DOD") in
or around September 2006." Proposed Order, ECF No. 482 at 1.

Access to classified information requires both a security
clearance and a "need to know" the relevant classified
information. *U.S. v. Libby*, 429 F. Supp. 18, 24 (D.D.C. 2006)
(citing Executive Order No. 12,958, § 4.2(a)(3), 60 Fed. Reg.
19,825 (Apr. 17, 1995), *as amended by* Exec. Order No. 13,292, 68
Fed. Reg. 15,315 (March 25, 2003) ("A person may have access to
classified information provided that ... the person has a need-

to-know the information."). The Court recognizes that the records
will need to be located, undergo classification review, and a
"need-to-know" determination will need to be made. The Court has
already determined that going through this same procedure with
the records being provided pursuant to the Court's November 28,
2008 and March 5, 2009 orders does not constitute an undue
burden. So here too. As with those records, this information is
needed to ensure that Petitioner is "provide[d with] effective
representation and present[s] the court with appropriate
information affecting the lawfulness of his detention." Mem. Op.
& Order, ECF No. 53 at 8-9.

Accordingly, the Court will **GRANT** Petitioner's request for
Petitioner's medical and mental health records, including all
radiographic films, relating to Petitioner's condition and care
during the period he was held captive by the CIA, from his
capture in or around March 2002 until his custody was
transferred by the CIA to the DOD in or around September 2006.
The Court will **DENY** the additional requests set forth in
Petitioner's Proposed Order, *see* ECF No. 482; as those requests
have neither been briefed nor did Petitioner's counsel consult
with Respondent on the additional relief sought as required by
Local Civil Rule 7(m). LCvR 7(m) ("Before filing any
nondispositive motion in a civil action, counsel shall discuss
the anticipated motion with opposing counsel in a good-faith

effort to determine whether there is any opposition to the
relief sought and, if there is, to narrow the areas of
disagreement. The duty to confer also applies to non-
incarcerated parties appearing pro se. A party shall include in
its motion a statement that the required discussion occurred,
and a statement as to whether the motion is opposed."); *see also*
*Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 21-
22 (D.D.C. 2013) (holding that Local Civil Rule 7(m) requires
consultation on all forms of relief sought in a motion).

### 2. In-Person Evaluation

Petitioner also requests an in-person evaluation of
Petitioner because "it is impossible to glean from the
Guantanamo records any understanding of the impact of his CIA
detention on his current psychological and medical profile."
Pet'r's Mem., ECF No. 400 at 3. Respondent does not seriously
contest the request for an in-person evaluation, contesting the
request only insofar as the purpose of the evaluation is to
provide medical treatment to the Petitioner. Resp.'s Opp'n, ECF
No. 181 at 13. Persuasive authority is clear that Guantanamo
detainees do not have a constitutional right to choose their own
medical providers nor to obtain treatment of their own choosing.
*See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A
prison inmate has no independent constitutional right to outside
medical care additional and supplemental to the medical care

provided by the prison staff within the institution."); *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) ("The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing."); *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867-68 (2d Cir. 1970) ("The prisoner's right is to medical care—not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right . . ."); *Rabbani v. Trump*, 05-cv-1607 (RCL), Mem. Op., ECF No. 379 at 19 (noting that Guantanamo detainee is not entitled to the medical treatment of his choice). However, here Petitioner is not requesting the in-person evaluation for the purpose of providing medical care. Rather, he seeks "a comprehensive, in-person clinical evaluation . . . to provide a fully informed and independent opinion regarding [Petitioner's] condition." Pet'r's Mem., ECF No. 400 at 16. The Court agrees that he is entitled to such an evaluation.

"[W]here specific allegations before a court show reason to believe that the [habeas] petitioner may, if the facts are fully developed, be able to demonstrate that he is  . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). "The Supreme Court has

provided scant guidance on [what procedure is due to detainees challenging their detention in habeas corpus proceedings], consciously leaving the contours of the substantive and procedural law of detention open for lower courts to shape in a common law fashion." *Al-Binahni v. Obama*, 590 F.3d 866, 870 (D.C. Cir. 2010). Pursuant to these principles, judges of this Court have ordered physical and/or psychiatric examinations of Guantanamo detainees. *See*, *e.g.*, *Zuhair v. Bush*, 08-cv-0864 (EGS), ECF No. 111 at 2-3 (providing for the appointment of an "independent medical expert to examine Petitioner and provide the Court with a report on his medical and mental health condition"); *Al-Oshan et al., v. Obama*, 05-520 (RMU), ECF No. 262 at 2 (granting "petitioner's request for an independent psychiatric and medical evaluation"). The Court will do the same and will **GRANT** Petitioner's request for an in-person medical evaluation.

### C. Petitioner's Motion for Prompt Disclosure of Petitioner's Medical Records

Petitioner also seeks unclassified copies of his medical records. Pet'r's Mot., ECF No. 409 at 3, Pet'r's Reply, ECF No. 419 at 1. In subsequent briefings on the motion, Petitioner's counsel seek, *inter alia*, classified copies of the documents, Pet'r's Reply, ECF No. 419 at 1; do not object to Respondent's agreement to provide unclassified copies every ninety (90) days,

Pet'r's Sur-Surreply, ECF No. 446 at 3; and requests that
classified copies be provided every thirty (30) days, *id.* at 4.

Petitioner's counsel states that "[w]hen we queried
opposing counsel for his position on this motion, he asked that
we not file because "Court intervention seems unnecessary."
Pet'r's Mot., ECF No. 409 at 3. Petitioner's counsel fail to
respond to Respondent's argument that Petitioner's counsel
failed to comply with the duty to confer on nondispositive
motions as required by Local Civil Rule 7(m), *see generally*
Pet'r's Sur-Surreply, ECF No. 446.

Respondent represents that it has been producing
unclassified copies medical records at intervals of
approximately every 90 days. *See* Proposed Order, ECF No. 484-3
at 1. Since the parties have agreed that unclassified copies of
the medical records may be provided approximately every 90 days,
and since Petitioner's counsel did not consult with Respondent
on all the relief sought in the motion and subsequent briefings,
Petitioner's Motion for Prompt Disclosure of Medical Records is
**DENIED**. *See* Local Civil Rule 7(m); *see also Attikisson v.
Holder*, 113 F. Supp. 3d 156, 161 n.3 (D.D.C. 2015) (Sullivan,
J.) ("Plaintiffs' apparent belief that because the defendants
had previously expressed a position on the issue, they were
somehow exempt from Local Civil Rule 7(m) is simply incorrect.
The meet-and-confer requirement serves not only to obtain the

opposing party's potential consent to a motion, but also to provide an opportunity for the parties to narrow or clarify the scope of their dispute."); *Dist. Hosp. Partners, L.P.,* 971 F. Supp. 2d at 21-22 (holding that Local Civil Rule 7(m) requires consultation on all forms of relief sought in a motion).

*     *     *     *     *

Accordingly, for the reasons set forth above, Respondent's Motion for Clarification and Partial Reconsideration of Orders Requiring Production of Medical Records is **GRANTED**; and it is

**ORDERED** that the Court's Memorandum Opinion and Order of November 28, 2008, ECF No. 53, and Order of March 4, 2009, ECF No. 113 is **CLARIFIED** as follows:

Classified information contained in documents produced pursuant to the November 28, 2008 and March 4, 2009 Orders shall not be shared with an independent physician lacking a security clearance. Respondent may comply with the Orders by producing a separate redacted, unclassified but protected set of the records that Petitioner's counsel may share with an independent physician lacking a security clearance. The redacted, unclassified records produced by Respondent may be shared with an independent physician only after that physician has signed the Acknowledgment that is attached as Exhibit B of the TS/SCI Protective Order entered in this case; and it is further

**ORDERED** that the Court's Memorandum Opinion and Order of

November 28, 2008, ECF No. 53, and Order of March 4, 2009, ECF No. 113 is **MODIFIED** as follows:

In both the classified and unclassified sets of documents produced under the November 28, 2008 and March 4, 2009 Orders, Respondent may make redactions previously authorized by this Court and may additionally redact: (1) statements purporting to identify the geographic location of former detention sites; and (2) the name of a person described in the records as a private citizen who sent letters to Petitioner during his detention; and it is further

**ORDERED** that Petitioner's request for Petitioner's "medical and mental health records, including all radiographic films, relating to Petitioner's condition and care during the period he was held captive by the CIA, from his capture in or around March 2002 until his custody was transferred by the CIA to the Department of Defense ("DOD") in or around September 2006" is **GRANTED**; and it is further

**ORDERED** that the additional relief requested in the Proposed Order, ECF No. 482 is **DENIED**; and it is further

**ORDERED** that Petitioner's request for an in-person medical evaluation is **GRANTED**; and it is further

**ORDERED** that Petitioner's Motion for Prompt Disclosure of Petitioner's Medical Records is **DENIED**; and it is further

**ORDERED** that by no later than June 22, 2020, the parties

26

shall submit a Joint Status Report regarding the following matters:

(1) A proposed schedule for the production of classified and unclassified sets of Petitioner's medical and mental health records, including all radiographic films, relating to Petitioner's condition and care during the period he was held captive by the CIA, from his capture in or around March 2002 until his custody was transferred by the CIA to the DOD in or around September 2006; and

(2) A description of any categories of proposed redactions to those records.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
         **United States District Judge**
         **June 6, 2020**