**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ZAYN AL ABIDIN MUHAMMAD
HUSAYN (ISN #10016),

              Petitioner,

v.

LLOYD AUSTIN,[1] *et al.*,

             Respondents.

No. 08-cv-1360 (EGS)

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.    Introduction and Procedural Background**

Pending before the Court is Petitioner's Motion for
Discovery, which contains 213 numbered requests. *See* Mot., ECF
No. 405.[2] Petitioner's reply brief contains a set of 46 Requests
for Admissions and a single Interrogatory, which Petitioner
asserts could identify issues that are no longer in controversy
and accordingly obviate the need for this Court to address many
of the issues raised in his Motion for Discovery. *See* Reply, ECF
No. 407 at 8-9.[3] Because Petitioner failed to include a proposed

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court
substitutes as respondent the United States Secretary of
Defense, Lloyd Austin, for the former Acting United States
Secretary of Defense, Richmond Spencer.
[2] The Appendix included with this Memorandum Opinion and Order
lists all 213 requests and indicates how the Court ruled on each
request.
[3] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

Order with his Motion for Discovery as required by Local Civil
Rule 7(c) and in view of Petitioner's representation that the
motion had been partially resolved, the Court ordered Petitioner
to file a proposed order. Min. Order (June 9, 2017). In the
proposed order, however, Petitioner appeared to abandon his
Request for Admissions and the single Interrogatory. *See* Gov't's
Proposed Order, ECF No. 484-2 at 6 (observing that Petitioner
did not address these additional requests in the proposed order
that he filed in connection with this Court's June 9, 2017 Order
in Petitioner's Proposed Order, ECF No. 480.) Thereafter,
however, Petitioner notified the Court that he continued to seek
this relief. Notice, ECF No. 551 (July 4, 2020).

Although in the usual case, the Court does not consider new
requests for relief raised the first time in a reply brief, *see*
Local Civil R. 7(a) (requiring that a motion include a statement
of the specific points of law and authority that support the
motion); *Scott v. Office of Alexander*, 522 F. Supp. 2d 262, 274
(D.D.C. 2007) (It is a well-settled prudential doctrine that
courts generally will not entertain new arguments first raised
in a reply brief.); and with regard to which the moving party
did not consult on the relief sought, Local Civil Rule 7(m)
(Before filing any nondispositive motion in a civil action,
counsel shall discuss the anticipated motion with opposing
counsel in a good-faith effort to determine whether there is any

opposition to the relief sought and, if there is, to narrow the areas of disagreement.); the Court found it appropriate to consider Petitioner's request under the circumstances here and directed the parties to file supplementary briefing. Min. Order (July 17, 2020). That briefing, however, failed to narrow the issues of contention. *See* Respondents' Sur-Reply to Petitioner's Motion for Discovery, ECF No. 558; Petitioner's Sur-Sur-Reply Relating to His Motion for Discovery, ECF No. 559. Accordingly, the Court will rule on the pending Motion for Discovery at this time. Petitioner may renew his requests for admissions and interrogatory at an appropriate time following the production of the discovery ordered in this Memorandum Opinion and Order.

Upon careful consideration of the Motion, Opposition, Reply, Sur-Reply, and Sur-Sur-Reply; the applicable law; and for the reasons discussed below, Petitioner's Motion is **GRANTED IN PART, DENIED IN PART, HELD IN ABEYANCE IN PART,** and **FOUND AS MOOT IN PART.**

## II. Petitioner's Requests

The Court considers Petitioner's discovery requests pursuant to the Case Management Order entered November 6, 2008, ECF No. 48; as amended on December 16, 2008, ECF No. 62, to which the Court refers collectively as the "CMO."

To the extent possible, the Court addresses the discovery requests in categories. For a number of requests, Respondent

concedes that the request, or certain aspects of the request, falls within its obligation to disclose exculpatory evidence pursuant to the applicable provision of the CMO, but argues that the requests should be denied because the disclosures have been made. However, in its Sur-Reply, and as explained in greater detail below, Respondent conceded that at this juncture, a search of the Guantanamo Task Force database would be worthwhile. Accordingly, the Court will order respondent to conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for the request, or aspect of the request, that Respondent concedes is within its discovery obligations.

For certain other requests, Petitioner either did not address Respondent's objection in his reply brief, but rather requested admissions and an interrogatory, or, lodged a general objection to Respondent's contentions about "neutral evidence." Where Petitioner did not articulate his specific disagreement with Respondent's objection, the Court will deny the request, or appropriate aspect thereof unless it is clear that Petitioner is entitled to the request as a matter of law. For certain other requests, Petitioner did not address Respondent's objections at all. The Court will deny these requests unless it is clear that Petitioner is entitled to the evidence as a matter of law.

### A.    Requests Pursuant to CMO § I.E.1

Section I.E.1 of the CMO provides:

> If requested by the petitioner, the government
> shall disclose to the petitioner (1) any
> documents and objects in the government's
> possession that the government relies on to
> justify detention; (2) all statements, in
> whatever form, made or adopted by the
> petitioner that the government relies on to
> justify detention; and (3) information about
> the circumstances in which such statements of
> the petitioner were made or adopted.

CMO § I.E.1.(2).

### 1.    Request Nos. 1 and 2

In Request No. 1, Petitioner seeks "all statements of
Petitioner that relate to the statements attributed to him in
the Factual Return." Mot., ECF No. 405 at 76. In Request No. 2,
Petitioner seeks statements that relate to thirty-two
allegations in the Factual Return. *Id.* at 76-79. Respondent
argues that all but one of Petitioner's requests are not
authorized by CMO § I.E.1.2, because this provision does not
"require disclosure of separate statements Petitioner has made
about the same topic." Opp'n, ECF No. 406 at 19. Petitioner
responds—and the Court agrees—that persuasive authority in this
District does not support Respondent's interpretation of the
CMO. *See* Reply, ECF No. 407 at 31-33; *Al-Ohad v. United States*,
2009 WL 382098, at *1 (D.D.C. Feb. 12, 2009)(ordering "that
Respondents shall disclose to Petitioners' counsel, pursuant to

Sections I.D.I, I.E.1, and I.E.2 of the Case Management Order, as amended, all statements, in whatever form (including audio or video), whether cumulative or not, that have not previously been disclosed, made by Petitioner or the detainees identified as * * * ***relating to the statements attributed to them in the Factual Returns***") (emphasis added); *Zemiri v. Obama*, 2009 WL 311858, at *1 (D.D.C. Feb. 9, 2009) (ordering "that Respondents shall disclose to Petitioners' counsel, pursuant to Sections I.D.I, I.E.1, and I.E.2 of the Case Management Order, as amended, all statements, in whatever form (including audio or video), whether cumulative or not, that have not previously been disclosed, made by Petitioner or the detainees identified as * * * ***relating to the statements attributed to them in the Factual Returns***") (emphasis added). Furthermore, Petitioner's requests are not "broad-ranging requests for all statements made," Opp'n, ECF No. 21 at 21; and Petitioner has "idenf[ied] the particular . . . statements for which discovery is necessary." *Sadkhan v. Obama*, 608 F. Supp. 2d 33, 41 (D.D.C. 2009) (internal quotation marks omitted).

With regard to Request 2q for statements that relate to Petitioner's alleged "submi[ssion of] the requisite paperwork to join al-Qaida and pledge bayat but his paperwork application [was] rejected," Respondent objects to this request on the ground that "[i]nformation that suggests only that Petitioner

was not a "member" of al-Qaida is consistent with the
Government's factual allegations against Petitioner and
therefore is not exculpatory." The Court is not persuaded by
Respondent's arguments. Respondent is detaining Petitioner based
on his affiliation with al-Qaida; evidence that undermines this
alleged affiliation would be exculpatory. Accordingly, it is
hereby

   **ORDERED** that Respondent shall disclose to Petitioner's
counsel, all statements, in whatever form (including audio or
video), made or adopted by Petitioner that Respondent relies on
to justify detention, whether cumulative or not, that have not
previously been disclosed, made by Petitioner relating to the
statements attributed to him in the Factual Return sought in
Request No. 1, and in Request No. 2, subparts (a) through (ff).

            **2.   Request Nos. 3, 4, 5, 6, 7, 11**

      Petitioner seeks the following documents and objects
allegedly found at the Faisalabad house where he was arrested:
Request No. 3: training manuals; Request No. 4: fake passports;
Request No. 5: computer allegedly used to provide training and
allegedly containing anti-American material, "H-bomb plans"; and
Request No. 6: electronic parts and an electronic gun. Mot., ECF
No. 405 at 79-80. Petitioner argues that these requests relate
to respondent's allegation that he "facilitated travel for and
provided other assistance to recruits so they could receive

terrorist training." *Id.* at 26 (quoting Factual Return, ECF No. 474 at 34). Request No. 7 is for the document containing Ghassan Al-Sharbi's phone number, and according to Petitioner, relates to "the allegation that Petitioner was associated with terrorists." *Id.* at 80. Request No. 11 is for the handwritten training manual found near Derunta Camp and according to Petitioner relates to the allegation that Derunta, where Petitioner was allegedly a "senior operative" was a "terrorist training facility." *Id.* at 81.

Respondent objects on the grounds that these documents and objects are "merely mentioned in the [F]actual [R]eturn" or in exhibits to the [F]actual [R]eturn, but the Respondent "does not rely on the existence or characteristics of any of these [documents or] particular objects as part of the factual basis for detaining Petitioner." Opp'n, ECF No. 406 at 30-31.

While Petitioner does not respond to the Government's objections, *see generally* Reply, ECF No. 407; here the Court will depart from its approach of denying requests where Petitioner has failed to respond to the Government's objections because it is clear that Petitioner is entitled to these objects. The Factual Return provides that the ""[n]arrative and attached materials set forth the factual bases supporting Zubaydah's lawful detention." Factual Return, ECF No. 474 at 25 ¶ 2. Accordingly, Respondent's contention that the "mere[]

mention" of documents and objects in the Factual Return does not mean that they are part of the factual basis for detaining Petitioner is inconsistent with Respondent's own assertion in the Factual Return. Respondent justifies Petitioner's detention on the grounds that, among other things, he "facilitated travel for and provided other assistance to recruits so they could receive terrorist training." *Id*. at 34. Request Nos. 3, 4, 5, and 6 are relevant to whether terrorist training was provided to recruits. Accordingly, Respondent does rely on the existence of the documents and objects to support its allegation that recruits received terrorist training and Petitioner facilitated travel for that training and provided assistance to recruits so they could receive that training.

Furthermore, Respondent justifies Petitioner's detention on the ground that, among other things, he "was captured harboring several terrorists who actively supported al-Qaida, the Taliban, or associated forces, and who were to form a future terrorist cell." *Id*. at 55. The Factual Return alleges that Ghassan Al-Sharbi was one of those terrorists and that he and Petitioner met in Afghanistan after September 11, 2001 and that Al-Sharbi "was chosen to participate in the IED plot." *Id*. at 60 ¶ 64.c.i. Accordingly, respondent relies on the existence of the document containing Mr. Al-Sharbi's phone number to support its allegation that Petitioner was harboring terrorists.

Finally, one of the attached declarations supporting Petitioner's detention alleges that Petitioner was a senior operative at Derunta, which Respondent alleges was a terrorist training facility. Factual Return, Background Declaration— Terrorist Training Camps, ECF No. 474. Since Respondent asserts in the Factual Return that the "[n]arrative and attached materials set forth the factual bases supporting [Mr.] Zubaydah's lawful detention," Factual Return, ECF No. 474 at 25 ¶ 2; the handwritten training manual found near Derunta Camp is relevant to this allegation.

The Court is unpersuaded by Respondent's argument that requiring the disclose of these documents and objects would be tantamount to "revert[ing] to the original CMO, which required production of objects 'referenced in the [F]actual [R]eturn,'" Opp'n, ECF No. 406 at 31 (citing *Bin Attash v. Obama*, 628 F. Supp. 2d 24, 37 (D.D.C. 2009); because these documents and objects are not merely referenced in the Factual Return; they are relevant to whether terrorist training was provided to recruits and to whether Petitioner was harboring terrorists, specifically Mr. Al-Sharbi. *Cf*. *Razak v. Obama*, Civil Action No. 05-1601 (Kessler, J.), ECF No. 235 at 4 ("These five requests involve scenarios where the Government has produced an intelligence report that references the substance of another particular document or object (e.g. an intelligence report that

10

references a photograph identified by the Petitioner) in order to justify its detention of the Petitioner. In these scenarios, therefore, the Government does indeed rely on the substance of the underlying documents and objects."). Accordingly, it is further

ORDERED that Request Nos. 3, 4, 5, 6, 7, and 11 are **GRANTED** and Respondent shall disclose the documents and objects described in Request Nos. 3, 4, 5, 6, 7, and 11.

### 3.   Request Nos. 8, 9, 10, 20, 21, 60, 61

Request Nos. 8, 9, 10, 20, and 21 are redacted. Mot., ECF No. 405 at 80-81. The Government's responses to Request Nos. 60 and 61 are redacted in significant part. The Court will hold these requests in abeyance and will address them in a Supplement to this Memorandum Opinion and Order at such time as it is reasonable to access the SCIF. Accordingly, it is further

ORDERED that Request Nos. 8, 9, 10, 20, 21, 60 and 61 are **HELD IN ABEYANCE.**

### B.   Requests Pursuant to CMO § I.D.1

Petitioner seeks the following requests pursuant to CMO § I.D.1, which provides in relevant part as follows:

> The government shall disclose to the petitioner all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner. *See Boumendiene*, 128 S. Ct. at 2270 (holding that habeas court "must have the

11

authority to admit and consider relevant exculpatory evidence that was not introduced during the [CSRT] proceeding"). In this context, the term "reasonably available evidence" means evidence contained in any information reviewed by attorneys preparing [F]actual [R]eturns for all detainees; it is not limited to evidence discovered by the attorneys preparing the [F]actual [R]eturn for the petitioner. The term also includes any other evidence the government discovers while litigating habeas corpus petitions filed by detainees at Guantanamo Bay.

CMO § I.D.1.

### 1.   Request Nos. 12, 13a-e

Request Nos. 12, 13a-e are for exculpatory evidence within Petitioner's statements. *See* Mot., ECF No. 405 at 83. Petitioner argues that "reasonably available evidence," CMO § I.D.1; "includes information compiled by the Executive Task Force created by President Obama's January 22, 2009 Executive Order" ("Guantanamo Review Task Force database."). Mot., ECF No. 405 at 15 n.21 (citing Exec. Order No. 13,492 at 4(c)(1), 74 Fed. Reg. 4897 (Jan. 22, 2009)). By way of explanation, on January 22, 2009, then-President Barack H. Obama issued Executive Order 13,492, which directed the Attorney General to "[a]ssemble all information in the possession of the Federal Government that pertains to any individual currently detained at Guantanamo and that is relevant to determining the proper disposition of any such individual." 74 Fed. Reg. 4898.

Respondent states that these "requests simply seek material that Respondent agrees is required to be disclosed as exculpatory under CMO § I.D.1" and that "it has already searched for and disclosed exculpatory information under § I.D.1, and Petitioner has not presented evidence that Respondent has failed to comply with the CMO." Opp'n, ECF No. 406 at 30. Respondent concedes that "several judges of this Court have issued orders expanding the scope of 'reasonably available evidence' to encompass materials collected by the Guantanamo Review Task Force, but argues that the Court should not do so here. *Id*. at 14. In its Sur-Reply, however, Respondent concedes that although "a review of the Guantanamo Review Task Force database will be burdensome," it

> may be worthwhile, both to determine if additional, non-duplicative information exists that may be exculpatory with respect to the Government's case reflected in the [F]actual [R]eturn and to determine, consistent with Petitioner's current requests and interrogatory seeking additional inculpatory and other evidence . . . whether additional evidence exists that may support the Government's case and be the appropriate subject for a motion to amend. The review could also serve as a source of possible rebuttal evidence, depending on the claims and assertions eventually raised by Petitioner in his yet-to-be filed traverse.

Sur-Reply, ECF No. 558 at 21. Respondent proposes that the Court hold the discovery motion and requests for admissions and the interrogatory in abeyance pending the review of the database.

*Id.* at 22. Petitioner agrees that the database should be searched, but disagrees that his motion and requests for admissions and interrogatory should be held in abeyance. Sur-Sur-Reply, ECF No. 559 at 15-16.

Judges in this District have construed "reasonably available evidence" in Section I.D.1 of the CMO to include information in the Guantanamo Review Task Force database. *See e.g.*, *Abdah v. Obama*, Civil Action No. 04-1254 (Kennedy, J.), ECF No. 477 at 5 (D.D.C. Apr. 8. 2009) (stating that "the court considers any information that the government reviews or obtains while implementing the Executive Order to be reasonably available under the Consolidated CMO"); *Alsawam v. United States* Civil Action No. 05-1244, ECF No. 158 at 6 (D.D.C Apr. 20, 2009) (ordering that "as additional and new information is identified by the executive review teams under the Executive Order, such information must be provided to Petitioner's counsel on a rolling basis"); *Rabbani v. Obama*, Civil Action No. 05-1607 (Urbina, J.), ECF No. 218 at 2 (D.D.C. Aug. 20, 2009) (noting that "[a]s this court has clarified, 'reasonably available evidence' also includes 'information complied pursuant to Executive Order 13,492 . . ."). In view of this persuasive authority and Respondent's concession that a search of the database will be worthwhile, the Court sees no reason to hold this motion in abeyance. Accordingly, it is further

**ORDERED** that Request Nos. 12 and 13a-e are **GRANTED** and Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for the exculpatory statements within Petitioner's statements set forth in these requests and disclose any additional, non-duplicative information.

### 2.    Request No. 14

Petitioner requests

> all statements or writings by Petitioner evidencing that U.S. interrogators or other government officials acknowledged to Petitioner that he was not a member of [al-Qaida] and did not support its ideology or actions, including the attacks of September 11, 2001, or that the U.S. government's initial assessments about Petitioner had been incorrect.

Mot., ECF No. 405 at 84. The government responds that this information is not exculpatory because Respondent does not contend that "Petitioner was a member of al-Qaida or otherwise formally identified with al-Qaida. Instead, the Government's detention of Petitioner is based on Petitioner's actions as an affiliate of al-Qaida." Opp'n, ECF No. 406 at 36. Petitioner responds—and the Court agrees—that this information would be exculpatory. Reply, ECF No. 407 at 18-20. Respondent is detaining Petitioner based on his alleged affiliation with al-Qaida; evidence that undermines this alleged affiliation would be exculpatory. Accordingly, it is further

15

**ORDERED** that Request No. 14 is **GRANTED** and Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for Petitioner's statements as described in the request and disclose any additional, non-duplicative information.

### 3. Request Nos. 17d, 17g, 27a-d, 29d-e, 29g-h, 29j, 35a-h, 37a-c, 39a-c, 41a-d, 46, 58b-e, 58h, 71b-c, 71f-g, 75a-b

Respondent states that these requests "do not appear to extend further than Respondent's disclosure obligations under CMO § I.D.1, and so they should be denied." Opp'n, ECF No. 406 at 30. However, Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful. Sur-Reply, ECF No. 558 at 21. Accordingly, it is further

**ORDERED** that Request Nos. 17d, 17g, 27a-d, 29d-e, 29g-h, 29j, 35a-h, 37a-c, 39a-c, 41a-d, 46, 58b-e, 58h, 71b-c, 71f-g, 75a-b are **GRANTED** and Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for the evidence described in these requests and disclose any additional, non-duplicative information.

### 4. Request No. 15

Petitioner requests "all evidence of the circumstances, in whatever form maintained, under which Petitioner made exculpatory statements to the government, including evidence revealing the method and manner of the 'enhanced interrogation

techniques' employed on Petitioner when such statements were made." Mot., ECF No. 405 at 84.

Petitioner cites two cases to support the proposition that "the exculpatory significance of [a] statement . . .arose not solely from its content, but from the circumstances under which it was made." *Id.* at 17 (citing *Reasonover v. Washington*, 60 F. Supp. 2d 937, 954 (E.D. Mo. 1999) (holding that a surreptitiously recorded conversation between the defendant and another suspect should have been disclosed because, among other things, it cast doubt on the credibility of an informant's testimony based on the court's finding that the defendant and suspect "believed they were engaged in a candid conversation"); *United States v. Severdija*, 790 F.2d 1556 (11th Cir. 1986) (affirming trial court's grant of a new trial based on the government's failure to disclose the government's record of defendant's statement made well in advance of his arrest for drug trafficking charges in which he has informed government officials of his suspicions about drug  trafficking in the area and encouraged government officials to remain in the area). Petitioner argues that because he "repeatedly denied" allegations that he was "'part of' and 'substantially supported' al-Qaida and associated forces," Factual Return, ECF No. 474 at 47 n.13; while being tortured, he is entitled to "the circumstances" of his denials because they "tend[] materially to

undermine information presented to support the government's justification for detaining the petitioner," Mot., ECF No. 405 at 18. Contending that "the circumstances surrounding these denials provide the best evidence of Petitioner's innocence," *id*.; Petitioner asserts that "just as the reliability of an inculpatory statement is undermined by evidence that it was made under duress, the reliability of an exculpatory statement made under duress is enhanced," *id*. at 21 n.28; but provides no support for this assertion, *see generally id.*; see generally Reply, ECF No. 407.

Respondent dismisses this assertion as "speculative pop psychology" unsupported by any scientific or anecdotal evidence. Opp'n, ECF No. 406 at 27. Respondent also points out that Petitioner has argued in this case that information obtained under torture is inherently unreliable and that it does not rely on any statements Petitioner made while in U.S. custody in the Factual Return. *Id.*

While Petitioner does not respond to the Government's objections, *see generally* Reply, ECF No. 407; here the Court will depart from its approach of denying requests where Petitioner has failed to respond to the Government's objections because it is clear that Petitioner is entitled to this information. *Cf. Mohammed v. Obama*, Civil Action No. 05-1347, 2009 WL 1220441, *1 (D.D.C. May 1, 2009) (Kessler, J.) (ordering

Respondent to produce, as exculpatory "circumstances" evidence, evidence of torture of the Petitioner in that case, whether "he was in the custody of the United States or in the custody of any other nation or groups"). Respondent acknowledges that it has "conducted a search for statements made by Petitioner that materially undermine the information presented in support of detention, and disclosed those statements to Petitioner's counsel." Opp'n, ECF No. 406 at 27. Accordingly, Respondent has already disclosed exculpatory statements made while "enhanced interrogation techniques" were being used on Petitioner. Respondent acknowledges that it is obligated to provide evidence bearing on the credibility of third-party accusers, including information about the immediate context and circumstances of the interrogation, *see* Opp'n, ECF No. 406 at 42; but with regard to Petitioner, takes the position that it is not obligated to provide information about Petitioner's credibility, on the theory that there is nothing exculpatory about the circumstances under which the statements were made, *id*. at 27. However, the circumstances under which Petitioner made these statements are part and parcel of statements themselves. Whether the circumstances make the statements more or less reliable is something the parties can argue about at a later time, but the parties' disagreement on that issue does not excuse Respondent's

duty to disclose the circumstances under which the exculpatory statements were made. Accordingly, it is further

**ORDERED** that Request No. 15 is **GRANTED.** Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for all evidence of the circumstances, in whatever form maintained, under which Petitioner made exculpatory statements to the government, including evidence revealing the method and manner of the "enhanced interrogation techniques" employed on Petitioner when such statements were made.

### 5.   Request Nos. 16, 18, 22, 24, 26, 28, 30, 34, 36, 38, 40, 42

In these requests, Petitioner requests the "complete file . . . as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359, [Dkt # 198] (D.D.C. Mar. 2, 2009)" on various persons named in the Factual Return. Mot., ECF No. 405 at 84, 86, 87, 88, 89, 90, 91, 92, 93, 94. In *Al-Ghizzawi*, however, Judge Bates denied the Petitioner's request for the "complete file" on his accuser, but granted the request in part "because any information that bears upon the accuser's credibility—and therefore the reliability of the statements cited in the amended [F]actual [R]eturn—could be exculpatory. *Al-Ghizzawi*, Civil Action No. 05-2359, ECF No. 198 at 4. Accordingly, Judge Bates ordered Respondents to "produce any evidence that bears upon the

20

accuser's credibility and/or the reliability of statements cited in [certain paragraphs] of the amended [F]actual [R]eturn." *Id.* Since Judge Bates denied the request for the "complete file," Petitioner's reliance on this persuasive authority is misplaced.

Respondent does not dispute that it is obligated to provide this information, but contends that it has already "provided Petitioner with extensive information bearing on the credibility of statements relied on by the Government" pursuant to its obligations under CMO § I.D.1. Opp'n, ECF No. 406 at 42. Respondent states that it searched "reasonably available" evidence for any information that tended to materially undermine the reliability of the statements relied upon in its Factual Return, including: (1) "information suggesting that a source should be considered generally not credible"; (2) "information that undermined the credibility of specific statements relied upon by the Government, such as evidence of rewards or coercion that render specific statements suspect"; (3) evidence reflecting later statements recanting, qualifying, or contradicting statements relied upon by the government." *Id*. Respondent also notes that it disclosed interrogation reports to Petitioner which "typically contain information about the immediate context and circumstances of the interrogation." *Id*. at 43. Petitioner argues that he is entitled to "any information that bears on the accuser's credibility" but does not articulate

21

any specific disagreement with the searches Respondent

conducted. Reply, ECF No. 407 at 27-31. Accordingly, it further

**ORDERED** that Petitioner's Request Nos. 16, 18, 22, 24, 26,

28, 30, 34, 36, 38, 40, 42 are **GRANTED IN PART.** Respondent has

conceded that at this juncture, a search of the Guantanamo Task

Force database would be useful, Sur-Reply, ECF No. 558 at 21;

Respondent shall therefore conduct a search of all reasonably

available evidence, including the Guantanamo Task Force

database, for information that tends to materially undermine the

reliability of the statements relied upon by the Government in

its Factual Return as to the persons who are the subject of

these requests, including: "(1) information suggesting that a

source should be considered generally not credible, including

evidence that the source has been subjected to torture by or at

the behest of the United States; (2) information that undermines

the credibility of specific statements relied upon by the

Government, such as evidence of rewards, coercion, or torture

that render specific statements suspect; (3) evidence reflecting

later statements recanting, qualifying, or contradicting

statements relied upon by the government; and (4) information

about the immediate context and circumstances of the

interrogation"; and disclose any additional, non-duplicative

information; and it is further

**ORDERED** that Petitioner's Request Nos. 16, 18, 22, 24, 26, 28, 30, 34, 36, 38, 40, 42 are **DENIED IN PART** to the extent Petitioner requests the "complete file" on these persons.

### 6.   Request No. 17

Petitioner requests "[e]vidence that casts doubt on the reliability of particular statements attributed to Ressam." Mot., ECF No. 405 at 84.

### a.   Request No. 17a

Petitioner requests "[e]vidence tending to undermine Ressam's accusation that Petitioner was 'the top guy' or 'in charge' of 'moving persons who came to Pakistan/Afghanistan for training and for assisting with their papers, money, or providing safe harbor at a guesthouse,' including, e.g., information that other persons were responsible for providing services." *Id*. Respondent concedes that "[e]vidence tending to undermine Ressam's accusation that Petitioner was 'the top guy' or 'in charge' of 'moving persons who came to Pakistan/Afghanistan for training and for assisting with their papers, money, or providing safe harbor at a guesthouse,'" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 76. Respondent argues that the request for information suggesting that "other persons were responsible for providing these

services" is outside the scope of CMO § I.D.1 because it would
not undermine Respondent's contentions. *Id.* at 78. Petitioner
responds—and the Court agrees—that evidence regarding other
persons could be exculpatory and therefore within the scope of
CMO § I.D.1. Reply, ECF No. 407 at 17. If other persons were
responsible for providing services, this could undermine the
accusation that Petitioner was the "top guy" or "in charge."
Accordingly, it is further

  **ORDERED** that Request No. 17a is **GRANTED.** Respondent has
conceded that at this juncture, a search of the Guantanamo Task
Force database would be useful, Sur-Reply, ECF No. 558 at 21;
Respondent shall therefore conduct a search of all reasonably
available evidence, including the Guantanamo Task Force
database, for evidence tending to undermine Ressam's accusation
that Petitioner was "the top guy" or "in charge" of "moving
persons who came to Pakistan/Afghanistan for training and for
assisting with their papers, money, or providing safe harbor at
a guesthouse," including information that other persons were
responsible for providing services, and disclose any additional,
non-duplicative information.

### b.    Request No. 17b

Petitioner seeks

> Evidence   tending   to   undermine   Ressam's
> allegation that Petitioner was responsible for
> trainee movements between Khalden and other

24

>camps. At a minimum, this would include an
>unredacted copy of the almost entirely
>redacted Feb. 7, 2007 interrogation of
>Petitioner, in which Petitioner makes a
>redacted statement regarding who was
>responsible for transferring trainees to other
>training camps.

Mot., ECF No. 405 at 85. Respondent concedes that "evidence
tending to materially undermine Respondent's contention that
Petitioner 'coordinated and cooperated' with [Usama Bin Laden]
in the conduct and trainee movements between their camps" falls
within its disclosure obligations pursuant to CMO § I.D.1, but
argues that the request should be denied because it reiterates
that requirement. Opp'n, ECF No. 406 at 77. Accordingly, it is
further

ORDERED that Request No. 17b is **GRANTED IN PART.**
Respondent has conceded that at this juncture, a search of the
Guantanamo Task Force database would be useful, Sur-Reply, ECF
No. 558 at 21; Respondent shall therefore conduct a search of
all reasonably available evidence, including the Guantanamo Task
Force database, for evidence tending to materially undermine
"Respondent's contention that Petitioner 'coordinated and
cooperated' with [Usama Bin Laden] in the conduct and trainee
movements between their camps," and disclose any additional,
non-duplicative information; and it further

ORDERED that Request No. 17b is **DENIED IN PART** and
Respondent is not required to provide an unredacted copy of the

document referenced in that request at this time as Petitioner
has not alleged that the redactions are improper.

### c. Request No. 17c

Petitioner seeks "[e]vidence tending to undermine Ressam's
allegation that Petitioner facilitated and/or provided
assistance to persons who were involved in terrorist training or
operations, including, e.g., evidence tending to undermine
Ressam's allegation that Petitioner provided safe harbor to
three Saudis (Tamin, abdul Karmin, and Muqatil), who allegedly
trained at al-Qaida camps." Mot., ECF No. 405 at 77. Respondent
concedes that "evidence undermining Respondent's contention that
while at a guesthouse associated with the Petitioner in
Peshawar, Pakistan, Ahmed Ressam met three Saudi men who had
attended the al-Faruq or al-Sidiq al-Qaida training camps" falls
within its disclosure obligations pursuant to CMO § I.D.1, but
argues that the request should be denied because it reiterates
that requirement. Opp'n, ECF No. 406 at 77. Respondent argues
that the request for evidence that would undermine a contention
"that Petitioner 'provided safe harbor' to the three named
persons" is outside the scope of CMO § I.D.1 because Respondent
has not made such a contention. *Id*. at 77-78. Petitioner does
not respond to this factual assertion other than to propose
requests for admissions and interrogatories. *See* Reply, ECF No.
407 at 11. Accordingly, it is further

**ORDERED** that Request No. 17c is **GRANTED IN PART.**
Respondent has conceded that at this juncture, a search of the
Guantanamo Task Force database would be useful, Sur-Reply, ECF
No. 558 at 21; Respondent shall therefore conduct a search of
all reasonably available evidence, including the Guantanamo Task
Force database, for evidence materially undermining
"Respondent's contention that while at a guesthouse associated
with the Petitioner in Peshawar, Pakistan, Ahmed Ressam met
three Saudi men who had attended the al-Faruq or al-Sidiq al-
Qaida training camps" and disclose any additional, non-
duplicative information; and it is further

**ORDERED** that Request No. 17c is **DENIED IN PART** as to the
request for evidence tending to undermine Ressam's allegation
that Petitioner provided safe harbor to three Saudis (Tamin,
abdul Karmin, and Muqatil).

### d.    Request No. 17e

Petitioner seeks "[e]vidence tending to undermine Ressam's
allegation that Petitioner 'coordinated and cooperated with
Usama bin Laden in the conduct of training and training
movements between their camps,' including evidence demonstrating
any such role was undertaken by other persons (e.g., Ibin al-
Sheik al-Libi)." Mot., ECF No. 405 at 85. Respondent concedes
that "[e]vidence tending to undermine Ressam's allegation that
Petitioner 'coordinated and cooperated with Usama bin Laden in

27

the conduct of training and training movements between their camps,'" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 78. Respondent argues that the request for information suggesting that "any such role undertaken by other persons" is outside the scope of CMO § I.D.1 because it would not undermine Respondent's contentions. *Id*. Petitioner responds—and the Court agrees for the same reason articulated *supra* Request No. 17a—that evidence regarding other persons could be exculpatory and therefore within the scope of CMO § I.D.1. Reply, ECF No. 407 at 17. Accordingly, it is further

**ORDERED** that Request No. 17e is **GRANTED.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence tending to undermine Ressam's allegation that Petitioner "coordinated and cooperated with Usama bin Laden in the conduct of training and training movements between their camps, including evidence demonstrating any such role was undertaken by other persons (e.g., Ibin al-Sheik al-Libi)", and disclose any additional, non-duplicative information.

### e.    Request No. 17f

Petitioner requests "evidence tending to undermine Ressam's allegation that Petitioner selected, or knew who was selected, to leave Khalden for training at [al-Qaida] camps." Mot., ECF No. 405 at 85. The Government responds that it does not make this contention in the Factual Return and so the request is outside the scope of CMO §I.D.1. Opp'n, ECF No. 406 at 78. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, is it further

**ORDERED** that Request No. 17f is **DENIED**.

### f.    Request No. 17h

Petitioner requests "[e]vidence tending to undermine Ressam's accusation that Petitioner was responsible for Ressam's travel to or affiliation with a training camp in Derunta, Afghanistan, and that this camp was operated by or associated with [al-Qaida] or the Taliban." Mot., ECF No. 405 at 85. Respondent concedes that "evidence undermining Respondent's contention that Ahmed Ressam was able to train at Derunta based on a letter provided by the Petitioner" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 79. Respondent argues that it "has not contended . . . that Derunta camp had direct ties to

al-Qaida or the Taliban" and so the request for information
undermining that contention is outside the scope of CMO § I.D.1
because it would not undermine Respondent's contentions. *Id.*
While Petitioner does not respond to this factual assertion
other than to propose requests for admissions and
interrogatories, *see* Reply, ECF No. 407 at 11; here the Court
will depart from its approach of denying requests where
Petitioner has failed to reply because it is clear that he is
entitled to information that would undermine Ressam's accusation
that the Derunta camp was operated by or associated with [al-
Qaida] or the Taliban since Respondent is detaining Petitioner
based on his affiliation with al-Qaida. Accordingly, it is
further

**ORDERED** that Request No. 17h is **GRANTED.** Respondent has
conceded that at this juncture, a search of the Guantanamo Task
Force database would be useful, Sur-Reply, ECF No. 558 at 21;
Respondent shall therefore conduct a search of all reasonably
available evidence, including the Guantanamo Task Force
database, for evidence that materially undermines Ressam's
accusation that Petitioner was responsible for Ressam's travel
to or affiliation with the Derunta camp, and that this camp was
associated with al-Qaida or the Taliban, and disclose any
additional, non-duplicative information.

g.    **Request No. 17i**

Petitioner seeks "[e]vidence tending to undermine Ressam's assertion that Petitioner was responsible for financing the Khalden camp or financing particular terrorist operations asserted to have connections to the Khalden camp." Mot., ECF No. 405 at 85. Respondent concedes that "evidence undermining Respondent's contention that Petitioner was responsible for paying the Khaldan camp's expenses" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 79. Respondent argues that it has not contended that "Petitioner financed 'particular terrorist operations asserted to have connections to the Khalden camp'" and so that request is not within the scope of CMO §I.D.1. *Id*. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 17i is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially undermines Ressam's assertion that Petitioner was responsible for financing the

Khalden camp and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 17i is **DENIED IN PART** as to the request for evidence that would undermine any assertion that Petitioner was responsible for financing particular terrorist operations asserted to have connections to the Khalden camp.

### h.   Request No. 17j

Petitioner seeks

> Evidence tending to undermine Ressam's assertion that the following extremist groups "trained" at Khalden: [al-Qaida]; Egyptian Islamic Jihad; Armed Islamic Group (GIA); Salafite Group for Preaching and Fighting; Hamas; and Hizballah, including, e.g., information indicating that Petitioner refused or declined to "facilitate" the movement of persons affiliated with these groups into Afghanistan and/or the Khalden camp. At a minimum, this would include an unredacted copy of the almost entirely redacted document [REDACTED]. This would also include a prior statement of Ressam referenced in Ressam 302, 1/17/2002 at 16, but not disclosed to Petitioner [REDACTED].

Mot., ECF No. 405 at 85. Respondent concedes that "disclosure of evidence undermining Respondent's contention that persons trained at Khalden included persons from al-Qaida, Egyptian Islamic Jihad (EIJ), Armed Islamic Group (GIA); Salafite Group for Preaching and Fighting; Hamas; and Hizballah" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that

requirement. Opp'n, ECF No. 406 at 79. The Government's response to the remainder of the request is heavily redacted. Accordingly, it is further

ORDERED that Request No. 17j is **GRANTED IN PART.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially "undermines Ressam's assertion that the following extremist groups 'trained' at Khalden: al-Qaida; Egyptian Islamic Jihad; Armed Islamic Group (GIA); Salafite Group for Preaching and Fighting; Hamas; and Hizballah, including, e.g., information indicating that Petitioner refused or declined to 'facilitate' the movement of persons affiliated with these groups into Afghanistan and/or the Khalden camp," and disclose any additional, non-duplicative information; and it is further

ORDERED that Request No. 17j is **HELD IN ABYANCE IN PART** as to the redacted material in the request.

### 7. Request No. 19

Petitioner seeks "[e]vidence tending to show that al Owahali did not train at Khalden, that al Owahali trained at camps other than Khalden, and that Petitioner did not know of any planned attacked on the U.S. Embassies." Mot., ECF No. 405

at 86. Respondent concedes that "[e]vidence tending to show that al Owahali did not train at Khalden" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 81. Respondent argues that the other two aspects of this request should be denied because: (1) "evidence suggesting merely that Khalden was not the only camp where al Owahali trained would not undermine Respondent's contentions" and so is outside the scope of CMO § I.D.1; and (2) Respondent does not contend that Petitioner had any direct role or advanced knowledge of attacks on U.S. Embassies and so the request for evidence tending to show that he "did not know of any planned attacks on the U.S. Embassies" is outside the scope of CMO § I.D.1. ECF No. 406 at 81. Petitioner does not respond to the Government's objection other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 19 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-sur Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence tending to show that al Owahali did

not train at Khalden and disclose any additional, non-duplicative information; and it is further

ORDERED that Request No. 19 in **DENIED IN PART** as to evidence that al Owahali trained at other camps and evidence tending to show that Petitioner did not know of planned attacks at U.S. Embassies.

### 8.   Request No. 23

Petitioner seeks

> Evidence that undermines al-Qahtani's credibility; evidence that undermines the otherwise unsubstantiated claim that al-Qahtani fought on the "front lines" with the Taliban; evidence tending to undermine al-Qahtani's designation as an "enemy combatant" that has been provided to his habeas counsel; and evidence that tends to demonstrate that Petitioner did not support or was not aware of any alleged terrorist activity and/or plans of al-Qahtani.

Mot., ECF No. 405 at 87. Respondent concedes that "information undermining Respondent's contention that ISN 200 'served with the Taliban on the front lines during Operation Enduring Freedom' and 'received some military training at the Khaldan camp'" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 83. Respondent argues that the other two aspects of this request should be denied because: (1) information about "ISN 200's credibility or exculpatory evidence disclosed in other habeas

35

corpus proceedings, regardless of actual or potential link to matters relevant in this proceeding" falls outside the scope of CMO § I.D.1., *id.*; and (2) evidence suggesting that "Petitioner did not support or was not aware of any alleged terrorist activity and/or plans of al Qatani" seeks evidence about contentions Respondent has not made and therefore is also outside the scope of CMO § I.D.1. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories, *see* Reply, ECF No. 407 at 11; and does not respond to Respondent's objections, *see id.* at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 23). Accordingly, it is further

**ORDERED** that Request No. 23 is **GRANTED IN PART.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence "information undermining Respondent's contention that ISN 200 'served with the Taliban on the front lines during Operation Enduring Freedom' and 'received some military training at the Khaldan camp,'" and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 23 is **DENIED IN PART** as to the request for information about ISN 200's credibility or exculpatory evidence disclosed in other habeas corpus proceedings, and evidence suggesting that Petitioner did not support or was not aware of any alleged terrorist activity and/or plans of al Qatani.

### 9.   Request No. 25

Petitioner requests

> Evidence that tends to undermine the credibility or reliability of [the Rabbani Brothers'] statements; evidence that otherwise undermines the assertion that these detainees had contacts with and knowledge of [al-Qaida] leadership; evidence that tends to demonstrate that Petitioner was not aware of and/or did not support these detainees' connections with [al-Qaida] and/or Khalid Sheikh Mohammed.

Mot., ECF No. 405 at 88. Respondent concedes that "information undermining Respondent's various contentions about ISN 1460 and ISN 1461 or based on statements made by ISN 1461" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 84. Respondent argues that it has not contended that "Petitioner was not aware of and/or did not support these detainees' connections with al-Qaida and/or Khalid Sheikh Mohammed" and so this portion of the request is outside the scope of CMO § I.D.1. *Id.* Petitioner does not

respond to this factual assertion other than to propose requests for admissions and interrogatories. Reply, ECF No. 407 at 11. Accordingly, it is further

ORDERED that Request No. 25 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially undermines Respondent's various contentions about ISN 1460 and ISN 1461 or based on statements made by ISN 1461 and disclose any additional, non-duplicative information; and it is further

ORDERED that Request No. 25 is **DENIED IN PART** as to the request for evidence that tends to demonstrate that Petitioner was not aware of and/or did not support these detainees' connections with al-Qaida and/or Khalid Sheikh Mohammed.

### 10.  Request No. 29

Petitioner seeks "[e]vidence that casts doubt on the reliability of particular statements from [al-Suri] and relied upon by Respondent."  Mot., ECF No. 405 at 89.

### a.  Request No. 29a

Petitioner seeks "[e]vidence tending to undermine [al-Suri's] assertion that he was a close associate of Petitioner and/or traveled with Petitioner on January 2002 until

38

Petitioner's capture." *Id.* Respondent concedes that "information undermining Respondent's contention that Abu Kamil al-Suri was 'a close associate of [Petitioner] who traveled with [Petitioner] at least during part of the time from approximately January 2002 until [Petitioner's] capture" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 85. Respondent argues that it has not contended that "al-Suri and Petitioner only traveled together for part of that time period and did not remain together during that entire period" and so this aspect of the request falls outside the scope of CMO § I.D.1. *Id.* Petitioner does not respond to the Government's objections. *See* Reply, ECF No. 407 at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 29a). Accordingly, it is further

**ORDERED** that Request No. 29a is **GRANTED IN PART.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially undermines al-Suri's assertion that he was a close associate of Petitioner and/or traveled with Petitioner on January 2002 until

Petitioner's capture, and disclose any additional, non-duplicative information, and it is further

ORDERED that Request No. 29a is **DENIED IN PART** to the extent it requests information pertaining to whether al-Suri and Petitioner only traveled together for part of that time period and did not remain together during that entire period.

b.    Request No. 29b

Petitioner requests "[e]vidence tending to undermine [al-Suri's] allegation that Petitioner owned a Samsonite briefcase which held documents outlining Petitioner's future plans, including information tending to suggest that the contents of the briefcase had no relation to any terrorist operations." Mot., ECF No. 405 at 89. Respondent concedes that "information undermining Respondent's contention that Abu Kamil al-Suri carried some kind of case belonging to Petitioner that al-Suri described in his diary as a 'samsonite that had the entire future in it" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 86. Respondent argues that it has not contended that the case was "in fact a Samsonite brand briefcase or that the case carried materials that were related to terrorist operations" and so that aspect of the request is not within the scope of CMO § I.D.1. *Id*. Petitioner does not respond to this factual assertion

other than to propose requests for admissions and interrogatories, *see* Reply, ECF No. 407 at 11; and does not respond to Respondent's objections, *see id.* at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 29b). Accordingly, it is further

ORDERED that Request No. 29b is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially undermines Respondent's contention that Abu Kamil al-Suri carried some kind of case belonging to Petitioner that al-Suri described in his diary as a "samsonite that had the entire future in it" and disclose any additional, non-duplicative information; and it is further

ORDERED Request No. 29b is **DENIED IN PART** as to whether the case was in fact a Samsonite brand briefcase or that the case carried materials that were related to terrorist operations.

### c.    Request No. 29c

Petitioner seeks "[e]vidence tending to undermine [al-Suri's] allegation that Petitioner advised [al-Suri] to join Adl al Hadi al Iraqi and/or [al-Qaida], and/or that such advice was

41

intended as an expression of support for [Usama Bin Laden]."
Mot., ECF No. 405 at 89. Respondent concedes that "information
undermining Respondent's contention that Petitioner told al-Suri
'that if anything happened to him, [al-Suri and others] should
join [Sayf al-Adl] to be under his wing and that of [al-Qaida]"
falls within its disclosure obligations pursuant to CMO § I.D.1,
but argues that the request should be denied because it
reiterates that requirement. Opp'n, ECF No. 406 at 86.
Respondent argues that it has not contended that "Petitioner
advised al-Suri to join Abd al-Hadi, rather than Sayf al-Adl"
and so that aspect of the request is not within the scope of CMO
§ I.D.1. *Id.* Petitioner responds—and the Court agrees—that
"statements in abu Kamal al Suri's diary that Petitioner
resisted Sayf al Adl's attempt to take over Petitioner's group"
could be exculpatory. *See* Reply, ECF No. 407 at 16. These
statements could undermine Respondent's contention that
Petitioner was associated with al-Qaida. Accordingly, it is
further

**ORDERED** that Request No. 29c is **GRANTED**. Respondent has
conceded that at this juncture, a search of the Guantanamo Task
Force database would be useful, Sur-Reply, ECF No. 558 at 21;
Respondent shall therefore conduct a search of all reasonably
available evidence, including the Guantanamo Task Force
database, for evidence tending to undermine al Suri's allegation

that Petitioner advised al Suri to join Adl al Hadi al Iraqi
and/or al-Qaida, and/or that such advice was intended as an
expression of support for Usama Bin Laden, and disclose any
additional, non-duplicative information.

### 11.   Request No. 29i

Petitioner seeks "[e]vidence tending to undermine [al-
Suri's] allegations that in March 2002, Petitioner was about to
begin terrorist operations, including denials and/or
contradictory statements obtained from any of the fifteen people
listed in [al-Suri's] diary as being part of Petitioner's 'core
group.'" Mot., ECF No. 405 at 90. Respondent concedes that
"information undermining Respondent's contentions in its
[F]actual [R]eturn about Petitioner's work in March 2002
preparing a number of persons for terrorist operations" falls
within its disclosure obligations pursuant to CMO § I.D.1, but
argues that the request should be denied because it reiterates
that requirement. Opp'n, ECF No. 406 at 86. Respondent argues
that the phrase "about to begin" is "vague and insufficiently
specific" and that it "does not contend that any specific
individual whom al-Suri identified in his diary as an associate
of Petitioner, but who is otherwise not discussed in the
Government's [F]actual [R]eturn, was in fact an associate of
Petitioner" and so this request is outside the scope of CMO §
I.D.1. *Id*. at 87. Petitioner does not respond to this factual

assertion other than to propose requests for admissions and interrogatories, *see* Reply, ECF No. 407 at 11; and does not respond to Respondent's objections, *id.* at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 29i). Accordingly, it is further

**ORDERED** that Request No. 29i is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for information undermining Respondent's contentions in its Factual Return about Petitioner's work in March 2002 preparing a number of persons for terrorist operations, and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 29i is **DENIED IN PART** as to denials and/or contradictory statements obtained from any of the fifteen people listed in al-Suri's diary as being part of Petitioner's "core group."

### 12.   Request No 31a

Petitioner seeks "[e]vidence obtained from Sayf al-Adl, tending to undermine Respondent's allegation that Petitioner was a close associate of [Usama Bin Laden] and/or actively supported

[al-Qaida], including, e.g., Sayf al-Adl's inability to identify Petitioner as a close associate of [Usama Bin Laden] and/or an [al-Qaida] facilitator, supporter, or operative." Mot., ECF No. 405 at 90. Respondent concedes that "information undermining Respondent's various contentions about Petitioner's relations with Usama Bin Laden or al-Qaida" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 88. Respondent further concedes that "[t]o the extent that Petitioner intends the phrase 'inability to identify' to request evidence suggesting that Safy al-adl did not know Petitioner or that Petitioner was not associated with Usama Bin Laden or al-Qaida" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. *Id*. Respondent states that "to the extent that the request seeks disclosure of evidence that suggests only that the Government has not obtained information from Sayf al-Adl about Petitioner's links with Usama Bin Laden or al-Qaida, the request should be denied" because it is not within the scope of CMO §I.D.1. *Id*. Petitioner responds—and the Court agrees—that "evidence that members of [al-Qaida] did not know Petitioner, or failed to number him as an [al-Qaida] affiliate or supporter" could be exculpatory. Reply, ECF No. 407 at 16-17. Respondent is

45

detaining Petitioner based on his alleged affiliation with al-Qaida; evidence that undermines this alleged affiliation could be exculpatory. Accordingly, it is further

ORDERED that Request No. 31a is GRANTED. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, evidence obtained from Sayf al-Adl, tending to undermine Respondent's allegation that Petitioner was a close associate of Usama Bin Laden and/or actively supported al-Qaida, including, e.g., Sayf al-Adl's inability to identify Petitioner as a close associate of Usama Bin Laden and/or an al-Qaida facilitator, supporter, or operative, and disclose any additional, non-duplicative information.

### 13.  Request No. 31b

Petitioner seeks "[i]nformation tending to show that Sayf al-Adi and Petitioner had an antagonistic and/or non-cooperative relationship, including information regarding the assertion that "Sayf al-Adl and abu Mohammad al-Masri and those with them [we]re trying to take over [Zubaydah's group]" around March 2002." Mot., ECF No. 405 at 90. Respondent argues that "Petitioner's use of the phrase 'antagonistic and/or non-cooperative relationship' is vague and insufficiently specific,

and the request is not likely to produce exculpatory information" and so is not within the scope of CMO §I.D.1. Opp'n, ECF No. 406 at 89. Respondent further argues that "[t]o the extent that this request seeks additional detail or supporting or corroborating information about Abu Kamil al-Suri's statement that "Sayf al-adl and abu Muhammad al-Masri and those with them [were] trying to take over [Petitioner's] group," it "should be denied to the extent that [Petitioner] seek[s] or request[s] that the Government search for additional evidence corroborating the Government's account or neutral evidence." *Id.* at 33. Petitioner does not respond to the Government's objections. *See* Reply, ECF No. 407 at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 31b). Accordingly, it is further

     **ORDERED** that Request No. 31b is **DENIED**.

       **14.  Request No. 32**

     Petitioner seeks "[e]vidence tending to indicate that [Kazimi, Royadh, and Mohammed Rabbani] had no connection to Petitioner, and/or that Petitioner had no knowledge of their supposed connection to [Usama Bin] Laden." Mot., ECF No. 405 at 91. Respondent states that it "has not made contentions in this proceeding about any direct connection between Petitioner and ISN 1453, ISN 1457, or ISN 1461" and so this request is not

within the scope of CMO § I.D.1. Opp'n, ECF No. 406 at 89.

Petitioner does not respond to this factual assertion other than

to propose requests for admissions and interrogatories. *See*

Reply, ECF No. 407 at 11. Accordingly, it is further

     **ORDERED** that Request No. 32 is **DENIED**.

       **15.   Request No. 33**

Petitioner seeks

> Evidence obtained from [Kazimi, Royadh, and
> Mohammed Rabbani] tending to undermine
> Respondent's allegation that Petitioner was a
> close associate of [Usama Bin Laden] and/or
> actively supported [al-Qaida], including
> their inability to identify or name Petitioner
> as a close associate of [Usama Bin] Laden
> and/or an [al-Qaida] facilitator, supporter,
> or operative.

Mot., ECF No. 405 at 91. Respondent concedes that "evidence

tending to materially undermine the contention that Petitioner

associated with Usama Bin Laden or al-Qaida" falls within its

disclosure obligations pursuant to CMO § I.D.1, but argues that

the request should be denied because it reiterates that

requirement. Opp'n, ECF No. 406 at 90. Respondent further

concedes that "[t]o the extent that Petitioner intends the

phrase 'inability to identify' to request statements by these

detainees suggesting that Petitioner was not associated with

Usama Bin Laden or al-Qaida," falls within its disclosure

obligations pursuant to CMO § I.D.1, but argues that the request

should be denied because it reiterates that requirement. *Id.*

48

Respondent states that the request should be denied "[t]o the extent [it] seeks disclosure of evidence that suggests only that the Government has not obtained information from these detainees about Petitioner's links with Usama Bin Laden or al-Qaida [because] such evidence would not amount to exculpatory evidence" pursuant to CMO § I.D.1. *Id.* Petitioner responds—and the Court agrees—that "evidence that members of [al-Qaida] did not know Petitioner, or failed to number him as an [al-Qaida] affiliate or supporter" could be exculpatory. Reply, ECF No. 407 at 16-17. Respondent is detaining Petitioner based on his alleged affiliation with al-Qaida; evidence that undermines this alleged affiliation could be exculpatory. Accordingly, it is further

**ORDERED** that Request No. 33 is **GRANTED.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence obtained from (Kazimi, Royadh, and Mohammed Rabbani) tending to undermine Respondent's allegation that Petitioner was a close associate of Usama Bin Laden and/or actively supported al-Qaida, including their inability to identify or name Petitioner as a close associate of Usama Bin

Laden and/or an al-Qaida facilitator, supporter, or operative,
and disclose any additional, non-duplicative information.

### 16.   Request No. 43

Petitioner seeks

> Evidence that casts doubt on the reliability
> of particular statements/allegations by
> [REDACTED] that are relied on by Respondent,
> including evidence obtained from [REDACTED]
> tending to undermine Respondent's allegation
> that Petitioner was associated with [al-
> Qaida], met Adi al Hadi al Iraqi in Bermil,
> and/or was carrying out an IED plot,
> including, e.g., evidence of [REDACTED]
> "negative identifications" of Petitioner as an
> [al-Qaida] associate or associate of al Hadi
> al Iraqi.

Mot., ECF No. 405 at 94. Respondent concedes that "information

obtained from ISN [REDACTED] that tend to materially undermine

Respondent's contentions that Petitioner was associated with al-

Qaida, met Abd al-Hadi al-Iraqi in Bermil, Afghanistan, or was

carrying out a plot related to improvised explosive devices"

falls within its disclosure obligations pursuant to CMO § I.D.1,

but argues that the request should be denied because it

reiterates that requirement. Opp'n, ECF No. 406 at 94.

Respondent further concedes that "[t]o the extent that

Petitioner intends the phrase 'negative identifications' to

request statements by ISN [REDACTED] suggesting that Petitioner

was not associated with Abd al-Hadi al-Iraqi or al-Qaida" falls

within its disclosure obligations pursuant to CMO § I.D.1, but

argues that the request should be denied because it reiterates that requirement. *Id.* Respondent argues that "evidence that suggests only that the Government has not obtained information from ISN [REDACTED] about Petitioner's links with Abd al-Hadi al-Iraqi or al-Qaida" is outside the scope of CMO § I.D.1. *Id.* Petitioner responds—and the Court agrees—that "evidence that members of [al-Qaida] did not know Petitioner, or failed to number him as an [al-Qaida] affiliate or supporter" would be exculpatory. Reply, ECF No. 407 at 16-17. Respondent is detaining Petitioner based on his alleged affiliation with al-Qaida; evidence that undermines this alleged affiliation would be exculpatory. Accordingly, it is further

**ORDERED** that Request No. 43 is **GRANTED.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for: (1) information obtained from ISN [REDACTED] that tend to materially undermine Respondent's contentions that Petitioner was associated with al-Qaida, met Abd al-Hadi al-Iraqi in Bermil, Afghanistan, or was carrying out a plot related to improvised explosive devices; (2) statements by ISN [REDACTED] suggesting that Petitioner was not associated with Abd al-Hadi al-Iraqi or al-Qaida; and (3) evidence that suggests

only that the Government has not obtained information from ISN

[REDACTED] about Petitioner's links with Abd al-Hadi al-Iraqi or

al-Qaida, and disclose any additional, non-duplicative

information.

### 17. Request Nos. 44, 45, 51

In these requests, Petitioner seeks information regarding

changes in Respondent's assessments of Petitioner's association

with al-Qaida or responsibility for terrorist operations and

information about allegations Respondent has asserted in other

cases that are inconsistent with the factual allegations here.

In Request No. 44, Petitioner seeks

> Any documents or statements by government
> officials, in whatever form, reflecting a
> belief or conclusion that the government's
> initial assessments about Petitioner's
> association with [al-Qaida] or responsibility
> for terrorist operations were incorrect or
> exaggerated, or otherwise reflecting a view
> that Petitioner was not in fact associated
> with, a supporter of, part of, or a member of
> [al-Qaida] or terrorist operations against the
> United States or its allies.

Mot., ECF No. 405 at 95. In Request No. 45, Petitioner seeks

"[a]ny statements or conclusions by any of Petitioner's

interrogators including CIA [redacted] in whatever form,

indicating that Petitioner was not associated with [al-Qaida] or

terrorist operations against the United States or its allies."

*Id.*

In Request No. 51, Petitioner seeks

> Allegations about Petitioner that the
> government has asserted in other habeas cases
> which are inconsistent with those lodged in
> the present case, including, e.g., the
> allegation that Petitioner is an [al-Qaida]
> military commander or lieutenant (see, e.g.,
> Soufiyan Factual Return at 12), and e.g., the
> allegation that Petitioner was in charge of a
> ring of guesthouses that were simultaneously
> raided in Faisalabad.

*Id*. at 97.

In support of these requests, Petitioner asserts that the government must provide "any internal government recommendations or pronouncements . . . that the government's initial view of his culpability or responsibility for terrorist acts has changed in any way," Mot., ECF No. 405 at 27; but the authority he cites does not clearly support that broad proposition. In *Sadkhan,* the court ordered the production of a recommendation that the petitioner be released from Guantanamo. *Sadkhan* 608 F. Supp. 2d at 40. In *Zemiri v. Obama*, Civil Action No. 04-2046, 2009 WL 311858 (D.D.C. Feb. 9, 2004), the court ordered the production of documents containing exculpatory information provided to the United States Government by the Canadian Government. *Id*. at *1.

Respondent argues that Petitioner is not entitled to information about its earlier assessments of his role under the CMO because "[t]he issue in this litigation is whether Petitioner's detention is lawful based on the contentions an evidence that the Government has presented to the Court in its

[F]actual [R]eturn," not "abandoned or revised earlier beliefs about Petitioner" that are not included in the [F]actual [R]eturn. Opp'n, ECF No. 406 at 50. Respondent also argues that it is not obligated to disclose whether "individual Government agents or officers disagreed with past or present Government assessments." *Id.* at 51 (citing *United States v. Naegele*, 468 F. Supp. 2d 150, 155 (D.D.C. 2007) (denying request for evidence that a prosecutor "expressed doubts" that defendant's conduct "amount[ed] to a crime or warrant[ed] prosecution") and *United States v. Edelin*, 128 F. Supp. 2d 23, 39 (D.D.C. 2001) (defendant not entitled to "information about the decisions and recommendations made by the government attorneys who worked on his case").[4]

Petitioner responds that these cases are inapposite because he is not requesting information about internal deliberations into prosecutorial decision-making, but rather "seeks evidence, analysis, or conclusions to the effect that he is innocent, or that he has not engaged in the actions attributed to him in the

---

[4] As to Request No. 45, Government also notes that "[t]his information is not exculpatory because Respondent does not contend that "Petitioner was a member of al-Qaida or otherwise formally identified with al-Qaida. Instead, the Government's detention of Petitioner is based on Petitioner's actions as an affiliate of al-Qaida," Opp'n ECF No. 406 at 36; but as the Court explained *supra*, Respondent is detaining Petitioner based on his affiliation with al-Qaida; evidence that undermines this alleged affiliation would be exculpatory.

Factual Return, or that the evidence now arrayed against him has been determined by agents of the U.S. Government to be unreliable or inaccurate." Reply, ECF No. 407 at 24. Petitioner relies on *Ex Parte Richardson*, 70 S.W. 3d 865 (Tex. Crim. App. 2002). In that case, a capital conviction and death sentence was reversed based on the Government's failure to disclose a diary kept by one of the police officers providing security to the Government's only eyewitness to the crime because the diary contained evidence which could have impeached that witness on the ground that the police officer and other officers on the security detail did not think she was a truthful person. *Id*. at 871. Petitioner argues that similarly, he is entitled to information suggesting that "the Government agents concluded the Petitioner was credible." Reply, ECF No. 407 at 25.

The Court is not persuaded by Respondent's arguments. Respondent is required to disclose "all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner." CMO § I.D.1. The Government's contentions as to Petitioner in other habeas cases that are inconsistent with the Government's allegations and contentions in this case fall within this obligation because such inconsistencies could materially undermine the information in the Factual Return before the Court. And information

55

regarding changes in Respondent's assessments of Petitioner's association with al-Qaida or responsibility for terrorist operations falls within this obligation for the same reason. Accordingly, it is further

**ORDERED** that Petitioner's Request Nos. 44, 45, and 51 are **GRANTED**. Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for

> (1) Any documents or statements by government officials, in whatever form, reflecting a belief or conclusion that the government's initial assessments about Petitioner's association with Al-Qaida or responsibility for terrorist operations were incorrect or exaggerated, or otherwise reflecting a view that Petitioner was not in fact associated with, a supporter of, part of, or a member of al-Qaida or terrorist operations against the United States or its allies; and

> (2) Any statements or conclusions by any of Petitioner's interrogators including CIA [redacted] in whatever form, indicating that Petitioner was not associated with al-Qaida or terrorist operations against the United States or its allies; and

> (3) Allegations about Petitioner that the government has asserted in other habeas cases which are inconsistent with those lodged in the present case, including, e.g., the allegation that Petitioner is an al-Qaida military commander or lieutenant (see, e.g., Soufiyan Factual Return at 12), and e.g., the allegation that Petitioner was in charge of a ring of guesthouses that were simultaneously raided in Faisalabad;

and disclose any non-duplicative information. Respondent is not obligated to disclose any documents or statements regarding internal deliberations into prosecutorial decision-making.

      **18.  Request No. 47**

      Petitioner seeks "[i]nformation, including instructional material used at Khalden, which undermines Respondent's allegation that the training provided at Khalden was 'terrorist training'" including "information indicating that the training material used at Khalden was not uniquely geared toward 'terrorist operations.'" Mot., ECF No. 405 at 96. Respondent concedes that "evidence suggesting that training provided at Khalden was not terrorist training," falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 95. Respondent argues that "evidence suggesting that some materials used at Khalden could have been useful in applications other than terrorist training . . . would not undermine the Government's contentions about Khalden" and so that portion of the request should be denied. *Id.* Petitioner responds—and the Court agrees—that evidence that weapons training was given to persons who were not terrorists could be exculpatory because this would undermine Respondent's contention that terrorist training was provided at Khalden. Reply, ECF No. 407 at 16. Accordingly, it is further

**ORDERED** that Request No. 47 is **GRANTED.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence suggesting that training provided at Khalden was not terrorist training, and disclose any additional, non-duplicative information.

### 19.   Request No. 48

Petitioner seeks

> Information tending to show that Khalden, Sada, al-Faruq, Jihad Wal, and al-Sadiq camps did not provide "terrorist training" during the time that Petitioner allegedly attended them and/or that these camps had not engaged in any terrorist operations against the United States or identified the United States as its enemy at that time.

Mot., ECF No. 405 at 96. Respondent concedes that "evidence suggesting that Khalden, Sada, al-Faruq, Jihad Wal, or al-Sadiq camps did not provide terrorist training during the time that Petitioner allegedly attended them" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 95. Respondent argues that it has not contended "that these camps launched attacks or declared hostilities against the United States at that time" and so that request is

not within the scope of CMO § I.D.1. *Id*. Petitioner does not respond to the Government's objections. *See* Reply, ECF No. 407 at 16-17 (objecting to Respondent's argument about neutral evidence, but not articulating any specific objection regarding Request No. 48). Accordingly, it is further

**ORDERED** that Request No. 48 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence suggesting that Khalden, Sada, al-Faruq, Jihad Wal, or al-Sadiq camps did not provide terrorist training during the time that Petitioner allegedly attended them, and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 48 is **DENIED IN PART** as to the request for evidence that that these camps did not launch attacks or had not declared hostilities against the United States at that time.

### 20.   Request No. 49

Petitioner seeks "information from persons believed to be drivers for the Khalden camp, including Saleh Sofian and Sarolah Zafar, who would have told U.S. interrogators that Khalden was not in the practice of transferring persons to al-Qaida camps."

Mot., ECF No. 405 at 96. Respondent does not object to this request. Accordingly, it is further

**ORDERED** that Request No. 49 is **GRANTED** and Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for "information from persons believed to be drivers for the Khalden camp, including Saleh Sofian and Sarolah Zafar, who would have told U.S. interrogators that Khalden was not in the practice of transferring persons to al-Qaida camps," and disclose information identified in such a search.

### 21.  Request No. 50

Petitioner seeks

> Information tending to demonstrate that Khalden and [al-Qaida] camps were organizationally and operationally independent as a result of their different ideologies about jihad," including "an unredacted classified version of Petitioner's CSRT transcript and supporting documents, as well an information tending to show that membership in Khalden was premised upon an interest in 'defensive jihad' rather than [al-Qaida's] view of 'offensive jihad,' as well as documents demonstrating that persons expressing an interest in terrorist operations were denied entrance to Khalden.

Mot., ECF No. 405 at 96.

Respondent concedes that "evidence that the Khaldan camp did not advocate or approve of terrorist operations or did not train persons who expressed interest in terrorist operations,"

falls within its disclosure obligations pursuant to CMO § I.D.1,
but argues that the request should be denied because it
reiterates that requirement. Opp'n, ECF No. 406 at 96.
Respondent argues that evidence suggesting that the Khalden and
al-Qaida camps were organizationally and operationally
independent is consistent with paragraph 31 of the Factual
Return and therefore is not exculpatory. *Id*. at 96. Respondent
also contends that the request for "information about purely
ideological divisions between Khalden and al- Qaida . . . is
vague, insufficiently specific [and therefore] falls outside the
scope of CMO § I.D.1." *Id*. Petitioner responds—and the Court
agrees—that this information could be exculpatory. Reply, ECF
No. 407 at 18-20.

Respondent alleges that Petitioner was "an affiliate" of
al-Qaida and that he was the "key facilitator" of the Khalden
guesthouse. Accordingly, evidence suggesting that the Khalden
and al-Qaida camps were organizationally and operationally
independent could be exculpatory. Furthermore, information about
ideological differences between Khalden and the al-Qaida camps
as well as "information tending to show that membership in
Khalden was premised on an interest in 'defensive jihad' rather
than al-Qaida's view of 'offensive jihad,' could also be
exculpatory. Accordingly, it is further

**ORDERED** that Request No. 50 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence tending to demonstrate that: (1) there were ideological differences between Khalden and al-Qaida: and (2) the Khalden camp did not advocate or approve of terrorist operations and/or did not train persons who expressed interest in terrorist operations; and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 50 is **DENIED IN PART** and Respondent is not required to provide an unredacted copy of the document referenced in that request at this time as Petitioner has not alleged that the redactions are improper.

### 22.  Request No. 52

Petitioner seeks "[e]vidence revealing that the United States and its allies encouraged, supported and/or otherwise approved of the training of Khalden trainees for fighting against the communist insurgents in Afghanistan or in Chechnya." Mot., ECF 40. 405 at 97. Respondent concedes that "information that would suggest that the United States sponsored the Khalden training camp by providing funding, personnel, supplies, or similar concrete assistance—and that therefore could make it

less likely that the Khalden training camp would promote or facilitate activities hostile to the United States" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 54. Respondent argues that "to the extent that the request demands information about more remote or abstract forms of encouragement, support, or approval," it does not satisfy the requirements of CMO § I.E.2. *Id*. Petitioner does not respond to Respondent's objection. *See generally* Reply, ECF No. 407. Accordingly, it is further

**ORDERED** that Request No. 52 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for information that would suggest that the United States sponsored the Khalden training camp by providing funding, personnel, supplies, or similar concrete assistance, and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 52 is **DENIED IN PART** to the extent it requests information about more remote or abstract forms of encouragement, support, or approval.

### 23.   Request No. 53

Petitioner seeks

> Evidence suggesting that Khalden was funded,
> sponsored or supported by Jordanian or Saudi
> Arabian intelligence services. *See e.g.*,
> Summary Intelligence Report of Bin Hamlili
> adil Hadi al Jazairi, ISN 1452, Nov. 10, 2006
> (reporting statement of detainee that Khalden
> was sponsored by Jordanian and Saudi
> intelligence, that a Saudi ran the camp, and
> that Petitioner could not have run Khalden
> because he was "crazy" as a result of his head
> injury); *see also* Petitioner's Diary vol 4, at
> 20 (revealing suspicion that Khalden was
> controlled by Saudi security services).

Mot., ECF No. 53 at 97. Respondent argues that Petitioner has
not explained how this information could assist Petitioner in
demonstrating that his detention is unlawful or rebut the
allegations in the Factual Return. Opp'n, ECF No. 406 at 54.
Petitioner does not respond to Respondent's objection. *See
generally* Reply, ECF No. 407. Accordingly, it is further

**ORDERED** that Request No. 53 is **DENIED**.

### 24.   Request Nos. 54 and 56

In Request Nos. 54, Petitioner seeks "[e]vidence tending to
undermine the credibility or reliability of Petitioner's diary,
including, e.g., medical or mental health evaluations tending to
indicate that Petitioner suffered from a mental illness and/or
other cognitive impairment during the time of the diary's
writing." Mot., ECF No. 405 at 87-98. In Request No. 56,
Petitioner seeks

> Evidence tending to undermine Respondent's
> interpretation of Petitioner's diary,
> including evidence that the government has
> concealed or otherwise made assessments that
> the portions of Petitioner's diary relied upon
> by Respondent are historically inaccurate
> and/or unable to be substantiated, *see e.g.*,
> Ron Suskind, *The One Percent Doctrine* (quoting
> FBI agent Dan Coleman's impressions after
> reviewing Petitioner's diary that it was
> "blather"), as well as evidence tending to
> suggest an alternate reading of or explanation
> for entries in Petitioner's diary, other than
> the one proffered by Respondents in the
> narrative of their Factual Return, including,
> *e.g.*, evidence that Petitioner's diary was
> written in multiple voices and/or was not
> meant to be read literally, *see e.g., id.*
> (indicating that Petitioner's diary was
> written from at least three different
> perspectives or personalities); and any
> evidence tending to indicate that the diary
> entries were not factually correct reports of
> events and/or were not reports of actual
> events.

Mot., ECF No. 405 at 98.

Respondent concedes that "evidence tending to materially undermine Respondent's contentions about or based on the diary passages relied upon in the [F]actual [R]eturn" fall within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 97. Respondent objects to the request for evidence suggesting that Petitioner suffered from mental illness or cognitive impairment because there would need to be some indication that the passages relied on by the Government was linked to such illness or impairment. *Id*. at 25.

Respondent argues that to the extent Petitioner seeks to "compel a search for additional information that might raise doubts about his diaries, Petitioner's requests are not justified by any provision of the CMO and are not likely to lead to the discovery of exculpatory evidence." *Id.* at 24.

Petitioner responds that he is entitled to "evidence that undermines the reliability of the diaries." Reply, ECF No. 407 at 25-27.

The Court is not persuaded by Respondent's arguments. Information indicating that Petitioner suffered from a mental illness and/or cognitive impairment at the time the diaries were written, and Government assessments of the credibility and reliability of the diaries would be exculpatory. And evidence undermining Respondent's interpretation of the diary as set forth in the Factual Return, government assessments about whether the diaries are historically and factually accurate and whether they can be substantiated could be exculpatory. Accordingly, it is further

**ORDERED** that Request Nos. 54 is **GRANTED.** Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database for evidence tending to undermine the credibility or reliability of Petitioner's diary, including, e.g., medical or mental health evaluations tending to indicate that Petitioner suffered from a mental illness and/or

other cognitive impairment during the time of the diary's writing; and it is further

ORDERED that Request No. 56 is **GRANTED**. Respondent shall conduct a search of all reasonably available evidence, including the Guantanamo Task Force database for

> Evidence tending to undermine Respondent's interpretation of Petitioner's diary, including evidence that the government has concealed or otherwise made assessments that the portions of Petitioner's diary relied upon by Respondent are historically inaccurate and/or unable to be substantiated, *see e.g.*, Ron Suskind, *The One Percent Doctrine* (quoting FBI agent Dan Coleman's impressions after reviewing Petitioner's diary that it was "blather"), as well as evidence tending to suggest an alternate reading of or explanation for entries in Petitioner's diary, other than the one proffered by Respondents in the narrative of their Factual Return, including, *e.g.*, evidence that Petitioner's diary was written in multiple voices and/or was not meant to be read literally, *see e.g., id*. (indicating that Petitioner's diary was written from at least three different perspectives or personalities); and any evidence tending to indicate that the diary entries were not factually correct reports of events and/or were not reports of actual events.

### 25. Request No. 55

Petitioner seeks evidence indicating any alterations or damage to the diaries and requests the opportunity to review the original Arabic versions of the diaries. Mot., ECF No. 405 at 87-98. Respondent notes that it has disclosed copies of the

original untranslated Arabic pages to Petitioner's counsel.

Opp'n, ECF No. 406 at 24. Accordingly, it is further

      **ORDERED** that Request No. 55 is **FOUND AS MOOT.**

      **26.   Request Nos. 57, 67a-b, 71a**

In Request Nos. 57, 67a-b, and 71a, Petitioner seeks

evidence showing that he engaged in various lawful activities.

Mot., ECF No. 405 at 98, 101, 102. Respondent opposes the

requests, arguing that this evidence is: (1) outside the scope

of CMO § I.D.1 because it is not exculpatory; and (2) does not

otherwise satisfy the requirements of CMO § I.E.2. *Id*. at 48.

For these requests, Petitioner failed to explain the basis for

them and failed to respond to Respondent's arguments in

opposition. *See generally* Mot., ECF No. 405, *see* Reply, ECF No.

407 at 11. Respondent concedes, however, that "information that

would undermine the Government's contention that Petitioner

'facilitated the retreat and escape of enemy forces'" falls

within its disclosure obligations pursuant to CMO § I.D.1, but

argues that the request should be denied because it reiterates

that requirement. Opp'n, ECF No. 406 at 103. Accordingly, it is

further

      **ORDERED** that Requests Nos. 57, 67a-b are **DENIED**; and it is

further

      **ORDERED** that Request No. 71a is **GRANTED IN PART.**

Respondent has conceded that at this juncture, a search of the

Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database for information that would undermine the Government's contention that Petitioner 'facilitated the retreat and escape of enemy forces,' and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 71a is **DENIED IN PART** as to the remainder of that request.

### 27.   Request No. 58a

Petitioner seeks "[e]vidence tending to undermine Respondents' assertion that Petitioner met with [Usama Bin Laden] on multiple occasions and/or that Petitioner did so willingly or at his own initiative." Mot., ECF No. 405 at 98. Respondent concedes that "evidence tending to materially undermine Respondent's assertion that Petitioner met with Usama Bin Laden on multiple occasions" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 97-98. Respondent argues that it has not made any contentions about who initiated any meetings, and so the request is not within the scope of CMO § I.D.1. *Id.* at 98. Petitioner does not respond to the Government's objections. *See* Reply, ECF No. 407 at 16-17 (objecting to Respondent's argument about

neutral evidence, but not articulating any specific objection

regarding Request No. 58a). Accordingly, it is further

**ORDERED** that Request No. 58a is **GRANTED IN PART.**

Respondent has conceded that at this juncture, a search of the

Guantanamo Task Force database would be useful, Sur-Reply, ECF

No. 558 at 21; Respondent shall therefore conduct a search of

all reasonably available evidence, including the Guantanamo Task

Force database, for evidence tending to undermine Respondent's

assertion that Petitioner met with Usama Bin Laden on multiple

occasions and disclose any additional, non-duplicative

information; and it is further

ODERED that Request No. 58a is **DENIED IN PART** as to who

initiated any meetings.

### 28.   Request Nos. 58f-g

In Request No. 58f, Petitioner seeks

> Evidence tending to undermine Respondents'
> assertion that Petitioner's repeated denials
> that he was a member of [al-Qaida] 'appears to
> be based on the fact that he never pledged
> bayat,' including evidence tending to show
> that Petitioner's denials were based on other
> factors. At a minimum, this includes full
> disclosure of all of the repeated denials at
> issue.

*Id*. at 99. In Request No. 58g, Petitioner seeks "[e]vidence

tending to undermine Respondents' assertion that Petitioner

submitted 'the requisite paperwork' to join [al-Qaida] and swear

bayat and/or that Petitioner's application to join [al-Qaida]

and swear bayat was considered and/or denied." *Id*. Respondent notes that these requests are related to statements in footnote 13 of the Factual Return, and that this information was not provided to justify Petitioner's detention, and therefore the Court should not consider these "custodial statements . . . except for the sake of understanding how the government has cabined its allegations." Opp'n, ECF No. 406 at 38.

While Petitioner does not respond to the Government's objections, *see generally* Reply, ECF No. 407; here the Court will depart from its approach of denying requests where Petitioner has failed to reply because it is clear that Petitioner is entitled to this information as a matter of law. The Factual Return provides that the ""[n]arrative and attached materials set forth the factual bases supporting [Mr.] Zubaydah's lawful detention." Factual Return, ECF No. 474 at 25 ¶ 2. There is nothing to indicate that paragraph 13 is a "custodial statement" rather than part of the narrative. Therefore, exculpatory evidence regarding Respondent's contentions in footnote 13 fall within Respondent's disclosure obligations under CMO § I.D.1. Accordingly, it is further

**ORDERED** that Request Nos. 58f-g are **GRANTED.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably

available evidence, including the Guantanamo Task Force
database, for: (1) statements that relate to Petitioner's
alleged submission to "submit[]the requisite paperwork to join
al-Qaida and pledge *bayat* but his application had been
rejected"; (2) evidence tending to undermine Respondents'
assertion that Petitioner's repeated denials that he was a
member of al-Qaida "appears to be based on the fact that he
never pledged bayat," including evidence tending to show that
Petitioner's denials were based on other factors, including
disclosure of all of the repeated denials at issue and the
circumstances under which they were made; and (3) evidence
tending to undermine Respondents' assertion that Petitioner
submitted "the requisite paperwork" to join al-Qaida and swear
bayat and/or that Petitioner's application to join al-Qaida and
swear bayat was considered and/or denied; and disclose any
additional, non-duplicative information.

### 29.  Request No. 59

In Request No. 59, Petitioner seeks

> A copy of the e-mail Petitioner sent to a
> religious scholar following the attacks on
> September 11, 2001, referred to by Petitioner
> in his CSRT hearing, in which he sought
> support for his belief that the terrorist
> attacks of September 11, 2001, are not
> condoned by Islam and that [Usama Bin Laden]
> Laden and al-Qaida were mistaken to have
> launched them.

Mot., ECF No. 405 at 99. Respondent objects to this request on the ground that "any evidence that suggested only that Petitioner may have had ideological disagreements with or reservations about al-Qaida, its leaders, or its methods, but that would not undermine Respondent's allegations about the actions Petitioner actually performed or planned, would not fall within CMO § I.D.1." Opp'n, ECF No. 406 at 37. Petitioner responds—and the Court agrees—that evidence that Petitioner condemned the 9/11 attacks as being against his religion could be exculpatory. Reply, ECF No. 407 at 16. Respondent contends that Petitioner is affiliated with al-Qaida and so evidence that allegedly demonstrates that Petitioner condemned the September 11 attack planned and executed by al-Qaida could tend to undermine that contention. Accordingly, it is further

**ORDERED** that Request No. 59 is **GRANTED** and Respondent shall disclose the email.

### 30.  Request No. 62

Petitioner seeks "evidence indicating that Petitioner was angry with, disliked, or otherwise was in disagreement with [Usama Bin Laden] because bin Laden called for the closing of Khalden and/or that Petitioner and/or Khalden did not agree to follow bin Laden once Khalden was closed. *See, e.g.*, Petitioner's unclassified CSRT transcript at 18." Mot., ECF No. 405 at 100. The Government responds that it "has not contended

in this proceeding that Petitioner concurred with Usama Bin
Laden's decision that Khaldan should be closed or that
Petitioner accepted an invitation to unite with Bin Laden after
Khalden's closure"; accordingly, any request for "evidence
suggesting that Petitioner disagreed with Bin Laden's decision
or that Petitioner did not unite with Bin Laden at that time"
relates to contentions the Government has not made. Opp'n, ECF
No. 406 at 99. Petitioner does not respond to this factual
assertion other than to propose requests for admissions and
interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it
is further

     **ORDERED** that Request No. 62 is **DENIED**.

       **31.   Request No. 63**

Petitioner seeks

> Evidence indicating that Petitioner, Ibin
> Sheik al-Libi, and/or the leader of Khalden
> refused [Usama Bin Laden]'s invitations to
> unite under [al-Qaida] leadership as well as
> information regarding Ibin Sheik al-Libi's
> disagreement with the philosophy and/or
> methods of [Usama Bin Laden] and/or [al-
> Qaida]. *See* [REDACTED] 302 11/4/2002
> (indicating al-Libi did not agree with al-
> Qaida's "radical tactics").

Mot., ECF No. 405 at 100. The Government responds that it "has
not contended in this proceeding that Petitioner accepted an
invitation to unite with Bin Laden after Khaldan's closure";
accordingly, any request for "evidence suggesting that

Petitioner did not unite with Bin Laden at that time" relates to contentions the Government has not made. Opp'n, ECF No. 406 at 100. Respondent further argues that the Factual Return makes no contentions about Ibin Sheik al-Libi. *Id.* Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 63 is **DENIED**.

### 32. Request No. 64

Petitioner seeks "evidence obtained from Ibin Sheikh al-Libi provided after his arrest that tends to support that Petitioner was not a member of [al-Qaida], was not a member of the Taliban, and that the Khalden training camp was not associated with the same." Mot., ECF No. 405 at 100. Respondent concedes that "information undermining the contention that Khaldan was associated with al-Qaida as described in the [F]actual [R]eturn" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 100. Respondent argues that it has not contended that Petitioner is a member of al-Qaida or the Taliban and so information undermining that contention is not exculpatory. *Id.*

While Petitioner does not respond to the Government's objections other than to propose requests for admissions and

interrogatories, *see generally* Reply, ECF No. 407; here the
Court will depart from its approach of denying requests where
Petitioner has failed to reply because it is clear that
Petitioner is entitled to information that tends to support that
he was not a member of al-Qaida. Respondent is detaining
Petitioner based on his affiliation with al-Qaida; evidence that
undermines this alleged affiliation could be exculpatory.
Accordingly, it is further

**ORDERED** that Request No. 64 is **GRANTED IN PART.** Respondent
has conceded that at this juncture, a search of the Guantanamo
Task Force database would be useful, Sur-Reply, ECF No. 558 at
21; Respondent shall therefore conduct a search of all
reasonably available evidence, including the Guantanamo Task
Force database, for evidence that: (1) materially undermines the
contention that Khaldan associated with al-Qaida as described in
the Factual Return; and (2) tends to support that Petitioner was
not a member of al-Qaida; and disclose any additional, non-
duplicative information; and it is further

**ORDERED** that Request No. 64 is **DENIED IN PART** as to the
request for evidence that would undermine any contention that
Petitioner is a member the Taliban.

### 33.  Request No. 65

Petitioner seeks

> Evidence tending to suggest that access to [Usama Bin Laden] and/or knowledge of his whereabouts during the time period of Petitioner's alleged meetings with him was commonplace and/or was not limited to persons who were members of, supportive or, or closely associated with [al-Qaida]. *See e.g.*, [REDACTED] 302 11/25/2002 (indicating that it would not be "unusual" for someone to have met [Usama Bin Laden]).

Mot., ECF No. 405 at 100. The Government responds that "[t]his request is vague and insufficiently specific . . .[and that] evidence indicating that some persons not affiliated with al-Qaida had dealings with Usama Bin Laden would not undermine either the Government's contentions that Petitioner had dealing with Usama Bin Laden or that Petitioner in particular was affiliated with al-Qaida" and so the request is not within the scope of CMO § I.D.1. Opp'n, ECF No. 406 at 100-01. Petitioner does not respond to Respondent's objection that the request is vague and insufficiently specific. *See* Reply, ECF No. 407 at 16. Accordingly, it is further

**ORDERED** that Request No. 65 is **DENIED**.

### 34.   Request No. 66

Petitioner seeks "information tending to demonstrate that Petitioner had no knowledge of terrorist operations and/or that the government gained no such information from interrogating him, including, *e.g.*, information related to the numerous 'false alarm bells' rung based upon the false expectation that

Petitioner had planned and/or had knowledge regarding future terrorist attacks." Mot., ECF No. 405 at 101. Respondent argues that it "has not contended in this proceeding that, at the time Petitioner was apprehended, Petitioner had knowledge of specific terrorist operations being planned or executed by persons or groups other than Petitioner and his group" and so "evidence suggesting that Petitioner lacked any knowledge of plans by other persons or groups would not undermine the Government's allegations about Petitioner's own thwarted plans." Opp'n, ECF No. 406 at 101. Petitioner does not respond to this argument other than to propose requests for admissions and interrogatories, *See* Reply, ECF No. 407 at 11; and to argue that he is "entitled to official government inquiries and other conclusions reached by Government officials regarding Petitioner's innocence." Reply, ECF No. 407 at 23. Accordingly, it is further

**ORDERED** that Request No. 66 is **DENIED**.

### 35.   Request No. 68a

Petitioner seeks

> Evidence that tends to undermine Respondent's allegation that Petitioner participated in [Usama Bin] Laden's military and security plan, including statements by Petitioner that he refused to serve as an [al-Qaida] deputy and/or left Khost because he was pressured to do so. See e.g., Petitioner's unclassified CSRT transcript at 19 (stating that he refused to follow orders from [al-Qaida]: "For this

> tell him sorry and I leave. Abu al-Kheir, al-
> Qaida person, he said this is order of bin
> Laden. I tell him I am not al-Qaida, to give
> me order.").

Mot., ECF No. 405 at 101. Respondent concedes that "information undermining Respondent's contention that Petitioner 'work[ed] in [Usama Bin Laden's] military and security plan to confront an American counterattack' in Khost, Afghanistan, after the September 2001 attacks" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 101. Respondent argues that it has not contended that "Petitioner did this work as an "al-Qaida deputy" or because he was subject to al-Qaida command" and so "to the extent this request seeks evidence that Petitioner declined to submit to al-Qaida command as an 'al-Qaida deputy' or left Khost because he was being pressured to serve as an 'al-Qaida deputy,' the request seeks information about contentions the Government has not made and falls outside the scope of CMO § 1.D.1." *Id*. at 101. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 68a is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at

21; Respondent shall therefore conduct a search of all
reasonably available evidence, including the Guantanamo Task
Force database, for evidence that materially undermines
Respondent's contention that Petitioner worked in Usama Bin
Laden's military and security plan to confront an American
counterattack in Khost, Afghanistan, after the September 2001
attacks and disclose any additional, non-duplicative
information; and it is further

  **ORDERED** that Request No. 68a is **DENIED IN PART** as to the
request for statements by Petitioner that he refused to serve as
an al-Qaida deputy and/or left Khost because he was pressured to
do so.

### 36.  Request No. 68b

  Petitioner seeks "[e]vidence tending to undermine
Respondent's allegation that Petitioner actually participated in
hostilities against Coalition forces or otherwise supported
'enemy forces.'" Mot., ECF No. 405 at 102. Respondent concedes
that "information undermining Respondent's contention that
Petitioner supported enemy and participated in hostilities as
described in the Government's [F]actual [R]eturn" falls within
its disclosure obligations pursuant to CMO § I.D.1, but argues
that the request should be denied because it reiterates that
requirement. Opp'n, ECF No. 406 at 102. Responded argues that it
has not contended that "actually participated" means "live

combat" and so to the extent Petitioner seeks such evidence, it is not within the scope of CMO § I.D.1. *Id*. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 68d is **GRANTED IN PART.** Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence that materially undermines Respondent's contention that Petitioner supported enemy forces and participated in hostilities as described in the Factual Return and disclose any additional, non-duplicative information; and it is further

**ORDERED** that Request No. 68d is **DENIED IN PART** to the extent Petitioner seeks evidence undermining any contention that Petitioner participated in live combat.

### 37.  Request No. 69

Petitioner seeks

> Evidence tending to undermine Respondents' insinuation that Petitioner's presence in Kandahar during the month of November 2001 was related to the presence of known terrorists in the city at that time, including Adl al Hadi al Iraqi, Abu Hafs al-Masri, Abu Mus'ab al-

> Zarqawi, and Khaled Shaykh Mohammad, and not
> for some other purpose.

Mot., ECF No. 405 at 102. The Government responds that this request is "vague and insufficiently specific and is not supported by any allegations about whether Petitioner in fact was present in Kandahar or for what purpose." Opp'n, ECF No. 406 at 102. Petitioner does not respond to the Government's argument other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 69 is **DENIED**.

### 38.   Request No. 70

Petitioner seeks

> Evidence from [al-Qaida] operative Abu al
> Kheir that corroborates Petitioner's
> assertion that Petitioner refused an order
> from [Usama Bin] Laden to assume a security
> post in Khost on behalf of al-Qaida. *See*
> Petitioner's CSRT Transcript at 10, 19
> (explaining that Petitioner refused an order
> given by Abu al Kheir from [Usama Bin] Laden
> to assume a security position on behalf of
> [al-Qaida] following 9/11).

Mot., ECF No. 405 at 102. The Government responds that this request is "vague and insufficiently specific." Opp'n, ECF No. 406 at 103-02. Petitioner does not respond to the Government's objection. *See generally* Reply, ECF No. 407. Accordingly, it is further

**ORDERED** that Request No. 70 is **DENIED**.

### 39.   Request No. 71d

In Request No. 71d, Petitioner requests "[e]vidence tending to undermine Respondent's allegation that the persons allegedly ransomed were 'enemy combatants,' including evidence that the Pakistani and Afghani police arrested them for the sole purpose of obtaining a bounty and/or ransom." Mot., ECF No. 405 at 103. Respondent concedes that "evidence suggesting that these 'brothers' had no links either to terrorism or to individuals or groups hostile to the United States" falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 103. Respondent argues that it has not contended that "Petitioner's use of the term 'enemy combatants' is intended to refer to any more specific or technical contention" and so that aspect of the request is not within the scope of CMO §I.D.1. *Id*. Petitioner does not respond to this factual assertion other than to propose requests for admissions and interrogatories. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 71d is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task

Force database, for evidence that materially undermines any contention that these 'brothers' had no links either to terrorism or to individuals or groups hostile to the United States, and disclose any additional, non-duplicative information; and it is further

ORDERED that Request No. 71d is **DENIED IN PART** to the extent Petitioner seeks information materially undermining any contention that the term "enemy combatants" is intended to refer to any more specific or technical contention.

### 40.   Request No. 71e

In Request No. 71e, Petitioner seeks "[e]vidence tending to undermine Respondents' allegation that, during February and March 2002, Petitioner moved from safehouse to safehouse with different groups, including information that any such movement was not organized by Petitioner, that such persons were not terrorists and/or enemy combatants, and/or that Petitioner was not moving with them." Mot., ECF No. 405 at 103. Respondent concedes that "[e]vidence tending to undermine Respondents' allegation that, during February and March 2002, Petitioner moved from safehouse to safehouse with different groups," falls within its disclosure obligations pursuant to CMO § I.D.1, but argues that the request should be denied because it reiterates that requirement. Opp'n, ECF No. 406 at 104. Respondent objects "[t]o the extent that Petitioner seeks information suggesting

that Petitioner's movements during this time were 'not organized
by Petitioner,' [because] the Government has not contended . . .
that Petitioner organized his own movements during this time
without outside assistance, and [so] the request seeks
information about contentions the Government has not made." *Id.*
at 105. Petitioner does not respond to the Government's
objection. *See generally* Reply, ECF No. 407. Accordingly, it is
further

**ORDERED** that Request No. 71e is **GRANTED IN PART.** Respondent
has conceded that at this juncture, a search of the Guantanamo
Task Force database would be useful, Sur-Reply, ECF No. 558 at
21; Respondent shall therefore conduct a search of all
reasonably available evidence, including the Guantanamo Task
Force database, for evidence tending to undermine Respondents'
allegation that, during February and March 2002, Petitioner
moved from safehouse to safehouse with different groups,
including information that such persons were not terrorists
and/or enemy combatants, and/or that Petitioner was not moving
with them, and disclose any additional, non-duplicative
information; and it is further

**ORDERED** that Request No. 71e **DENIED IN PART** as to
information suggesting that Petitioner's movements during this
time were not organized by Petitioner.

85

### 41.   Request No. 72

Petitioner seeks

> Evidence tending to undermine Respondent's
> allegation that Petitioner was using the
> Faisalabad house to "harbor" terrorists for a
> future terrorist cell[,] including evidence
> obtained from detainees or prisoners in U.S.
> custody (other than ISN 696, 694, 682, and
> 707), who were arrested in the Faisalabad
> guesthouse along with Petitioner revealing
> their understanding of who was in the house
> and what they were doing there.

Mot., ECF No. 405 at 103. Respondent concedes that "evidence

undermining Respondent's allegations about Petitioner's

harboring terrorists at the Faisalabad, Pakistan, safehouse

where he was captured" falls within its disclosure obligations

pursuant to CMO § I.D.1, but argues that the request should be

denied because it reiterates that requirement. Opp'n, ECF No.

406 at 105. Respondent argues that "[t]o the extent that

Petitioner seeks other information about other detainees who

were captured at the Faisalabad location, whether they knew

about Petitioner's terrorist activities, and their reasons for

being in the house, Petitioner's request is not narrowly

tailored to the purpose of uncovering specific exculpatory

evidence." Opp'n, ECF No. 406 at 105. Respondent further argues

that it "has not contended in this proceeding that each and

every individual at the Faisalabad site was involved in

Petitioner's plans, and evidence indicating that one or more

persons at the Faisalabad site was not involved in or aware of Petitioner's activities would not undermine Respondent's allegations against Petitioner." *Id*. Petitioner responds—and the Court agrees—that evidence that people staying at the Faisalad location did not know about terrorist activities could be exculpatory. *See* Reply, ECF No. 407 at 11. Accordingly, it is further

**ORDERED** that Request No. 72 is **GRANTED**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for evidence tending to undermine Respondent's allegation that Petitioner was using the Faisalabad house to "harbor" terrorists for a future terrorist cell[,] including evidence obtained from detainees or prisoners in U.S. custody (other than ISN 696, 694, 682, and 707), who were arrested in the Faisalabad guesthouse along with Petitioner revealing their understanding of who was in the house and what they were doing there, and disclose any additional non-duplicative information.

### 42.  Request Nos. 73, 74

Petitioner seeks

> Any evidence that corroborates that the computer seized from the Faisalabad house, and which is the subject of Request No. 5, was

> Petitioner's computer or used by Petitioner"
> and "[a] evidence that corroborates that the
> electronic parts and "electronic gun" seized
> from the Faisalabad house, and which is the
> subject of Request No. 6, belonged to, were
> controlled by, or were known to exist by
> Petitioner.

Mot., ECF No. 405 at 104. The government responds that these requests "should be denied to the extent that [Petitioner] seek[s] or request[s] that the Government search for additional evidence corroborating the Government's account." Opp'n, ECF No. 405 at 33. Petitioner does not respond to the Government's objections. *See generally* Reply, ECF No. 407. The Court will deny these requests. *See Sadkhan*, 608 F. Supp. 2d at 40 (denying request for discovery and stating, "The Government has presented the evidence on which it tends to rely to support its allegations. It does not need to search for more evidence to support its case."). Accordingly, it is further

 **ORDERED** that Request Nos. 73 and 74 are **DENIED**.

   **43.  Request No. 76**

 Petitioner seeks evidence demonstrating that six named associates of Ressam had "no specific knowledge of Ressam's planned terrorist plot in the United States," asserting that if they did not have such knowledge, this would "tend to undermine Respondent's contention that Petitioner would have known about such a plot." Mot., ECF No. 405 at 104. Respondent contends that "Ressam told Petitioner about his plans for a terrorist attack

in the United States but did not tell the Petitioner the intended target or intended date of the attack." Opp'n, ECF No. 406 at 106 (citing Factual Return ¶ 35). Respondent opposes this request because "[e]vidence suggesting that other persons besides Petitioner lacked knowledge of Ressam's plans would not undermine Respondent's contention" and accordingly falls outside the scope of CMO § I.D.1. *Id*. Petitioner does respond to respond to the Government's objections. *See generally* Reply, ECF No. 407. Accordingly, it is further

ORDERED that Request No. 76 is **DENIED**.

## C.   Requests for Additional Limited Discovery Under CMO § I.E.2

Petitioner seeks the following additional discovery pursuant to CMO § I.E.2, which provides in relevant part that:

> Discovery requests shall be presented by written motion to the Merits Judge and (1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful . . . and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government . . . .

CMO § I.E.D.

### 1. Request Nos. 77 and 78a-d

Petitioner seeks all writings and drawings that he created, that are held by U.S. officials that have not been previously

disclosed, including specifically identified writings. Mot., ECF No. 405 at 30. Respondent contends that the Court already ruled on these requests. Opp'n ECF No. 406 at 28-29. In the October 1, 2009 Memorandum and Order, in response to Petitioner's request for "the diaries and documents he was allowed to create while he was in CIA custody, [REDACTED], the court ordered Respondent to produce the petitioner's diaries, [REDACTED]," and otherwise denied the motion. Mem. Order, ECF No. 357 at 9-11. Petitioner contends that Respondent has not produced two items included in the October 1, 2009 Order: (1) the volume containing a chronology of significant events, dates, and transactions; and (2) the novel/play Petitioner wrote while in CIA custody. Reply, ECF No. 407 at 34. Accordingly, it is further

**ORDERED** that Petitioner's Request Nos. 77 and 78a-d are **GRANTED IN PART** and **FOUND AS MOOT IN PART** and Respondent shall produce: (1) the volume containing a chronology of significant events, dates, and transactions; and (2) the novel/play Petitioner wrote while in CIA custody.

### 2. Request Nos. 79 and 80

Petitioner seeks copies of his medical and mental health records created or maintained while he was in CIA custody as well as an in-person medical examination. The Court addressed these requests in its June 6, 2020 Memorandum Opinion and Order. Accordingly, it is further

**ORDERED** that Request Nos. 79 and 80 are **FOUND AS MOOT.**

### 3. Request Nos. 81a–b, 82, 83, 84.

Petitioner seeks certain financial records related to the allegations against him so that he can "understand[] [] the movement of monies to and through Petitioner and his supposed affiliates and entities" so that he can understand the basis for his detention. Mot., ECF No. 405 at 41. Petitioner also seeks financial records related to his designation as a "Specially Designated Global Terrorist." *Id.* Finally, Petitioner seeks an interrogatory related to the financial activities alleged against Petitioner. *Id.* at 41-42.

The Government responds that pursuant to the CMO, it is not required "to provide additional evidence or detail to support or enhance its allegations." Opp'n, ECF No. 406 at 32 (citing *Sadkhan* 608 F. Supp. 2d at 40 (denying request for discovery and stating, "The Government has presented the evidence on which it tends to rely to support its allegations. It does not need to search for more evidence to support its case."); *Bin Attash*, 628 F. Supp. at 37 & n.7 (D.D.C. 2009) (noting that a petitioner can point to a dearth of corroborating evidence in its merits proceedings but cannot reply on the absence of evidence to justify a request for discovery); *id.* at 36-37 (denying request for "primary documents" underlying reports contained in the Factual Return).

Petitioner responds that it has shown "good cause" for disclosure of these financial records, Reply, ECF No. 407 at 36; but has failed to justify his request for additional limited discovery pursuant to CMO § I.E.2. Rather, Petitioner vaguely asserts that "most of the financial-type activity allegedly undertaken by Petitioner—in the abstract—would not justify his detention," Mot., ECF No. 405 at 41; and speculates that the basis for the Executive Branch's designation of Petitioner as a "Specially Designated Global Terrorist" "may well be utterly unreliable," *id.; see also* Reply, ECF No. 407 at 36. Accordingly, it is further

**ORDERED** that Request Nos. 81a-b, 82, 83, and 84 are **DENIED**.

### 4. Request Nos. 85a-f

Petitioner seeks to pose five interrogatories to Ramzi bin Al Shibh and Abd Al Rahim al Nashiri, and six interrogatories to Khaled Sheik Sheik Mohammed, all of whom are detained. Mot., ECF No. 405 at 106-07. Petitioner asserts that each of these detainees "are members of [al-Qaida] with high level operational responsibilities and detailed knowledge of [al-Qaida's] structure, operations and terrorist plans" and seeks these interrogatories "in order to undermine Respondents' repeated assertion that Petitioner, or the Khalden camp, had association or operational ties to al-Qaida or [Usama Bin Laden] or that Petitioner specifically planned to meet with Khaled Shayd

Mohammed." *Id*. Petitioner asserts that these targeted interrogatories "will enable [him] to rebut the factual basis for the detention without unduly disrupting or unduly burdening the government." Mot, ECF No. 405 at 42 (quoting CMO I.E.2.).

Respondent opposes the request on the grounds that such questioning is not authorized by the CMO, the questions are not narrowly tailored, and they not likely produce exculpatory evidence. Opp'n, ECF No. 406 at 56. Respondent points out that neither Ramzi bin Al Shibh nor Abd Al Rahim al Nashiri are mentioned in the "[F]actual [R]eturn narrative as figures with direct ties to Petitioner" nor has Petitioner alleged that these two persons know him personally or by reputation. *Id*. at 57. Respondent concedes that Khaled Sheik Mohammed is mentioned in the Factual Return, but that it "does not contain information suggesting that he would be in a position to have specific knowledge about Petitioner's Khalden activities or Petitioner's ties to Usama Bin Laden and al-Qaida." *Id*. Respondent acknowledges that Request No. 85f—To Khaled Sheik Mohammed only: did you meet or have plans to meet with Petitioner near Kandahar in November 2001, and if you did, for what purpose—has potential relevance, but still contends that it is neither narrowly drawn nor likely to uncover exculpatory information.[5]

---

[5] Respondent also objects to this interrogatory on the ground that "Petitioner does not suggest what he expects Khaled Sheik

Respondent does not contend that these requests, if granted, would disrupt or unduly burden the government. *See* Opp'n, ECF No. 406 at 56-59.

With regard to all but one Interrogatory, Petitioner has articulated why these questions could produce exculpatory evidence. *See* Mot., ECF No. 405 at 42-44; Reply, ECF No. 407 at 36-38. Respondent has alleged that following September 11, 2001, Petitioner "actively associated himself with enemy forces and directly aided enemy forces in hostilities against coalition forces." Factual Return, ECF No. 474 at 49. In support of this allegation, Respondent alleges that Petitioner and Khaled Sheik Mohammed were present in Khadahar in November 2001. *Id*. at 50 ¶ 53. Accordingly, testimony from Khaled Sheik Mohammed regarding: (1) Petitioner's association with al-Qaida and [Usama Bin Laden] (Request No. 85b); (2) the role of the Khalden camp (Request Nos. 85c, d); (3) whether Petitioner guided al-Qaida members out of Afghanistan following September 11 (Request No. 85e); and (4) whether he met with Petitioner in November 2001 and if he did, the purpose of the meeting (Request No. 85f) could be materially exculpatory. *See Rabbani v. Obama*, No. 05-1607 2009 WL 2588702, at *3 (D.D.C. Aug. 20, 2009) ("conclude[ing] that the petitioner

---

Mohammed to say in response. Opp'n, ECF No. 406 at 58. As Petitioner points out, however, Respondent cites no authority for the proposing that Petitioner needs to know the answer to an interrogatory prior to posing it.

may submit a list of narrowly tailored interrogatories to be answered by [Khaled Sheik Mohammed]"); *Al-Ansi v. Obama*, 674 F. Supp. 2d 1, 8 (D.D.C. 2009) (granting two requests for interrogatories posed to the Government). Similarly, Respondent is detaining Petitioner based on his association with al-Qaida; Petitioner seeks to pose questions to two other high-level al-Qaida operatives to rebut Respondent's contentions that Petitioner was associated with al-Qaida and/or coordinated terrorist training with Usama Bin Laden and al-Qaida.

However, Request No. 85a—What do you know about Petitioner's work in Pakistan from 1994-2002—is not narrowly-tailored. Accordingly, it is further

**ORDERED** that Request Nos. 85b-f are **GRANTED**; and it is further

**ORDERED** that Request No. 85a is **DENIED**.

### 5. Request Nos. 86-94

Petitioner seeks discovery regarding certain allegations in the Factual Return, asserting that the allegations are "vague, attenuated and lack even minimal substance." Mot., ECF No. 405 at 107. Petitioner asserts that he "must obtain clarification, detail or evidentiary support for [the] allegations" in order to be able to "rebut the factual basis for his detention." *Id.* (quoting CMO § 1.E.2).

### a.   Request No. 86.

Petitioner seeks "[i]formation documenting procedures Petitioner allegedly employment when he 'ran' guesthouses in their operational function." Mot., ECF No. 405 at 107. The Government responds that this request "should be denied to the extent that [Petitioner] seek[s] or request[s] that the Government search for additional evidence corroborating the Government's account or neutral evidence." Opp'n, ECF No. 406 at 32. Respondent asserts that "neutral evidence" is evidence "that does not affect the Government's case one way or another." *Id*. Here, however, Petitioner is not asking Respondent to search for additional evidence corroborating its account, but rather seeks narrowly tailored, specifically identified information so that he may rebut the factual basis for his detention. *See, e.g., Al-Adahi v. Obama*, Civil Action No. 05-280 (Kessler, J.) ECF No. #326, (D.D.C. Apr. 6, 2009) (ordering disclosure of all documents that refer to a guesthouse that date to the period of time when Petitioner is alleged to have stayed there). Accordingly, it is further

**ORDERED** that Request No. 86 is **GRANTED IN PART**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task

96

Force database, for information documenting procedures
Petitioner allegedly employed when he "'ran'" guesthouses in
their operational function" and disclose any additional, non-
duplicative information; and it is further

ORDERED that Request No. 86 is **DENIED IN PART** and
Respondent is not required to provide an unredacted copy of the
document at this time as Petitioner has not alleged that the
redactions are improper.

### b. Request No. 87

Petitioner seeks "[i]nformation, including instructional
material used at Khalden in the government's possession and
which supports the claim that the training provided there was
'terrorist training'" Mot., ECF No. 405 at 108. The Government
responds that this request should be denied in full because it
fails to "satisfy CMO § I.E.2's requirement that requests for
additional limited discovery be narrowly tailored and likely to
lead to the discovery of information that undermines the
Government's case." Opp'n, ECF No. 406 at 33. Petitioner failed
to address this request in either his motion, see Mot., ECF No.
405 at 29-44 (discussing the legal basis for Petitioner's
requests under CMO § I.E.2); or his Reply brief, Reply, ECF No.
407 (responding to the Government's objections to Petitioner's
requests under CMO § I.E.2). Accordingly, it is further

ORDERED that Request No. 87 is **DENIED.**

### c. Request Nos. 88, 89, 90, 91a, 93a-3, 94

In Request Nos. 88 and 89, Petitioner seeks certain evidence that corroborates the connection of the "training materials" that are the subject of Request No. 3 and the "training manual" that is the subject of Request No. 11 to the Petitioner. Mot., ECF No. 405 at 108. In Request No. 90, Petitioner seeks information that provides support for statements made in the Declaration on Trainings Camps appended to the Factual Return pertaining to Khalden and Derunta. *Id.* In Request No. 91a, Petitioner seeks documents supporting the allegation that Petitioner attempted to finance a terrorist operation in Israel and other operations. *Id.* at 109. In Request Nos. 93a-e, Petitioner seeks information substantiating Respondent's allegations regarding Petitioner's: (1) use of nuclear weapons; (2) attacks on certain sources in the United States; (3) instigating a race war in the United States; (4) arson as part of a war against the United States; and (5) causing explosions in the United States. *Id.* at 109-110. In Request No. 94, Petitioner seeks information supporting the allegation regarding his role in facilitating the retreat of enemy forces from Afghanistan. *Id.*

The Government responds that these requests should be denied because they fails to "satisfy CMO § I.E.2's requirement that requests for additional limited discovery be narrowly

tailored and likely to lead to the discovery of information that undermines the Government's case." Opp'n, ECF No. 406 at 33. Petitioner does not respond to the Government's objections. *See generally* Reply, ECF No. 407. Accordingly, it is further

**ORDERED** that Request Nos. 88, 89, 90, 91a, 93a-e, and 94 are **DENIED**.

### 6. Request Nos. 91b-c, 95a-g, 96a-k

For these requests, Petitioner failed to explain the basis for them; *see generally* Mot., ECF No. 405; he has therefore failed satisfy the requirements of the CMO. In his Reply brief, Petitioner does address requests 96i-j, *see* Reply, ECF No. 407 at 25; but the Court declines to address those arguments. *Scott*, 522 F. Supp. 2d at 274 (It is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.). Accordingly, it is further

**ORDERED** that Request Nos. 91b-c, 95a-g, and 96a-k are **DENIED**.

### 7. Request No. 92

Petitioner seeks

> Information identifying the occupants of the guesthouse when the government conducted the raid that led to Petitioner's arrest, including the fate of each of these persons, and information tending to show that each of these persons is not an enemy combatant. *See, e.g.* [REDACTED] 302 4/18/2003 (identifying specific persons who were arrested by the government during the Faisalabad guesthouse

> raid). *See also* Al-Adahi v. Obama, No. 05-280
> (GK) [dkt # 326] (Apr. 6, 2009) (ordering
> disclosure of all documents that refer to a
> guesthouse that date to a period of time when
> Petitioner is alleged to have stayed there).

Mot., ECF No. 405 at 109. Respondent concedes that "evidence

undermining Respondent's allegations about Petitioner's

harboring terrorists at the Faisalabad, Pakistan, safehouse

where he was captured" falls within its disclosure obligations

pursuant to CMO § I.D.1, but argues that the request should be

denied because it reiterates that requirement. Opp'n, ECF No.

406 at 105. Respondent argues that "[t]o the extent that

Petitioner seeks other information about other detainees who

were captured at the Faisalabad location, whether they knew

about Petitioner's terrorist activities, and their reasons for

being in the house, Petitioner's request is not narrowly

tailored to the purpose of uncovering specific exculpatory

evidence." *Id.* at 105. Respondent points out that it "has not

contended in this proceeding that each and every individual at

the Faisalabad site was involved in Petitioner's plans, and

evidence indicating that one or more persons at the Faisalabad

site was not involved in or aware of Petitioner's activities

would not undermine Respondent's allegations against

Petitioner." *Id.* Petitioner responds—and the Court agrees—that

evidence that people staying at the Faisalad location did not

know about terrorist activities could be exculpatory. *See* Reply,

ECF No. 407 at 11 (responding to Government's objection to Request No. 72, but applicable to Request No. 92.) Accordingly, it is further

ORDERED that Request No. 92 is **GRANTED**. Respondent has conceded that at this juncture, a search of the Guantanamo Task Force database would be useful, Sur-Reply, ECF No. 558 at 21; Respondent shall therefore conduct a search of all reasonably available evidence, including the Guantanamo Task Force database, for information identifying the occupants of the guesthouse when the government conducted the raid that led to Petitioner's arrest, including the fate of each of these persons, and information tending to show that each of these persons is not an enemy combatant, and disclose any additional, non-duplicative information.

        **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
              **United States District Judge**
              **May 24, 2021**