### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| |
|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN #10016),<br><br>          Petitioner,<br>v.<br><br>LLOYD AUSTIN, *et al*.,<br><br>          Respondents. |

No 08-cv-1360 (EGS)

### MEMORANDUM OPINION AND ORDER

Zayn Husayn, also known as Abu Zubaydah, ("Petitioner") has been a detainee at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo") since September of 2006, having been captured on or about March 28, 2002 in Faisalabad, Pakistan and held at various "secret black sites" until his transfer to Guantanamo. His detention is based on Respondents' allegation that he was part of, and substantially supported, al Qaeda and associated forces.

On August 31, 2021, President Biden delivered remarks declaring the war in Afghanistan to be over. *See* Remarks by President Biden on the End of the War in Afghanistan (Aug. 31, 2021), *available at* https://www.whitehouse.gov/briefingroom/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-inafghanistan/ ("My fellow Americas, the war in Afghanistan is now over."). Based on earlier similar remarks by

the President and the expectation that U.S. troops would be
fully withdrawn by September 11, 2021, Petitioner moves for
immediate release, arguing that the government no longer has
authority to detain him. *See generally* Pet'r's Mot. for an Order
Requiring his Immediate Release and Repatriation ("Pet'r's
Mot."), ECF No. 576. Respondents oppose, arguing that their
authority to detain under the 2001 Authorization for the Use of
Military Force ("2001 AUMF") has not lapsed because active
hostilities are ongoing. *See generally* Resp'ts' Opp'n, ECF No.
578.[1]

Upon careful consideration of Petitioner's motion,
Respondents' opposition, the reply[2] thereto, the surreply, the
sursurreply, and the applicable law, the Court **DENIES**
Petitioner's motion.

---

[1] The final withdrawal of U.S. forces from Afghanistan on
September 11, 2021 has rendered moot certain the arguments in
the parties' briefing materials. Accordingly, the Court does not
address those arguments.
[2] The Court **GRANTS** Petitioner's request to amend his motion *nunc
pro tunc* to request oral argument, Reply, ECF No. 585 at 1 n.1;
but finds the request moot in view of this Memorandum Opinion
and Order.

## I.   Detention Authority

The 2001 Authorization for Use of Military Force ("AUMF")
permits the President "to use all necessary and appropriate
force against those nations, organizations, or persons he
determines planned, authorized, committed, or aided the
terrorist attacks that occurred on September 11, 2001, or
harbored such organizations or persons." Authorization for Use
of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224
(2001). In the 2012 National Defense Authorization Act ("2012
NDAA") Congress reaffirmed "the authority of the President to
use all necessary and appropriate force pursuant to the [AUMF],"
including "[d]etention under the law of war without trial until
the end of the hostilities authorized by the [AUMF]." National
Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-
81 § 1021(a), (b)(2), (c)(1), 125 Stat. 1298, 1562.

"The AUMF authorizes detention for the duration of the
conflict between the United States and the Taliban and al
Qaeda." *Al-Alwi v. Trump*, 901 F.3d 294, 299 (D.C. Cir. 2018);
*see also Uthman v. Obama*, 637 F.3d 400, 402 (D.C. Cir. 2011)
(citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004)("The AUMF,
among other things, authorizes the Executive Branch to detain
for the duration of hostilities those individuals who are part
of al Qaeda or the Taliban.")). "Neither [the AUMF nor the 2012
NDAA] places limits on the length of detention in an ongoing

3

conflict." *Id.* at 297. "[T]he AUMF remains in force if
hostilities between the United States and the Taliban and al
Qaeda continue." *Id.* (citing *Ali v. Obama*, 736 F.3d 542, 552
(D.C. Cir. 2013)("[T]he 2001 AUMF does not have a time limit,
and the Constitution allows the detention of enemy combatants
for the duration of hostilities.")).

"It is a clearly established principle of the law of war
that detention may last no longer than active hostilities."
*Hamdi v. Rumsfeld*, 542 U.S. 507, 520 (2004) (citing Article 118
of the Geneva Convention (III) Relative to the Treatment of
Prisoners of War, Aug. 12, 1949 [1955] 6 U.S.T. 3316, 3406,
T.I.A.S. No. 3364 ("Prisoners of war shall be released and
repatriated without delay after the cessation of active
hostilities")). "The "termination" of "[t]he state of war ... is
a political act." *Ludecke v. Watkins*, 335 U.S. 160, 168–69
(1948) (internal quotation marks omitted). "Whether and when it
would be open to th[e] [c]ourt[s] to find that a war though
merely formally kept alive had in fact ended, is a question too
fraught with gravity even to be adequately formulated when not
compelled." *Id.* at 169. "The determination of when hostilities
have ceased is a political decision, and we defer to the
Executive's opinion on the matter, at least in the absence of an
authoritative congressional declaration purporting to terminate
the war." *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010)

(citing *Ludecke*, 335 U.S. at 168-170. When "the Executive Branch represents, with ample support from record evidence, that the hostilities described in the AUMF continue[,] [i]n the absence of a contrary Congressional command, that controls." *Al-Alwi*, 901 F.3d at 300 (citing *Ludecke*, 335 U.S. at 168-170).

## II. Discussion

Petitioner moves for immediate release, arguing that the government no longer has the authority to detain him because: (1) the political decision has that the war is over has been made as evidenced by President Biden's statements; and (2) "the United States has defeated al Qaeda in Afghanistan and there are no active hostilities." Pet'r's Mot., ECF No. 576-1 at 8.[3]

The Court considers whether Petitioner's detention is authorized pursuant to the governing statutes described above, informed by the law of war.

### A. Petitioner's Detention Is Authorized By the AUMF

Petitioner disputes that the authority to detain him derives from the AUMF because the Factual Return does not assert that he had any role in the September 11 attacks. Sursurreply, ECF No. 600 at 3, 18. Petitioner's position is, however, inconsistent with well-settled legal precedent. As explained

---

[3] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

above, "[t]he AUMF authorizes detention for the duration of the conflict between the United States and the Taliban and al Qaeda." *Al-Alwi*, 901 F.3d at 299. Respondents' Factual Return alleges that "Petitioner is detained because he was part of and substantially supported [al Qaeda[4]] and associated forces." Opp'n, ECF No. 578 at 24. While Petitioner disputes that he was a part of or substantially supported al Qaeda, clearly the asserted basis for the Executive Branch's authority to detain him is the AUMF.

### B. The Authority to Detain Individuals Under the AUMF Is Not Limited To the Conflict in Afghanistan

Petitioner contends that the authority to detain under the AUMF is limited to the conflict in Afghanistan. Reply, ECF No. 585 at 18-19. However, the AUMF contains no geographical limitation. As persuasively explained by another Judge on this Court:

> The 2001 AUMF was a sweeping delegation of power that, on its face, contains no geographical limitation. *See* Pub. L. No. 107-40, § 2(a), 115 Stat. at 224. As Respondents point out, that is significant. *See* Resp'ts' Br. at 7. Congress has routinely placed geographic boundaries on its authorizations for the use of military force. In the 2002 Authorization for Use of Military Force in Iraq ("Iraq AUMF"), for example, Congress limited the President's use of force to the "threat posed by Iraq." Authorization

---

[4] Throughout this Memorandum Opinion and Order, the Court uses the spelling of al Qaeda used by the Court of Appeals for the District of Columbia Circuit.

6

for Use of Military Force Against Iraq
Resolution of 2002, Pub. L. No. 107-243, §
3(a)(1), 116 Stat. 1498. Earlier, in 1983,
Congress limited the President's authority to
exercise his war powers in the Lebanon War to
"continu[ing] participation by United States
Armed Forces in the Multinational Force *in
Lebanon*." Joint Resolution, Pub. L. No. 98-
119, § 3, 97 Stat. 805 (1983) (emphasis
added).

In contrast, the 2001 AUMF is not limited by
geography, but empowers the President to use
force wherever he may find the "nations,
organizations, or persons" who "planned,
authorized, committed, aided" the September 11
terrorist attacks and those who harbored them.
Pub. L. No. 107-40, § 2(a), 115 Stat. at 224.
Unlike the Iraq AUMF or the 1983 Joint
Resolution, there is simply no statutory hook
for [Petitioner's] argument that the 2001 AUMF
is limited to hostilities in Afghanistan.

*Gul v. Biden*, Case No. 16-CV-01462 (APM), 2021 WL 5206199, * 2

(D.D.C. November 8, 2021).

Turning to caselaw, Petitioner points out that in *Hamdi*,

the Supreme Court interpreted the 2001 AUMF to authorize

"detention of [those] individuals . . . ***for the duration of the***

***particular conflict in which they were captured,***" 542 U.S. at

518 (emphasis added); and argues that "[i]n every case

considering the 'end of hostilities' question raised by a

Guantanamo detainee, the court has always conducted the analysis

with respect to whether the U.S. forces were engaged in

hostilities in Afghanistan," Reply, ECF No. 585 at 18 (citing *Al-Alwi,* 901 F.3d at 298; *Al-Bihani*, 590 F.3d at 874.[5]

For the reasons explained below, the Court does not read these authorities to limit geographically the "sweeping delegation of power" in the AUMF. Furthermore, the cases upon which Petitioner relies are distinguishable because it is unclear whether in any of the cases an argument was made that either the AUMF or the particular conflict for which the respective Petitioners were detained was limited to Afghanistan.

In *Hamdi*, the Petitioner was an American citizen alleged to have taken up arms with the Taliban in Afghanistan the aftermath of the terrorist attacks of September 11, 2001. *See Hamdi*, 542 U.S. at 510. This factual underpinning informed the Supreme Court's conclusion that his detention was authorized by the AUMF: "The United States may detain, for the duration of these hostilities, individuals legitimately determined to be Taliban combatants who 'engaged in an armed conflict against the United States.' If the record establishes that United States troops are still involved in active combat in Afghanistan, those detentions are part of the 'necessary and appropriate force,' and therefore are authorized by the AUMF." *Id*. at 521.

---

[5] The Court addresses only the mandatory authority cited by Petitioner.

In *Al-Alwi*, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") rejected the Petitioner's argument that the authority to detain him had "unraveled" due to the duration of the "Afghanistan-based conflict" on the grounds that "'[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan.'" *Al-Alwi*, 901 F.3d at 298 (quoting *Hamdi*, 542 U.S. at 521).

Finally, in *Al-Bihani*, the D.C. Circuit affirmed the denial of the petition for a writ of habeas corpus, disagreeing with Petitioner's argument there that the conflict with the Taliban had ended, citing the number of U.S. and Coalition troops in Afghanistan. 590 F.3d at 874. In response to a similar argument made to another Judge on this court, he persuasively concluded that:

> the consequences of this court magnifying the D.C. Circuit's passing reference to "in Afghanistan" to a statement restricting the scope of the Executive's power to wage congressionally authorized war are simply incredible. [Petitioner] would have this court read *Al-Bihani* to stand for the proposition that all war-on-terror detainees arrested in Afghanistan are no longer lawfully detained. That the court cannot do when, as here, its authority is at its nadir, and neither a higher court, Congress, nor the Executive has geographically bound the relevant conflict to Afghanistan. *See Ludecke*, 335 U.S. at 170 ("These are matters of political judgment for which judges have neither technical competence nor official responsibility.").

*Gul*, 2021 WL 5206199, *3.

9

Petitioner notes that the Factual Return "focus[es] overwhelmingly on his alleged hostile activities in or related to Afghanistan and Khaldan training camp." Reply, ECF No. 585 at 14 n.70. However, the Factual Return alleges activities and plans beyond Afghanistan—specifically in Pakistan and Iran. *See* Factual Return, ECF No. 474-1 at 35-40 (travel between Pakistan and Afghanistan); 62 (entry in Petitioner's diary regarding creating a cell in Iran "and meet with group which [would] work in Palestine, without the knowledge of the Iranian government"). Furthermore, Petitioner is alleged to be part of and to have substantially supported al Qaeda, which as explained *infra*, operates out of Afghanistan and elsewhere.

Petitioner acknowledges that "the purpose of detention is to prevent captured individuals from returning to the field of battle and taking up arms again," Sursurreply, ECF No. 600 at 9 (quoting *Hamdi*, 542 U.S. at 518); but asserts that since the war in Afghanistan has ended, there is no battlefield for Petitioner to return to, *id*. The Court disagrees. Respondents have, as explained in detail below, provided ample support for the representation that al Qaeda still operates in Afghanistan and elsewhere.

For these reasons, the Court concludes that Respondents' authority to detain Petitioner is not limited to the conflict in Afghanistan.

**C. Hostilities Against al Qaeda, and Associated Forces Remain Ongoing in Afghanistan and Elsewhere**

Petitioner contends that "the United States has defeated al Qaeda in Afghanistan and there are no active hostilities." Pet'r's Mot., ECF No. 576-1 at 8.

As explained *supra*, "[t]he AUMF authorizes detention for the duration of the conflict between the United States and the Taliban and al Qaeda." *Al-Alwi*, 901 F.3d at 299. Where "the Executive Branch represents, with ample support from the record evidence, that the hostilities described in the AUMF continue," the Court must defer to the Executive Branch's determination. *Id.* at 300.[6] Here, as set forth below, the record amply supports the Executive Branch's representation that hostilities against al Qaeda have not ceased.

On September 28, 2021, the Chairman of the Joint Chiefs of Staff, in testimony before the Senate Armed Services Committee testified as follows: "[T]he Al Qaeda threat globally is still there. The threat in Afghanistan has an opportunity now to potentially reconstitute, although it's been ripped apart pretty steadily over 20 years. And Al Qaeda has displaced to other parts of the world . . . [T]here's several affiliates worldwide,

---

[6] Respondent does not dispute the role of the court in reviewing the support in the record evidence supporting the Executive Branch's representations here. *See, e.g.*, Surreply, ECF No. 590 at 7. Accordingly, the Court declines to address Respondents' separation of powers argument.

some of which are quite capability [sic] and definitely have aspirations to attack the United States." Bloomberg Government, Testimony before the Senate Armed Services Committee Hearing (Sept. 28, 2021), ECF No. 590-4 at 94. "Al Qaeda is still in Afghanistan. They were there in mid-August." *Id*. at 47. "I believe al Qaeda is in Afghanistan. I believe they have aspirations to reconstitute and if they develop the capability I believe they have aspirations to strike. It's too early in the process right now . . . to determine the capability. But I do believe they exist. … I think al Qaeda is at war with the United States, still. And never has not been." *Id*. at 71.

At the same hearing, General McKenzie, Commander, U.S. Central Command, testified as follows: "Al Qaeda . . . maintains a presence in Afghanistan." *Id*. at 92. We know that Al Qaeda is "gathering their strength, but we have yet to see how that's going to manifest itself, but we know for certainty [sic] that they do aspire to attack us in our own land." *Id*. "So, that threat, it has metastasized and it is resident in other parts of the world … [and] it certainly is in Afghanistan." *Id*.

Furthermore, Secretary of Defense Austin testified that days before the September 28, 2021 hearing, a Senior al Qaeda figure in Syria was killed in an "over-the-horizon operation." *Id*. at 11.

On September 9, 2021, President Biden reaffirmed that "[t]he terrorist threat that led to the declaration on September 14, 2001 of a national emergency continues." Letter to the Speaker of the House of Representatives and the President of the Senate on the Continuation of the National Emergency with Respect to Certain Terrorist Attacks (Sept. 9, 2021), ECF No. 590-9 at 2.

Respondents also point to the two classified declarations submitted with their Surreply that "further detail the nature of the current ongoing conflict against [al Qaeda] and associated forces in areas of Africa and the Middle East, including Afghanistan, noting specifically that U.S. forces remain engaged in active hostilities with [al Qaeda] and associated forces in these regions." Surreply, ECF No. 590 at 19. The Court has reviewed the classified declarations and finds that they support the statements made.

The 2021 annual report of worldwide threats to the national security of the U.S. states as follows:

> [Al Qaeda's] senior leadership cadre has suffered severe losses in the past few years, but remaining leaders will encourage cooperation among regional elements, continue calls for attacks against the United States and other international targets, and seek to advance plotting around the world. [Al Qaeda's] regional affiliates will exploit local conflicts and ungoverned spaces to threaten US and Western interests, as well as local governments and populations abroad.

13

> [Al Qaeda's] affiliates in the Sahel and
> Somalia have made gains during the past two
> years, but the group experienced setbacks
> elsewhere, including losing key leaders or
> managing only limited operations in North
> Africa, South Asia, Syria and Yemen.

Office of the Director of National Intelligence, Annual Threat
Assessment (Apr. 9, 2021), ECF No. 590-10 at 24.

Respondents further state that "[al Qaeda] considers its
war against the United States to continue and remains intent on
perpetrating attacks against the United States," Surreply, ECF
No. 590 at 20; citing a video released on September 11, 2021
featuring al Qaeda's current leader, Ayman al-Zawahiri, see
FDD's Long War Journal, Ayman al Zawahiri promotes "Jerusalem
Will Not Be Judaized" campaign in new video (Sept. 11, 2021)
("Long War Journal"), ECF No. 590-12; see also Congressional
Research Service, Al Qaeda: Background, Current Status, and U.S.
Policy ("CRS Report") (June 14, 2021), ECF No. 590-11 at 2 ("[Al
Qaeda's] leader, or emir, is Ayman al Zawahiri, an Egyptian who
succeeded Bin Laden."). The article describing the video
reports, among other things, that al-Zawahiri states that "[w]e
must fight the battle on different fronts," id. at 7; "[w]e must
understand that repelling this Crusader campaign entails the
efforts of successive generations," id. at 8; that "operations
on enemy soil and beyond enemy lines" are important, id.; and

that "[w]e are a united Ummah, waging one war on different

fronts," *id*.

> According to the June 2021 CRS Report cited *supra*,

>> U.S. officials assess that many [al Qaeda]
>> core leaders are based in Afghanistan, where
>> the group has been weakened but not
>> eliminated. According to a December 2020
>> Department of Defense (DOD) report, "[Al
>> Qaeda's] remaining core leaders pose a limited
>> threat to U.S. coalition forces in Afghanistan
>> because they are focused primarily on
>> survival."

>> The Taliban committed to preventing [a]l Qaeda
>> from using Afghan soil as part of the February
>> 2020 U.S.-Taliban agreement under which U.S.
>> troops are being withdrawn from Afghanistan.
>> Still, [a]l Qaeda's decades-long ties with the
>> Taliban appear strong.

CRS Report, ECF No. 590-11 at 2-3. The Report notes that that

there are a number of al Qaeda affiliates throughout the Middle

East and Africa. *Id*. at 3. The Report states that the U.S. "has

conducted airstrikes on [al Qaeda] targets in at least seven

countries since 2012, and U.S. forces have engaged in ground

combat against [al Qaeda] in Afghanistan, Somalia and Yemen in

recent years," *id*.; and that in addition to direct military

action, "the U.S. seeks to combat [a]l Qaeda and other terrorist

threats 'by, with, and through' local partners [and that] [al

Qaeda]-linked groups are a leading threat to, and target of,

countries to which the U.S. has provided millions of dollars in

security assistance," *id*.

According to a June 1, 2021 Analytical Support and Sanctions Monitoring Team Report to the United Nations Security Council, "[l]arge numbers of [al Qaeda] fighters and other foreign extremist elements aligned with the Taliban are located in various parts of Afghanistan." Report of the Analytic Support and Sanctions Monitoring Team, U.N. Doc. S/2021/486 (June 1, 2021), ECF No. 590-13 at 4.

Finally, on June 8, 2021, the President reported the following military actions against al Qaeda: (1) "working by, with, and through local partners in conducting airstrikes and other necessary operations . . . against [al Qaeda] in Syria"; and (2) "[a] small number of United States military personnel are deployed in Yemen to conduct operations against [al Qaeda] in the Arabian Peninsula." Letter from the President, Letter to the Speaker of the House and President Pro Tempore of the Senate Regarding the War Powers Report (June 8, 2021), ECF No. 590-16 at 3, 4.

In support of his contention that al Qaeda has been defeated and there are no active hostilities, Petitioner cites book reviews and news reports to support the proposition that "the al Qaeda that existed when [Petitioner] was captured and almost killed way back in 2002 no longer exists [because it] has morphed into a shadowy and ill-defined network in quasi-franchise form all over the world." Reply, ECF No. 585 at 16.

16

However, the Executive Branch's evidence set forth above demonstrates that al Qaeda is anything but "shadowy" and "ill-defined."

Petitioner rejects Respondents' position that his detention would remain authorized if, for example, hostilities broke out between the U.S. and the al Qaeda affiliate in Somalia because he is being "imprisoned on account of his allegedly hostile activities in Afghanistan." Reply, ECF No. 585 at 16. However, and as explained above, Petitioner's detention is based on his allegedly being part of and substantially supported al Qaeda and associated forces, not because the allegations occurred in Afghanistan. Furthermore, Petitioner's reliance of *al Odah v. United States* is entirely misplaced. In *al Odah*, the Court declined entirely to address the merits of Petitioner's request that the Court order his immediate release and repatriation upon the cessation of active hostilities Afghanistan on the ground that the the issue was not yet ripe. 62 F. 3d 101, 109 (D.D.C. 2014).

Petitioner argues that "that the original al Qaeda no longer exists" because all of the al Qaeda leaders other than Ayman al-Zawahiri, who is rumored to have died, have either been killed or captured. Sursurreply, ECF No. 600 at 9-10. However, as explained *supra*, Respondent has provided evidence of a September 11, 2021 video in which al-Zawahiri states, among

17

other things, "[w]e must fight the battle on different fronts."
Long War Journal, ECF No. 590-12 at 7. More generally, and as
explained in detail *supra*, hostilities against al Qaeda have not
ceased. Respondent acknowledges that "[al Qaeda's] remaining
core leadership has been degraded and currently posts a more
limited threat to the U.S. homeland" but represents, and
provides support in the record, that the existing "leadership
continues to assert direction for, seek the loyalty of, and
encourage cooperation and growth among regional [al Qaeda]
affiliates, which continue to pursue recruitment and plotting,
especially in unstable or vulnerable areas, and threaten local
U.S. personnel, interests, and partners." Surreply, ECF No. 590
at 19 (citing Annual Threat Assessment at 23.)

Petitioner also asserts that "when the government speaks of
al Qaeda, it often fails to identify precisely which entity it
is referring to, even though it has the burden of proof to do
so." *Id*. at 4. Petitioner points to a 2005 document entitled
"The History of al Qaeda," prepared by a scholar and Near and
Middle East expert for the Office of Net Assessment in the
Department of Defense.[7] Sursurreply, ECF No. 600 at 10 n.14. In

---

[7] The Office of Net Assessment "provide[s] long-term comparative
assessments of trends, key competitions, risks, opportunities,
and future prospects of U.S. military capability to the
Secretary of Defense and Deputy Secretary of Defense." *See*
https://www.defense.gov/About/Office-of-the-Secretary-of-
Defense/Office-of-Net-Assessment/, last visited May 26, 2022.

this report, the author argues that U.S. officials have had a poor understanding of al Qaeda for most of the time it has existed. Sursurreply, ECF No. 600 at 10. Based on this assessment, Petitioner disputes that it is appropriate for Respondent to "insist now, without providing even an iota of proof, that every group that decides to assume the al Qaeda name for whatever reasons (because using the same aids in recruiting fighters and provides cachet, etc.), is indeed part of the original al Qaeda." *Id.* at 13. The Court disagrees. Respondents have described in detail the current status of al Qaeda in Afghanistan, the various al Qaeda affiliates, and the relationship between those affiliates and al-Zawahiri.

Petitioner complains that Respondents have failed to provide information "on exactly what 'military operations against al-Qaeda and associated forces' are still being conducted by U.S. forces in Afghanistan." Sursurreply, ECF No. 600 at 8. However, whether or not such military operations are being conducted in Afghanistan is beside the point since as explained *supra*, Petitioner's detention is not based on whether military operations against al Qaeda and associated forces in Afghanistan.

For all of these reasons, and in view of the deference due to the Executive Branch's determination, the Court concludes

that hostilities against al Qaeda and associated forces remain

ongoing.[8]

**III. Conclusion and Order**

    For the reasons stated above, it is hereby

    **ORDERED** that Petitioner's Motion for an Order Requiring his

Immediate Release and Repatriation, ECF No. 576, is **DENIED.**

        **SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
            **United States District Judge**
            **June 10, 2022**

---

[8] The Court need not address Respondents' arguments regarding
Army Regulation 190-8, ECF No. 578 at 40-51; as Petitioner does
not invoke it as a source of his rights, Reply, ECF No. 585 at
25.