UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAYN AL ABIDIN MUHAMMAD HUSAYN (ISN #10016),<br><br>             Petitioner,<br>v.<br>LLOYD AUSTIN, *et al.*,<br><br>             Respondents. | Civil Action No. 08-1360 (EGS) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner's Motion for Order Granting Writ of Habeas Corpus. *See generally* Mot. for Order Granting Writ of Habeas Corpus ("Habeas Mot."), ECF No. 488.[1] Petitioner claims that his continued detention at Guantanamo Bay is unconstitutional under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and invalid under the 2001 Authorization for Use of Military Force ("AUMF"). *See generally id*. Respondents oppose, arguing that Petitioner may not invoke Due Process Clause protections and that Petitioner's detention is lawful under the AUMF. *See generally* Resp'ts' Opp'n, ECF No. 500.

Upon careful consideration of Petitioner's motion, Respondents' opposition, the reply thereto, the arguments of

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

*amici*,[2] and the applicable law, and for the reasons explained below, the Court **DENIES** Petitioner's motion.

### I. Background

Zayn Husayn, also known as Abu Zubaydah, ("Petitioner") was born in Palestine and raised in Saudi Arabia. He has been detained at the U.S. Naval Base in Guantanamo Bay, Cuba ("Guantanamo") since September of 2006, having been captured on or about March 28, 2002 in Faisalabad, Pakistan and held at various "secret black sites" until his transfer to Guantanamo. His detention is based on Respondents' allegation that he was part of, and substantially supported, al Qaeda and associated forces.

The Court recently ruled that Petitioner's continued detention is authorized by the AUMF. *See generally Husayn v. Austin*, No. 08-cv-1360, 2022 WL 2093067 (D.D.C. June 10, 2022). The AUMF permits the President "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons." Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2001). In the 2012 National Defense Authorization Act ("2012

---

[2] The Court appreciates the analysis provided by the *amici*.

NDAA") Congress reaffirmed "the authority of the President to use all necessary and appropriate force pursuant to the [AUMF]," including "[d]etention under the law of war without trial until the end of the hostilities authorized by the [AUMF]." National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81 § 1021(a), (b)(2), (c)(1), 125 Stat. 1298, 1562.

"The AUMF authorizes detention for the duration of the conflict between the United States and the Taliban and al Qaeda." *Al-Alwi v. Trump*, 901 F.3d 294, 299 (D.C. Cir. 2018); *see also Uthman v. Obama*, 637 F.3d 400, 402 (D.C. Cir. 2011) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004)("The AUMF, among other things, authorizes the Executive Branch to detain for the duration of hostilities those individuals who are part of al Qaeda or the Taliban.")). "Neither [the AUMF nor the 2012 NDAA] places limits on the length of detention in an ongoing conflict." *Id*. at 297. "[T]he AUMF remains in force if hostilities between the United States and the Taliban and al Qaeda continue." *Id*. (citing *Ali v. Obama*, 736 F.3d 542, 552 (D.C. Cir. 2013)("[T]he 2001 AUMF does not have a time limit, and the Constitution allows the detention of enemy combatants for the duration of hostilities.")).

Whether Petitioner's continued detention "remains necessary to protect against a significant security threat to the United States"—as distinct from its legality under the AUMF and whether

3

detention is consistent with Petitioner's habeas rights—is reviewed on a periodic basis by the Guantanamo Bay Periodic Review Board ("PRB"). *Ali v. Trump*, 959 F.3d 364, 368 (D.C. Cir. 2020)(citing Exec. Order No. 15,567, 76 Fed. Reg. 13, 277 (March 7, 2011)(establishing the Periodic Review Board). Respondent represents that the result of Petitioner's initial PRB review was announced in September 2016, with the result being that he was designated for continued detention. Resp'ts' Opp'n, ECF No. 500 at 15. Since he was designated for continued detention at that time, Petitioner is eligible for another full PRB review every three years, *see* Exec. Order 13,567 at § 3(b), 76 Fed. Reg. 13,277 (Mar. 7, 2011); and for a file review every six months, *see id*. § 3(c). Respondent represents that a subsequent PRB was completed in April 2017 and another was ongoing as of January 2018. Resp'ts' Opp'n, ECF No. 500 at 15.

In the most recently-completed review of Petitioner's detention in March 2020, the Periodic Review Board made the following determination:

> The Periodic Review Board, by consensus, determined that continued law of war detention of the detainee remains necessary to protect against a continuing significant threat to the security of the United States.
>
> In making this determination, the Board considered that regardless of his claim that he was not a formal member of al Qaida, his past involvement in jihadist activity to include probably serving as one of Usama bin

4

> Ladin's most trusted facilitators and his admitted abilities as a long-term facilitator and fundraiser for extremist causes.
>
> Additionally, detainee's lack of remorse for his extensive role in training and facilitating large numbers of extremists, continued habit of viewing certain persons and countries as his enemies, and personal attributes and beliefs that make him susceptible to reengagement.

*See* Periodic Review Board, Unclassified Summary of Final Determination for ISN 10016 (Mar. 5, 2020), https://www.prs.mil/Portals/60/Documents/ISN10016/SubsequentHearing1/200305_UPR_ISN10016_SH1_FINAL_DETERMINATION_PRB.pdf.[3] Additionally, another Subsequent Full Review began in 2021; a hearing was held in July 2021 and the final determination has not yet been posted. *See* Periodic Review Secretariat, Subsequent Full Review for ISN 10016, https://www.prs.mil/Review-Information/Subsequent-Full-Review/ (*last visited May 26, 2023*).

On January 11, 2018, Petitioner and ten other detainees jointly filed the instant motion. *See* Habeas Mot., ECF No. 488. An identical motion was filed in each case, and Petitioners and Respondents filed identical briefings in all cases. In August 2018, the motion was denied in one of the cases. *See Ali v.*

---

[3] "The Court takes judicial notice of the official government documents and other sources from [DOD's] government website as 'sources whose accuracy cannot reasonably be questioned.'" *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 40 n.2 (D.D.C. 2019)(quoting Fed. R. Evid. 201(b)(2)).

*Trump*, 317 F. Supp. 3d 480 (2018). That denial was affirmed by the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), *see Ali*, 959 F.3d 364; and the petition for the writ of certiorari was denied, *Ali v. Biden*, 141 S.Ct. 2657 (2021).

## II. Analysis

### A. Petitioner's Detention Does Not Violate Due Process

Petitioner argues that "[t]he Due Process Clause of the Constitution applies at Guantanamo and places substantive limitations on executive detention of the kind at issue here, including a durational limitation that compels relief regardless of the original basis for detention." Habeas Mot., ECF No. 488 at 16. The D.C. Cir has rejected this same argument as "sweep[ing] too far," *Ali v. Trump*, 959 F.3d 364, 368 (D.C. Cir. 2020); providing the following guidance regarding the applicability of Due Process Clause protections to Guantanamo detainees:

> The Supreme Court's decision in *Boumediene v. Bush*, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), unequivocally held that Guantanamo Bay detainees must be afforded those procedures necessary to ensure "meaningful review" of the lawfulness of their detention, *id.* at 783, 128 S.Ct. 2229. *See Qassim*, 927 F.3d at 524. In particular, detainees are constitutionally entitled to "those 'procedural protections' " that are "necessary (i) to 'rebut the factual basis for the Government's assertion that [the detainee] is an enemy combatant'; (ii) to give the prisoner 'a meaningful opportunity to demonstrate that he is being held pursuant to

6

> the erroneous application or interpretation of relevant law'; and (iii) to create a record that will support 'meaningful review'" by federal courts. *Id.* at 528-529 (formatting modified) (quoting *Boumediene*, 553 U.S. at 779, 783, 128 S.Ct. 2229).
>
> In identifying those constitutional protections for detainees, the Supreme Court pointed both to the Constitution's guarantee of habeas corpus, U.S. CONST. art. I, § 9, cl. 2 (commonly known as the Suspension Clause), and the Due Process Clause. *Boumediene*, 553 U.S. at 771-792, 128 S.Ct. 2229; *see Qassim*, 927 F.3d at 529.
>
> Circuit precedent has not yet comprehensively resolved which "constitutional procedural protections apply to the adjudication of detainee habeas corpus petitions," and whether those "rights are housed" in the Due Process Clause, the Suspension Clause, or both. *Qassim*, 927 F.3d at 530. In this case, Ali has chosen not to ground any of his claims for procedural protections in the Suspension Clause. So that issue is not before us. Instead, Ali's main argument puts all of his eggs in one constitutional basket. He argues that the Due Process Clause's procedural and substantive requirements apply wholesale, without any qualifications, to habeas corpus petitions filed by all Guantanamo detainees.

*Ali*, 959 F.3d at 368.[4]

---

[4] Accordingly, the Court need not reach the parties' arguments regarding whether or not the Due Process Clause applies to Guantanamo detainees. The *Ali* Court rejected "[tt]he district court's decision that the Due Process Clause is categorically inapplicable to detainees at Guantanamo Bay . . . ." *Ali*, 959 F.3d at 368. And the D.C. Circuit has yet to decide whether the Due Process Clause squarely applies to Guantanamo detainees, recently determining that "deciding the applicability of the Due Process Clause is unnecessary here, where, as explained below, we find that the habeas procedures [Petitioner] received actually satisfy what the Clause would require." *Al-Hela v. Biden*, 66 F.4th 217, 227 (D.C. Cir. 2023).

In rejecting the same due process argument made in the instant motion, the D.C. Circuit stated:

> For starters, the argument is in substantial tension with the Supreme Court's more calibrated approach in *Boumediene*, which tied the constitutional protections afforded to Guantanamo Bay detainees' habeas corpus proceedings to their role in vindicating the constitutional right to the Great Writ and the judicial role in checking Executive Branch overreach. *See* 553 U.S. at 798, 128 S.Ct. 2229 ("[P]etitioners may invoke the fundamental procedural protections of habeas corpus."); *id*. at 779-783, 793-795, 128 S.Ct. 2229. The court stressed that the scope of constitutional protections must "turn on objective factors and practical concerns, not formalism." *Id*. at 764, 128 S.Ct. 2229. Yet Ali argues for only a formal and unyielding line.
>
> Ali's argument that the Due Process Clause's substantive protections apply with full force to all detainees at Guantanamo Bay also runs crosswise with this court's decision in *Kiyemba v. Obama*, which held that, for Guantanamo Bay detainees, the claimed substantive due process right to release into the United States had no purchase because a noncitizen who seeks admission to the United States generally "may not do so under any claim of right." 555 F.3d 1022, 1027 (D.C. Cir. 2009), *vacated and remanded*, 559 U.S. 131, 130 S.Ct. 1235, 175 L.Ed.2d 1070, *reinstated in relevant part*, 605 F.3d 1046, 1047- 1048 (D.C. Cir. 2010). That case refutes Ali's claim that the substantive protections of the Due Process Clause apply across the board to all Guantanamo Bay detainees. And Ali has abstained from pressing any more gradated or as-applied Due Process Clause argument here.
>
> In sum, *Boumediene* and *Qassim* teach that the

> determination of what constitutional procedural protections govern the adjudication of habeas corpus petitions from Guantanamo detainees should be analyzed on an issue-by issue basis, applying *Boumediene*'s functional approach. The type of sweeping and global application asserted by Ali fails to account for the unique context and balancing of interests that *Boumediene* requires when reviewing the detention of foreign nationals captured during ongoing hostilities.

*Id*. at 369.

Accordingly, the Court will apply a functional approach here. Petitioner argues that his "continuing detention violates [his] fundamental due process rights" because "detention without charge or trial of this length, which is still without foreseeable end and potentially permanent, violates the Due Process Clause's durational limits on detention; under President Trump's animus-driven decree to prevent the release of any detainee regardless of individual circumstances or bona fide security assessments renders such prolonged detention arbitrary and unlawfully punitive." Habeas Mot., ECF No. 488 at 21.[5]

---

[5] The Court does not reach the argument that detention is not justified by a preponderance of the evidence standard because Petitioner's habeas proceeding has not yet been conducted. Habeas Mot., ECF No. 488 at 23-26. The deadline for Petitioner's traverse has been stayed pending Respondent's production of discovery requested by Petitioner. *See, e.g.*, Minute Order (July 12, 2022). The Court notes, however, that the D.C. Circuit recently ruled that the application of the preponderance of the evidence standard in a Guantanamo habeas proceeding did not violate due process. *See Al-Hela*, 66 F.4th 217. The Court also need not address the argument regarding the two petitioners approved for transfer. *Id*. at 26-30.

The D.C. Circuit rejected both arguments in *Ali*. "Among other things, the substantive component of the Due Process Clause 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Ali*, 959 F.3d at 369 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L. Ed. 2d 437 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L. Ed. 2d 100 (1990)). "But only government action that is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' qualifies as arbitrary for the purposes of substantive due process." *Id*. at 369-370 (quoting *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8, 118 S.Ct. 1708, 140 L. Ed. 2d 1043 (1998))).

As in *Ali*, here, Petitioner's "detention is long because the armed conflict out of which it arises has been long, continuing to the present day." *Id*. at 370; *see also Husayn*, 2022 WL 2093067 at *4-*6 (explaining that hostilities against al Qaeda, and associated forces remain ongoing in Afghanistan and elsewhere). Furthermore, the hostilities authorized by the AUMF are ongoing. As indicated *supra*, this Court recently denied another of Petitioner's motions—Petitioner's Motion for an Order Requiring His Immediate Release and Repatriation—concluding that

Petitioner's continued detention is authorized by the AUMF. *See id*. at \*2-\*4.

Petitioner's claim that his detention is untethered to his individual circumstances or a bona fide security assessment is without merit. The information in the record indicates that the PRB has specifically reviewed Petitioner's detention "to determine whether his continued detention remains necessary to protect against a significant threat to the United States" four times and that another Subsequent Full Review is in process at this time. With regard to the most recently completed review, the PRB determined that continued detention "remains necessary to protect against a continuing significant threat to the United States." Periodic Review Board, Unclassified Summary of Final Determination for ISN 10016 (Mar. 5, 2020), https://www.prs.mil/Portals/60/Documents/ISN10016/SubsequentHearing1/200305_UPR_ISN10016_SH1_FINAL_DETERMINATION_PRB.pdf. In reaching this conclusion, the PRB acknowledged Petitioner's claim that he was not a formal member of al Qaida, but nonetheless concluded his continued detention necessary based on "his past involvement in jihadist activity to include probably serving as one of Usama bin Ladin's most trusted facilitators and his admitted abilities as a long-term facilitator and fundraiser for extremist causes." *Id*. The PRB also took into consideration Petitioner's "lack of remorse for his extensive

11

role in training and facilitating large numbers of extremists, continued habit of viewing certain persons and countries as his enemies, and personal attributes and beliefs that make him susceptible to reengagement." *Id*.

### B. The Court Rejects Petitioner's Remaining Arguments

Petitioner argues that "the Court should construe the AUMF narrowly to limit the duration of Petitioners' detention in order to avoid the serious constitutional concerns that would be raised by a statute that authorizes such non-criminal detention potentially for the remainder of their lives." Habeas Mot., ECF No. 488 at 31. In *Ali*, the D.C. Circuit observed that "because the specific constitutional claims that Ali presses have already been considered and rejected by circuit precedent, there are no constitutional rulings to be avoided." *Ali*, 959 F.3d at 373. Accordingly, this Court need not address whether the AUMF should be construed to limit the duration of detentions.

Petitioner also argues that "the Court should grant relief because whatever traditional law-of-war detention authority may have existed at the time of Petitioner's capture and initial detention has by now unraveled, 15 years after the fact." Habeas Mot., ECF No. 488 at 35. However, the Court rejected the arguments Petitioner makes here in its decision on the motion for immediate release. *See generally Husayn*, 2022 WL 2093067.

Petitioner's final argument—that the Court should exercise its broad, common law habeas authority to grant relief—ignores the complex body of law that has developed to ensure that non-citizens detained at Guantanamo have a "meaningful opportunity" to contest their detention. *Boumediene*, 553 U.S. at 779. Such law includes binding circuit precedent, which of course, this Court cannot disregard.

### III. Conclusion and Order

For the reasons stated above, it is hereby

**ORDERED** that Petitioner's Motion for Order Granting Writ of Habeas Corpus, ECF No. 488, is **DENIED**.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**May 26, 2023**