**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ZAYN AL ABIDIN MUHAMMAD
HUSAYN (ISN #10016),

                Petitioner,

v.

LLOYD AUSTIN, *et al*.,

                Respondents.

Civil Action No. 08-1360
(EGS)

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is journalist Raymond Bonner's ("Movant") Motion to Intervene and Unseal. *See* ECF No. 317. Upon careful consideration of the motion, opposition, reply thereto, the notices of supplemental authority submitted by movant and the Government, the applicable law, and for the reasons explained below, the Motion is **GRANTED IN PART, DENIED IN PART, AND FOUND AS MOOT IN PART.**

Following the classification review ordered by the Court of, among other records in this case, those Movant seeks to unseal, *see* Min. Order (Apr. 22, 2016); the Government filed on the docket public versions of all the records Movant seeks to unseal, *see generally* docket for Civil Action No. 08-1360. Fourteen of the records contain no redactions; the remaining

twenty-two contain redactions.[1] Accordingly, the motion is **MOOT** as to the fourteen records with no redactions.

## I.   Movant May Intervene In This Case

"[T]hird parties may be allowed to permissively intervene under [Fed.] Rule [Civ. P.] 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by protective order." *E.E.O.C v. Nat'l Children's Ctr. Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). Here, Movant seeks to intervene to gain access to materials that are sealed on the docket in this case, and also gain access to materials that have been designated by Executive Branch authorities as classified. *See generally* Mem. of Law in Supp. of Mot. to Intervene ("Mot. to Intervene"), ECF No. 317-1. In view of the liberal interpretation of Rule 24(b) by the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), *see Nat'l Children's Ctr. Inc.*, 146 F.3d at 1045; and the lack of opposition by the Government, *see* Opp'n, ECF No. 411 at 4 n.3,[2] the Court **GRANTS IN PART** the motion and permits Movant to intervene for the limited purpose of seeking access to sealed and classified records. *See In re Guantanamo Bay Detainee Litigation*, 624 F. Supp. 2d. 27, 31 (D.D.C. 2009)(Hogan, J.)

---

[1] ECF Nos. 333 and 350 are the same record.
[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

(allowing members of the press to intervene in this action for
the limited purpose of opposing the government's Motion to
Confirm Designation of Unclassified Returns as "Protected").

## II.   The Court Will Assume A Qualified First Amendment Right of Access

Movant seeks to intervene to gain access to materials that
are sealed on the docket in this case, and also to gain access
to materials that have been designated by Executive Branch
authorities as classified. *See generally* Mot. to Intervene, ECF
No. 317-1. Following the completion of the briefing on the
instant motion, the D.C. Circuit issued an opinion reversing the
district court opinion upon which Movant relies to assert his
right of access to classified materials here. *See id*. at 15, 18
(citing *Dhiab v. Obama*, 70 F. Supp. 3d 486 (D.D.C. 2014)). In
*Dhiab*, the district court granted news media organizations'
motion to intervene and unseal classified videotapes that had
been filed on the docket in that case. *See generally id*. The
D.C. Circuit reversed. *See Dhiab v. Trump*, 852 F.3d 1087 (D.C.
Cir. 2017). The panel was unanimous in reversing the district
court, but divided on whether the First Amendment guarantees a
right of public access to classified documents filed in
Guantanamo Bay habeas corpus proceedings. *See id*. at 1096, 1098-
1107.

The panel agreed, however, that "[e]ven if intervenors had a qualified First Amendment right of access" to the classified materials in that case, national security considerations made that access unavailable. *See id.* at 1096. First, the court noted that "[t]he government identified multiple ways in which unsealing these recordings would likely impair national security," citing "the government's expert judgment" as expressed in various declarations filed with the Court. *Id.* The court dismissed the district court's characterization of the declaration of the Commander of the Joint Task-Force Guantanamo as "speculative," because while the district court "thought it knew better," it, unlike the Commander, who "made his declaration on personal knowledge," "had no day-to-day experience with the people being detained at Guantanamo and had no special insight into their mindset." *Id.* at 1097. The court stated that

> [i]t bears repeating that the government "has a *compelling* interest in protecting ... the secrecy of information important to our national security...." *McGehee*, 718 F.2d at 1143 (*quoting Snepp v. United States*, 444 U.S. at 509 n.3, 100 S.Ct. 763 (per curiam) (emphasis and alteration in original)). *See also C.I.A. v. Sims*, 471 U.S. 159, 175, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). The district court did not disagree with the "SECRET" classification of these recordings, and neither did the  intervenors. By definition, "the unauthorized disclosure of [the recordings] reasonably could be expected

> to cause serious damage to the national
> security." Executive Order No. 13,526 §
> 1.2(a)(2). The district court had no basis for
> ruling that publicly releasing the recordings
> could not be expected to cause such harm.

*Id.* at 1098.

Accordingly, the Court will assume a qualified First Amendment right of access to the classified information for the purpose of this motion and will evaluate whether the Government has met its burden under the *Press-Enterprise II[3]* standard.

## III. Analysis

### A. The Information Is "Properly Classified"

Executive Order 13526 ("E.O."), governs the classification of national security information. The E.O. authorizes classification "only if all of the following" four criteria are met: (1) an original classification authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in Section 1.4 of the E.O.; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and identifies or describes that damage. E.O., § 1.1(a).

---

[3] *Press-Enterprise Co. v. Superior Court of California for the County of Riverside*, 478 U.S. 1 (1986).

Here, the declarations first confirm that the information was classified by an original classification authority. *See* DoD Decl., ECF No. 411-1 at 3 n.3; FBI Decl., ECF No. 411-2 at 4 n.1. Second, they confirm that the U.S. Government owns, produces, or controls the information. *See* DoD Decl., ECF No. 411-1 at 3 n.3; FBI Decl., ECF No. 411-2 at 4 n.1. Third, they confirm that the information falls within one of the eight protected categories. *See* DoD Decl., ECF No. 411-1 at 3 n.3; FBI Decl., ECF No. 411-2 at 4 n.1. The Government explains that here, the categories are military operations, E.O. 13526 § 1.4(a); foreign government information, E.O. 13526 § 1.4(b); intelligence activities, E.O. 13526 § 1.4(c); foreign relations, including confidential sources, E.O. 13526 § 1.4(d); or capabilities relating to the national security, E.O. 13526 § 1.4(g). Fourth, the declarations confirm that unauthorized disclosure reasonably could be expected to result in identifiable or describable damage to the national security. *See* DoD Decl., ECF No. 411-1 at 3 n.3; FBI Decl., ECF No. 411-2 at 4 n.1.[4]

Movant fails to contest whether any of these requirements have been met. *See generally* Reply, ECF No. 436. Rather, he

---

[4] Although there is no unclassified version of the declaration from the Central Intelligence Agency ("CIA"), the Government addresses the fourth criteria as to CIA information in its Opposition briefing. *See* Opp'n, ECF No. 411 at 12, 38-40.

makes a number of broad, and largely unsupported claims: that
"[m]uch of the redacted information withheld could not properly
be classified under Executive Order 13526," *id.* at 21; that
"[t]he docket . . . reveals a history of reckless
overclassification, *id.* at 22; and raises the issue of "[t]he
CIA's documented misuse of its classification authority
regarding [Petitioner]," *id.* at 23-24.

Based on the record here, the Court concludes that all four
requirements have been met here. With regard to the first three
requirements, the Court has explained *supra* how they were met.
With regard to the fourth, the Court appropriately defers to the
considered judgment of the Executive Branch, *see e.g., Ctr. for
Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927
(D.C. Cir. 2003)("[W]e have consistently deferred to executive
affidavits predicting harm to national security, and have found
it unwise to undertake searching judicial review."); but at the
same time "must assure [itself] that the reasons for the
classification are rational and plausible ones." *McGehee v.
Casey*, 718 F2d 1137, 1149 (D.C. Cir. 1983); *see also Morley v.
CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)(noting in the context
of the Freedom of Information Act ("FOIA") that "a plausible
assertion that information is classified" is all that is
required to invoke Exemption 1 covering classified information).
In *infra* Section III.B.1., the Court concludes that it is both

rational and plausible that the official disclosure of the information at issue in each category reasonably could be expected to result in damage to the national security that is identified or described. For these reasons, the Court concludes that the information is properly classified.

**B. Application of the *Press-Enterprise II* Standard**

In *Press-Enterprise II*, the Supreme Court considered whether the public has "a First Amendment right of access to the transcript of a preliminary hearing growing out of a criminal investigation." *Press-Enterprise Co. v. Superior Court of California for the County of Riverside*, 478 U.S. 1, 3 (1986). To answer that question, the Supreme Court determined that the government must demonstrate: (1) a compelling interest in non-disclosure; (2) a substantial probability that disclosure will harm these interests; and (3) there is no alternative to nondisclosure that will protect the government's compelling interests and the restriction is narrowly-tailored. *See id.* at 13-14.

**1. The Government Has Demonstrated A Compelling Interest in Nondisclosure of Each Category of Classified Information At Issue[5]**

The DoD affiant avers "on personal knowledge and information made available to [him] in the course of [his] official duties" that

> This declaration is provided to explain the bases for the redaction of DoD intelligence information in the public versions of the filing submitted in response to the Court's Minute Orders of April 22, 2016 and June 10, 2016 pertaining to the Motion by Non-Party Raymond Bonner to Intervene and Unseal Court Records (ECF No. 317-1). This information meets the requirements for classified national security information pursuant to E.O. 13526 and is properly classified. It is not available for declassification and public release, or release to individuals not having both the appropriate security clearances, and appropriate need to know, to access the content of the information pursuant to E.O. 13526, section 4.1.

DoD Decl., ECF No. 411-1 ¶ 4.

**a. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Intelligence Reports, Including Sources and Methods**

In this category, "DoD and FBI have withheld from disclosure information which reveals or could tend to reveal intelligence sources, capabilities, or methods." Opp'n, ECF No.

---

[5] Movant does not object to nondisclosure with respect to two categories: (1) the identities of intelligence personnel and (2) the Guantanamo Detention facilities information, *see* Reply, ECF No. 436 at 19-20; accordingly, the Court will not address those categories.

411 at 7. The DoD Declaration, based on the "personal knowledge and information made available to me in the course of my official duties," DoD Declaration, ECF No. 411-1 ¶ 1; explains that

> Disclosure of information which reveals intelligence sources, capabilities or methods could lead to the identification of DoD intelligence priorities and allocation of resources to support those priorities which may indicate gaps in our intelligence. In particular, information which reveals Human Intelligence (HUMINT) and Counterintelligence (CI) information and/or these requirements at operational and strategic levels is classified. It is classified, and closely controlled, because it can reveal the existence of past and present law enforcement operations, past or current intelligence operations (including the names of these operations), and past and present source information, planned operations, and past and present intelligence gathering methodologies. Public release of classified HUMINT and CI gathering, which would likely diminish the effectiveness of future operations using those methods, if the specifics of this type of information were publicly known. Revelation could immediately and significantly hinder current and future intelligence collection, negatively impacting both national security and force protection of military activities and intelligence operations and putting our core personnel and human sources at greater risk.

*Id.* ¶ 9.

Movant responds that the Government "provides no evidence that withholding information in this category is necessary to protect against harm to national security," asserting that

"[t]he defense of this category consists entirely of conclusory and speculative assertions of harm that are constitutionally insufficient." Reply, ECF No. 436 at 16. However, Movant fails to rebut the Government's citation to Supreme Court precedent recognizing a "compelling [government] interest in" "providing intelligence sources with an assurance of confidentiality that is as absolute as possible." *C.I.A. v. Sims*, 471 U.S. 159 (1985). And the Government has explained precisely how disclosure of "intelligence sources, capabilities or methods" could damage national security—it "could significantly hinder current and future intelligence collection." DoD Decl., ECF No. 411-1 ¶ 9. The damage is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

### b. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Factual or Intelligence Gathering

The Government states that "the disclosure of factual information uncovered by United States intelligence activities would reasonably be expected to harm the same interests as the direct disclosure of sources and methods." Opp'n, ECF No. 411 at 32. The DoD Declaration explains that disclosure of this information "could cause serious harm to national security by providing our enemies and adversaries with information about intelligence sources and methods, known gaps in intelligence and the types of information of interest to the United States" thereby adversely impacting the effectiveness of United States military and intelligence activities. DoD Decl., ECF No. 411-1 ¶ 16.

Movant responds that the Government's public justification for this category consists of a single sentence—"[c]ontinued nondisclosure is therefore necessary to protect the United States from hostile activities by these adversaries," Reply, ECF No. 436 at 16; but fails to rebut the Government's citation to a prior decision in this case. In *Detainee Litigation II*, Judge Hogan found that factual intelligence data should be protected from release, even where that information is ***unclassified***, holding that "names and locations . . . or other locations of interest as they pertain to counter-terrorism intelligence

gathering, law enforcement, or military operations, where the Government has not previously acknowledged publicly its knowledge of those names or locations." 787 F. Supp. 2d at 20.

The Government has explained how disclosure of this information could damage national security—in addition to the reasons explained supra Section III.B.1.a., disclosure would "provid[e] our enemies and adversaries with information about sources and methods, knowns gaps in intelligence, and the types of information of interest to the United States" thereby compromising the effectiveness of intelligence activities. DoD Decl., ECF No. 411-1 ¶ 16. The damage is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

> **c. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Intelligence Assessments and Conclusions**

The Government argues that "[t]he likely harms to national security that warrant nondisclosure of intelligence sources and methods likewise demonstrate the propriety of the Government's nondisclosure of intelligence conclusions: the analytic products of intelligence professionals." Opp'n, ECF No. 411 at 33. The DoD Declaration explains that "[p]ublic disclosure of our intelligence assessments and their significance would lead to scrutiny or surveillance by terrorist networks, their supporters, and other current and potential adversaries." DoD Decl., ECF No. 411-1 ¶ 16.

Movant responds that the Government's public defense of this category is entirely redacted, Reply, ECF No. 436 at 16; but fails to rebut the Government's citation to caselaw it argues establishes that the Government has a compelling interest in protecting from disclosure "the analytic products of intelligence professionals," Opp'n, ECF No. 411 at 33-34.

The Government has explained how disclosure of this information could damage national security—"[p]ublic disclosure of our intelligence assessments and their significance would lead to scrutiny or surveillance by terrorist networks, their supporters, and other current and potential adversaries." DoD

Decl., ECF No. 411-1 ¶ 16. The damage is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

> **d. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Interrogation Details, Plans and Assessments of Effectiveness**

This category includes "[i]nformation about the use, effectiveness, or specific details about the implementation of many interrogation techniques, including recommendations for future interrogation techniques." Opp'n, ECF No. 411 at 10; *see also* DoD Decl., ECF No. 411-1 ¶ 19 (describing the contents of Summary Interrogation Reports ("SIRs" and Memoranda for the Record "MFRs"). The DoD Declaration explains that "information regarding the use, effectiveness, or specific details about the

implementation of certain interrogation techniques, including

recommendations for future interrogation techniques is

classified." DoD Decl., ECF No. 411-1 ¶ 20. The DOD Declaration

clarifies that "the types of interrogation approaches used, as

they are approved by Executive Order 13491 and included in the

Army Field Manual" are not classified, but that what is

classified is

> the manner and strategy in which they were
> employed with a specific detainee or in a
> specific interrogation. Public dissemination
> of the particulars regarding the tactics,
> methodologies and efficacy of certain
> techniques and approaches would lead to
> detainees becoming familiar with such tactics
> an thereby developing their own methods of
> evading such techniques. This could diminish
> the future utility and value of these
> methodologies and techniques as a means to
> gain intelligence vital to protecting our
> national interests. Release of this
> information will therefore inhibit future
> intelligence collection and could cost the
> Government the ability to utilize these
> methods in the future, as well as result in
> the loss of intelligence while new methods are
> being developed to replace those that became
> non-viable due to detainees' familiarity with
> them.

*Id.* ¶ 20.

With regard to Interrogation Plans, the DoD Declaration

explains that such a plan

> lists collection objectives, approach
> techniques, preparation and liaison tasks, and
> an interpreter usage plan. Planned
> interrogation approaches and techniques are
> classified when a given detainee is still in

> detention to allow for continued use to gain
> information to assist with continuing
> intelligence gathering and law enforcement
> investigations. If this information was
> publicly revealed, it could identify the
> existence and nature of a current intelligence
> operation, the types of information that may
> be undergoing exploitation and how the
> information is being actively exploited. Past
> information about interrogation plans is
> classified to prevent disclosure of cumulative
> information about the interrogation process,
> including techniques which were utilized and
> the detainee's responsiveness to those
> techniques. Such cumulative information could
> be used to formulate counter-interrogation
> techniques.

*Id.* ¶ 22. The DoD Declaration states that there are SIRs and MFRs of detainees that corroborate aspects of Petitioner's activities. *Id.* ¶ 23

Movant argues that this category should be rejected as a basis for any redaction because "[n]o harm can plausibly be expected to result from disclosures about the effectiveness of a CIA torture program that has already been publicly described in detail and judged ineffective, and is now prohibited both by executive order and statute." Reply, ECF No. 436 at 23. However, the Government notes that

> [c]ertain categories of information about the
> CIA's detention and interrogation program are
> not classified . . . including "the fact that
> the detention and interrogation program was a
> covert action program authorized by the
> President by a September 17, 2001 Memorandum
> of Notification, the names a descriptions of
> authorized enhanced interrogation techniques
> used in connection with the detention and

> interrogation program and the specified
> parameters within which the techniques could
> be applied, the authorized enhanced
> interrogation techniques applied to 119
> individuals as described in Appendix 2 of the
> Executive Summary of the Committee Study of
> the CIA's Detention and Interrogation Program
> ("SSCI Report") officially acknowledged to
> have been in CIA custody, information
> regarding the conditions of confinement,
> treatment, as applied to those 119 individuals
> and mentioned in Appendix 2 of the Executive
> Summary of the SSCI report, and allegations of
> torture, abuse, or mistreatment by those 119
> individuals mentioned in Appendix 2 of the
> Executive Summary of the SSCI report.

Opp'n, ECF No. 411 at 35 n.28.

Movant fails to address the authority cited by the Government. In the FOIA context, D.C. Circuit concluded "that it is both plausible and logical that the disclosure of information regarding the interrogation of detainees would degrade the CIA's ability to carry out its mission" and would interfere with "the CIA's ability to effectively question terrorist detainees." *ACLU v. Dep't of Justice*, 628 F.3d 612, 625 (D.C. Cir. 2011); *see also ACLU v. Dep't of Justice*, 681 F.3d 61 (2d Cir. 2012).

The Government has explained how disclosure of this information could cause serious harm to national security— "[d]isclosure of these details of the effectiveness of particular interrogation techniques would 'diminish the future utility and value of these methodologies and techniques as a means to gain intelligence' as they 'became non-viable due to .

18

. . familiarity with' the techniques by those interrogated in the future." Opp'n, ECF No. 411 at 34 (quoting DoD Decl. ¶ 20). The damage is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

### e. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of CIA Information Related to the RDI Program That Remains Properly Classified

The Government states that "this information is properly classified because disclosure to the public would reasonably be expected to raise serious, and in some cases, exceptionally grave, harm to national security." Opp'n, ECF No. 411 at 12 (citing CIA Decl. and *ex parte* filing). Movant does not have the ability to access classified information and so requests that the Court review "the specific redactions predicated on [this]

category[y], applying the *Press-Enterprise II* standard and demanding explanations from the government about its specific redactions." Reply, ECF No. 436 at 21.

The Court has reviewed the classified CIA Declaration and *ex parte* filing. The Government has explained how disclosure of this information "would reasonably be expected to raise serious, and in some cases, exceptionally grave, harm to national security." Opp'n, ECF No. 411 at 12, 38. The harm is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

**f. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Information Related to the CIA's Foreign Liaison Relationships**

The Government states that "this information is properly classified because disclosure to the public would reasonably be expected to cause serious harm to national security." Opp'n, ECF No. 12 (citing CIA Decl. and *ex parte* filing). Movant does not have the ability to access classified information and so requests that the Court review "the specific redactions predicated on [this] category[y], applying the *Press-Enterprise II* standard and demanding explanations from the government about its specific redactions." Reply, ECF No. 436 at 21.

The Court has reviewed the classified CIA Declaration and *ex parte* filing. The Government has explained how disclosure of this information "would reasonably be expected to cause serious harm to national security." Opp'n, ECF No. 12, 38. The harm is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the

disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

### g. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of Clandestinely Collected Foreign Intelligence Information Collected by the CIA

The Government states that the release of the foreign intelligence information collected by the CIA must be prevented to avoid harms to national security. Opp'n, ECF No. 411 at 12 (citing CIA Decl.). Movant does not have the ability to access classified information and so requests that the Court review "the specific redactions predicated on [this] category[y], applying the *Press-Enterprise II* standard and demanding explanations from the government about its specific redactions." Reply, ECF No. 436 at 21. However, Movant fails to address the Government's arguments set forth below.

The Government argues that disclosure of this information would be likely to harm national security because "in the intelligence field, disclosure of a discrete piece of information be itself may be innocuous, but in conjunction with other, seemingly harmless bits of information, may reveal sensitive information that could harm national security." Opp'n, ECF No. 411 at 38.

The Court has reviewed the classified CIA Declaration. The Government has explained how disclosure of this information would be likely to harm national security. The harm is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

### h. The Government Has Demonstrated A Compelling Interest in Non-Disclosure of CIA Administrative Information

The Government states that some types of administrative information—such as the markings used for documents and other information—must be withheld from disclosure "where such information is classified to avoid harms to national security." Opp'n, ECF No. 411 at 12, 39 (citing CIA Decl.). Movant does not have the ability to access classified information and so requests that the Court review "the specific redactions

23

predicated on [this] category[y], applying the *Press-Enterprise II* standard and demanding explanations from the government about its specific redactions." Reply, ECF No. 436 at 21.

The Court has reviewed the classified CIA Declaration. The Government has explained how disclosure of this information would be likely to harm national security. The harm is both identified and described.

In view of the deference the Court properly gives to the considered judgment of the Executive Branch, *see e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."); the Court concludes that it is both rational and plausible that the disclosure of this information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). Accordingly, the Government has a compelling interest in protecting this information from disclosure.

### 2. The Government Has Demonstrated A Substantial Probability That Disclosure Will Harm the Government's Interests

The Government states that its declarations establish that there is a "substantial probability" that the harms articulated for each category, *see supra* Section III.B.1, will occur if the information is disclosed: "[t]he Government's declarants explain

the serious likely harms that would flow from disclosure of the classified information here, and rationally and logically articulate why these harms are likely to occur." Opp'n, ECF No. 411 at 40 (citing DoD Decl.)

Movant fails to meaningfully respond—stating only that "[t]he government fundamentally fails to make a logical and plausible showing that release of the 22 records remaining at issue would create a substantial probability of harm to national security." Reply, ECF No. 436 at 9. Movant further asserts that the government has "[m]erely assert[ed] that national security is implicated without meaningful explanation or clarification—as the government repeatedly does—is woefully inadequate under the First Amendment." *Id*.

Movant is wrong; the Government has provided detailed explanations of the damage to national security that could reasonably be expected from disclosure. The Court carefully considered them and determined that for each category of information at issue, the Government demonstrated it is both rational and plausible that the disclosure of each category of information "reasonably could be expected to result in damage to the national security," E.O. 13526 § 1.1(a)(4). *See supra* Section III.B.1. Movant is also wrong in claiming that information that is already publicly available cannot result in harm to national security. *See* Mot. to Intervene, ECF No. 317-1

25

at 26. Rather, the weight of authority recognizes the distinction between official and unofficial disclosure. *See e.g.*, *United States v. Zubaydah*, 142 S.Ct. 959, 970 (2022); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)("[E]ven if a fact . . . is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security."). For these reasons, the Government has demonstrated a substantial probability that disclosure will harm the Government's interests.

### 3. The Government Has Demonstrated That There Is No Alternative To Non-Disclosure That Will Protect the Government's Compelling Interests and the Restriction Is Narrowly Tailored

The Government states that its declarants explain that "the harms to national security flow directly from any disclosure of the withheld information, and so there is no alternative short of nondisclosure that can adequately protect against these harms." Opp'n, ECF No. 411 at 42. The Government points to the public redacted versions of the documents at issue, arguing that the "withholding of the classified information redacted from these documents is narrowly tailored to the compelling interests in national security served by nondisclosure." *Id*. (cites a case). Movant fails to respond to the Government's argument. *See generally* Reply, ECF No. 436.

The Court has already concluded that it is both rational and plausible that the disclosure of each category of information "reasonably could be expected to result in damage to the national security." *See supra* Section III.B.1. Accordingly, there is no alternative to nondisclosure that will protect the government's compelling interests. And because redacted versions of the documents have been filed on the docket in this case, the restriction is narrowly tailored. *See In re Motions of Dow Jones*, 142 F.3d 496, 504 (D.C. Cir. 1998)(noting that the media was able to receive "non-protected details about what transpired before the court").

## C. Continued Nondisclosure Subject to A Pending Motion For Protection Is Appropriate

The Government states that the "CIA has also withheld from public release any information which is the subject of a pending motion for protection pursuant to the governing protective order." Opp'n, ECF No. 411 at 13 (citing CIA Decl. and describing the protective orders in the Guantanamo Bay habeas litigation). Movant argues that this category should be rejected as a basis for withholding information, but provides no authority in support of his objection. Reply, ECF No. 436 at 24. The Court agrees that continued non-disclosure of information subject to a pending motion for protection is appropriate. The TS/SCI Protective Order in this case provides as follows:

> Should government counsel in these
> consolidated cases wish to have the Court deem
> any document or information "protected,"
> government counsel shall disclose the
> information to qualified counsel for
> petitioners—i.e., counsel who have satisfied
> the necessary prerequisites of this TS/SCI
> Protective Order for the viewing of protected
> information—and attempt to reach an agreement
> about the designation of the information prior
> to filing a motion with the Court.
> Petitioners' counsel shall treat such
> disclosed information as protected unless and
> until the Court rules that the information
> should not be designated as protected.

TS/SCI Protective Order, ECF No. 77 ¶ 35. Requiring disclosure

at this time "would effectively moot" this Court's future

ruling. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d

Cir. 2004)(once information is unsealed, questions of continued

nondisclosure are moot because courts "do not have the power . .

. to make what has thus become public private again").

**IV. Conclusion and Order**

    For the reasons explained above, it is hereby

    **ORDERED** that Motion to Intervene and Unseal, ECF No. 317,

is **GRANTED IN PART, DENIED IN PART, AND FOUND AS MOOT IN PART.**

    **SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **June 27, 2023**